FRED B. BURNSIDE (State Bar No. 211089)
  fredburnside@dwt.com
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, California  94111
Telephone:  (415) 276-6500
Fax:  (415) 276-6599

SANCHO ACCORSI (State Bar No. 329413)
  sanchoaccorsi@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

Attorneys for Defendant
NAVY FEDERAL CREDIT UNION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLANCHE PHLAUM and JASON JONES, individually, and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br><br>        v.<br><br>NAVY FEDERAL CREDIT UNION, and DOES 1-100,<br><br>                      Defendants. | Case No. **5:24-cv-00765-JGB-DTB**<br><br>**DEFENDANT NAVY FEDERAL CREDIT UNION'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(1) AND 12(b)(6)**<br><br>[*Notice of Motion and Motion, Declaration of Lisa Vance, and Proposed Order filed concurrently*]<br><br>Assigned to the Hon. Jesus G. Bernal Courtroom 1<br><br>Date:      August 26, 2024<br>Time:     9:00 a.m.<br><br>Action Filed:  April 11, 2024 |

NAVY FEDERAL'S REQUEST
FOR JUDICIAL NOTICE

1

# REQUEST FOR JUDICIAL NOTICE

Defendant Navy Federal Credit Union respectfully requests that the Court take judicial notice of the following documents under Federal Rule of Evidence 201, true and correct copies of which are attached hereto, in support of its Motion to Dismiss Plaintiffs' Complaint Under Rule 12(b)(1) and 12(b)(6):

- **Exhibit 1**: Excerpts from Plaintiff's Response to Defendant Vision Federal Credit Union's Motion to Dismiss Plaintiff's Class Action Complaint, *Petrey v. Visions Federal Credit Union*, 3:20-cv-01147, Dkt. 38 (N.D.N.Y. Feb. 1, 2021);

- **Exhibit 2**: Settlement Agreement and Release, *Lambert v. Navy Federal Credit Union*, 1:19-cv-00103, Dkt. 46-1 (E.D. Va. Oct. 21, 2020);

- **Exhibit 3**: Plaintiff's Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement, *Lambert v. Navy Federal Credit Union*, 1:19-cv-00103, Dkt. 46 (E.D. Va. Oct. 21, 2020);

- **Exhibit 4**: Order Granting Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, *Lambert v. Navy Federal Credit Union*, 1:19-cv-00103, Dkt. 48 (E.D. Va. Oct. 27, 2020);

- **Exhibit 5**: Declaration of Jennifer Keough Regarding Notice Administration, *Lambert v. Navy Federal Credit Union*, 1:19-cv-00103, Dkt. 50-2 (E.D. Va. Feb. 9, 2021);

- **Exhibit 6**: Plaintiff's Memorandum in Support of Unopposed Motion for Final Approval of Class Action Settlement, *Lambert v. Navy Federal Credit Union*, 1:19-cv-00103, Dkt. 50 (E.D. Va. Feb. 9, 2021); and

NAVY FEDERAL'S REQUEST
FOR JUDICIAL NOTICE

**Davis Wright Tremaine** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

- **Exhibit 7**: Amended Final Approval Order Approving Class Action Settlement and Granting Application for Attorneys' Fees, Costs, and Service Award, *Lambert v. Navy Federal Credit Union*, 1:19-cv-00103, Dkt. 61 (E.D. Va. April 8, 2021).

Exhibit 1 is a public court filing in a case involving Plaintiffs' counsel in this case. Exhibits 2 through 7 are court filings in *Lambert v. Navy Federal Credit Union*, 1:19-cv-00103 (E.D. Va.). These documents are subject to judicial notice because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 & n.6 (2006). The authenticity of publicly filed court documents, like these, is not subject to reasonable dispute. *See Reyn's Pasta Bella*, 442 F.3d at 746 & n.6 (taking judicial notice of court filings in prior class action); *Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir. 1995) (court "may take judicial notice of proceedings in other courts, whether in the federal or state systems").

For these reasons, Navy Federal respectfully requests that the Court take judicial notice of the documents attached as Exhibits 1 through 7.

DATED: June 24, 2024.

DAVIS WRIGHT TREMAINE LLP
FRED B. BURNSIDE
SANCHO ACCORSI

By: _____/s/ Fred B. Burnside_____
Fred B. Burnside

Attorneys for Defendant
NAVY FEDERAL CREDIT UNION

NAVY FEDERAL'S REQUEST
FOR JUDICIAL NOTICE

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# INDEX OF EXHIBITS

| Exhibit No. | Title | PDF Page No. |
|---|---|---|
| 1 | Excerpts from Plaintiff's Response to Defendant Vision Federal Credit Union's Motion to Dismiss Plaintiff's Class Action Complaint, *Petrey v. Visions Federal Credit Union*, 3:20-cv-01147, Dkt. 38 (N.D.N.Y. Feb. 1, 2021) | 5 |
| 2 | Settlement Agreement and Release, *Lambert v. Navy Federal Credit Union*, 1:19-cv-00103, Dkt. 46-1 (E.D. Va. Oct. 21, 2020) | 11 |
| 3 | Plaintiff's Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement, *Lambert v. Navy Federal Credit Union*, 1:19-cv-00103, Dkt. 46 (E.D. Va. Oct. 21, 2020) | 51 |
| 4 | Order Granting Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, *Lambert v. Navy Federal Credit Union*, 1:19-cv-00103, Dkt. 48 (E.D. Va. Oct. 27, 2020) | 88 |
| 5 | Declaration of Jennifer Keough Regarding Notice Administration, *Lambert v. Navy Federal Credit Union*, 1:19-cv-00103, Dkt. 50-2 (E.D. Va. Feb. 9, 2021) | 107 |
| 6 | Plaintiff's Memorandum in Support of Unopposed Motion for Final Approval of Class Action Settlement, *Lambert v. Navy Federal Credit Union*, 1:19-cv-00103, Dkt. 50 (E.D. Va. Feb. 9, 2021) | 124 |
| 7 | Amended Final Approval Order Approving Class Action Settlement and Granting Application for Attorneys' Fees, Costs, and Service Award, *Lambert v. Navy Federal Credit Union*, 1:19-cv-00103, Dkt. 61 (E.D. Va. April 8, 2021) | 156 |

NAVY FEDERAL'S REQUEST FOR JUDICIAL NOTICE

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELLE PETREY, on behalf of herself and all others similarly situated<br><br>                      Plaintiff,<br><br>     vs.<br><br>VISIONS FEDERAL CREDIT UNION.<br><br>                    Defendant | CASE NO. 3:20-CV-1147-MAD-ML<br><br>Judge: Hon. Mae A. D'Agostino<br><br>Magistrate Judge: Hon. Miroslav Lovric |

## PLAINTIFF'S REPONSE TO DEFENDANT VISIONS FEDERAL CREDIT UNION'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................................ 1

III.  LEGAL STANDARD................................................................................................ 2

IV.   ARGUMENT ............................................................................................................. 3

   A.  The Fee Schedule Bars Multiple NSF Fees on the Same Item .......................... 3

   B.  The NACHA Rules Foreclose Defendant's Attempted Interpretation. ............. 5

   C.  Defendant's Use of The Same Language In the Fee Schedule For an "Overdraft Fee" as an "NSF Fee" Further Supports Plaintiff's Interpretation. ......................................... 7

   D.  The Language in the Account Agreement Further Supports Plaintiff. The Best Case Scenario For Defendant Is That The Language Is Ambiguous................................... 8

   E.  More Than Thirty Courts Across The Country Have Rejected The Position Regarding Repeat NSF Fees That Defendant Is Arguing Here ............................................. 11

   F.  Visions' Arguments Have Already Been Rejected........................................... 18

   G.  Plaintiff's Claim For Breach Of The Covenant Of Good Faith And Fair Dealing Is Not Precluded............................................................................................................ 21

   H.  Plaintiff's Unjust Enrichment Claim Does Not Fail As A Matter of Law....... 23

V.    CONCLUSION........................................................................................................ 23

insufficient funds (NSF). The fee amounts for the payment of an overdraft or returning the item are indicated in the separate Service Charge Schedule." Doc. 37-3. The first sentence says nothing at all about fee assessment—it merely states the unremarkable premise that Visions can pay or return items. The second sentence merely refers accountholders to look to the Fee Schedule for regarding fee assessment. Like the Account Agreement, the Fee Schedule never states that a fee is assessed "each time" an item is presented.

Visions tries to rely on *Lambert v. Navy Fed. Credit Union,* No. 1:19-cv-103-LO-MSN, 2019 WL 3843064 (E.D. Va.); however, the determinative language in that case is also distinguishable from the language at issue here. The *Lambert* opinion rested largely on the contract's promise to charge "a fee . . . for each returned debit item." *Id.* at *3. Indeed, the *Lambert* contract defined "items" to include "all . . . Automated Clearing House (ACH) debits," and stated "an 'item' is a request or invitation for payment." *Id.* Thus it was clear that the contract at issue in that case authorized NSF fees on each returned ACH debit request, regardless of its status as a submission or resubmission. *Id.* at *3–4. By contrast, the Agreement here does not define "item" at all, does not link the payment of fees to the return of an item, and does not authorize fees on all ACH debits. Rather, the Contract states NSF Fees will be assessed per "ACH" or "ACH item," which reasonably encompasses all resubmissions associated with a single transaction.

Moreover, *Lambert* is, to put it mildly, against the great weight of authority. Accordingly, multiple courts have already declined to follow *Lambert*. Judge Caproni has already distinguished that case. *See Perks*, 444 F. Supp. 3d at 640 (distinguishing *Lambert* because, *inter alia*, the contract at issue in *Perks v. TD Bank* "does [not] authorize fees on all ACH debits; but rather on

19

### H.    Plaintiff's Unjust Enrichment Claim Does Not Fail As A Matter of Law.

Contrary to Visions' assertion (Dkt. No. 37-2 at 12-13), Plaintiff's allegations are sufficient to state a claim for unjust enrichment under New York law, as this Court held in *Story v. SEFCU,* Case No. 1:18-CV-764 (MAD/DJS), 2019 WL 2369878, at *5-6 (N.D.N.Y. June 5, 2019).[7] Also unavailing is the Defendant's argument that Plaintiff's claim for unjust enrichment cannot co-exist with Plaintiff's claim for breach of contract. Because, at this stage of the proceedings, this Court "does not know for a fact whether a contract exists between Plaintiff and Defendant[]," the "unjust enrichment claim may proceed." *Id.* (citation omitted). *See also Ford v. Rensselaer Polytechnic Institute,* Case No. 1:20-CV-470, 2020 WL 7389155, at *8- (N.D.N.Y. Dec. 16, 2020) (rejecting university's argument that college students' claims for unjust enrichment was "duplicative" of their breach of contract claims; students sought to recover the difference between the on-campus education they expected and the online schooling they received when university moved all classes online due to pandemic); *Walker,* 305 F. Supp. 3d at 378-79 (at motion to dismiss stage, bank customer could state unjust enrichment claim against bank as an alternative to its breach of contract claim based on bank's allegedly improper charging of overdraft fees); *Bergerpn v. Rochester Inst. of Tech.,* No. 20-CV-6283 (CJS), 2020 WL 7486682, at *9 (W.D.N.Y. Dec. 18, 2020) (same).

Once again, under these precedents, Visions' challenge to Plaintiff's claim should be rejected by this Court

### V.    <u>CONCLUSION</u>

For the reasons set forth herein, Visions' Motion to Dismiss the Complaint should be denied.[8]

Dated: February 1, 2021                                        Respectfully submitted,

---

[7] Inexplicably, Defendant ignores this Court's decision in *Story* in its moving papers.
[8] If the Court were to disagree, Plaintiff respectfully requests leave to amend.

By:    */s/ Taras Kick*

**THE KICK LAW FIRM, APC**
Taras Kick*
815 Moraga Drive
Los Angeles, CA 90049
Telephone: (310) 395-2988
Facsimile: (310) 395-2088
E-mail: taras@kicklawfirm.com

**KALIEL LLC**
Jeffrey Kaliel*
Sophia Gold*
1875 Connecticut Avenue, N.A., 10th Floor
Washington, DC 20009
Telephone: (202) 320-4783
E-mail: jkaliel@kalielpllc.com
       sgold@kalielpllc.com

**WILENTZ, GOLDMAN & SPITZER, P.A.**
Kevin P. Roddy – NYSBA # 652585
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ 07095
Telephone: (732) 636-8000
Facsimile: (732) 726-6686
E-mail: kroddy@wilentz.com

# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

RUBY LAMBERT, on behalf of herself and all
others similarly situated,

          Plaintiff,

       vs.

NAVY FEDERAL CREDIT UNION,

          Defendant.

CASE NO. 1:19-cv-103

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement")[1] is made and entered into this 5th day of October, 2020, by and among (1) Plaintiff, Ruby Lambert, individually, and on behalf of the Settlement Class, and (2) Navy Federal Credit Union, subject to Preliminary Approval and Final Approval as required by the Federal Rules of Civil Procedure. As provided herein, Plaintiff, Class Counsel and Navy Federal hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court of a Final Order and Judgment, all claims of the Settlement Class against Navy Federal in the action titled *Ruby Lambert v. Navy Federal Credit Union*, E.D. Va. Case No. 1:17-cv-103 ("Action"), shall be settled and compromised upon the terms and conditions contained herein.

## I. Recitals

1. On January 28, 2019, Plaintiff filed her Complaint against Navy Federal alleging that it assesses $29 insufficient funds fees ("NSF Fees") for each returned debit item or check when the account lacks sufficient funds. After Navy Federal returns the debit item or check for

---

[1] All capitalized times herein have the same meanings as those as given to them in Section II below.

insufficient funds, the merchant may re-present that debit item or check for payment up to three times.   Navy Federal is obligated to process each presented debit item or check, and each time it does so but returns a debit item or check due to insufficient funds, Navy Federal assesses a separate NSF Fee for each returned debit item or check.  Plaintiff alleges that under the terms of her contract with Navy Federal, that Navy Federal was permitted to only charge one NSF stemming from the same underlying purchase, regardless of how many times the merchant presents the debit item or check for payment and the account lacks sufficient funds.  The Complaint alleged claims for breach of contract and breach of the covenant of good faith and fair dealing and violation of the North Carolina Unfair and Deceptive Trade Practices Act.  The Complaint alleged, *inter alia*, entitlement to monetary damages, interest, attorneys' fees, and costs.

2.      On April 1, 2019, Navy Federal filed a Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  On April 15, 2019, Plaintiff filed her Opposition to Navy Federal's Motion to Dismiss, and on April 22, 2019, Navy Federal filed its Reply.

3.      Following a May 24, 2019 hearing on the Motion to Dismiss, the Court issued its August 14, 2019 Memorandum Opinion and Order dismissing the Complaint with prejudice.

4.      Thereafter, Plaintiff filed her Notice of Appeal to the United States Court of Appeals for the Fourth Circuit (the "Appeal").

5.      Plaintiff filed her opening brief in the Appeal on December 23, 2019, Navy Federal filed its brief on February 12, 2020, and Plaintiff filed her reply brief on March 18, 2020.  The Fourth Circuit permitted the amicus brief of the Credit Union National Association and National Association of Federally-Insured Credit Unions, which Plaintiff addressed in her reply brief.

6.      During the pendency of the Appeal, and before the completion of appellate briefing, the Parties participated in an initial mediation session as part of the Fourth Circuit's mediation

program, which did not result in settlement.

7.     Following completion of the briefing in the Appeal, the Parties' counsel met and conferred about settlement. The Parties jointly and successfully requested that Eastern District of Virginia Magistrate Judge John F. Anderson preside over a settlement conference between the Parties. At Judge Anderson's direction, the Parties exchanged detailed settlement conference statements on June 17, 2020, and submitted confidential settlement conference statements on June 24, 2020.

8.     To aid settlement negotiations, Navy Federal informally produced sample account transaction data from which Plaintiff's expert extrapolated estimated class-wide damages for the class period.

9.     An in-person settlement conference occurred on July 1, 2020 with Judge Anderson. The Action did not settle that day, but with the assistance of Judge Anderson in the days following, the Parties agreed to the material terms of Settlement on July 10, 2020, which they memorialized in a term sheet executed on July 24, 2020.

10.     On August 20, 2020, the United States Court of Appeals for the Fourth Circuit entered its Order granting the Parties' Joint Motion to Stay Appeal and for Limited Remand, filed on July 21, 2020, to permit the District Court to obtain jurisdiction pending the Appeal to consider the Settlement for Preliminary Approval and Final Approval. Upon the Effective Date of the Settlement, the parties will dismiss the Appeal.

11.     The Parties now agree to settle the Action in its entirety, without any admission of liability, with respect to all Released Claims of the Releasing Parties. The Parties intend this Agreement to bind the Plaintiff, Navy Federal, and all Settlement Class Members.

3

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt and sufficiency of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

## II.   Definitions

In addition to the terms defined at various points within this Agreement, the following Defined Terms apply throughout this Agreement:

12.   "Account" means any member checking account maintained by Navy Federal.

13.   "Account Holder" means any person who has or had any interest, whether legal or equitable, in an Account during the Class Period.

14.   "Action" means *Ruby Lambert, et al. v. Navy Federal Credit Union*, E.D. Va., Case No. 1:19-cv-103.

15.   "Class Counsel" means:

KOPELOWITZ OSTROW P.A.　　　　　TYCKO & ZAVAREEI, LLP
Jeff Ostrow, Esq.　　　　　　　　　　Hassan Zavareei, Esq.
Jonathan M. Streisfeld, Esq.　　　　　Andrea Gold, Esq.
1 West Las Olas Blvd.　　　　　　　　1828 L Street Northwest
Suite 500　　　　　　　　　　　　　Suite 1000
Fort Lauderdale, FL 33301　　　　　　Washington, DC 20036

KALIEL PLLC
Jeffrey Kaliel, Esq.
Sophia Gold, Esq.
1875 Connecticut Avenue, NW
10th Floor
Washington, DC 20009

and such other counsel as are identified in Class Counsel's request for attorneys' fees and costs.

16.   "Class Period" means the period from January 28, 2014, through the date of Preliminary Approval.

17.   "Class Representative" means Ruby Lambert.

4

18.     "Court" means the United States District Court for the Eastern District of Virginia.

19.     "Current Account Holder" means a Settlement Class Member who continues to have his or her Account as of the date that the Net Settlement Fund is distributed to Settlement Class Members pursuant to this Agreement.

20.     "Effective Date" means the 5th day after which all of the following events have occurred:

a.     The Court has entered without material change the Final Approval Order and Final Judgment; and

b.     The time for seeking rehearing or appellate or other review has expired, and no appeal or petition for rehearing or review has been timely filed; or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired and relief from a failure to file same is not available.

21.     "Final Approval" means the date that the Court enters an Order granting final approval to the Settlement and determines the amount of attorneys' fees, costs, and expenses awarded to Class Counsel and the amount of any Service Award to the Class Representative. The proposed Final Approval Order shall be in a form agreed upon by Class Counsel and Navy Federal. In the event that the Court issues separate orders addressing the foregoing matters, then Final Approval means the date of the last of such orders.

22.     "Escrow Account" means the interest-bearing account to be established by the Settlement Administrator consistent with the terms and conditions described in Section IV below.

23.     "Final Approval Hearing" means the hearing set by the Court to determine the fairness of the Settlement and whether to approve its terms.

5

24. "Final Approval Order" means the final order that the Court enters upon Final Approval, which shall be substantially in the form attached as an exhibit to the Motion for Final Approval. In the event that the Court issues separate Orders addressing the matters constituting Final Approval, then the Final Approval Order includes all such Orders.

25. "Former Account Holder" means a Settlement Class Member who no longer has his or her Account as of the date that the Net Settlement Fund is distributed to Settlement Class Members pursuant to this Agreement.

26. "Representment NSF Fees" means the second or third NSF Fee charged to an Account Holder when a Settlement Class member's merchant has re-presented a debit item or check to Navy Federal for payment (after an initial return by Navy Federal for insufficient funds), and where the debit item or check is again returned by Navy Federal due to insufficient funds, resulting in an additional NSF Fee or NSF Fees.

27. "Navy Federal" means Navy Federal Credit Union.

28. "Net Settlement Fund" means the Settlement Fund, minus Court-approved attorneys' fees, costs and expenses, and any Court-approved Service Award to Plaintiff.

29. "Notice" means the notices that the Parties will ask the Court to approve in connection with the Motion for Preliminary Approval of the Settlement.

30. "Notice Program" means the methods provided for in this Agreement for giving the Notice and consists of Postcard Notice, Email Notice and Long Form Notice (all defined herein below), which shall be substantially in the forms as the exhibits attached to the Motion for Preliminary Approval.

31. "Opt-Out Period" means the period that begins the day after the earliest date on which the Notice is first mailed, and that ends no later than 30 days before the Final Approval

6

Hearing. The deadline for the Opt-Out Period will be specified in the Notice.

32. "Parties" means Plaintiff and the Settlement Class members on the one hand, and Navy Federal on the other hand.

33. "Plaintiff" means Ruby Lambert.

34. "Preliminary Approval" means the date that the Court enters, without material change, an Order preliminarily approving the Settlement.

35. "Preliminary Approval Order" means the Court's order on Plaintiff's Motion for Preliminary Approval approving the Notice Program and authorizing Notice, which shall be substantially in the form of the exhibits attached to the Motion for Preliminary Approval.

36. "Releases" means all of the releases contained in Section XIII hereof.

37. "Released Claims" means all claims to be released as specified in Section XIII hereof.

38. "Released Parties" means those persons released as specified in Section XIII hereof.

39. "Releasing Parties" means Plaintiff and all Settlement Class Members, and each of their respective heirs, assigns, beneficiaries and successors.

40. "Service Award" means any Court ordered payment to Plaintiff for serving as Class Representative, which is in addition to any payment due to Plaintiff as a Settlement Class Member.

41. "Settlement" means the settlement into which the Parties have entered to resolve the Action. The terms of the Settlement are as set forth in this Agreement.

42. "Settlement Administration Costs" means all costs of the Settlement Administrator regarding notice and settlement administration, including notices required by the Class Action Fairness Act.

7

43.    "Settlement Administrator" means JND Legal Administration.

44.    "Settlement Class" means all current and former Navy Federal members in the United States who were charged Representment NSF Fees during the Class Period.  Excluded from the Settlement Class is Navy Federal, its parents, subsidiaries, affiliates, officers and directors, all Settlement Class members who make a timely election to be excluded, and all judges assigned to this litigation and their immediate family members.

45.    "Settlement Class Member" means any person included in the Settlement Class who does not opt-out of the Settlement.

46.    "Settlement Class member" means all members of the Settlement Class.

47.    "Settlement Class Member Payment" means the cash distribution that will be made from the Net Settlement Fund to each Settlement Class Member, pursuant to the allocation terms of the Settlement.

48.    "Settlement Fund" means the $16,000,000.00 common cash fund for the benefit of the Settlement Class that Navy Federal is obligated to pay under the Settlement.  The Settlement Fund will be used to pay Settlement Class Member Payments, any award of attorneys' fees, litigation costs and expenses and Service Award to Plaintiff ordered by the Court, and any *cy pres* payment required under this Agreement. Except as specified in this paragraph, Navy Federal is not required to place all or any of Settlement Fund into a separate bank account and will not relinquish control of any funds until payments are due, as required by the Settlement. Navy Federal shall not be responsible for any payments or obligations other than those specified in this Agreement. To the extent the Final Approval Order and Final Judgment is not entered or Final Approval does not occur, Navy Federal will be entitled to a refund of any amounts paid in trust to the Settlement

8

Administrator that have not been spent or incurred toward the costs of Settlement Administration, including but not limited to costs of providing Notice.

49.    "Settlement Website" means the website that the Settlement Administrator will use as a means for Settlement Class members to obtain notice of and information about the Settlement, through and including hyperlinked access to this Agreement, the Long Form Notice, the Preliminary Approval Order approving this Settlement, and such other documents as the Parties agree to post or that the Court orders posted on the website.  These documents shall remain on the Settlement Website at least until Final Approval.  The URL of the Settlement Website shall be www.lambertnsffeelitigation.com, or such other URL as Class Counsel and Navy Federal agree upon in writing.

## III.    Certification of the Settlement Class

50.    For Settlement purposes only, Plaintiff and Navy Federal agree to ask the Court to certify the Settlement Class under the Federal Rules of Civil Procedure.

## IV.    Settlement Consideration and the Escrow Account

51.    Subject to approval by the Court, under the Settlement, the total cash consideration to be provided by Navy Federal shall be $16,000,000.00, inclusive of the amount paid to Settlement Class Members, any and all attorneys' fees, costs and expenses awarded to Class Counsel, any Service Award to the Class Representative, and any *cy pres* payment.  Except as otherwise specified in this Agreement, Navy Federal shall not be responsible for any other payments under this Agreement.  If there are no objections to the Settlement, then within 15 days after Final Approval, or if there are objections to the Settlement, then within 15 days of the Effective Date, Navy Federal shall deposit into the Escrow Account $16,000,000.00, minus the amount of the Settlement Class Member Payments to be credited to the Accounts of Settlement

9

Class Members who are Current Account Holders.

52.     As a result of the Action, Navy Federal shall make revisions to its Account
Agreement and related documents to clarify when Representment NSF Fees may be assessed.
Navy Federal shall adopt the following, or substantially similar language:

> Navy Federal may return debits (e.g., ACH payments) submitted for payment
> against the checking account if the amount of the debit exceeds the funds available
> in the checking account. Each time we return a debit for insufficient funds, we will
> assess an NSF fee in the amount shown on Navy Federal's current Schedule of Fees
> and Charges for each returned debit item. The entity that submitted the debit may
> submit another debit to Navy Federal even if we have already returned the prior
> debit for insufficient funds in the checking account. If the resubmitted debit again
> exceeds the funds available in the checking account, Navy Federal again will return
> the debit, resulting in an additional NSF fee. Thus, you may be charged multiple
> NSF fees in connection with a single debit that has been returned for insufficient
> funds multiple times.

53.     The funds in the Escrow Account shall be deemed a "qualified settlement fund"
within the meaning of United States Treasury Reg. § 1.468B-l at all times since creation of the
Escrow Account.  All taxes (including any estimated taxes, and any interest or penalties relating
to them) arising with respect to the income earned by the Escrow Account or otherwise, including
any taxes or tax detriments that may be imposed upon Navy Federal, Navy Federal's Counsel,
Plaintiff and/or Class Counsel with respect to income earned by the Escrow Account for any period
during which the Escrow Account does not qualify as a "qualified settlement fund" for the purpose
of federal or state income taxes or otherwise (collectively "Taxes"), shall be paid out of the Escrow
Account.  Navy Federal and Navy Federal's Counsel and Plaintiff and Class Counsel shall have
no liability or responsibility for any of the Taxes.  The Escrow Account shall indemnify and hold
Navy Federal and Navy Federal's Counsel and Plaintiff and Class Counsel harmless for all Taxes
(including, without limitation, Taxes payable by reason of any such indemnification).

## V. Settlement Approval

54. Upon execution of this Agreement by all Parties, Class Counsel shall promptly move the Court for an Order granting Preliminary Approval of this Settlement. The proposed Preliminary Approval Order that will be attached to the motion shall be in a form agreed upon by Class Counsel and Navy Federal. The motion for Preliminary Approval shall, among other things, request that the Court: (1) approve the terms of the Settlement as within the range of fair, adequate and reasonable; (2) provisionally certify the Settlement Class pursuant to the Federal Rules of Civil Procedure for settlement purposes only; (3) approve the Notice Program set forth herein and approve the form and content of the Notices of the Settlement; (4) approve the procedures set forth herein below for Settlement Class members to exclude themselves from the Settlement Class or to object to the Settlement; (5) stay the Action pending Final Approval of the Settlement; and (6) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, Class Counsel, and counsel for Navy Federal, at which the Court will conduct an inquiry into the fairness of the Settlement, determine whether it was made in good faith, and determine whether to approve the Settlement and Class Counsel's application for attorneys' fees, costs, and expenses, and for a Service Award to the Class Representative.

## VI. Discovery and Settlement Data

55. Class Counsel and Navy Federal already have engaged in informal discovery related to liability and damages. Additionally, for purposes of effectuating this Settlement, Navy Federal will use its best efforts to provide to Class Counsel and its expert by August 31, 2020 (or as soon thereafter as is reasonably possible) data for the entirety of the Class Period sufficient for Plaintiff's expert to determine Settlement Class membership and ultimately each Settlement Class Member Payment. Because Plaintiff's expert will not have access to Settlement Class member

11

names or complete account numbers, Plaintiff's expert will provide results to Navy Federal, who will then create a list of Settlement Class members and their electronic mail or postal addresses and provide that list to the Settlement Administrator to provide Notice to the Settlement Class of the terms of the Settlement. Navy Federal will bear the expense of extracting the necessary data to make available to Class Counsel's expert for analysis, while Class Counsel shall be responsible for paying Class Counsel's expert, who will analyze the data provided to determine Settlement Class membership as well as the amount of each Settlement Class Member's damages.

## VII.    Settlement Administrator

56.    Class Counsel, in consultation with Navy Federal, has selected the Settlement Administrator. The Settlement Administrator shall administer various aspects of the Settlement as described in the next paragraph hereafter and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, providing Mailed and Email Notice to Settlement Class members and distributing the Settlement Fund as provided herein.

57.    The duties of the Settlement Administrator, in addition to other responsibilities that are described in the preceding paragraph and elsewhere in this Agreement, are as follows:

a.    Use the name and address information for Settlement Class members provided by Navy Federal in connection with the Notice process approved by the Court, for the purpose of mailing the Mailed Notice and sending the Email Notice, and later mailing distribution checks to Former Account Holder Settlement Class Members, and to Current Account Holder Settlement Class Members where it is not feasible or reasonable for Navy Federal to make the payment by a credit to the Settlement Class Members' Accounts;

12

b.  Establish and maintain a Post Office box for the receipt of opt-out requests and objections;

c.  Establish and maintain the Settlement Website;

d.  Establish and maintain an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries, and answer the frequently asked questions of Settlement Class members who call with or otherwise communicate such inquiries;

e.  Respond to any mailed Settlement Class member inquiries;

f.  Process all requests for exclusion from the Settlement Class;

g.  Provide weekly reports to Class Counsel and Navy Federal that summarize the number of requests for exclusion and/or objections received that week, the total number of exclusion requests and/or objections received to date, and other pertinent information;

h.  In advance of the Final Approval Hearing, prepare an affidavit to submit to the Court confirming that the Notice Program was completed, that the Class Action Fairness Notice requirements have been met, describing how the Notice Program was completed, providing the names of each Settlement Class member who timely and properly opted-out from the Settlement Class, as well as those Settlement Class Members that timely filed objections, and other information as may be necessary to allow the Parties to seek and obtain Final Approval;

i.  Identify to Navy Federal the amount of the Net Settlement Fund required to make Settlement Class Member Payments to Current Account Holders by a credit to those Settlement Class Members' Accounts, as well as the amount that shall be paid into the Escrow Account;

j.  Perform all tax-related services for the Escrow Account as provided in the Agreement;

13

k.      Pay invoices, expenses and costs upon approval by Class Counsel and Navy Federal, as provided in this Agreement; and

l.      Any other Settlement-administration-related function at the instruction of Class Counsel and Navy Federal, including, but not limited to, verifying that the Settlement Fund has been distributed.

## VIII. **Notice to Settlement Class Members**

58.     Within 30 days after Preliminary Approval of the Settlement, at the direction of Class Counsel and Navy Federal's Counsel, the Settlement Administrator shall implement the Notice Program provided herein, using the forms of Notice approved by the Court in the Preliminary Approval Order. The Notice shall include, among other information: a description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from, or "opt-out" of, the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date on which the Final Approval Hearing is scheduled to occur; and the address of the Settlement Website at which Settlement Class members may access this Agreement and other related documents and information. Class Counsel and Navy Federal shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. Notices and publications provided under or as part of the Notice Program shall not bear or include the Navy Federal logo or trademarks or the return address of Navy Federal, or otherwise be styled to appear to originate from Navy Federal.

59.     The Notice also shall include a procedure for Settlement Class members to opt-out of the Settlement Class. A Settlement Class member may opt-out of the Settlement Class at any time during the Opt-Out Period, provided the opt-out notice is postmarked no later than the last

14

day of the Opt-Out Period. Any Settlement Class member who does not timely and validly request to opt-out shall be bound by the terms of this Agreement.

60. The Notice also shall include a procedure for Settlement Class Members to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs and expenses and/or a Service Award to the Class Representative. Objections to the Settlement, to the application for fees, costs, expenses, and/or to the Service Award must be mailed to the Clerk of the Court, Class Counsel, Navy Federal's counsel, and the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Opt-Out Period, as specified in the Notice. If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (*e.g.*, Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

61. For an objection to be considered by the Court, the objection must also set forth:

a. the name of the Action;

b. the objector's full name, address and telephone number;

c. an explanation of the basis upon which the objector claims to be a Settlement Class Member;

d. all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

e. the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling

15

upon the objector's prior objections that were issued by the trial and appellate courts in each listed case;

f.       the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

g.       a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years;

h.       any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity;

i.       the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

j.       a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection;

k.       a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

l.       the objector's signature (an attorney's signature is not sufficient).

Class Counsel and/or Navy Federal may conduct limited discovery on any objector consistent with the Federal Rules of Civil Procedure.

62.       Notice shall be provided to Settlement Class members in three different ways: email notice to Account Holders for whom Navy Federal has email addresses ("Email Notice"); postcard notice  sent by U.S. mail to Account Holders for whom Navy Federal does not have valid

email addresses ("Postcard Notice"); and long form notice, which will be written in both English and Spanish, and shall be available on the Settlement Website and/or via mail upon a Settlement Class member's request ("Long Form Notice"). Email Notice and Postcard Notice shall collectively be referred to as "Mailed Notice." Not all Settlement Class members will receive all forms of Notice, as detailed herein.

63. As detailed above in Section VI, Navy Federal will cooperate with Class Counsel and its expert to make available the necessary data to Class Counsel's expert to determine Settlement Class membership. Once the Settlement Administrator has the Settlement Class membership list, the Settlement Administrator shall run the physical addresses through the National Change of Address Database and shall mail to all such Settlement Class members Postcard Notice. The Settlement Administrator shall also send out Email Notice to all Settlement Class members receiving Notice by that method. The initial Mailed Postcard and Email Notice shall be referred to as "Initial Mailed Notice."

64. The Settlement Administrator shall perform reasonable address traces for all Initial Mailed Notice postcards that are returned as undeliverable. A "reasonable" tracing procedure would be to run addresses of returned postcards through the Lexis/Nexis database that can be utilized for such purpose. No later than 60 days before the Final Approval Hearing, the Settlement Administrator shall complete the re-mailing of Postcard Notice to those Settlement Class members whose new addresses were identified as of that time through address traces ("Notice Re-mailing Process"). The Settlement Administrator shall also send Postcard Notice to all Settlement Class members whose emails were returned as undeliverable and complete such Notice pursuant to the deadlines described herein as they relate to the Notice Re-mailing Process.

17

65.     The Notice Program (which is composed of both the Initial Mailed Notice and the Notice Re-mailing Process) shall be completed no later than 60 days before the Final Approval Hearing.

66.     All costs and expenses related to the Notice Program shall be paid by Navy Federal directly to the Settlement Administrator.

67.     Within the provisions set forth in this Section VIII, further specific details of the Notice Program shall be subject to the agreement of Class Counsel and Navy Federal.

## IX.     Final Approval Order and Judgment

68.     Plaintiff's Motion for Preliminary Approval of the Settlement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur.  Plaintiff shall file her Motion for Final Approval of the Settlement, and application for attorneys' fees, costs, and expenses and for Service Award for the Class Representative, no later than 45 days before the Final Approval Hearing.  At the Final Approval Hearing, the Court will hear argument on Plaintiff's Motion for Final Approval of the Settlement, and on Class Counsel's application for attorneys' fees, costs, and expenses, and for the Service Award for the Class Representative.  In the Court's discretion, the Court also will hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement or to Class Counsel's application for attorneys' fees, costs, expenses, or the Service Award application, provided the objector(s) submitted timely objections that meet all of the requirements listed in the Agreement.

69.     At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order granting Final Approval of the Settlement and entering final judgment thereon, and whether to approve Class Counsel's request for attorneys' fees, costs, expenses, and a Service Award.  The proposed Final Approval Order shall be in a form agreed

18

upon by Class Counsel and Navy Federal. Such proposed Final Approval Order shall, among other things:

      a.     Determine that the Settlement is fair, adequate, and reasonable;

      b.     Finally certify the Settlement Class for settlement purposes only;

      c.     Determine that the Notice provided satisfies due process requirements;

      d.     Enter judgment dismissing the Action with prejudice;

      e.     Bar and enjoin all Releasing Parties from asserting any of the Released Claims hereof, bar and enjoin all Releasing Parties from pursuing any Released Claims against Navy Federal or its affiliates at any time, including during any appeal from the Final Approval Order, and retain jurisdiction over the enforcement of the Court's injunctions;

      f.     Release Navy Federal and the Released Parties from the Released Claims; and

      g.     Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Navy Federal, all Settlement Class Members, and all objectors, to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

**X.    Distribution of Net Settlement Fund**

      70.     Within 7 days after Final Approval, the Settlement Administrator shall identify to Navy Federal the full amount of Settlement Class Member Payments, along with the amount of each Settlement Class Member's Payment to be credited to Current Account Holders' Accounts, as well as the remaining amount of the $16,000,000.00 Settlement Fund that shall be paid by Navy Federal into the Escrow Account.

      71.     Within 15 days after Final Approval if there are no objections to the Settlement or 10 days after the Effective Date if there are objections or an appeal, Navy Federal shall wire to the Escrow Account the remainder of the $16,000,000.00 Settlement Fund.

72.     Within 30 days after the Effective Date, Navy Federal shall  deposit the Settlement Class Member Payments into Current Account Holders' Accounts.

73.     Within 30 days after the Effective Date, the Settlement Administrator shall pay from the Escrow Account Former Account Holders their Settlement Class Member Payments by check.

## XI.     Calculation of Automatic Distributions from Settlement Fund

74.     The calculation and implementation of allocations of the Settlement Fund contemplated by this section shall be done by Class Counsel and its expert for the purpose of compensating Settlement Class Members.  Navy Federal shall have the right but not the obligation to review and challenge the accuracy of this calculation.  The methodology provided for herein will be applied to the data as consistently, sensibly, and conscientiously as reasonably possible, recognizing and taking into consideration the nature and completeness of the data and the purpose of the computations.  Consistent with its contractual, statutory, and regulatory obligations to maintain credit union security and protect its members' private financial information, Navy Federal shall make available such additional data and information as may reasonably be needed by Class Counsel and its expert to confirm and/or effectuate the calculations and allocations contemplated by this Agreement.  Class Counsel shall confer with Navy Federal's counsel concerning any such additional data and information.  All such data and information produced by Navy Federal for the purpose of confirming and/or effectuating the calculations and allocations contemplated by this Agreement shall be returned to Navy Federal's counsel or destroyed.

75.     The amount of the Settlement Class Member Payment from the Settlement Fund to which each Settlement Class Member is entitled for the Class Period (subject to the availability of

data) is to be determined using the following methodology or such other methodology as would have an equivalent result:

    a.    All Accounts held by Settlement Class Members will be identified for which Navy Federal assessed Representment NSF Fees during the Class Period.

    b.    Representment NSF Fees will be totaled for each Account ("Relevant NSF Fees").

    c.    The Net Settlement Fund will be allocated pro rata to the Settlement Class Members based on their number of Relevant NSF Fees.

    76.    The Settlement Administrator shall divide the total amount of the Net Settlement Fund by the total amount of all Settlement Class Members' Relevant NSF Fees. This calculation shall yield the "Pro Rata Percentage."

    77.    Each Settlement Class Member's Pro Rata Percentage will be multiplied by the amount of the Net Settlement Fund, which yields a Pre-Adjustment Payment Amount for each Settlement Class Member.

    78.    If any Settlement Class Member's Pre-Adjustment Amount is less than $5.00, the Settlement Class Member's Payment amount shall be adjusted to $5.00. The remainder of the Net Settlement Fund shall then be apportioned pro rata to all other Settlement Class Members by multiplying those Settlement Class Members' Pro Rata Percentage by the remaining amount of the Net Settlement Fund.

    79.    The Parties agree the foregoing allocation formula is exclusively for purposes of computing, in a reasonable and efficient fashion, the amount of any Settlement Class Member Payment each Settlement Class Member should receive from the Net Settlement Fund. The fact that this allocation formula will be used is not intended (and shall not be used) for any other purpose or objective whatsoever.

80.     Settlement Class Member Payments to Current Account Holders shall be made first by crediting those Account Holders' Accounts, or by mailing a standard size check if it is not feasible or reasonable to make the payment by a credit. Navy Federal shall notify Current Account Holders of any such credit on the Account statement on which the credit is reflected by stating "Lambert class settlement" or something similar. Navy Federal will bear any costs associated with implementing the Account credits and notification discussed in this paragraph.

81.     Settlement Class Member Payments to Former Account Holders shall be made by mailing a standard size check.  Such mailing shall be accomplished by the Settlement Administrator.

82.     The amount of the Net Settlement Fund attributable to uncashed or returned checks sent by the Settlement Administrator shall be held by the Settlement Administrator one year from the date that the first distribution check is mailed by the Settlement Administrator.  During this time the Settlement Administrator shall make a reasonable effort to locate intended recipients of settlement funds whose checks were returned (such as by running addresses of returned checks through the Lexis/Nexis database that can be utilized for such purpose) to effectuate delivery of such checks.  The Settlement Administrator shall make only one such additional attempt to identify updated addresses and re-mail or re-issue a distribution check to those for whom an updated address was obtained.

## XII.     Disposition of Residual Funds

83.     Within 1 year after the date the Settlement Administrator mails the first Settlement Class Member Payment, any remaining amounts resulting from uncashed checks ("Residual Funds") shall be distributed as follows:

22

      a.    Any Residual Funds remaining after distribution shall be distributed on a *pro rata* basis to participating Settlement Class Members who received Settlement Class Member Payments, to the extent feasible and practical in light of the costs of administering such subsequent payments unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.

      b.    In the event the costs of preparing, transmitting and administering such subsequent payments pursuant to this Section are not feasible and practical to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair, Class Counsel and Navy Federal shall seek the Court's approval to distribute the Residual Funds to a *cy pres* recipient or recipients.  The Parties shall propose as a *cy pres* recipient or recipients an entity or entities that work to promote financial literacy, including for members of the military or veterans.

      c.    All costs of any second distribution, including Navy Federal's internal costs of crediting Settlement Class Member Accounts, will come from the Residual Funds, and Navy Federal is not required to pay those costs as Settlement Administration Costs.

**XIII.**  **Release**

      84.    As of the Effective Date, Plaintiff and each Settlement Class Member, each on behalf of himself or herself and on behalf of his or her respective heirs, assigns, beneficiaries and successors ("Releasing Parties"), shall automatically be deemed to have fully and irrevocably released and forever discharged Navy Federal and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors and assigns, and the present and former directors, officers, employees, agents, insurers, members, attorneys, advisors, consultants,

23

representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, successors and assigns of each of them ("Released Parties"), of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, that result from, arise out of, are based upon, or relate to the conduct, omissions, duties or matters during the Class Period that were or could have been alleged in the Action ("Released Claims") relating to the assessment of Representation NSF Fees.

85.     Each Settlement Class Member is barred and permanently enjoined from bringing on behalf of themselves, or through any person purporting to act on their behalf or purporting to assert a claim under or through them, any of the Released Claims against Navy Federal in any forum, action, or proceeding of any kind.

86.     With respect to all Released Claims, Plaintiff and each of the other Settlement Class Members agree that they are expressly waiving and relinquishing to the fullest extent permitted by law (a) the provisions, rights and benefits conferred by Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY

and (b) any law of any state or territory of the United States, federal law or principle of common law, or of international or foreign law, that is similar, comparable or equivalent to Section 1542 of the California Civil Code.

24

87. Plaintiff or any Settlement Class Member may hereafter discover facts other than or different from those that he/she knows or believes to be true with respect to the subject matter of the claims released herein, or the law applicable to such claims may change. Nonetheless, each of those individuals expressly agrees that, as of the Effective Date, he/she shall have automatically and irrevocably waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent claims with respect to all of the matters described in or subsumed by herein. Further, each of those individuals agrees and acknowledges that he/she shall be bound by this Agreement, including by the release herein and that all of their claims in the Action shall be dismissed with prejudice and released, whether or not such claims are concealed or hidden; without regard to subsequent discovery of different or additional facts and subsequent changes in the law; and even if he/she never receives actual notice of the Settlement and/or never receives a distribution of funds or credits from the Settlement.

88. Nothing in this Agreement shall operate or be construed to release any claims or rights that Navy Federal has to recover any past, present or future amounts that may be owed by Plaintiff or by any Settlement Class Member on his/her accounts, loans or any other debts with Navy Federal, pursuant to the terms and conditions of such accounts, loans, or any other debts. Likewise, nothing in this Agreement shall operate or be construed to release any defenses or rights of set-off that Plaintiff or any Settlement Class Member has, other than with respect to the claims expressly Released by this Agreement, in the event Navy Federal and/or its assigns seeks to recover any past, present or future amounts that may be owed by Plaintiff or by any Settlement Class Member on his/her accounts, loans or any other debts with Navy Federal, pursuant to the terms and conditions of such accounts, loans, or any other debts.

## XIV.  Payment of Attorneys' Fees, Costs, and Service Awards

89.     Navy Federal agrees not to oppose Class Counsel's request for attorneys' fees of up to 33.33% of the Settlement Fund, and not to oppose Class Counsel's request for reimbursement of reasonable costs and expenses. Any award of attorneys' fees, costs, and expenses to Class Counsel shall be payable solely out of the Settlement Fund.  The Parties agree that the Court's failure to approve, in whole or in part, any award for attorneys' fees shall not prevent the Settlement Agreement from becoming Effective, nor shall it be grounds for termination.

90.     If there are no objections to the Settlement, all Court-approved attorneys' fees, cost and expenses shall be payable from the Escrow Account by the Settlement Administrator to Class Counsel within 15 days of entry of a Final Approval Order.  If there are objections to the Settlement, or any appeals as to the propriety of the Settlement, any Court-awarded attorneys' fees, costs and expenses, shall be payable from the Escrow Account by the Settlement Administrator within 30 days of the Effective Date.

91.     The payment of attorneys' fees, costs, and expenses of Class Counsel shall be made as designated by Class Counsel.  After the fees, costs and expenses have been paid, Class Counsel shall be solely responsible for distributing each Plaintiff's firm's allocated share of such fees, costs, and expenses to that firm.  Navy Federal shall have no responsibility for any allocation, and no liability whatsoever to any person or entity claiming any share of the funds to be distributed for payment of attorneys' fees, costs, or expenses or any other payments from the Settlement Fund not specifically described herein.

92.     In the event the Effective Date does not occur, or the attorneys' fees or the cost award is reduced following an appeal, each counsel and their law firms who have received any payment of such fees or costs shall be jointly and severally liable for the entirety.  Further, each

26

counsel and their law firm consents to the jurisdiction of the Court for the enforcement of this provision.

93. Class Counsel will ask the Court to approve a Service Award to the Plaintiff in the amount of $5,000.00. The Service Award is to be paid by the Settlement Administrator from the Escrow Account within 30 days of the Effective Date. The Service Award shall be paid to the Class Representative in addition to the Settlement Class Member Payment. Navy Federal agrees not to oppose Class Counsel's request for the Service Award. The Parties agree that the Court's failure to approve the Service Award, in whole or in part, shall not prevent the Settlement Agreement from becoming Effective, nor shall it be grounds for termination.

94. The Parties negotiated and reached agreement regarding attorneys' fees and costs, and the Service Award, only after reaching agreement on all other material terms of this Settlement.

## XV. Termination of Settlement

95. This Settlement may be terminated by either Class Counsel or Navy Federal by serving on counsel for the opposing Party and filing with the Court a written notice of termination within 15 days (or such longer time as may be agreed in writing between Class Counsel and Navy Federal) after any of the following occurrences:

a. Class Counsel and Navy Federal agree to termination;

b. the Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement;

c. an appellate court vacates or reverses the Final Approval Order, and the Settlement is not reinstated and finally approved without material change by the Court on remand within 360 days after such reversal;

27

d. any court incorporates into, or deletes or strikes from, or modifies, amends, or changes, the Preliminary Approval Order, Final Approval Order, or the Settlement in a way that Class Counsel or Navy Federal seeking to terminate the Settlement reasonably considers material;

e. the Effective Date does not occur; or

f. any other ground for termination provided for elsewhere in this Agreement.

96. Navy Federal also shall have the right to terminate the Settlement by serving on Class Counsel and filing with the Court a notice of termination within 14 days after its receipt from the Settlement Administrator of any report indicating that the number of Settlement Class Members who timely request exclusion from the Settlement Class equals or exceeds the number or percentage specified in the separate letter executed concurrently with this Settlement by Class Counsel and Navy Federal. The number or percentage shall be confidential except to the Court, which shall upon request be provided with a copy of the letter for *in camera* review.

## XVI. Effect of a Termination

97. The grounds upon which this Agreement may be terminated are set forth herein above. In the event of a termination, this Agreement shall be considered null and void; all of Plaintiff's, Class Counsel's, and Navy Federal's obligations under the Settlement shall cease to be of any force and effect; any amounts in the Escrow Account shall be returned to Navy Federal; and the Parties shall return to the status *quo ante* in the Action as if the Parties had not entered into this Agreement. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement rights, claims, and defenses will be retained and preserved.

98. In the event of termination, Navy Federal shall have no right to seek reimbursement from Plaintiff, Class Counsel, or the Settlement Administrator for Settlement Administration Costs paid by Navy Federal.

28

99.     The Settlement shall become effective on the Effective Date unless earlier terminated in accordance with the provisions hereof.

100.    Certification of the Settlement Class shall have no bearing in deciding whether the claims asserted in the Action are or were appropriate for class treatment in the absence of settlement.  If this Agreement terminates or is nullified, the provisional class certification shall be vacated by its terms, and the Action shall revert to the status that existed before execution of this Settlement Agreement. Thereafter, Plaintiff shall be free to pursue any claims available to her, and Navy Federal shall be free to assert any defenses available to it, including but not limited to, denying the suitability of this case for class treatment.  Nothing in this Agreement shall be argued or deemed to estop any Party from the assertion of such claims and defenses.

101.    In the event the Settlement is terminated in accordance with the provisions of this Agreement, any discussions, offers, or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose. In such event, all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made, or filed with the Court.

**XVII.  No Admission of Liability**

102.    Navy Federal continues to dispute its liability for the claims alleged in the Action, and maintains that its NSF Fee assessment practices and representations concerning those practices complied, at all times, with applicable laws and regulations and the terms of the account agreements with its members.  Navy Federal does not admit any liability or wrongdoing of any kind, by this Agreement or otherwise.  Navy Federal has agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation,

and to be completely free of any further claims that were asserted or could possibly have been asserted in the Action.

103.    Class Counsel believe that the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel fully investigated the facts and law relevant to the merits of the claims, conducted significant informal discovery, and conducted independent investigation of the challenged practices. Class Counsel concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class members.

104.    The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

105.    Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiff or Settlement Class members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency, or other tribunal.

30

106.    In addition to any other defenses Navy Federal may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit or other proceeding that may be instituted, prosecuted or attempted in breach of this Agreement or the Releases contained herein.

### XIX.  **No Press Release or Publicity**

107.    Each Party agrees not to make any statements, written or oral, or cause or encourage others to make any statements, written or oral, that defame, disparage or in any way criticize the personal or business reputation, or conduct of the other party, including affiliates, parents, direct and indirect subsidiaries, agents, insurers, and any company or companies under common control with any of them.  Before entry of Final Judgment by the Court, neither Plaintiff nor Class Counsel shall directly or indirectly issue or cause to be issued any statements to the media or engage in any other press, publicity or disclosure regarding this Settlement Agreement or the settlement of the Action.  If contacted by the media after the entry of Final Judgment by the Court, the Party may respond generally by stating that they are happy that the Settlement was reached and that it is a fair and reasonable result.  Neither Party shall issue any press release or shall otherwise initiate press coverage of the Settlement.

### XX.  **Miscellaneous Provisions**

108.    Gender and Plurals.  As used in this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

109.    Binding Effect.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

110.  <u>Cooperation of Parties</u>.  The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, uphold Court approval, and do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

111.  <u>Obligation To Meet And Confer</u>.  Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted.

112.  <u>Integration</u>.  This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof.  No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

113.  <u>No Conflict Intended</u>.  Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

114.  <u>Governing Law</u>.  Except as otherwise provided herein, the Agreement shall be construed in accordance with, and be governed by, the laws of the State of Virginia, without regard to the principles thereof regarding choice of law.

115.  <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts.  Original signatures are not required.  Any signature or electronic signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

116.  <u>Jurisdiction</u>.  The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any

suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation, and enforcement of the Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator. As part of the agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose. The Court shall retain jurisdiction over the enforcement of the Court's injunction barring and enjoining all Releasing Parties from asserting any of the Released Claims and from pursuing any Released Claims against Navy Federal or its affiliates at any time, including during any appeal from the Final Approval Order.

117. <u>Notices</u>. All notices to Class Counsel provided for herein, shall be sent by email with a hard copy sent by overnight mail to:

KOPELOWITZ OSTROW P.A.
Jeff Ostrow
1 West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Email: ostrow@kolawyers.com
*Class Counsel*

TYCKO & ZAVAREEI LLP
Andrea Gold, Esq.
1828 L Street Northwest
Suite 1000
Washington, DC 20036
Email: agold@tzlegal.com
*Class Counsel*

KALIEL PLLC
Jeffrey Kaliel, Esq.
1875 Connecticut Avenue Northwest
10th Floor
Washington, DC 20009
Email: jkaliel@kalielpllc.com

*Class Counsel*

DAVIS WRIGHT TREMAINE LLP
Fred Burnside, Esq.
920 Fifth Avenue
Suite 3300
Seattle, Washington 98104
Email: fredburnside@dwt.com

*Counsel for Navy Federal Credit Union*

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice program.

118. <u>Modification and Amendment</u>. This Agreement may not be amended or modified, except by a written instrument signed by Class Counsel and counsel for Navy Federal and, if the Settlement has been approved preliminarily by the Court, approved by the Court.

119. <u>No Waiver</u>. The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

120. <u>Authority</u>. Class Counsel (for the Plaintiff and the Settlement Class Members), and counsel for Navy Federal (for Navy Federal), represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation or entity included within the definitions of Plaintiff and Navy Federal to all terms of this Agreement. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

121. <u>Agreement Mutually Prepared</u>. Neither Navy Federal nor Plaintiff, nor any of

them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

122.    Independent Investigation and Decision to Settle.  The Parties understand and acknowledge that they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement.  Navy Federal has provided and is providing information that Plaintiff reasonably requested to identify Settlement Class members and the alleged damages they incurred.  Both Parties recognize and acknowledge that they and their experts reviewed and analyzed data for a subset of the time at issue and that they and their experts used extrapolation to make certain determinations, arguments, and settlement positions.  The Parties agree that this Settlement is reasonable and will not attempt to renegotiate or otherwise void or invalidate or terminate the Settlement irrespective of what any unexamined data later shows.  It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

123.    Settlement Purpose of Agreement. This Settlement Agreement is governed by the terms of Federal Rule of Evidence 408 and is for settlement purposes only, and neither the fact of, nor any provision contained in this Settlement Agreement or any attachments, nor any action taken

35

hereunder shall constitute, be construed as, or be admissible in evidence as, any admission of the validity of any claim, defense or any fact alleged by any of the Parties in the Action or in any other pending or subsequently filed action or of any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party, or admission by any Party of any claim, defense or allegation made in the Action or any other action, nor as an admission by any of Navy Federal, Plaintiff, or Settlement Class Members of the validity of any fact or defense asserted against them in the Action or any other action. If the Court should for any reason fail to approve this Agreement in the form agreed to by the Parties, decline to enter the Settlement Order and Final Judgment in the form described in this Settlement Agreement, or impose any condition to approval of the settlement to which the Parties do not consent, or if the Final Approval Order or Final Judgment are reversed or rendered void, then (a) this Settlement Agreement shall be considered null and void, (b) neither this Settlement Agreement nor any of the related negotiations shall be of any force or effect, and (c) all Parties to this Settlement Agreement shall stand in the same position, without prejudice, as if the Settlement Agreement had been neither entered into nor filed with the Court. Invalidation of any portion of this Settlement Agreement shall invalidate this Settlement Agreement in its entirety unless the Parties agree in writing that the remaining provisions shall remain in full force and effect. This includes that the provisional certification of the Settlement Class shall have no bearing in deciding whether the claims asserted in the Action are or were appropriate for class treatment in the absence of settlement. If this Agreement terminates or is nullified, the provisional class certification shall be vacated by its terms, and the Action shall revert to the status that existed before the execution of this Settlement Agreement. Upon nullification of this Settlement Agreement, Plaintiff shall be free to pursue any claims available to her, and Navy Federal shall be free to assert any defenses available to it, including, but not limited to, denying the suitability of

36

this case for class treatment. Nothing in this Agreement shall be argued or deemed to estop any Party from asserting such claims or defenses. In the event the Court should for any reason fail to approve this Settlement Agreement in the form agreed to by the Parties, decline to enter the Final Approval Order or Final Judgment in the form described in this Settlement Agreement, or impose any condition to approval of the settlement to which the Parties do not consent, or if the Final Approval Order or Final Judgment are reversed or rendered void, the Parties will negotiate in good faith to address the issues raised by said events.

124.    Assignment; Third Party Beneficiaries. None of the rights, commitments, or obligations recognized under this Settlement Agreement may be assigned by any member of the Settlement Class without the express written consent of the other Parties.

125.    Communications. Any communications to the Parties relating to this Settlement Agreement shall be sent to all counsel signing this Agreement on behalf of the Parties.

126.    Calculation of Time. All time listed in this Agreement is in calendar days. Time is calculated by (a) excluding the day of the event that triggers the period; (b) counting every day, including intermediate Saturdays, Sundays, and legal holidays; and (c) including the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

127.    Receipt of Advice of Counsel. Each Party acknowledges, agrees, and specifically warrants that he, she or it has fully read this Agreement and the Release contained herein, received independent legal advice with respect to the advisability of entering into this Agreement and the Release and the legal effects of this Agreement and the Release, and fully understands the effect of this Agreement and the Release.

*Signature Page to Follow*

37

DocuSign Envelope ID: DDF5283A-E03E-4551-9A03-00D6434AC595

Dated: 10/8/2020

RUBY LAMBERT
*Plaintiff*

Dated: _____

Jeff Ostrow, Esq.
KOPELOWITZ OSTROW P.A.
*Class Counsel*

Dated: _____

Andrea Gold, Esq.
TYCKO & ZAVAREEI LLP
*Class Counsel*

Dated: _____

Jeffrey Kaliel, Esq.
KALIEL PLLC
*Class Counsel*

Dated: 10/6/2020

NAVY FEDERAL CREDIT UNION

By: Rachel Murphy
ITS Assistant General Counsel

Fred Burnside
Digitally signed by: Fred Burnside
DN: CN = Fred Burnside email =
fredburnside@dwt.com C = US O = DWT
OU = DWT
Date: 2020.10.08 14:17:17 -07'00'

Dated: _____

Fred Burnside, Esq.
DAVIS WRIGHT TREMAINE LLP
*Counsel for Navy Federal Credit Union*

38

Dated: _____

RUBY LAMBERT
*Plaintiff*

Dated: __10/6/2020__

Jeff Ostrow, Esq.
KOPELOWITZ OSTROW P.A.
*Class Counsel*

Dated:___10/6/2020_____

Andrea Gold

Andrea Gold, Esq.
TYCKO & ZAVAREEI LLP
*Class Counsel*

DocuSigned by:

Dated:___10/7/2020_____

Jeffrey Kaliel
FB17E4A8E081427

Jeffrey Kaliel, Esq.
KALIEL PLLC
*Class Counsel*

Dated: _____

NAVY FEDERAL CREDIT UNION

By: _____
ITS_____

Dated: _____

Fred Burnside, Esq.
DAVIS WRIGHT TREMAINE LLP
*Counsel for Navy Federal Credit Union*

# EXHIBIT 3

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

RUBY LAMBERT, individually and on behalf of all others similarly situated,

        Plaintiff,

        v.

NAVY FEDERAL CREDIT UNION,

        Defendant.

Case No. 1:19-cv-00103-LO-MSN

Hon. Liam O'Grady

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED
## MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Date: October 21, 2020

*/s/     Kristi C. Kelly*

Kristi C. Kelly
Andrew J. Guzzo
Casey S. Nash
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
kkelly@kellyguzzo.com
aguzzo@kellyguzzo.com
casey@kellyguzzo.com

Jeff Ostrow (pro hac vice)
Jonathan M. Streisfeld (pro hac vice)
KOPELOWITZ OSTROW
FERGUSION
WEISELBERG GILBERT
One W. Las Olas Blvd.
Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954)525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com

Jeffrey D. Kaliel (pro hac vice)
Sophia G. Gold (pro hac vice)
KALIEL PLLC
1875 Connecticut Ave., NW
10th Floor
Washington, DC 20009
(202) 350-7483
jkaliel@kalielpllc.com
sgold@kalielpllc.com

Hassan A. Zavareei (pro hac vice)
Andrea R. Gold (pro hac vice)
Katherine M. Aizpuru (pro hac vice)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington DC, 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
agold@tzlegal.com
kaizpuru@tzlegal.com

*Attorneys for Plaintiff and the Settlement
Class*

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................... 1

II.     BACKGROUND ......................................................................................... 2

    A.      Facts Alleged in the Complaint.......................................................... 2

    B.      Procedural Background and Settlement Negotiations ........................ 2

III.    SETTLEMENT TERMS ............................................................................ 4

    A.      Settlement Class ................................................................................ 4

    B.      Settlement Benefits ........................................................................... 4

        1.      Cash Benefits .......................................................................... 4

        2.      Injunctive Relief..................................................................... 6

    C.      Settlement Administrator and Settlement Administration Costs........... 7

    D.      Proposed Notice Program ................................................................. 7

    E.      Release .............................................................................................. 8

    F.      Opt-Outs and Objections................................................................... 9

    G.      Attorneys' Fees, Costs and Service Award....................................... 10

IV.     LEGAL STANDARD FOR PRELIMINARY APPROVAL ......................... 11

V.      ARGUMENT............................................................................................. 13

    A.      The Court should preliminarily approve the Settlement...................... 13

        1.      The Settlement is fair............................................................. 14

        2.      The Settlement is adequate and reasonable. .......................... 18

        3.      The Settlement is an outstanding recovery for the Settlement Class........ 20

    B.      The Court should grant conditional certification of the Settlement Class. ........... 22

        1.      The Settlement Class satisfies the requirements of Rule 23(a)................. 22

            a.      Numerosity is satisfied................................................. 22

            b.      Commonality is satisfied.............................................. 22

            c.      Typicality is satisfied. .................................................. 23

            d.      Adequacy is satisfied. .................................................. 23

        2.      The Settlement Class also satisfies the requirements of Rule 23(b)(3). ... 24

            a.      Common issues of law and fact predominate. .............................. 24

            b.      A class action is a superior method of adjudication. ................... 25

    C.      The Court Should Appoint Plaintiff's Counsel as Class Counsel Under Rule 23(g) ........... 26

        D.      The Court should approve the Notice Program. ..................................................... 27

VI.     CONCLUSION .............................................................................................................. 28

# TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................. 22, 24, 25

*Bicking v. Mitchell Rubenstein & Assocs., P.C.*,
  No. 3:11CV78-HEH, 2011 WL 5325674 (E.D. Va. 2011) ................................. 16, 17

*Brady v. Thurston Motor Lines*,
  726 F.2d 136 (4th Cir. 1984) ....................................................................... 22

*City of Detroit v. Grinnell Corporation*,
  495 F.2d 448 (2d Cir. 1974) ........................................................................ 21

*Deem v. Ames True Temper, Inc.*,
  No. 6:10-cv-01339, 2013 WL 2285972 (S.D.W.Va. May 23, 2013) ..................... 17

*Droste v. Vert Capital Corp.*,
  No. 3:14-cv-467, 2015 WL 1526432 (E.D. Va. April 2, 2015) ........................... 25

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .................................................................................... 27

*Fisher v. Va. Elec. & Power Co.*,
  217 F.R.D. 201 (E.D. Va. 2003) ................................................................... 23

*Flinn v. FMC Corp.*,
  528 F.2d 1169 (4th Cir. 1975) ..................................................................... 20

*Gariety v. Grant Thornton, LLP*,
  368 F.3d 356 (4th Cir. 2004) ....................................................................... 12

*Gunnells v. Healthplan Servs.*,
  348 F.3d 417 (4th Cir. 2003) ................................................................... 12, 24

*Henley v. FMC Corp.*,
  207 F. Supp. 2d 489 (S.D.W.Va. 2002) ......................................................... 20

*Herrera v. Charlotte School of Law, LLC*,
  818 Fed. App'x 165, 2020 WL 3118494 (4th Cir. 2020) ................................... 12

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  855 F. Supp. 825 (E.D.N.C. 1994) ............................................................... 20

*In re Am. Capital S'holder Derivative Litig.*,
  No. 11-2424-PJM, 2013 WL 3322294 (D. Md. June 28, 2013) ........................... 18

*In re Genworth Fin. Sec. Litig.*,
  210 F. Supp. 3d 837 (E.D. Va. 2016) ........................................................ 11, 20

*In re Jiffy Lube Sec. Litig.*,
  927 F.2d 155 (4th Cir. 1991) ................................................................. passim

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*,
  952 F.3d 471 (4th Cir. 2020) .................................................................. 12

*In re MicroStrategy, Inc. Sec. Litig.*,
  148 F. Supp. 2d 654 (E.D. Va. 2001) ...................................................... 20

*In re NeuStar, Inc. Sec. Litig.*,
  No. 1:14CV885 JCC/TRJ, 2015 WL 5674798 (E.D. Va. Sept. 23, 2015) ...................... passim

*In re The Mills Corp. Sec. Litig.*,
  265 F.R.D. 246 (E.D. Va. 2009) ........................................................ 18, 22

*In re Titanium Dioxide Antitrust Litig.*,
  No. RDB-10-0318, 2013 WL 5182093 (D. Md. Sept. 12, 2013) ............................... 17

*Jeffreys v. Comm'ns Workers of Am., AFL-CIO*,
  212 F.R.D. 320 (E.D. Va. 2003) ........................................................ 24, 25

*Lienhart v. Dryvit Sys., Inc.*,
  255 F.3d 138 (4th Cir. 2001) ............................................................. 23

*McGlothlin v. Connors*,
  142 F.R.D. 626 (W.D. Va. 1992) .......................................................... 23

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ..................................................................... 27

*Sanchez v. Lasership, Inc.*,
  No. 1:12-cv-246 (GBL-TRJ), 2014 WL 12780145 (E.D. Va. Aug. 8, 2014) ..................... 17

*Solomon v. Am. Web Loan, Inc.*,
  No. 4:17cv145, 2020 WL 3490606 (E.D. Va. June 26, 2020) ............................. passim

*Talbott v. GC Servs. Ltd. P'Ship*,
  191 F.R.D. 99 (W.D. Va. 2000) ........................................................... 25

*Temporary Servs., Inc. v. Am. Int'l Grp., Inc.*,
  No. 3:08-cv-00271-JFA, 2012 WL 1300138 (D.S.C. July 31, 2012) .......................... 15

*Thomas v. FTS USA, LLC*,
  No. 3:13cv825 (REP), 2017 WL 1148283 (E.D. Va. Jan. 9, 2017),
  *report and recommendation approved in* 2017 WL 1147460 (E.D. Va. Mar. 27, 2017) ........ 17

**Other Authorities**

Fed. R. Civ. P. 23(e), Committee Notes ...................................................... 12

**Rules**

Fed. R. Civ. P. 23(a) ...................................................................... 12

Fed. R. Civ. P. 23(a)(2) ................................................................... 23

Fed. R. Civ. P. 23(a)(4) ................................................................................. 23

Fed. R. Civ. P. 23(b)(3) ..................................................................... 13, 24, 25

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................. 27

Fed. R. Civ. P. 23(e) ....................................................................................... 11

Fed. R. Civ. P. 23(e)(1) .......................................................................... 22, 27

Fed. R. Civ. P. 23(e)(2)(A) ............................................................................. 17

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................. 16

Fed. R. Civ. P. 23(e)(2)(C)-(D) ...................................................................... 20

Fed. R. Civ. P. 23(e)(2)(C)(i) .................................................................. 14, 19

Fed. R. Civ. P. 23(e)(2)(c)(iii) ........................................................................ 16

Fed. R. Civ. P. 23(g)(1)(A) ............................................................................. 26

Fed. R. Civ. P. 23(g)(1)(B) ............................................................................. 26

**Treatises**

Newberg on Class Actions § 15:73 (5th ed.) ................................................ 17

## I.   INTRODUCTION

Plaintiff Ruby Lambert, on behalf of herself and a proposed class of current and former members of Defendant Navy Federal Credit Union, respectfully submits this memorandum in support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. The Settlement[1]—which was the result of hard-fought, arms' length negotiations between experienced counsel and facilitated by United States Magistrate Judge John F. Anderson—provides substantial monetary and non-monetary relief for the benefit of the Settlement Class. The Settlement includes Navy Federal's agreement to pay $16,000,000.00 into a common fund and to separately pay all Settlement Administration Costs. Further, Navy Federal has agreed to modify its account agreement to further inform its members, resulting in significant potential prospective financial savings. One of the hallmark components of the Settlement is that Settlement Class Members will not have to file claim forms to receive the Settlement's benefits. Consequently, the Settlement is an excellent recovery, particularly in light of the Court's Order granting Navy Federal's Motion to Dismiss with prejudice. As explained below, the Settlement terms are well within the range of reasonableness and are consistent with applicable law. The Settlement satisfies all Fourth Circuit criteria for Preliminary Approval.

Accordingly, Plaintiff respectfully requests that this Court enter an order that will: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3); (3) appoint Plaintiff Lambert as Class Representative; (4) approve the Notice Program set forth in the Agreement and approve the form and content of the Notices; (5) approve and order the opt-out and

---

[1] The capitalized terms in this Memorandum have the same meaning as the capitalized terms in the Settlement Agreement ("SA"), attached as ***Exhibit A***.

objection procedures set forth in the Agreement; (6) stay all deadlines in the Action against Navy Federal pending Final Approval of the Settlement; (7) appoint as Class Counsel the law firms and attorneys identified herein; and (8) schedule a Final Approval Hearing.

## II.     BACKGROUND

### A.     Facts Alleged in the Complaint

On January 28, 2019, Plaintiff filed her Complaint against Navy Federal alleging that it assesses multiple $29 insufficient funds fees ("NSF Fees") on the same returned debit item or check when it is re-presented for payment and the account lacks sufficient funds. After Navy Federal returns the debit item or check for insufficient funds, the merchant may re-present that same debit item or check for payment up to three times. If Navy Federal returns the re-submitted debit item or check for insufficient funds, Navy Federal contends it is allowed to charge a new NSF Fee each time. Plaintiff alleges that under the terms of her contract with Navy Federal, Navy Federal was permitted to charge only one NSF Fee per debit item or check, regardless of how many times the merchant re-presents the debit item or check for payment. The Complaint alleged claims for breach of contract and breach of the covenant of good faith and fair dealing and violation of the North Carolina Unfair and Deceptive Trade Practices Act. The Complaint also alleged, *inter alia*, entitlement to monetary damages, interest, attorneys' fees, and costs.

Navy Federal denies that its NSF Fee assessment practices breach its agreement with its members or violate the law.

### B.     Procedural Background and Settlement Negotiations

Plaintiff filed her Complaint on January 28, 2019. Dkt. 1. Navy Federal filed a motion to dismiss on April 1, 2019, which Plaintiff opposed. *See* Dkts. 19-21, 28, 34. The Court held a hearing on May 24, 2019. Dkt. 35. On August 14, 2019, the Court issued an order granting the

motion to dismiss with prejudice. Dkt. 37. Plaintiff timely noticed her appeal. Dkt. 38. The appeal is fully briefed, but the Fourth Circuit has stayed appellate proceedings pending approval of the Settlement. Dkt. 44.

Pursuant to Fourth Circuit Local Rule 33, a mediation was scheduled for October 16, 2019. App. Dkt. 10. The Parties conferred with the Fourth Circuit mediator, but that mediation did not result in settlement. Joint Declaration of Class Counsel Jeffrey Kaliel, Andrea Gold, and Jeff Ostrow, attached as *Exhibit B* ("Joint Decl.") at ¶ 12.

After completing briefing in the appeal, the Parties' counsel again met and conferred about settlement. The Parties agreed to a mediation on July 1, 2020, before Judge Anderson, a United States Magistrate Judge of this Court. *Id.* ¶ 13. Before mediation, the Parties exchanged mediation briefs and provided confidential mediation statements to Judge Anderson. *Id.* ¶ 14. Also, Navy Federal provided proposed Class Counsel with sample account-level transactional data for the proposed Settlement Class, from which Plaintiff's expert extrapolated estimated class-wide damages for the proposed Class Period. *Id.* ¶ 10-11.

On July 1, 2020, the Parties met for a full-day settlement conference before Judge Anderson. *Id.* ¶ 15. Class Counsel entered the mediation fully informed of the merits of Settlement Class members' claims and negotiated the proposed Settlement while zealously advancing the position of Plaintiff and Settlement Class members and being fully prepared to continue to litigate rather than accept a settlement that was not in Plaintiff's and the Settlement Class's best interests. *Id.* at ¶¶ 10-15. U.S. Magistrate Judge Anderson actively supervised and participated in the settlement discussions. The Parties made some progress but were unable to reach a settlement that day. *Id.* ¶ 16. However, the Parties continued to negotiate with the assistance of Judge Anderson. *Id.* ¶ 17. On July 10, 2020, the Parties agreed on the material terms of the Settlement, which were

memorialized in a term sheet executed July 24, 2020. *Id.* ¶ 18. The Parties did not discuss attorneys' fees or any Service Award until after agreeing on the material terms of the Settlement. *Id.* ¶ 19.

## III.    SETTLEMENT TERMS

### A.    Settlement Class

The Settlement will resolve the claims of the Settlement Class, defined as:

> All current and former Navy Federal members in the United States who were charged Representation NSF Fees during the Class Period. Excluded from the Settlement Class is Navy Federal, its parents, subsidiaries, affiliates, officers and directors, all Settlement Class members who make a timely election to be excluded, and all judges assigned to this litigation and their immediate family members.

*See* Agreement ("SA") § 44.

The Class Period is defined as the period of January 28, 2014, through the date of Preliminary Approval. *Id.* § 16. "Representation NSF Fees" means the second or third NSF Fee charged to an Account Holder when a Settlement Class member's merchant has re-presented a debit item or check to Navy Federal for payment (after an initial return by Navy Federal for insufficient funds), and where the debit item or check is again returned by Navy Federal due to insufficient funds, resulting in an additional NSF Fee or NSF Fees. *Id.* § 26.

### B.    Settlement Benefits

The Settlement provides meaningful immediate relief to Settlement Class Members in the form of direct cash payments and future injunctive relief.

#### 1.    Cash Benefits

Navy Federal has agreed to establish a $16,000,000.00 cash Settlement Fund for the benefit of the Settlement Class and to separately pay all Settlement Administration Costs—a substantial expense. *Id.* §§ 51, 66. The Settlement Fund will be used to pay Settlement Class Member

Payments, any attorneys' fees and costs that the Court may award to Class Counsel, and any Service Award. *Id.* § 51.

Settlement Class Members do not need to submit a claim form in order to receive a Settlement Class Member Payment. The Settlement Fund will be distributed to Settlement Class Members according to the distribution plan set out in the Agreement. *Id.* §§ 74-83. The precise calculation and implementation of allocations of the Settlement Fund will be done by Class Counsel and Plaintiff's expert using data provided by Navy Federal. *Id.* § 74. Accounts held by Settlement Class Members will be identified for which Navy Federal assessed Representation NSF Fees during the Class Period. *Id.* § 75(a). The Representation NSF Fees will be totaled for each Account, resulting in each Settlement Class Member's Relevant NSF Fees. *Id.* § 75(b). The Net Settlement Fund will then be allocated *pro rata* to the Settlement Class Members based on the number of incurred Relevant NSF Fees. *Id.* §§ 75(c), 76-77. The only exception is that if any Settlement Class Member's *pro rata* share is less than $5.00, that Settlement Class Member's Payment amount shall be adjusted upward to $5.00. *Id.* § 78.

Settlement Class Member Payments to Current Account Holders will be made first by crediting their accounts or, if not feasible or reasonable to make a payment by a credit, by check. *Id.* § 80. Navy Federal will bear any costs associated with implementing the account credits and notifying Settlement Class Members who are Current Account Holders of any credit on the account statement. *Id.* Former Account Holders will receive their Settlement Class Member Payments by check. *Id.* § 81. If any amounts remain in the Net Settlement Fund due to uncashed or returned checks, the Settlement Administrator will hold that amount for one year and make a reasonable effort to locate the recipient of the funds (such as by running the address of the returned check through the Lexis/Nexis database). *Id.* § 82. The Settlement Administrator shall make one

5

additional attempt to identify updated addresses and re-mail or re-issue a distribution check to an updated address. *Id.*

Within one year after the date the Settlement Administrator mails the first Settlement Class Member Payment, remaining amounts resulting from uncashed checks ("Residual Funds") will be distributed as follows. First, any Residual Funds will be distributed on a *pro rata* basis to Settlement Class Members who received their payments, to the extent feasible and practicable. *Id.* § 83(a). If preparing, transmitting, and administering such subsequent payments would not be feasible and practical, the Residual Funds will be distributed to a *cy pres* recipient(s) that works to promote financial literacy, including for members of the military or veterans, whom Class Counsel and Navy Federal shall jointly propose. *Id.* § 83(b). The costs of any second distribution will come from the Residual Funds. *Id.* § 83(c). There will be no reversion to Navy Federal.

### 2.    Injunctive Relief

In addition to direct cash payments, Settlement Class Members will receive significant benefits in the form of injunctive relief. Specifically, Navy Federal has agreed to revise its account agreement and related documents to further explain when Representment NSF Fees may be assessed. Navy Federal agrees to adopt the following, or substantially similar, language:

> Navy Federal may return debits (e.g., ACH payments) submitted for payment against the checking account if the amount of the debit exceeds the funds available in the checking account. Each time we return a debit for insufficient funds, we will assess an NSF fee in the amount shown on Navy Federal's current Schedule of Fees and Charges for each returned debit item. The entity that submitted the debit may submit another debit to Navy Federal even if we have already returned the prior debit for insufficient funds in the checking account. If the resubmitted debit again exceeds the funds available in the checking account, Navy Federal again will return the debit, resulting in an additional NSF fee. Thus, you may be charged multiple NSF fees in connection with a single debit that has been returned for insufficient funds multiple times.

SA § 52. Plaintiff and her counsel expect that this revised disclosure will result in significant financial savings and will inure to the benefit of the Settlement Class, other Navy Federal

members, and future Navy Federal members who will be better able to understand when fees will be assessed to their accounts. Joint Decl. ¶ 29-30.

### C.    Settlement Administrator and Settlement Administration Costs

The proposed Settlement Administrator is JND Legal Administration, a nationally recognized and experienced class action administrator. Joint Decl. ¶ 44. Navy Federal has agreed to separately pay the costs of the Notice Program and administration, providing an additional benefit to the Settlement Class apart from the Settlement Fund. SA § 66.

### D.    Proposed Notice Program

The Parties' proposed Notice Program is designed to reach as many Settlement Class members as possible and is the best notice practicable under the circumstances. Joint Decl. ¶ 44. Navy Federal will provide to Class Counsel and its expert data for the entirety of the Class Period sufficient for Plaintiff's expert to determine Settlement Class membership and ultimately each Settlement Class Member Payment. SA § 55. Because Plaintiff's expert will not have access to Settlement Class member names or complete account numbers, Plaintiff's expert will provide results to Navy Federal, who will then create a list of Settlement Class members and their electronic mail or postal addresses and provide that list to the Settlement Administrator to provide Notice to the Settlement Class of the terms of the Settlement. *Id.* Navy Federal will bear the expense of extracting the necessary data to make available to Class Counsel's expert for analysis, while Class Counsel shall be responsible for paying Class Counsel's expert, who will analyze the data provided to determine Settlement Class membership as well as the amount of each Settlement Class Member's damages. *Id.* Thus, within 30 days after the Court enters the Preliminary Approval Order, the Settlement Administrator shall implement the Notice Program. *Id.* § 58. Notice shall be provided through the following means: (1) Email Notice to Account Holders for whom Navy

Federal maintains email addresses; (2) Postcard Notice to Account Holders for whom Navy Federal does not have a valid email address; and (3) Long Form Notice, which will be available on the Settlement Website and which the Settlement Administrator will mail to Settlement Class members who request it. *Id.* § 62. The Email Notice, Postcard Notice and Long Form Notice shall be substantially in the forms attached as ***Exhibits C, D*** and ***E***, hereto.

In addition, the Settlement Administrator will create and maintain a Settlement Website containing important information about the Settlement and case-related documents. *Id.* § 49. The Settlement Administrator will also establish a toll-free telephone line for Settlement Class members to call with Settlement-related inquiries and answer frequently asked questions of Settlement Class members who call with or otherwise communicate such inquiries.

All of the Notices will include, among other information, a description of the Settlement's material terms; a date by which Settlement Class members may exclude themselves from, or "opt-out" of, the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the scheduled Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access the Settlement Agreement and other related documents and information. *Id.* § 58.

The Settlement Administrator will perform reasonable address traces for the initial Postcard Notice and Email Notice. *Id.* § 64. The Settlement Administrator will re-mail Postcard Notices to Settlement Class members whose new addresses were identified by no later than 60 days before the Final Approval Hearing. *Id.* The Settlement Administrator will also send the Postcard Notice to all Settlement Class members whose emails were returned as undeliverable. *Id.*

**E.    Release**

The Settlement Class Member Release is narrowly tailored. As of the Effective Date of the

Settlement, Plaintiff and each Settlement Class Member will be deemed to have fully and irrevocably released and forever discharged Navy Federal and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors and assigns, and the present and former directors, officers, employees, agents, insurers, members, attorneys, advisors, consultants, representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, successors and assigns of each of them ("Released Parties"), of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, that result from, arise out of, are based upon, or relate to the conduct, omissions, duties or matters during the Class Period that were or could have been alleged in the Action ("Released Claims") relating to the assessment of Representation NSF Fees. SA § 84. Each Settlement Class Member is enjoined from bringing Released Claims against Navy Federal. *Id.* § 85. The Release includes both known and unknown claims, and Plaintiff and the Settlement Class Members also waive any rights they may have under Section 1542 of the California Code. *Id.* §§ 86-87.

**F.    Opt-Outs and Objections**

The Notices will all inform Settlement Class members of their right to opt-out and deadline to do so. SA § 59. Settlement Class members may opt-out of the Settlement Class at any time during the Opt-Out Period. *Id.* The Opt-Out Period will begin the day after the earliest date on which the Notice is first mailed and end no later than 30 days before the Final Approval Hearing.

The Notices will also inform Settlement Class members of their right to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs and/or Service Award.

*Id.* § 60. Objections must be mailed to the Clerk of the Court, Class Counsel, Navy Federal's counsel, and the Settlement Administrator. *Id.* Objections must be submitted no later than the last day of the Opt-Out Period. *Id.* Objections must include: (a) the name of the Action; (b) the objector's full name, address, and telephone number; (c) an explanation of the basis upon which the objector claims to be a Settlement Class member; (d) all grounds for the objection, accompanied by legal support for the objection known to the objector or the objector's counsel; (e) the number of times in which the objector has objected to a class action settlement within the preceding five years, along with copies of any orders related to or ruling upon those prior objections; (f) the identity of all counsel representing the objector, including current or former counsel who may be entitled to compensation for any reason related to the objection; (g) copies of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years; (h) any and all agreements relating to the objection or the process of objecting (whether written or oral) between the objector and the objector's counsel; (i) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (j) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; (k) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (l) the objector's signature (an attorney's signature is not sufficient). *Id.* § 61.

### G. Attorneys' Fees, Costs and Service Award

Class Counsel have not been paid for their extensive efforts or reimbursed for litigation costs and expenses incurred. Joint Decl. ¶ 31. The Settlement Agreement provides that Class Counsel will apply for an award of attorneys' fees, costs, and expenses. *See* SA § 89. Navy Federal

has agreed not to oppose a request for fees up to 33.33% of the Settlement Fund (up to $5,332,800.00) and a request for reimbursement of reasonable litigation costs. *Id.* Such award will serve to compensate for the time, risk and expense Plaintiff's counsel incurred pursuing claims on behalf of the Settlement Class. However, if the Court does not approve an award of fees or costs, in whole or in part, that will not prevent the Settlement from becoming effective nor shall it be grounds for termination. *Id.*

Class Counsel will also ask the Court to approve a Service Award of $5,000.00 for the Plaintiff in recognition of her service as Class Representative. *Id.* § 93. Navy Federal does not oppose the request. *Id.* However, if the Court does not approve the Service Award, that will not prevent the Settlement from becoming effective nor shall it be grounds for termination. *Id.*

## IV.    LEGAL STANDARD FOR PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23 requires court approval of class action settlements. Fed. R. Civ. P. 23(e). "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). Accordingly, the Court may approve a settlement only upon a finding that the settlement is fair and adequate. *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 839 (E.D. Va. 2016). The relevant factors in determining "fairness" are "that the settlement was reached as a result of good-faith bargaining at arm's length, without collusion, on the basis of (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *In re Jiffy Lube*, 927 F.2d at 159; *see also Solomon v. Am. Web Loan, Inc.*, No. 4:17cv145, 2020 WL 3490606, at *4 (E.D. Va. June 26, 2020). Adequacy is assessed through "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of

any difficulties of proof or strong defenses the plaintiffs are likely to encounter of the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *In re Jiffy Lube*, 927 F.2d at 159.[2]

Where, as here, a class settlement is reached before the Court certified a class, the plaintiff may also seek certification of a settlement-only class. *Solomon*, 2020 WL 3490606, at *1 (citing *In re NeuStar, Inc. Sec. Litig.*, No. 1:14CV885 JCC/TRJ, 2015 WL 5674798, at *2 (E.D. Va. Sept. 23, 2015)). The certification of a settlement-only class requires a showing that the Rule 23 factors are satisfied. *See Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 367 (4th Cir. 2004). Thus, the plaintiff must show that the Rule 23(a) factors are met: numerosity, commonality; typicality; and adequacy of representation. *See* Fed. R. Civ. P. 23(a); *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 423 (4th Cir. 2003). And where, as here, the plaintiff seeks preliminary certification of a settlement class under Rule 23(b)(3), the plaintiff must show that the questions of law or fact common to class members predominate over questions affecting only individual class members, and that a class action is superior to other available methods of adjudication. *See* Fed. R. Civ. P.

---

[2] The 2018 amendments to Rule 23 also provide specific guidance to federal courts considering whether to approve a class settlement. *See* Fed. R. Civ. P. 23(e), Committee Notes. The factors that the Rules contemplate a court to consider include whether: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2). The Fourth Circuit has held that the *Jiffy Lube* standards "almost completely overlap with the new Rule 23(e)(2) factors, rendering the analysis the same." *See Herrera v. Charlotte School of Law, LLC*, 818 Fed. App'x 165, 176 n.4, 2020 WL 3118494, at *8 n.4 (4th Cir. 2020) (citing *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 474 n.8 (4th Cir. 2020)).

23(b)(3); *In re Neustar*, 2015 WL 567498, at *3. The Court resolves these issues using the preponderance of the evidence standard. *In re Neustar*, 2015 WL 567498, at *3.

## V. ARGUMENT

### A. The Court should preliminarily approve the Settlement.

A preliminary review of the fairness and adequacy factors demonstrate the Settlement warrants Preliminary Approval under Rule 23(e)(2). The Settlement was negotiated in the absence of collusion and is the result of good-faith, informed, arms'-length negotiation between experienced and sophisticated counsel, in conjunction with a Magistrate Judge of this Court. Joint Decl. ¶¶ 22-23.

Any settlement requires the parties to balance the merits of the claims and defenses asserted and the attendant risks of continued litigation and delay. Plaintiff believes her claims are meritorious and that she will prevail on appeal and eventually at trial. *Id.* ¶ 35. Navy Federal, which obtained dismissal of Plaintiff's claims once and is opposing the appeal, argues that her claims are unfounded, denies liability, and has demonstrated its willingness to litigate vigorously. If the Settlement does not occur, Plaintiff will need to persuade the Fourth Circuit to reverse the Court's order dismissing her claims; conduct discovery; brief and prevail at class certification; likely defeat at least one motion for summary judgment; and prevail at trial. *Id.* ¶¶ 35-38. Any potential recovery could be significantly delayed by appellate proceedings at multiple stages of the case. *Id.* Plaintiff faces significant risk at each stage of the litigation. All that is certain is that if the case continues in litigation, class members will need to wait much longer before receiving any potential recovery at all. Thus, in Class Counsel's experience and informed judgment, the Settlement represents an excellent recovery for the Settlement Class, and the benefits of settling under the proposed terms outweigh the risks and uncertainties of continued litigation. *Id.* ¶¶ 35-41.

### 1. The Settlement is fair.

As noted above, when evaluating the fairness of a settlement, the Court must evaluate the settlement against the following criteria: (1) the posture of the case at the time the settlement was proposed; (2) the extent of discovery conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel. *In re Jiffy Lube*, 927 F.2d at 159.

***Posture of the case.*** The Settlement was reached only after significant work was conducted. *See In re Jiffy Lube*, 927 F.2d at 159; *accord* Fed. R. Civ. P. 23(e)(2)(C)(i). Class Counsel performed significant research on Navy Federal, its NSF Fee assessment practices, and consumer complaints. Additionally, numerous consumers were interviewed and documents collected to gather information about Navy Federal's practices. Class Counsel thoroughly investigated Plaintiff's claims; prepared and filed the Complaint; briefed and argued Navy Federal's Motion to Dismiss; and, after the Court granted the motion, fully briefed an appeal of the Court's Order. Joint Decl. ¶¶ 2, 8-9. Class Counsel has also reviewed data regarding the Representation NSF Fees charged to the Settlement Class and provided informally by Navy Federal. *Id.* ¶ 10. Class Counsel worked closely with a well-qualified data expert who spent hours analyzing the account-level transactional data provided by Navy Federal.

Class Counsel expended significant resources researching and developing the legal claims at issue. *Id.* at ¶¶ 9. Class Counsel is familiar with the claims as they have litigated and resolved cases with similar factual and legal issues. *Id.* Class Counsel has experience in understanding the remedies and damages at issue, as well as what information is critical in determining class membership. *Id.* Class Counsel spent a significant amount of time analyzing information regarding the alleged NSF Fee assessment practice and working with their expert to understand Navy Federal's data and quantify damages suffered by the Settlement Class. *Id.*

The Parties also engaged in extensive, good-faith, arms'-length negotiations via mediation,

including the mediation efforts that eventually led to the Settlement. *Id.* ¶¶ 22-23. Judge Anderson, a well-respected Magistrate Judge of this Court, oversaw the July 2020 mediation and subsequent negotiations. These "adversarial encounters dispel any apprehension of collusion between the parties." *In re Neustar, Inc.*, 2015 WL 5674798, at *10 (finding that where plaintiff "filed an amended complaint, argued at the motion to dismiss stage, noticed an appeal, and engaged Defendants in settlement mediation," the posture of the case supported preliminary approval). This action has been appropriately litigated by the Parties, and both sides have obtained sufficient information to assess the relative strength of their respective claims and defenses.

     *Extent of discovery.* Second, and relatedly, while the Parties have not engaged in formal discovery (because the Complaint was initially dismissed and the Fourth Circuit has not yet resolved Plaintiff's appeal), prior to finalizing the Settlement, Navy Federal provided substantial data regarding the Representation NSF Fees at the heart of the case. Working with Class Counsel, Class Counsel's expert analyzed this data in order to approximate class-wide damages. Courts in this Circuit have recognized that informal damages discovery satisfies the fairness factor, particularly where experts are involved. *In re Jiffy Lube*, 927 F.2d at 159 (recognizing that informal discovery can provide satisfactory information prior to preliminary approval); *In re Neustar, Inc.*, 2015 WL 5674798, at *10 (finding second factor satisfied where counsel reviewed publicly available information, conducted economic analysis, and received damages analysis from an expert); *Temporary Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA, 2012 WL 1300138, at *10 (D.S.C. July 31, 2012) ("District Courts within the Fourth Circuit have found that even when cases settle early in the litigation after only informal discovery has been conducted, the settlement may nonetheless be deemed fair."). This is especially true here given that merits discovery likely would have shed very little light on Plaintiff's claims. In this breach of contract

action, Plaintiff likely would have argued that extrinsic evidence is irrelevant and instead the ambiguous contract ought to have been construed against the drafter. Because the critical question in this case is a legal one, *i.e.,* whether Navy Federal's contract was ambiguous, merits discovery likely would not have moved the needle. The contract was materially the same for all Settlement Class members. Thus, the Parties' informal damages discovery and Class Counsel's subsequent expert analysis satisfies the second factor.

     ***Circumstances surrounding negotiations.*** The circumstances surrounding the Parties' negotiations demonstrate that the Settlement was reached through arms'-length negotiations. *See In re Jiffy Lube*, 927 F.2d at 159; *accord* Fed. R. Civ. P. 23(e)(2)(B). The Parties participated in multiple settlement conferences, including a full-day in-person conference before Magistrate Judge Anderson, and, following the July 2020 mediation, continued to negotiate with Judge Anderson as facilitator. These arms'-length negotiations led to a fair Settlement. *See, e.g.*, *Bicking v. Mitchell Rubenstein & Assocs., P.C.*, No. 3:11CV78-HEH, 2011 WL 5325674, at *5 (E.D. Va. 2011) (finding settlement fair where it was reached "under the supervision and direction" of a Magistrate Judge).

     The terms of the proposed award of attorneys' fees and Service Award are also fair and demonstrate that the Settlement is the product of arms'-length negotiations. *See* Fed. R. Civ. P. 23(e)(2)(c)(iii). The Parties did not discuss attorneys' fees or a Service Award until after agreeing upon the Settlement's material terms. The amounts sought for attorneys' fees, costs, and expenses and a Service Award for Plaintiff are also reasonable and fair. The Settlement Agreement authorizes Class Counsel to seek an award of up to 33.33% of the Settlement Fund (up to $5,332,800.00) and a request for reimbursement of reasonable costs, an amount that is well within the range of approval. The Agreement also authorizes Plaintiff to seek a Service Award of

$5,000.00. These amounts are well within the range of approval for class action settlements. *See, e.g.*, *Bicking*, 2011 WL 5325674, at *2, *5 & n.6 (preliminarily approving class settlement providing for service award of $5,000); *Thomas v. FTS USA, LLC*, No. 3:13cv825 (REP), 2017 WL 1148283, at *5 (E.D. Va. Jan. 9, 2017), *report and recommendation approved in* 2017 WL 1147460 (E.D. Va. Mar. 27, 2017) (awarding fees of 33.33% and noting that "any discussion of percentage awards should acknowledge the age-old assumption that a lawyer receives a third of his client's recovery under most contingency agreements. Newberg on Class Actions § 15:73 (5th ed.). Consequently, a fee award of one-third of the settlement fund would be consistent with that awarded in other cases"); *Sanchez v. Lasership, Inc.*, No. 1:12-cv-246 (GBL-TRJ), 2014 WL 12780145, at *1 (E.D. Va. Aug. 8, 2014) (approving fee award "representing one-third of the common settlement fund"); *Deem v. Ames True Temper, Inc.*, No. 6:10-cv-01339, 2013 WL 2285972, at *5 (S.D.W.Va. May 23, 2013) (recognizing the "presumptive reasonableness" of a fee award of one-third of the common fund); *In re Titanium Dioxide Antitrust Litig.*, No. RDB-10-0318, 2013 WL 5182093, at *5 n.9 (D. Md. Sept. 12, 2013) ("[A] one-third contingent fee arrangement is a standard practice in this country, and Class Counsel's intention to request that portion of the settlement fund as attorneys' fees does not shock the Court.").

*Experience of counsel.* Class Counsel is highly experienced in consumer class action litigation, as demonstrated by their firm resumes, and have brought that significant experience to bear in litigating and settling this case. *See* Joint Decl. ¶¶ 42-43, Exs. 1-3. *See also* Fed. R. Civ. P. 23(e)(2)(A). Class Counsel collectively have decades of experience litigating consumer class actions against financial institutions and have litigated and settled dozens of class actions involving overdraft fees, non-sufficient fund fees, and other bank fees. Joint Decl. ¶¶ 6-7, 42. Counsel "may be evaluated by their affiliation with well-regarded law firms with strong experience in the relative

field," and by any measure, Class Counsel satisfies this prong. *See In re Neustar, Inc.*, 2015 WL 5674798, at *11 (quoting *In re Am. Capital S'holder Derivative Litig.*, No. 11-2424-PJM, 2013 WL 3322294, at *4 (D. Md. June 28, 2013)). Based on their experience, Class Counsel endorse the Settlement as fair and adequate. Joint Decl. ¶ 26. Courts afford substantial consideration to the view of Class Counsel in considering whether a class settlement is fair. *See In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 255 (E.D. Va. 2009) (stating that it is "entirely warranted" for the court to "pay heed to" the judgment of experienced class counsel).

### 2.   The Settlement is adequate and reasonable.

In assessing the adequacy of the Settlement, the Court looks to (1) the relative strength of the merits of the plaintiff's claims; (2) the existence of any difficulties of proof or strong defenses the plaintiff will encounter at trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant and likelihood of recovery; and (5) the degree of opposition to the Settlement. *In re Jiffy Lube*, 927 F.2d at 159. Each of the relevant factors is satisfied.[3]

***Relative strength of the claims / Difficulties of proof.*** The first and second factors, which are generally considered together, evaluate "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult one." *In re The Mills*, 265 F.R.D. at 256. Plaintiff is confident in her claims, but Navy Federal has raised numerous defenses—and the Court granted its Motion to Dismiss with prejudice. Plaintiff and the Settlement Class are "not likely to recover if this case does not settle." *In re Neustar, Inc.*, 2015 WL 5674798, at *11 (preliminarily approving settlement where the court had dismissed the case, "indicating the weakness of Lead Plaintiff's claims and the obstacles of proof it faces moving

---

[3] The fifth factor cannot be evaluated until after the Court authorizes Notice to be disseminated to the Settlement Class.

forward"). Even if the Fourth Circuit were to rule in Plaintiff's favor, Navy Federal will continue to dispute the factual and legal bases for the suit. The existence of these numerous disputed factual and legal issues creates uncertainty and risk for all parties, warranting approval. *Solomon*, 2020 WL 3490606, at *5 (finding that the first and second factors were satisfied where "it is possible that the Fourth Circuit could render a decision adverse to the Plaintiffs").

     ***Duration and expense of continued litigation.*** The likely duration and expense of continued litigation are substantial. Joint Decl. ¶¶ 34, 38. While the appeal of the Court's Order has been fully briefed, the Fourth Circuit has not yet heard argument or ruled. If the Court rules in Plaintiff's favor, this case will still be in its early stages when this Court receives the mandate. The Parties will need to conduct discovery, including written discovery, document review, and depositions. Plaintiff will need to brief class certification, which Navy Federal would oppose, Navy Federal may file at least one motion for summary judgment, and parties expect to rely on significant expert testimony. And of course, the expense and burden of trial will be substantial. This case will potentially continue for several more years should it not settle now, at continued expense to the class—without any guarantee of additional benefit. Thus, "a settlement avoids returning the case to this Court for class and merits discovery, class certification, summary judgment, trial, and further appeals," a factor that weighs in favor of approval. *Solomon*, 2020 WL 3490606, at *5; *see also In re Neustar, Inc.*, 2015 WL 5674798, at *12 (granting preliminary approval where "if plaintiffs succeed on appeal, the case must proceed to the costly procedures of class certification, discovery, summary judgment, and trial before any putative class members may recover"). *Accord* Fed. R. Civ. P. 23(e)(2)(C)(i). This factor, thus, favors approval.

     ***Solvency of the Defendant.*** There is no indication that Navy Federal will be unable to satisfy a judgment, but the fourth factor is "largely considered beside the point given the other

factors weighing in favor of preliminary approval." *Solomon*, 2020 WL 3490606, at *5 (quoting

*Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 494 (S.D.W.Va. 2002)). Continued litigation would

be expensive and consume significant resources of the parties and the Court. Thus, on balance, the

risks, delays, and costs associated with further litigation weigh in favor of Preliminary Approval.

### 3. The Settlement is an outstanding recovery for the Settlement Class.

The Settlement provides an excellent result for the Settlement Class and treats the Class

Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(C)-(D). Despite the Court's

order granting Navy Federal's Motion to Dismiss, Class Counsel successfully negotiated (1) a

$16,000,000.00 common fund that will provide cash payments directly to Settlement Class

Members, without any claims process, (2) changes to Navy Federal's account agreement, and (3)

the costs of Settlement Administration to be borne separately. The common fund and Settlement

Administration Costs represent approximately 10.8% of most likely damages for Settlement Class

Members. In light of the fact that this Court had previously dismissed Plaintiff's case—a result

which, if upheld on appeal, would mean Settlement Class Members would get nothing, this is an

outstanding result.

Indeed, courts in this Circuit routinely grants final approval to settlements providing

between 5-15% of maximum potential damages. *See In re MicroStrategy, Inc. Sec. Litig.,* 148 F.

Supp. 2d 654, 660 (E.D. Va. 2001) (order approving settlement amounting to approximately 13.9%

of the maximum recovery at the time of judicial approval in securities fraud class action); *In re*

*Genworth Fin. Sec. Litig.,* 210 F. Supp. 3d at 842 n.3 (order approving settlement amounting to

approximately 15% of the possible recovery in securities fraud class action); *Horton v. Merrill*

*Lynch, Pierce, Fenner & Smith, Inc.,* 855 F. Supp. 825, 833 (E.D.N.C. 1994) (order approving

settlement amounting to 5% of plaintiffs' estimated loss in securities class action); *see also Flinn*

*v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir. 1975) ("And because the cash settlement 'may only

amount to a fraction of the potential recovery' will not per se render the settlement inadequate or unfair." (citing *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 455 n. 2 (2d Cir. 1974) ("In fact, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.")). Where, as here, Plaintiff faced significant litigation risk enlarged by the Court's dismissal of the Complaint, the Settlement will provide meaningful tangible benefits to Settlement Class Members.

The allocation of the Settlement is also fair and reasonable, and the manner of administering relief will be effective. Settlement Class Members will receive payments directly either via direct deposit or a check, in a *pro rata* amount that is adjusted to reflect the number of Representment NSF Fees paid. No Settlement Class Member will receive a payment of less than $5.00. The amount that each Settlement Class Member receives is based on objective criteria that apply to each Settlement Class Member equally. No Settlement Class Member will be treated more favorably than any other.

Similarly, the injunctive relief will equally apply to all Settlement Class Members (and all current and former Navy Federal members). The injunctive relief is a significant benefit and will allow Navy Federal members and future members to better understand Representment NSF Fees. This change will result in additional savings for Navy Federal members. Even if Plaintiff prevailed at trial, as a private litigant Plaintiff would have been unable to demand that Navy Federal stop charging Representment NSF Fees. By agreeing to provide additional disclosures, Navy Federal has agreed to the only injunctive relief Plaintiff would have been able to obtain had she prevailed at trial.

In addition, as another important Settlement benefit, Navy Federal agrees to bear the cost of notice and administration separate and apart from the $16 million common fund. This, too, is

valuable, saving the class likely hundreds of thousands of dollars in notice costs.

In sum, the Settlement benefits are excellent, especially considering the procedural posture of this case and the hurdles the class faced.

### B. The Court should grant conditional certification of the Settlement Class.

Certification for settlement purposes "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re The Mills*, 265 F.R.D. at 266. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Here, the proposed Settlement Class satisfies all Rule 23(a) and Rule 23(b)(3) requirements. For purposes of this Settlement only, Navy Federal does not oppose class certification. The Court should conclude that it is likely to certify the Settlement Class and approve the Settlement as fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(1). Accordingly, Plaintiff requests that the Court conditionally certify the Settlement Class.

#### 1. The Settlement Class satisfies the requirements of Rule 23(a).

##### a. Numerosity is satisfied.

Rule 23(a)(1) requires the class to be so numerous that joinder of all parties is impracticable. Here, based on the data provided by Navy Federal to Class Counsel, there are approximately 700,000 Settlement Class members. *See* Joint Decl. ¶ 47. While "no specified number is needed to maintain a class action," the size of the Settlement Class here unquestionably satisfies numerosity. *See, e.g.*, *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984).

##### b. Commonality is satisfied.

The "commonality" factor of Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). All that is needed is one common issue. *See*

*McGlothlin v. Connors*, 142 F.R.D. 626 (W.D. Va. 1992). Here, Plaintiff alleges that Navy Federal's uniform policy of assessing Representation NSF Fees affected all Settlement Class members. Common issues of fact and law therefore include the nature of the policy and whether the policy violates Navy Federal's account agreement. Resolution of those issues as to Plaintiff will resolve them for the Settlement Class as well and would rely on largely the same evidence as would be necessary to prove any other Settlement Class Member's claims. *See Solomon*, 2020 WL 3490606 (finding commonality and predominance satisfied based on "a uniform scheme . . . which would rely on broadly applicable evidence").

### c.     Typicality is satisfied.

To satisfy the typicality analysis, the proposed class representative must show that he or she is "part of the class and possess[es] the same interest and suffer[ed] the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). Typicality is satisfied if the proposed class representative's claims "fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003). Here, Plaintiff's claims arise from Navy Federal's assessment of the same type of Representation NSF Fees that Navy Federal allegedly collected from other Settlement Class members. Her interests and those of the Settlement Class are aligned because the Settlement will benefit her in the same way it benefits the rest of the Settlement Class.

### d.     Adequacy is satisfied.

The final prong of Rule 23(a) requires the Court to find that the class representative and Class Counsel will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Here, Plaintiff does not have any known conflicts with the Class, or any "interests antagonistic to the class." *Solomon*, 2020 WL 3490606, at *2. She understands and has accepted the obligations of being a class representative, and has adequately represented the Settlement Class

by reviewing the Complaint, providing documents to Class Counsel, making herself available to discuss the facts of the litigation with Class Counsel, pursuing the appeal, and reviewing the Agreement. Joint Decl. ¶ 33.

Class Counsel has also satisfied the adequacy requirement. Class Counsel has effectively handled numerous consumer protection and complex class actions, including in the area of financial services, credit unions and banks, bank fees, and overdraft and non-sufficient funds fees specifically. *See* Joint Decl. ¶¶ 42-43, Exs. 1-3. Moreover, Class Counsel was able to secure a significant recovery for the Settlement Class, along with important injunctive relief and the costs of Settlement Administration, despite the Court's order dismissing the case—a testament to both their skill and reputation in the legal field. Class Counsel is qualified, experienced, and able to conduct this litigation to fully and adequately represent the Settlement Class.

### 2. The Settlement Class also satisfies the requirements of Rule 23(b)(3).

#### a. Common issues of law and fact predominate.

The first requirement under Rule 23(b)(3) is that questions of law or fact common to class members predominate over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). This inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc.*, 521 U.S. at 623 (1997); *see also Gunnells*, 348 F.3d at 428.

Here, Plaintiff and the Settlement Class seek to remedy common legal grievances based on Navy Federal's assessment of Representment NSF Fees. The common questions of the legality of this practice and Navy Federal's policies associated with the practice predominate over questions—if any—affecting only individual Settlement Class members, providing a common link between all the Settlement Class members and Navy Federal. *See Jeffreys v. Comm'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 323 (E.D. Va. 2003) (finding predominance satisfied where [t]he

24

question in each individual controversy" would be resolved according to the same legal inquiry); *Talbott v. GC Servs. Ltd. P'Ship*, 191 F.R.D. 99, 105-06 (W.D. Va. 2000) (finding predominance satisfied based on the "standardized nature" of the defendant's conduct). "The fact that damages will differ from class member to class member does not defeat the finding of predominance because liability is common to the class." *Jeffreys*, 212 F.R.D. at 323.

### b.  A class action is a superior method of adjudication.

Finally, the Court must determine whether a class action is superior to other methods of adjudication for the fair and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b)(3). The factors to be considered are (1) individual class members' interest in controlling individual cases; (2) the existence of related litigation; (3) the desirability of concentrating the litigation in one forum; and (4) manageability. *Droste v. Vert Capital Corp.*, No. 3:14-cv-467, 2015 WL 1526432, at *8 (E.D. Va. April 2, 2015). With class settlements, courts need not consider the last factor—whether the case, if tried, would present intractable management problems—for the proposal is that there will be no trial. *Amchem Products, Inc.*, 521 U.S. at 593. Here, a class action is superior to individual class member suits.

First, individual suits are unlikely here, because the probable recovery (even of full damages) is relatively small per Settlement Class Member, particularly compared to the expense of litigation. *See In re NeuStar, Inc.*, 2015 WL 5674798, at *8 (finding superiority satisfied where individual actions were "unlikely due to the size of probable recovery and expense of individual litigation). Where the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights," *Amchem Products, Inc.*, 521 U.S. at 617, a suit like this is well-suited for class action litigation. Second, Class Counsel is not aware of other pending individual litigation against Navy Federal involving Representation NSF Fees. Joint Decl. ¶ 4. And third, it

would promote judicial economy to resolve this case as a class before this Court rather than requiring individual plaintiffs to file separate lawsuits. *In re NeuStar, Inc.*, 2015 WL 5674798, at *9. Accordingly, a class action is a superior method of adjudication.

### C.    The Court Should Appoint Plaintiff's Counsel as Class Counsel Under Rule 23(g)

Fed. R. Civ. P. 23(g) requires a Court to appoint class counsel. In appointing class counsel, the Court "must" consider:

- the work counsel has done in identifying or investigating potential claims in the action;

- counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

- counsel's knowledge of the applicable law; and

- the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). *See also In re Neustar*, 2015 WL 5674798, at *13. The court "may" also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Proposed Class Counsel from the law firms of Kaliel PLLC, Tycko & Zavareei LLP and Kopelowitz Ostrow Ferguson Weiselberg Gilbert, have expended a great deal of time, effort, and expense investigating Navy Federal's NSF Fee assessment practice, and contract documents, and transactional data prior to and since filing this action. It is clear from their track-record of success, as outlined in their resumes, that Class Counsel are highly skilled and knowledgeable concerning class-action practice. Kelly Guzzo, PLC, a firm that regularly prosecutes class actions in this District, also serves as co-counsel in the Action.

As can be seen by their commitment to prosecuting this Action thus far, Class Counsel have made the investment and have the experience to represent the Settlement Class vigorously.

Accordingly, Plaintiff requests that the Court appoint Jeff Ostrow and Jonathan Streisfeld of Kopelowitz Ostrow Ferguson Weiselberg Gilbert, Hassan Zavareei and Andrea Gold of Tycko & Zavareei LLP, and Jeffrey Kaliel and Sophia Gold of Kaliel PLLC, as Class Counsel

> **D.      The Court should approve the Notice Program.**

"Under Federal Rule of Civil Procedure 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to . . ." certify the settlement class and approve the settlement." *Solomon*, 2020 WL 3490606 at *6 (citing Fed. R. Civ. P. 23(e)(1)). The Parties' proposed Notice Program is formulated to conform with the procedural and substantive requirements of Rule 23. Due process and Rule 23 require that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort."). The mechanics of the notice process are left to the Court's discretion, subject only to the broad reasonableness standards imposed by due process.

Here, the Notice Program contemplates notice via email, and where necessary, direct mail. A Long Form Notice is also available for Settlement Class members who request it, and it will be posted on the Settlement Website. To ensure that notice reaches as many Settlement Class members as possible, the Settlement Administrator will perform reasonable address traces for the Initial Mailed Notice and Postcard Notice following any undeliverable Email Notices.

All of the Notices will include important information about the Settlement, including how to opt-out or object, and where to find more information about the case or contact Class Counsel.

27

The substance of the notice will fully apprise Settlement Class members of their rights. Additionally, the Notices are designed to be "noticed," reviewed, and—by presenting the information in plain language—understood by Settlement Class members. The design of the Notices follows principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov. The Notices contain plain-language summaries of key information about Settlement Class members' rights and options. Under Rule 23(e), the notice must generally describe the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward to be heard. The proposed Notices contain all of the critical information required to apprise Settlement Class members of their rights. This approach to notice is adequate and provides sufficient detail to allow class members with adverse viewpoints to come forward and be heard.

Consistent with normal practice, prior to being delivered and published, all Notices will undergo a final edit for accuracy. All of the Notices are noticeable, clear, and concise, and are written in plain, easily understood language. The Notices effectively communicate key information about the Settlement and are designed to alert the reader that the Notices are important documents and that the content may affect them.

This robust Notice Program is informative, practical, and reasonably designed to reach the vast majority of Settlement Class members. Joint Decl. ¶¶ 44-46. *See also, e.g.*, *Solomon*, 2020 WL 3490606, at *6 (approving notice plan providing for email address or, if no email address is available, a postcard notice, along with a settlement website). There is no claim form, and the Notice Program will be overseen, with the Court's approval, by JND Legal Administration, a reputable settlement administrator with deep experience in the field.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) conditionally

certify the Settlement Class, (2) appoint Plaintiff Lambert as Class Representative, (3) appoint Class Counsel, (4) preliminarily approve the Settlement, (5) approve the Notice Program and direct that Notice be provided to the Settlement Class Members, (6) approve and order the opt-out and objection procedures set forth in the Agreement, (7) stay all deadlines in the Action against Navy Federal pending Final Approval of the Settlement, and (8) set a date for a Final Approval Hearing.

The Parties propose that the Court enter a proposed schedule according to the dates provided in the Settlement Agreement:

| Event | Calendar Days Before Final Approval Hearing |
|---|---|
| Notice Program Complete | 60 days before Final Approval Hearing |
| Motion for Final Approval, Attorneys' Fees, Expenses, and Costs, and Service Award | 45 days before Final Approval Hearing |
| Opt-Out Deadline | 30 days before Final Approval Hearing |
| Deadline to Submit Objections | 30 days before Final Approval Hearing |
| Deadline to Respond to Objections | 15 days before Final Approval Hearing |
| Final Approval Hearing | March ___, 2021 at _____ a.m./p.m. |

A proposed Preliminary Approval Order is attached as ***Exhibit F*** for the Court's convenience.

Date: October 21, 2020

/s/ Kristi C. Kelly

Kristi C. Kelly
Andrew J. Guzzo
Casey S. Nash
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
kkelly@kellyguzzo.com
aguzzo@kellyguzzo.com
casey@kellyguzzo.com

Jeff Ostrow (pro hac vice)
Jonathan M. Streisfeld (pro hac vice)
KOPELOWITZ OSTROW
FERGUSION
WEISELBERG GILBERT
One W. Las Olas Blvd.
Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954)525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com

Jeffrey D. Kaliel (pro hac vice)
Sophia G. Gold (pro hac vice)
KALIEL PLLC
1875 Connecticut Ave., NW
10th Floor
Washington, DC 20009
(202) 350-7483
jkaliel@kalielpllc.om
sgold@kalielpllc.om

Hassan A. Zavareei (pro hac vice)
Andrea R. Gold (pro hac vice)
Katherine M. Aizpuru (pro hac vice)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington DC, 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
agold@tzlegal.com
kaizpuru@tzlegal.com

*Attorneys for Plaintiff and the Settlement Class*

# EXHIBIT 4

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

RUBY LAMBERT, individually and on behalf
of all others similarly situated,

        Plaintiff,

        v.

NAVY FEDERAL CREDIT UNION,

        Defendant.

Case No. 1:19-cv-00103-LO-MSN

Hon. Liam O'Grady

## ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

WHEREAS, the above-captioned matter ("Action") is a putative class action before this Court;

WHEREAS, Plaintiff Ruby Lambert, individually and on behalf of the proposed Settlement Class and defendant Navy Federal Credit Union ("Navy Federal") have entered into a Settlement Agreement dated October 5, 2020 (the "Agreement" or "Settlement"), which is subject to review by the Court under Federal Rule of Civil Procedure 23, and which, together with its exhibits, provides for a complete dismissal on the merits and with prejudice of the claims asserted in the Action against Navy Federal;

WHEREAS, Plaintiff has filed an unopposed motion seeking: (a) certification of a class for settlement purposes pursuant to Federal Rules of Civil Procedure Rule 23(a), 23(b)(3), and 23(e); (b) appointment of class representative of the settlement class; and (c) appointment of her counsel as Class Counsel;

WHEREAS, Plaintiff has made an application, pursuant to Rule 23, for an order preliminarily approving the Settlement in accordance with the Agreement and directing the

1

issuance of Notice to the Settlement Class as more fully described herein; and

WHEREAS, the Court having reviewed the Motion along with the Agreement and its exhibits, and finding that substantial and efficient grounds exist for entering this order;

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.     For purposes of this Preliminary Approval Order, all capitalized words have the same meaning as they have in the Agreement.

2.     **Settlement Class Certification:** Pursuant to Federal Rules of Civil Procedure Rules 23(a) and 23(b)(3), and for purposes of settlement only, the Action is hereby preliminarily certified as a class action on behalf of the following Settlement Class:

> All current and former Navy Federal members in the United States who were charged Representment NSF Fees during the Class Period. Excluded from the Settlement Class is Navy Federal, its parents, subsidiaries, affiliates, officers and directors, all Settlement Class members who make a timely election to be excluded, and all judges assigned to this litigation and their immediate family members.

The Class Period is defined as the period of January 28, 2014, through the date of Preliminary Approval. Representment NSF Fees means the second or third NSF Fee charged to an Account Holder when a Settlement Class member's merchant has re-presented a debit item or check to Navy Federal for payment (after an initial return by Navy Federal for insufficient funds), and where the debit item or check is again returned by Navy Federal due to insufficient funds, resulting in an additional NSF Fee or NSF Fees.

3.     Pursuant to the recently amended Fed. R. Civ. P. 23(e), the terms of the Agreement (and the Settlement provided for therein) are preliminarily approved and likely to be approved at the Final Approval Hearing because:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

4.     **Settlement Class Findings:** The Court finds, for purposes of settlement only, and without any adjudication on the merits, that the prerequisites for certifying the Action as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(3) have been satisfied, and that the Court will likely certify at the final approval stage a Settlement Class. As to Rule 23(a), the court finds that: (a) the number of Settlement Class Members is so numerous that joinder is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the proposed Class Representative are typical of the claims of the Settlement Class members; (d) the proposed Class Representative and proposed Class Counsel have and will fairly and adequately represent the interests of the Settlement Class.

5.     The numerosity requirement is satisfied because joinder of all parties would be impracticable. *See* Fed. R. Civ. P. 23(a)(1). While "no specified number is needed to maintain a class action," the size of the Settlement Class here unquestionably satisfies the numerosity requirements. *See, e.g., Brady v. Thurston Motor Lines,* 726 F.2d 136, 145 (4th Cir. 1984).

6.     Commonality is satisfied where at least one issue of law or fact is common to the class. *See McGlothlin v. Connors,* 142 F.R.D. 626 (W.D. Va. 1992). *See also* Fed. R. Civ. P. 23(a)(2). Here, common issues of fact and law include the nature of the policy and whether the policy violates Navy Federal's Account Agreement. Resolution of those issues as to Plaintiff will resolve them for the Settlement Class as well and would rely on largely the same evidence as

3

would be necessary to prove any other Settlement Class Member's claims.

  7. To satisfy the typicality analysis, the proposed class representative must show that he or she is "part of the class and possess[es] the same interest and suffer[ed] the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). *See also* Fed. R. Civ. P. 23(a)(3). Typicality is satisfied if the proposed class representative's claims "fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003). Here, Plaintiff appears to be typical because her claims arise from Navy Federal's assessment of the same type of Represenment NSF Fees that Navy Federal allegedly collected from other Settlement Class members.

  8. Finally, the adequacy analysis requires the Court to find that the Class Representative and Class Counsel will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Here, Plaintiff vigorously pursued the Action so far and appears to be capable of continuing to do so. Further, Class Counsel appears qualified, competent, and experienced in class action lawsuits. Rule 23(a)(4) thus appears to be satisfied.

  9. As to Rule 23(b)(3), the Court finds that questions of law and fact common to the Settlement Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the Action taking into consideration: (i) the lack of evidence of any intent among the Settlement Class Members to individually control the prosecution of separate actions; (ii) the parties' lack of awareness of any litigation concerning the controversy already begun by Settlement Class Members other than the proposed Class Representative; (iii) the small size of the claims of many of the individual Settlement Class Members making the pursuit of individual actions cost prohibitive for many Settlement Class Members; and (iv) the similarity of the Settlement Class

Members' claims involving substantially identical proofs. *See* Fed. R. Civ. P. 23(b)(3).

10. The predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *see also Gunnells*, 348 F.3d at 428. The common questions of the legality of this practice and Navy Federal's policies associated with the practice predominate over questions—if any—affecting only individual Settlement Class members, providing a common link between all the Settlement Class members and Navy Federal. *See Jeffreys v. Comm'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 323 (E.D. Va. 2003) (finding predominance satisfied where [t]he question in each individual controversy" would be resolved according to the same legal inquiry). Predominance thus appears to be satisfied.

11. Superiority also appears to be satisfied because individual lawsuits are unlikely and Class Counsel have represented that they are unaware of other pending individual litigation against Navy Federal involving Representment Fees. *See Droste v. Vert Capital Corp.*, No. 3:14-cv-467, 2015 WL 1526432, at *8 (E.D. Va. April 2, 2015) (factors to be considered are (1) class members' interest in controlling the litigation, (2) the existence of related litigation, (3) the desirability of concentrating the litigation in one forum, and (4) manageability). Because this is a settlement case, the Court need not consider manageability. *Amchem Prods.*, 521 U.S. at 593.

12. **Appointment of Class Representative and Class Counsel:** The Court hereby finds and concludes pursuant to Rule 23, and for purposes of settlement only, that Plaintiff Ruby Lambert is an adequate class representative and certifies her as Class Representative on behalf of the Settlement Class.

13. In appointing class counsel, Rule 23(g) requires the court to consider (a) the work counsel has done in identifying or investigating potential claims in the action, (2) counsel's

5

experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) counsel's knowledge of applicable law, and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The court may also consider any other matter pertinent to counsel's ability to represent the class. Fed. R. Civ. P. 23(g)(1)(B). The Court finds that proposed Class Counsel from the law firms of Kaliel PLLC, Tycko & Zavareei LLP and Kopelowitz Ostrow Ferguson Weiselberg Gilbert, have expended a great deal of time, effort, and expense investigating Navy Federal's Representment NSF Fees assessment practice, and contract documents, and transactional data prior to and since filing this action. It is clear from their track-record of success, as outlined in their resumes, that Class Counsel are highly skilled and knowledgeable concerning class-action practice. For purposes of the Settlement only, and pursuant to Federal Rule of Civil Procedure 23(a)(1), the Court appoints the following as Class Counsel to act on behalf of the Settlement Class and the Class Representative with respect to the Settlement:

Jeffrey D. Kaliel (pro hac vice)
Sophia G. Gold (pro hac vice)
KALIEL PLLC
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C. 20009

Hassan A. Zavareei (pro hac vice)
Andrea Gold (pro hac vice)
TYCKO & ZAVAREEI LLP
1828 L Street, NW, Suite 1000
Washington, DC 20036

Jeff Ostrow (pro hac vice)
Jonathan M. Streisfeld (pro hac vice)
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
One W. Las Olas Blvd.
Suite 500
Fort Lauderdale, FL 33301

14. **Preliminary Approval of the Settlement:** The Court hereby preliminarily approves the Settlement, as embodied in the Agreement, as being fair, reasonable, and adequate, and in the best interest of the named plaintiff and the Settlement Class, subject to further consideration at the Final Approval Hearing to be conducted as described below. The Settlement meets the considerations set forth in Rule 23(e) and *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th

Cir. 1991).

15.    When evaluating the fairness of a settlement, the Court must evaluate the settlement against the following criteria: (1) the posture of the case at the time the settlement was proposed; (2) the extent of discovery conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel. *In re Jiffy Lube*, 927 F.2d at 159. As to the posture of the case, it appears that the Settlement was reached after significant work was performed. Similarly, as to the extent of discovery, it appears that Navy Federal provided substantial data regarding Representment Fees to allow the parties to evaluate the case. The provision of informal damages discovery is sufficient to satisfy the fairness factor, particularly where, as here, experts are involved. *In re Jiffy Lube*, 927 F.2d at 159 (recognizing that informal discovery can provide satisfactory information prior to preliminary approval). Thus, the first two fairness factors warrant preliminary approval.

16.    The third factor, circumstances surrounding the negotiations, also supports preliminary approval. *See id.* The Settlement was negotiated with the assistance of United States Magistrate Judge John F. Anderson and appears to be the result of extensive, arm's length negotiations between the Parties after Class Counsel and Navy Federal's Counsel had investigated the claims, extensively litigated them, and become familiar with the claims' strengths and weaknesses. *See, e.g., Bicking v. Mitchell Rubenstein & Assocs., P.C.*, No. 3:11CV78-HEH, 2011 WL 5325674, at *5 (E.D. Va. 2011) (finding settlement fair where it was reached "under the supervision and direction" of a Magistrate Judge). Further, the Parties did not discuss attorneys' fees or a Service Award until after agreeing upon the material terms of the Settlement. The Settlement appears not to be collusive, has no obvious defects, and falls within the range of reasonableness.

17.    Class Counsel intends to seek an award of 33.33% of the Settlement Fund (up to

$5,332,800.00) and a request for reimbursement of reasonable costs. The Agreement also authorizes Plaintiff to seek a Service Award of $5,000.00. These amounts appear reasonable, but the Court will defer on ruling until the Final Approval Hearing.

18.     Accordingly, the Court preliminarily finds that the Settlement is fair.

19.     In assessing the adequacy of the Settlement, the Court looks to (1) the relative strength of the merits of the plaintiff's claims; (2) the existence of any difficulties of proof or strong defenses the plaintiff will encounter at trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant and likelihood of recovery; and (5) the degree of opposition to the Settlement. *In re Jiffy Lube*, 927 F.2d at 159. While the fifth factor cannot be evaluated until after notice is provided to the class, the first four factors appear satisfied.

20.     The first and second factors, which are generally considered together, evaluate "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult one." *In re The Mills Corp. Securities Litig.*, 265 F.R.D. 246, 256 (E.D. Va. 2009). Here, the Court granted Navy Federal's Motion to Dismiss with prejudice, which ruling is on appeal, and it is clear that numerous factual and legal issues remain in dispute. Accordingly, the first two factors warrant Preliminary Approval.

21.     The likely duration and expense of continued litigation are also substantial. Settlement will avoid "returning the case to this Court for class and merits discovery, class certification, summary judgment, trial, and further appeals," assuming Plaintiff prevails on appeal, favoring approval. *See Solomon v. Am. Web Loan, Inc.*, No. 4:17cv145, 2020 WL 3490606, at *5 (E.D. Va. June 26, 2020).

22.     Finally, while Navy Federal appears solvent, the fourth factor is "largely considered beside the point given the other factors weighing in favor of preliminary approval." *Id.*

8

23.     Accordingly, the Court preliminarily finds that the Settlement is adequate.

24.     Class Counsel and Navy Federal's counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with this Order or the Agreement, including making, without the Court's further approval, minor form or content changes to the Notice they jointly agree are reasonable or necessary.

25.     **Final Approval Hearing:** The Court will hold a Final Approval Hearing on March 26, 2021 at 10:00 a.m. The Final Approval Hearing is conducted for the following purposes: (a) to determine whether the proposed Settlement, on the terms and conditions provided for in the Agreement, is fair, reasonable, and adequate, and should be approved by the Court; (b) to determine whether an order of Final Judgment should be entered dismissing the Action on the merits and with prejudice; (c) to determine whether the proposed plan of allocation and distribution of the Settlement Fund is fair and reasonable and should be approved; (d) to determine whether any requested award of attorneys' fees and costs, expenses, and a Service Award for the Class Representative should be approved; and (e) to consider any other matters that may properly be brought before the Court in connection with the Settlement.

26.     **Retention of Settlement Administrator and Manner of Notice:** Class Counsel are authorized to retain JND Legal Administration as the Settlement Administrator to supervise and administer the Notice Program, as well as the distribution of the Settlement Fund should the Court grant Final Approval. Notice of the Settlement and the Final Approval Hearing shall be given by Class Counsel through the Settlement Administrator as follows:

        a.      Within 30 days after Preliminary Approval of the Settlement, at the direction of Class Counsel and Navy Federal's Counsel, the Settlement Administrator shall

implement the Notice Program. Notice shall be provided through: (1) Email Notice to Account Holders for whom Navy Federal maintains email addresses; (2) Postcard Notice to Account Holders for whom Navy Federal does not have a valid email address; and (3) Long Form Notice, which will be available on the Settlement Website and which the Settlement Administrator will mail to Settlement Class members who request it.

b.     Before mailing the Postcard Notice, the Settlement Administrator shall run the Settlement Class members' physical addresses through the National Change of Address Database and shall mail to all such Settlement Class members Postcard Notice. The Settlement Administrator shall also send out Email Notice to all Settlement Class members receiving Notice by that method. The initial Mailed Postcard and Email Notice shall be referred to as "Initial Mailed Notice."

c.     The Settlement Administrator shall perform reasonable address traces for all Initial Mailed Notice postcards that are returned as undeliverable. A reasonable tracing procedure would be to run addresses of returned postcards through the Lexis/Nexis database that can be utilized for such purpose. No later than 60 days before the Final Approval Hearing, the Settlement Administrator shall complete the re-mailing of Postcard Notice to those Settlement Class members whose new addresses were identified as of that time through address traces ("Notice Re-mailing Process"). The Settlement Administrator shall also send Postcard Notice to all Settlement Class members whose emails were returned as undeliverable and complete such Notice pursuant to the deadlines described herein as they relate to the Notice Re-mailing Process.

d.     The Notice Program (which is composed of both the Initial Mailed Notice and the Notice Re-mailing Process) shall be completed no later than 60 days before the

10

Final Approval Hearing.

      e.     The Settlement Administrator shall also create and maintain a Settlement Website and a toll-free telephone line for Settlement Class members to call with Settlement-related inquiries.

      f.     In advance of the Final Approval Hearing, the Settlement Administrator shall prepare an affidavit to submit to the Court confirming that the Notice Program was completed, confirming that the Class Action Fairness Act notice requirements have been met, describing how the Notice Program was completed, providing the names of each Settlement Class member who timely opted out from the Settlement Class, and identifying Settlement Class Members who timely filed objections, as well as providing other information as may be necessary.

    27.    **Approval of Form and Content of Notice:** The Court approves, as to form and content, the Notice Program, substantially in the forms attached as Exhibits to the Settlement Agreement. The Court finds that the Notice Program: (a) is the best notice practicable under the circumstances, (b) constitutes notice that is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, of the effect of the proposed Settlement (including the Release contained therein), and of their right to object to any aspect of the proposed Settlement, exclude themselves from the Settlement Class, and appear at the Final Approval Hearing; (c) constitutes due, adequate, and sufficient notice to all Persons entitled to receive notice of the proposed Settlement; and (d) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, the Rules of this Court, and all other applicable law and rules. The date and time of the Final Approval Hearing shall be included in the Email Notice, Postcard Notice, and Long Form Notice, respectively, before they are emailed, mailed and

published.

28.    **Dissemination of Notice:** The Court directs Class Counsel to disseminate the Notice as proposed in this Order.

29.    **Exclusion from the Settlement Class:** The Class Notice shall provide that any member of the Settlement Class who wishes to be excluded from the Settlement Class must request exclusion in writing within the time and manner set forth in the Notice. The Notices shall provide that requests for exclusion must be postmarked by no later than 30 days before the Final Approval Hearing (the last day of the Opt-Out Period).

30.    Any Settlement Class member who timely and validly requests exclusion from the Settlement Class is excluded from the Settlement Class by Order of the Court, shall not be a Settlement Class Member, shall not be bound by the terms of the Settlement Agreement, and shall have no right to payment from the Settlement Fund. Any Settlement Class member who does not timely and validly request to opt-out shall be bound by the terms of this Agreement.

31.    **Objections to the Settlement:** The Class Notice shall also provide that any Settlement Class Member who does not request exclusion from the Settlement Class may object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs and expenses and/or a Service Award to the Class Representative. Objections to the Settlement, to the application for fees, costs, expenses, and/or to the Service Award must be mailed to the Clerk of the Court, Class Counsel, Navy Federal's counsel, and the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Opt-Out Period, as specified in the Notice. If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions.

12

If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

32.　　For an objection to be considered by the Court, the objection must also set forth:

a.　　the name of the Action;

b.　　the objector's full name, address and telephone number;

c.　　an explanation of the basis upon which the objector claims to be a Settlement Class Member;

d.　　all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

e.　　the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case;

f.　　the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

g.　　a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years;

h.　　any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other

13

person or entity;

      i.      the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

      j.      a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection;

      k.      a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

      l.      the objector's signature (an attorney's signature is not sufficient).

33.      Class Counsel and/or Navy Federal may conduct limited discovery on any objector consistent with the Federal Rules of Civil Procedure.

34.      Any Settlement Class Member who does not make an objection in the manner provided herein shall be deemed to have waived the right to object to any aspect of the Settlement and/or to Class Counsel's application for attorneys' fees, costs and expenses and/or a Service Award to the Class Representative, and shall forever be barred and foreclosed from raising such objections in this or any other proceeding.

35.      **Settlement Administration Fees and Expenses:** All costs of the Settlement Administrator regarding notice and settlement administration, including notices required by the Class Action Fairness Act, shall be paid as set forth in the Agreement without further order of the Court.

36.      **Settlement Fund:** The Settlement Fund means the $16,000,000.00 common cash fund for the benefit of the Settlement Class that Navy Federal is obligated to pay under the Settlement should the Court grant Final Approval. The Settlement Fund will be used to pay Settlement Class Member Payments, any award of attorneys' fees, litigation costs and expenses to

Class Counsel, and Service Award to Plaintiff ordered by the Court, and any *cy pres* payment as set forth in the Agreement. If there are no objections to the Settlement, then within 15 days after Final Approval, or if there are objections to the Settlement, then within 15 days of the Effective Date, Navy Federal shall deposit into the Escrow Account $16,000,000.00, minus the amount of the Settlement Class Member Payments to be credited to the Accounts of Settlement Class Members who are Current Account Holders. Otherwise, Navy Federal is not required to place all or any of Settlement Fund into a separate bank account and will not relinquish control of any funds until payments are due, as required by the Settlement.

37. **Automatic Distributions from the Settlement Fund:** Settlement Class Members do not need to submit a claim for or take any other action to participate in the Settlement. The allocation of the Settlement Fund shall be calculated according to the terms of the Agreement. The Parties' agreed allocation formula appears to be fair and reasonable. Settlement Class Member Payments to Current Account Holders shall be made first by crediting those Account Holders' Accounts, or by mailing a standard size check if it is not feasible or reasonable to make the payment by a credit. Navy Federal shall notify Current Account Holders of any such credit on the Account statement on which the credit is reflected by stating "Lambert class settlement" or something similar. Settlement Class Member Payments to Former Account Holders shall be made by mailing a standard size check.

38. The amount of the Net Settlement Fund attributable to uncashed or returned checks sent by the Settlement Administrator shall be held by the Settlement Administrator one year from the date that the first distribution check is mailed by the Settlement Administrator. During this time the Settlement Administrator shall make a reasonable effort to locate intended recipients of settlement funds whose checks were returned (such as by running addresses of returned checks

15

through the Lexis/Nexis database that can be utilized for such purpose) to effectuate delivery of such checks. The Settlement Administrator shall make only one such additional attempt to identify updated addresses and re-mail or re-issue a distribution check to those for whom an updated address was obtained.

39. **Termination:** If the Settlement is terminated, not approved, canceled, fails to become effective for any reason, or the Effective Date does not occur, this Order shall become null and void and shall be without prejudice to the rights of the named plaintiff, the Settlement Class members, or Navy Federal, all of whom shall be restored to their respective positions in the Action as provided in the Agreement.

40. **Stay:** All pretrial proceedings in this action are stayed and suspended until further order of this Court, except such actions as may be necessary to implement the Agreement and this Preliminary Approval Order.

41. Upon the entry of this Order, the Class Representative and all members of the Settlement Class shall be provisionally enjoined and barred from asserting any claims against Navy Federal and the Released Parties arising out of, relating to, or in connection with the Released Claims prior to the Court's decision as to whether to grant Final Approval of the Settlement.

42. Any Settlement Class Member may enter an appearance in the Action, at their own expense, individually or through counsel of their own choice. If a Settlement Class Member does not enter an appearance, he or she will be represented by Settlement Class Counsel.

43. **Use of this Order:** Neither this Order nor the proposed Settlement (including the Agreement or any of its terms, or any aspect of the negotiations, discussions, and proceedings in connection with the negotiation of the Agreement or Settlement): (a) shall be offered in evidence or used for any other purpose in this or any other proceeding in any court, administrative agency,

arbitration forum, or other tribunal other than as may be necessary to enforce the terms of this Order or the Settlement; (b) shall be described as, construed as, interpreted as, or offered against the Released Parties as evidence of, or deemed to be evidence of, any presumption, concession, or admission of any liability or wrongdoing or the validity of any claim by the Class Representative or the Settlement Class; or (c) shall be described as, construed as, interpreted as, or offered against the Class Representative or any Settlement Class member as evidence of any infirmity in their claims or as evidence that the damages recoverable from Navy Federal would not have exceeded the Settlement Amount.

44. **Supporting Papers:** Class Counsel shall file and serve a brief in support of the proposed Settlement and their application for attorneys' fees, costs and expenses and/or a Service Award to the Class Representative no later than 45 days before the Final Approval Hearing. At the Final Approval Hearing, the Court will hear argument on Plaintiff's Motion for Final Approval of the Settlement, and on Class Counsel's application for attorneys' fees, costs, and expenses, and for the Service Award for the Class Representative. In the Court's discretion, the Court also will hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement or to Class Counsel's application for attorneys' fees, costs, expenses, or the Service Award application, provided the objector(s) submitted timely objections that meet all of the requirements listed in the Agreement and in this Order.

45. **Jurisdiction:** For the benefit of the Settlement Class and to protect this Court's jurisdiction, this Court retains continuing jurisdiction over the Settlement proceedings to ensure the effectuation thereof in accordance with the Settlement preliminarily approved herein and the related orders of this Court.

46. **Schedule:** The Court hereby sets the following schedule of events:

| Event | Calendar Days Before Final Approval Hearing |
|---|---|
| **Notice Program Complete (including Initial Mailed Notice and the Notice ReMailing Process)** | **Monday, January 25, 2021** (60 days before Final Approval Hearing) |
| **Motion for Final Approval, Attorneys' Fees, Expenses, and Costs, and Service Award** | **Tuesday, February 9, 2021** (45 days before Final Approval Hearing) |
| **Opt-Out Deadline** | **Wednesday, February 24, 2021** (30 days before Final Approval Hearing) |
| **Deadline to Submit Objections** | **Wednesday, February 24, 2021** (30 days before Final Approval Hearing) |
| **Deadline to Respond to Objections** | **Thursday, March 11, 2021** (15 days before Final Approval Hearing) |
| **Final Approval Hearing** | **Friday, March 26, 2021 at 10:00 a.m.** |

SO ORDERED this _____27th_____ day of _____October_____, 2020.

The Honorable Liam O'Grady
United States District Judge

18

# EXHIBIT 5

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

RUBY LAMBERT, individually and on behalf
of all others similarly situated,

          Plaintiff,

          v.

NAVY FEDERAL CREDIT UNION,

          Defendant.

Case No:  1:19-cv-00103-LO-MSN

Hon. Liam O'Grady

**DECLARATION OF JENNIFER M. KEOUGH
REGARDING NOTICE ADMINISTRATION**

I, Jennifer M. Keough, declare and state as follows:

1.     I am Chief Executive Officer of JND Legal Administration ("JND").[1]  This Declaration is based on my personal knowledge, as well as information provided to me by experienced JND employees working under my supervision, and if called upon to do so, I could and would testify competently thereto.

2.     JND is a legal administration services provider employing over 175 people in multiple offices throughout the United States.  As CEO of JND, I am involved in all facets of our Company's operation.  Among my responsibilities is to monitor the implementation of our notice and claim administration programs.  I have more than 20 years of legal experience designing and supervising such programs.

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings given such terms in the Settlement Agreement and Release and the Order Granting Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement.

1

3.     JND was appointed by the Court to serve as the Settlement Administrator in this

Action, as outlined in its Order Granting Plaintiff's Unopposed Motion for Preliminary Approval of

Class Action Settlement dated October 27, 2020 (the "Order").

**CAFA NOTICE**

4.     Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), on

October 30, 2020, JND mailed notice of the class action settlement in this Action to the appropriate

State and Federal officials.  An example CAFA notice is attached hereto as **Exhibit A**.

5.     JND has not received any inquiries or objections from any State or Federal officials.

**CLASS MEMBER DATA**

6.     On October 29, 2020, JND received two electronic files containing a total of

1,711,989 line items comprising names, addresses, and account numbers for accountholders identified by

Defendant as potential Settlement Class members.  This data was promptly loaded into a database

established for this Action, and JND certified the mailing data via the Coding Accuracy Support System

("CASS") in order to ensure the consistency of the contact information in the database.  JND then reviewed

the class member data and identified 182,990 line items where the potential Settlement Class member data

was determined to be duplicative, leaving a total of 1,528,999 records:

7.     Prior to the notice campaign, JND verified mailing addresses through the National Change

of Address ("NCOA") database[2] and identified updated addresses for 141,894 records.

**EMAIL NOTICE**

8.     Commencing on November 23, 2020, JND caused the Court-approved Email Notice,

which contained a link to the Settlement Website, to be sent to 1,488,256 unique email addresses,

---

[2] The NCOA database is the official United States Postal Service ("USPS") technology product which makes change of address information available to mailers to help reduce undeliverable mail pieces before mail enters the mail stream.  This product is an effective tool to update address changes when a person has completed a change of address form with the USPS.  The address information is maintained in the database for 48 months.

representing 1,505,357 potential Settlement Class members. A representative sample of the Email Notice is attached hereto as **Exhibit B**. Of the 1,488,256 Email Notices sent, 421,360 Email Notices, corresponding to 425,376 potential Settlement Class members, were returned as undeliverable.

**MAILED NOTICE**

9. On November 25, 2020, JND caused the Postcard Notice to be mailed via first-class regular mail using the United States Postal Service ("USPS") to the 23,638 potential Settlement Class members where an email address was not available. A sample of the Postcard Notice is attached hereto as **Exhibit C**.[3]

10. On December 21, 2020, JND caused the Postcard Notice to be mailed to the 425,376 potential Settlement Class members to whom the Email Notice could not be delivered.

11. In the event any potential Settlement Class member's Postcard Notice is returned as undeliverable, JND will use all reasonable secondary efforts to deliver the Postcard Notice to such Settlement Class member. This includes re-mailing any notices returned as undeliverable with a forwarding address and conducting an advanced address search using TransUnion's TLO search, where such a search had not already been conducted, for any notices returned undeliverable without a forwarding address in an attempt to locate an updated address. JND will re-mail the notice to anyone for whom JND is able to obtain an updated address.

12. As of the date of this Declaration, JND has tracked 12,896 Postcard Notices that have been returned to JND as undeliverable at the address provided. JND re-mailed a total of 3,848 Postcard Notices to forwarding addresses provided by USPS. For the remaining undeliverable Postcard Notices, JND conducted advanced address research through TransUnion's TLO service, which located updated addresses for 5,024 potential Settlement Class members. JND duly re-mailed the Postcard Notice to those

---

[3] Four potential Settlement Class members were not sent an Email Notice or Postcard Notice as the email addresses provided for them were not valid and the class member data did not include a mailing address.

potential Settlement Class members for whom a new address was obtained.  As of the date of this Declaration, 2,345 of the Postcard Notices that were forwarded or re-mailed in this manner, have been returned as undeliverable.

## SETTLEMENT WEBSITE

13.      On November 23, 2020, JND established a dedicated Settlement Website (www.lambertnsffeelitigation.com), which contains summary information about the Settlement, copies of important case documents, answers to frequently asked questions, and provides mail and e-mail contact for the Settlement Administrator.  JND also established and maintains a dedicated email address (info@lambertnsffeelitigation.com) to receive and respond to Settlement Class member inquiries.

14.      As of the date of this Declaration, the Settlement Website has tracked 25,682 unique users who registered 52,980 page views.  A single visitor to the website can register multiple views.  JND will continue to maintain and update the website throughout the administration process.

## TOLL-FREE NUMBER

15.      On November 23, 2020, JND established and maintains a case-specific toll-free telephone number (1-833-707-1452) with interactive voice response ("IVR") technology, which Settlement Class members may call to obtain information about the Settlement.  The toll-free number is available 24 hours a day, seven days a week.

16.      As of the date of this Declaration, the toll-free number has received 3,082 calls for a total of 159 hours and 29 minutes.

## SUMMARY OF NOTICE REACH

17.      The Notice Program was consistent with other notice programs we have implemented for similar settlements that have received final approval, and achieved each of the planned objectives:

> a.   Direct contact information for potential members of the Settlement Class was identified from Defendant's internal records;

b. Email Notice was sent directly to the email addresses of those Account Holders for whom Defendant had an email address;

c. Postcard Notice was sent directly to those Account Holders for whom Defendant did not have an email address or whose Email Notice was returned as undeliverable; and

d. Each of the forms of the Mailed Notice was designed to be noticeable, clear, simple, substantive, and informative. No significant or required information was missing.

18.      The Notice Plan was completed by January 25, 2021, in accordance with the Order. In total, notice was delivered to 1,522,626 potential Settlement Class members:

| Notice Type | Count |
|---|---|
| Email Notice | 1,079,981 |
| Postcard Notice | 442,645 |
| Neither Email nor Postcard | 6,373 |

19.      A Notice Program that reaches 70% of class members is considered to have reached a "high percentage" is considered to have reach a "high percentage" of recipients and is "within the norm."[4] The Notice Program here reached 99.58% of potential Settlement Class members, exceeding the standard set out by the Federal Judicial Center for reach.

## REQUESTS FOR EXCLUSION

20.      The Mailed Notice informed potential Settlement Class members that any Settlement Class member who wished to exclude themselves from the Settlement ("opt-out") or otherwise not participate in the Settlement, must submit the request postmarked on or before February 24, 2021.

---

[4] Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges," at 27 (3d ed. 2010).

21.     As of the date of this Declaration, JND has received 13 opt-outs, of which 3 were determined to be valid and 10 were determined to be deficient.  A list of the Settlement Class members requesting exclusion is attached as **Exhibit D**.

**OBJECTIONS**

22.     The Mailed Notice informed recipients that any Settlement Class members who would like to object to the proposed Settlement must do so by February 24, 2021.

23.     As of the date of this Declaration, JND has not received, and is not aware of, any objections submitted by Settlement Class members.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 8, 2021, at Seattle, Washington.

BY: _____

JENNIFER M. KEOUGH

# Exhibit A

October 30, 2020

To the Appropriate Federal
and State Officials Identified
In Attachment A

## RE: CAFA Notice of Proposed Class Action Settlement

Dear Sir or Madam:

This Notice is being provided to you in accordance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715 on behalf of Navy Federal Credit Union, the defendant in the below-referenced class action ("the Action"). Plaintiffs' Motion for Preliminary Approval of Class Action Settlement was filed with the Court on October 21, 2020. The Court granted Preliminary Approval on October 27, 2020 and a Final Approval Hearing has been scheduled for March 26, 2021.

| | |
|---|---|
| **Case Name:** | *Ruby Lambert v. Navy Federal Credit Union* |
| **Case Number:** | *1:19-cv-00103-LO-MSN* |
| **Jurisdiction:** | *United States District Court for the Eastern District of Virginia, Alexandria Division* |
| **Date Settlement filed with Court:** | *October 21, 2020* |

Copies of all materials filed in the above-named actions are electronically available on the Court's Pacer website found at https://pcl.uscourts.gov. Additionally, in compliance with 28 U.S.C. § 1715(b), the enclosed CD-ROM contains the following documents filed in the Action:

### 01 - Complaint.pdf
Class Action Complaint, filed January 28, 2019

### 02 - Motion for Preliminary Approval.pdf
Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, filed October 21, 2020

### 03 - Memorandum in Support.pdf
Plaintiffs' Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement, filed October 21, 2020, and attaching

1. **Settlement Agreement and Release**

2. **Joint Declaration of Class Counsel**

3. **Email Notice**

4. **Postcard Notice**

**5. Notice Regarding Class Action Settlement**

**6. [Proposed] Order Granting Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement**

### 04 – Preliminary Approval Order

It is not possible to provide a breakdown of the Settlement Class in accordance with 28 U.S.C. § 1715 (b)(7) at this time. However, we anticipate that the Settlement Class is sufficiently numerous as to include Class Members potentially residing in all 50 U.S. states, as well as the District of Columbia, and may include Class Members residing in U.S. territories and associated states.

There are no other settlements or agreements made between Counsel for the parties related to the class defined in the proposed settlement, and as of the date of this Notice, no Final Judgment or notice of dismissal has been entered in this case.

If you have any questions regarding the details of the case and settlement, please contact Defense Counsel's representative at:

Fred Burnside, Esq.
DAVIS WRIGHT TREMAINE, LLP
920 Fifth Avenue, Suite 3300
Seattle WA 98104-1610
Email: fredburnside@dwt.com
Telephone: (206) 757-8016

For questions regarding this Notice, please contact JND at:

JND Class Action Administration
1100 2nd Ave, Suite 300
Seattle, WA 98101
Phone: 800-207-7160

Regards,

JND Legal Administration

Encl.

# Exhibit B

| From: | Navy Federal Representment NSF Fee Class Action Settlement Administrator |
| | <info@lambertnsffeelitigation.com> |
| Sent: | Monday, November 23, 2020 10:04 PM |
| To: | |
| Subject: | Navy Federal Representment NSF Fee Settlement |

Para una notificación en Español, llamar o visitar nuestro website:
www.lambertnsffeelitigation.com

**A federal court authorized this notice. This is not a solicitation from a lawyer, and you are not being sued.**

You are receiving this notice because you could be affected by a class action lawsuit against Navy Federal Credit Union involving its assessment of Representment NSF Fees (as defined in the Parties' Settlement Agreement).

A Settlement has been reached in a class action lawsuit claiming that Navy Federal breached its contract with member Account Holders by assessing and collecting Representment NSF Fees on certain transactions. Navy Federal maintains it did nothing wrong and that its imposition of Representment NSF Fees did not breach its contract with member Account Holders. The U.S. District Court for the Eastern District of Virginia dismissed the lawsuit with prejudice and the Plaintiff appealed that ruling. Navy Federal has agreed to settle the lawsuit to avoid the cost, distraction, and uncertainty of litigation. You can read Plaintiff's Complaint, the Settlement Agreement, and other case documents on www.lambertnsffeelitigation.com.

**Who's Included?** Navy Federal's records show you are a member of the Settlement Class. The Settlement Class includes any current and former Navy Federal members who had a Navy Federal Account and were charged Representment NSF Fees between January 28, 2014, and October 27, 2020.

**What Are the Settlement Terms?** A Settlement Fund of $16.0 million has been established to pay Settlement Class Member Payments, any attorneys' fees, litigation expenses and costs, and any Service Award to the Plaintiff ordered by the Court, and any cy pres payment required under the Settlement Agreement. All Settlement Administration Costs are being paid separately by Navy Federal. Once the Court approves the Settlement, you will automatically receive a payment or Account credit for Relevant NSF Fees assessed during the period covered by the Settlement.

**Your Other Options.** If you do not want to be bound by the Settlement, you must exclude yourself by **February 24, 2021**. If you exclude yourself, you cannot get money from this Settlement. If you do not exclude yourself, you will release your claims against Navy Federal. Alternatively, if you do not exclude yourself, you may object to the Settlement by **February 24, 2021**. The Long Form Notice available at the Settlement Website, listed below, explains how to exclude yourself or object. The Court will hold a hearing on **March 26, 2021 at 10:00 a.m.,** to consider whether to approve the Settlement, a request by Class Counsel for up to 33.33% of the Settlement Fund for attorneys' fees (up to $5,332,800), a request by Class Counsel for expenses for litigating the case, and a request by the Class Representative for a

Service Award. You may appear at the hearing, but you don't have to. You may hire your own attorney, at your own expense, to appear or speak for you at the hearing.

**If you do not take any action, you will be legally bound by the Settlement and any orders or Judgments entered in the Action, and will fully, finally, and forever give up any rights to prosecute certain claims against Navy Federal.**

This notice provides limited information about the Settlement. For more information:
**www.lambertnsffeelitigation.com  1-833-707-1452**

To unsubscribe, please click on the following link: unsubscribe

# Exhibit C

**LEGAL NOTICE**

If You Were Charged
Representation NSF Fees By
Navy Federal Credit Union
Between 2014 and 2020,
You Could Get
Benefits From a Class
Action Settlement

*Para una notificación en Español,
llamar o visitar nuestro website:
www.lambertnsffeelitigation.com*

*Lambert Representation NSF Fee Settlement*
c/o JND Legal Administration
PO Box 91190
Seattle, WA 98111

---

A Settlement has been reached in a class action lawsuit claiming that Navy Federal Credit Union ("Navy Federal") breached its contract with member Account Holders by assessing and collecting Representment NSF Fees on certain transactions. Navy Federal maintains it did nothing wrong and that its imposition of Representment NSF Fees did not breach its contract with member Account Holders. The U.S. District Court for the Eastern District of Virginia dismissed the lawsuit with prejudice and the Plaintiff appealed that ruling. Navy Federal has agreed to settle the lawsuit to avoid the cost, distraction, and uncertainty of litigation.

**Am I included?** You are included in the Settlement if you had a Navy Federal Account and were charged Representment NSF Fees between January 28, 2014, and October 27, 2020.

**What does the Settlement provide?** A Settlement Fund of $16.0 million has been established to pay Settlement Class Member Payments, any attorneys' fees, litigation expenses and costs, and any Service Award to the Plaintiff ordered by the Court, and any *cy pres* payment required under the Settlement Agreement. All Settlement Administration Costs are being paid separately by Navy Federal. Once the Court approves the Settlement, you will *automatically* receive a payment or Account credit for Relevant NSF Fees assessed during the period covered by the Settlement.

**What are my other rights?** If you don't want benefits and don't want to be legally bound by the Court's orders, you must exclude yourself from the Settlement by February 24, 2021. If you do not exclude yourself, you will be bound by this Settlement and you will not be able to sue Navy Federal for any claims related to the Settlement. If you stay in the Settlement, you may object to the Settlement by February 24, 2021. You or your own lawyer may appear at the hearing at your own expense. The Court will hold a hearing on Friday, March 26, 2021 at 10:00 a.m. to consider whether to approve the Settlement, a request for 33.33% of the Settlement Fund for attorneys' costs and fees (up to $5,332,800), and a Service Award of $5,000 to the Class Representative.

**www.lambertnsffeelitigation.com**                                    **1-833-707-1452**

# Exhibit D



*Ruby Lambert v. Navy Federal Credit Union*
## Case No. 1:19-cv-00103-LO-MSN
### Requests for Exclusion Received

| ID | Name | Received On | Postmarked |
|----|------|-------------|------------|
| DVU64XNGMA | WILLIAM A KING | 11/30/2020 | 12/3/2020 |
| D4X25ZQTY9 | JOHNNIE AVERETT | 11/30/2020 | 12/7/2020 |
| DDUZKP6GMN | DALLAS C FOSTER | 11/30/2020 | 12/4/2020 |
| DHR29G56PK | BELARMINO R COSTA | 12/12/2020 | 12/31/2020 |
| DEQ92BT6V8 | LARRY V MCPEAK | 12/31/2020 | 1/4/2021 |
| DSLPA-TBWN3 | JOHN P GRANDA | 1/20/2021 | 1/20/2021 |
| DD79Q3284L | CHRISTOPHER D THOMAS | 1/21/2021 | 1/21/2021 |
| DVAP7LY465 | DONALD J CHARETTE | 1/22/2021 | 1/25/2021 |
| DUYQLPHSVB | JOHN M CHEEVER | 1/22/2021 | 1/25/2021 |
| DCMNZUPLRD | CHANCE T AGUON | 1/26/2021 | 1/26/2021 |
| D3ARTCFGKB | ANDREA M BATISTE | 1/27/2021 | 2/1/2021 |
| DSPMDUYV6N | ROBERT L CLARK | 1/29/2021 | 2/1/2021 |
| DBEM5HWNL9 | MARIA A BALZANI | 1/29/2021 | 1/29/2021 |

# EXHIBIT 6

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | |
|---|---|
| RUBY LAMBERT, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:19-cv-00103-LO-MSN |
| v. | Hon. Liam O'Grady |
| NAVY FEDERAL CREDIT UNION, | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED
## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## I.    INTRODUCTION

Plaintiff Ruby Lambert, on behalf of herself and a proposed class of current and former members of Defendant Navy Federal Credit Union, respectfully submits this memorandum in support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement. The Settlement[1]—which was the result of hard-fought, arms'-length negotiations between experienced counsel and facilitated by United States Magistrate Judge John F. Anderson—provides substantial monetary and non-monetary relief for the benefit of the Settlement Class. The Settlement includes Navy Federal's agreement to pay $16,000,000.00 into a common fund and to separately pay all Settlement Administration Costs. Settlement Class Members will not have to file claim forms to receive cash benefits from the Settlement. Navy Federal has also agreed to modify its account agreement to better inform its members of how the subject fee is assessed, resulting in significant potential prospective financial savings. Particularly in light of the Court's Order granting Navy Federal's Motion to Dismiss with prejudice, the Settlement is an excellent recovery.

The Settlement satisfies all Fourth Circuit criteria for settlement approval. Indeed, in its Order Granting Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, Dkt. 48, the Court preliminarily found that the Settlement is "fair, reasonable, and adequate, and in the best interest of the named plaintiff and the Settlement Class." *See* Preliminary Approval Order at 6. Nothing has changed since then to warrant revisiting that conclusion. Since the Court granted Preliminary Approval, the Settlement Administrator, supervised by Class Counsel, delivered direct Notice to 1,522,955 potential Settlement Class members via email and U.S. mail. *See* Declaration of Jennifer Keough Regarding Notice Administration ("Keough Decl.")

---

[1] The capitalized terms in this Memorandum have the same meaning as the capitalized terms in the Settlement Agreement, attached as ***Exhibit 1***.

¶ 18 (attached as ***Exhibit 2***). Of that number, only 13 have requested exclusion and not a single one has objected to the Settlement. This demonstration of overwhelming Settlement Class Member support lends further support to Final Approval.

Therefore, Plaintiff respectfully requests that the Court: (1) grant Final Approval of the Settlement; (2) affirm the certification for settlement purposes of the proposed Settlement Class, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3); (3) confirm the appointment of Plaintiff Lambert as Class Representative; (4) confirm the appointment as Class Counsel of the law firms and attorneys previously identified in paragraph 13 of the Preliminary Approval Order; (5) deny timely objections, if any; and (6) enter Final Judgment dismissing this action.[2]

## II.    BACKGROUND

### A.    Facts Alleged in the Complaint

This case is a class action focused on Navy Federal's practice of assessing insufficient funds fees ("NSF Fees"). The Complaint, filed January 28, 2019, alleges that Navy Federal assesses multiple $29 NSF Fees on the same returned debit item or check when the Account lacks sufficient funds and the debit item or check is re-presented for payment. After Navy Federal returns the debit item or check for insufficient funds, the merchant may re-present that same debit item or check for payment up to three times. Plaintiff alleges that under the terms of her Account agreement with Navy Federal, the credit union was permitted to charge only one NSF Fee per debit item or check, regardless of how many times it was re-presented for payment. The Complaint alleged claims for breach of contract and breach of the covenant of good faith and fair dealing and violation of the North Carolina Unfair and Deceptive Trade Practices Act. The Complaint also

---

[2] Concurrent with this motion, Plaintiff is also filing a Motion for Attorneys' Fees, Expenses, and Service Award, and she also respectfully requests that the Court grant that motion.

alleged, *inter alia*, entitlement to monetary damages, interest, attorneys' fees, and costs.

Navy Federal contends it is allowed to charge a new NSF Fee each time it returns the debit item or check for insufficient funds. Navy Federal denies that the challenged NSF Fee assessment practice breaches its Account agreement with its members or otherwise violates the law.

### B.     Procedural Background and Settlement Negotiations

Plaintiff filed her Complaint on January 28, 2019. Dkt. 1. Prior to filing, Class Counsel spent many hours investigating the factual and legal bases for Plaintiff's claims; interviewing Navy Federal members to gather information about Navy Federal's conduct and its impact on consumers; and reviewing Plaintiff's Account documents. Joint Declaration of Class Counsel Jeffrey Kaliel, Andrea Gold, and Jeff Ostrow attached as ***Exhibit 3*** ("Joint Decl.") ¶ 3. This information was essential to Class Counsel's ability to understand the nature of the conduct at issue, the language of the Account agreements and other documents at issue, and potential remedies. *Id.* Class Counsel also expended significant resources researching and developing the legal claims before the Complaint was filed and throughout the litigation. *Id.* ¶ 4.

Navy Federal filed a motion to dismiss on April 1, 2019, which Plaintiff opposed. *See* Dkts. 19-21, 28, 34. The Court held a hearing on May 24, 2019. Dkt. 35. On August 14, 2019, the Court issued an order granting the motion to dismiss with prejudice. Dkt. 37. Plaintiff timely noticed her appeal. Dkt. 38. The appeal remains fully briefed, but the Fourth Circuit has stayed appellate proceedings pending approval of the Settlement. Dkt. 44.

Pursuant to Fourth Circuit Local Rule 33, a mediation was scheduled for October 16, 2019. App. Dkt. 10. The Parties conferred with the Fourth Circuit mediator, but that mediation did not result in settlement. Joint Decl. ¶ 9.

After completing briefing in the appeal, the Parties' counsel again met and conferred about

settlement. The Parties agreed to a mediation on July 1, 2020, before Judge Anderson, a United States Magistrate Judge of this Court. *Id.* ¶ 10.

Class Counsel spent significant resources preparing for mediation to ensure that the class's interests would be protected. *Id.* ¶ 11. Class Counsel is familiar with the claims, as they have litigated several other cases with similar factual and legal issues. *Id.* Class Counsel has experience in understanding the damages at issue; what information is critical to determine Settlement Class membership; and what data is required to calculate Settlement Class Members' respective damages. *Id.* In advance of mediation, Navy Federal provided Class Counsel with sample Account-level transactional data for the proposed Settlement Class. *Id.* ¶ 12. Plaintiff's expert analyzed the data and extrapolated estimated class-wide damages for the proposed Class Period. *Id.* Based on this information, as well as Class Counsel's thorough preparation and legal research, Class Counsel prepared a persuasive and compelling mediation statement. *Id.* ¶ 14. The Parties exchanged mediation briefs and provided confidential mediation statements to Judge Anderson. *Id.*

On July 1, 2020, the Parties met for a full-day settlement conference before Judge Anderson. *Id.* ¶ 16. Class Counsel entered the mediation fully informed of the merits of Settlement Class members' claims and negotiated the proposed Settlement while zealously advancing the position of Plaintiff and Settlement Class members and being fully prepared to continue to litigate rather than accept a settlement that was not in Plaintiff's and the Settlement Class's best interests. *Id.* at ¶ 15. Judge Anderson actively supervised and participated in the settlement discussions. *Id.* ¶ 17. The Parties made some progress but were unable to reach a settlement that day. *Id.* ¶ 16. However, the Parties continued to negotiate with the assistance of Judge Anderson. *Id.* On July 10, 2020, the Parties agreed on the material terms of the Settlement, which were memorialized in a term sheet executed July 24, 2020. *Id.* ¶ 18. The Parties did not discuss attorneys' fees or any

Service Award until after agreeing on the material terms of the Settlement. *Id.* ¶ 19. Thereafter, the Parties negotiated the Settlement Agreement, which was entered into on October 8, 2020. *Id.*

## III.   SETTLEMENT TERMS

### A.   Settlement Class

The Settlement will resolve the claims of the Settlement Class, defined as:

> All current and former Navy Federal members in the United States who were charged Representation NSF Fees during the Class Period. Excluded from the Settlement Class is Navy Federal, its parents, subsidiaries, affiliates, officers and directors, all Settlement Class members who make a timely election to be excluded, and all judges assigned to this litigation and their immediate family members.

*See* Settlement Agreement ("SA") § 44.

The Class Period is defined as the period of January 28, 2014, through October 28, 2020 (the date of Preliminary Approval). *Id.* § 16. Representation NSF Fees means the second or third NSF Fee charged to an Account Holder when a Settlement Class member's merchant has re-presented a debit item or check to Navy Federal for payment (after an initial return by Navy Federal for insufficient funds), and where the debit item or check is again returned by Navy Federal due to insufficient funds, resulting in an additional NSF Fee or NSF Fees. *Id.* § 26.

### B.   Settlement Benefits

The Settlement provides meaningful immediate relief to Settlement Class Members in the form of direct cash payments and future injunctive relief.

#### 1.   Cash Benefits

Navy Federal has agreed to establish a $16,000,000.00 cash Settlement Fund for the benefit of the Settlement Class and to separately pay all Settlement Administration Costs—a substantial expense. *Id.* §§ 51, 66. The Settlement Fund will be used to pay Settlement Class Member Payments, any attorneys' fees and costs that the Court may award to Class Counsel, and any

Service Award for the Class Representative. *Id.* § 51.

Settlement Class Members do not need to submit a claim form in order to receive a Settlement Class Member Payment. The Settlement Fund will be distributed to Settlement Class Members according to the distribution plan set out in the Agreement. *Id.* §§ 74-83. The precise calculation and implementation of allocations of the Settlement Fund will be done by Class Counsel and Plaintiff's expert using data provided by Navy Federal. *Id.* § 74. Accounts held by Settlement Class Members will be identified for which Navy Federal assessed Representation NSF Fees during the Class Period. *Id.* § 75(a). The Representation NSF Fees will be totaled for each Account, resulting in each Settlement Class Member's Relevant NSF Fees. *Id.* § 75(b). The Net Settlement Fund will then be allocated *pro rata* to the Settlement Class Members based on the number of incurred Relevant NSF Fees. *Id.* §§ 75(c), 76-77. The only exception is that if any Settlement Class Member's *pro rata* share is less than $5.00, that Settlement Class Member's Payment amount shall be adjusted upward to $5.00. *Id.* § 78.

Settlement Class Member Payments to Current Account Holders will be made first by crediting their accounts or, if not feasible or reasonable to make a payment by a credit, by check. *Id.* § 80. Navy Federal will bear any costs associated with implementing the account credits and notifying Settlement Class Members who are Current Account Holders of any credit on the account statement. *Id.* Former Account Holders will receive their Settlement Class Member Payments by check. *Id.* § 81. If any amounts remain in the Net Settlement Fund due to uncashed or returned checks, the Settlement Administrator will hold that amount for one year and make a reasonable effort to locate the recipient of the funds (such as by running the address of the returned check through the Lexis/Nexis database). *Id.* § 82. The Settlement Administrator shall make one additional attempt to identify updated addresses and re-mail or re-issue a distribution check to an

updated address. *Id.*

Within one year after the date the Settlement Administrator mails the first Settlement Class Member Payment, remaining Residual Funds resulting from uncashed checks will be distributed as follows. First, any Residual Funds will be distributed on a *pro rata* basis to Settlement Class Members who received their payments, to the extent feasible and practicable. *Id.* § 83(a). If preparing, transmitting, and administering such subsequent payments would not be feasible and practical, the Residual Funds will be distributed to a *cy pres* recipient(s) that works to promote financial literacy, including for members of the military or veterans, whom Class Counsel and Navy Federal shall jointly propose. *Id.* § 83(b). The costs of any second distribution will come from the Residual Funds. *Id.* § 83(c). There will be no reversion to Navy Federal.

## 2. Injunctive Relief

In addition to direct cash payments, Settlement Class Members will receive significant benefits in the form of injunctive relief. Specifically, Navy Federal has agreed to revise its Account agreement and related documents to further explain when Representation NSF Fees may be assessed. Navy Federal agrees to adopt the following, or substantially similar, language:

> Navy Federal may return debits (e.g., ACH payments) submitted for payment against the checking account if the amount of the debit exceeds the funds available in the checking account. Each time we return a debit for insufficient funds, we will assess an NSF fee in the amount shown on Navy Federal's current Schedule of Fees and Charges for each returned debit item. The entity that submitted the debit may submit another debit to Navy Federal even if we have already returned the prior debit for insufficient funds in the checking account. If the resubmitted debit again exceeds the funds available in the checking account, Navy Federal again will return the debit, resulting in an additional NSF fee. Thus, you may be charged multiple NSF fees in connection with a single debit that has been returned for insufficient funds multiple times.

SA § 52. Plaintiff and her counsel expect that this revised disclosure will result in significant financial savings and will inure to the benefit of the Settlement Class, other Navy Federal members, and future Navy Federal members who will be better able to understand when fees will

be assessed to their accounts. Joint Decl. ¶ 27..

### C.    Settlement Administrator and Settlement Administration Costs

The Settlement Administrator is JND Legal Administration, a nationally recognized and experienced class action administrator. Joint Decl. ¶ 56; Keough Decl. ¶ 2. Navy Federal has agreed to separately pay the costs of the Notice Program and administration, providing an additional benefit to the Settlement Class apart from the Settlement Fund. SA § 66.

### D.    The Notice and Administration Program

The Notice Program was completed in accordance with the Court's instructions in the Preliminary Approval Order. Joint Decl. ¶ 61; Keough Decl. ¶ 18. The program consisted of three parts: (1) Email Notice to Account Holders for whom Navy Federal maintains email addresses; (2) Postcard Notice to Account Holders for whom Navy Federal does not have a valid email address and those who were sent an email that was returned undeliverable; and (3) Long Form Notice, which is available on the Settlement Website and which the Settlement Administrator could mail to any Settlement Class member who might request it. Keough Decl. ¶¶ 8-16; SA § 62. Each facet of the Notice Program was timely and properly accomplished. Keough Decl. ¶ 8-18. The Settlement Administrator also mailed notice of the Settlement to the appropriate State and Federal officials, as required under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. *Id.* ¶ 4. The Settlement Administrator has not received any inquiries or objections from any State or Federal officials regarding the settlement. *Id.* ¶ 5.

On October 29, 2020, the Settlement Administrator received two electronic files containing a total of 1,711,989 line items comprising names, addresses, and account numbers for accountholders identified by Defendant as potential Settlement Class members. *Id.* ¶ 6. This data was promptly loaded into a database established for this Action, and the Settlement Administrator certified the mailing data

via the Coding Accuracy Support System in order to ensure the consistency of the contact information in the database. *Id.* The Settlement Administrator then reviewed the class member data and identified 182,990 line items where the potential Settlement Class member data was determined to be duplicative, leaving a total of 1,528,999 records. *Id.* Prior to the Notice Program, the Settlement Administrator verified potential Settlement Class members' mailing addresses through the National Change of Address database, the official United States Postal Service ("USPS") technology product that makes change of address information available to mailers to help reduce undeliverable mail. *Id.* ¶ 7.

Commencing on November 23, 2020, the Settlement Administrator caused the Court-approved Email Notice, which contained a link to the Settlement Website, to be sent to 1,488,256 email addresses, representing 1,505,357 potential Settlement Class members. *Id.* ¶ 8. Of those emails, 421,360, corresponding to 425,376 potential Settlement Class members, were returned undeliverable. *Id.*

On November 25, 2020, the Settlement Administrator caused the Court-approved Postcard Notice to be mailed via first-class mail to the 23,638 potential Settlement Class members for whom an email address was not available. *Id.* ¶ 9. On December 21, 2020, the Settlement Administrator caused the Court-approved Postcard Notice to be mailed to the 425,376 potential Settlement Class members to whom the Email Notice could not be delivered. *Id.* ¶ 10. The Settlement Administrator has tracked 12,896 Postcard Notices that were returned as undeliverable. *Id.* ¶ 12. For all Postcard Notices returned undeliverable, the Settlement Administrator uses all reasonable secondary efforts to deliver the Postcard Notice, including re-mailing with a forwarding address where one is available and, for those without a forwarding address, conducting an advanced address search using TransUnion's TLO search to attempt to locate a forwarding address. *Id.* ¶ 11. So far, the Settlement Administrator has re-mailed 3,848 Postcard Notices to forwarding addresses provided by USPS. *Id.* ¶ 12. For the remaining Postcard Notices that were returned undeliverable, the Settlement Administrator was able to locate updated

addresses for 5,024 potential Settlement Class members using the TransUnion TLO search, and has re-mailed Postcard Notices to the updated addresses. *Id.* 2,345 of those re-mailed or forwarded Postcard Notices have been returned as undeliverable. *Id.* All of the Notices included, among other information, a description of the Settlement's material terms; a date by which Settlement Class members may exclude themselves from, or "opt-out" of, the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the scheduled Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access the Settlement Agreement and other related documents and information. *Id.* Exs. B-C; SA § 58.

In addition to the Email Notice and Postcard Notice, on November 23, 2020, the Settlement Administrator established a dedicated Settlement Website (www.lambertnsffeelitigation.com), which contains summary information about the Settlement, copies of important case documents, answers to frequently asked questions, and provides mail and e-mail contact for the Settlement Administrator. Keough Decl. ¶ 13. The Settlement Website also includes the Long Form Notice in both English and Spanish. The Settlement Administrator also established and maintains a dedicated email address (info@lambertnsffeelitigation.com) to receive and respond to Settlement Class member inquiries. *Id.* As of the date of this Declaration, the Settlement Website has tracked 25,682 unique users who registered 52,980 page views. *Id.* ¶ 14. A single visitor to the website can register multiple views. *Id.* The Settlement Administrator will continue to maintain and update the website throughout the administration process. *Id.*

On November 23, 2020, the Settlement Administrator established and maintains a case-specific toll-free telephone number (1-833-707-1452) with interactive voice response technology, which Settlement Class members may call to obtain information about the Settlement. The toll-free number is available 24 hours a day, seven days a week. *Id.* ¶ 15. The automated toll-free line answers

frequently asked questions of Settlement Class members who call with or otherwise communicate such inquiries. As of the date of this Declaration, the toll-free number has received 3,082 calls for a total of 159 hours and 29 minutes. *Id.* ¶ 16.

The Notice Program was consistent with other notice programs that the Settlement Administrator has implemented for similar settlements that have received final approval, and achieved each of the planned objectives: direct contact information for potential Settlement Class members was identified from Navy Federal's internal records; Email Notice was sent directly to the email addresses of Account Holders for whom Navy Federal had an email address; Postcard Notice was sent directly to Account Holders for whom Navy Federal did not have an email address or whose Email Notice was returned undeliverable; and each of the forms of the Mailed Notice was designed to be noticeable, clear, simple, substantive, and informative, with no significant or required information missing. *Id.* ¶ 17. Further, the Notice Program was completed by the deadline set by the Court and in accordance with the Court's Preliminary Approval Order. *Id.* ¶ 18. The Notice Program reached 99.6% of potential Settlement Class members, well exceeding the 70% standard identified by the Federal Judicial Center. *Id.* ¶ 19; Joint Decl. ¶ 60; *see also* Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges," at 27 (3d ed. 2010).

### E. Release

The Settlement Class Member Release is narrowly tailored. As of the Effective Date of the Settlement, Plaintiff and each Settlement Class Member will be deemed to have fully and irrevocably released and forever discharged Navy Federal and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors and assigns, and the present and former directors, officers, employees, agents, insurers, members, attorneys, advisors,

consultants, representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, successors and assigns of each of them ("Released Parties"), of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, that result from, arise out of, are based upon, or relate to the conduct, omissions, duties or matters during the Class Period that were or could have been alleged in the Action ("Released Claims") relating to the assessment of Representation NSF Fees. SA § 84. Each Settlement Class Member is enjoined from bringing Released Claims against Navy Federal. *Id.* § 85. The Release includes both known and unknown claims, and Plaintiff and the Settlement Class Members also waive any rights they may have under Section 1542 of the California Code. *Id.* §§ 86-87.

F.     **Attorneys' Fees, Costs and Service Award**

Class Counsel have not been paid for their extensive efforts or reimbursed for litigation costs and expenses incurred. Joint Decl. ¶ 29. The Settlement Agreement provides that Class Counsel will apply for an award of attorneys' fees and costs. *See* SA § 89. Navy Federal has agreed not to oppose a request for fees up to 33.33% of the Settlement Fund (up to $5,332,800.00) and a request for reimbursement of reasonable litigation costs. *Id.* Such award will serve to compensate for the time, risk and expense Plaintiff's counsel incurred pursuing claims on behalf of the Settlement Class. However, if the Court does not approve an award of fees or costs, in whole or in part, that will not prevent the Settlement from becoming effective nor shall it be grounds for termination. *Id.*

The Settlement Agreement also provides for Class Counsel to request that the Court

approve a Service Award of $5,000.00 for the Plaintiff in recognition of her service as Class Representative. *Id.* § 93. Navy Federal does not oppose the request. *Id.* However, if the Court does not approve the Service Award, that will not prevent the Settlement from becoming effective nor shall it be grounds for termination. *Id.*

Concurrent with this filing, Class Counsel is filing a separate fee petition explaining why the requested fee and expense award and Service Award are reasonable.

## IV.   ARGUMENT

### A.   Legal Standard for Final Approval

Federal Rule of Civil Procedure 23 requires court approval of class action settlements. Fed. R. Civ. P. 23(e). "In deciding whether to approve a settlement the court must account for the strong judicial policy in favor of settlement to conserve scarce resources that would otherwise be devoted to protracted litigation . . ." *Skochin v. Genworth Fin., Inc.*, No. 3:19-cv-49, 2020 WL 6532833, at *10 (E.D. Va. Nov. 5, 2020) (citing *Robinson v. Carolina First Bank, N.A.*, No. 7:18-cv-02927, 2017 WL 719031, at *8 (D.S.C. Feb. 14, 2019)). "It has long been clear that the law favors settlement," *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992), and this is "particularly true in class actions," *Reynolds v. Fid. Investments Inst'l Ops. Co.*, No. 1:18-cv-423, 2020 WL 91874, at *3 (M.D.N.C. Jan. 8, 2020). Thus, there is a strong initial presumption that the compromise is fair and reasonable. *See In re Microstrategy, Inc. Securities, Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). Ultimately, approval of the settlement is committed to the sound discretion of the trial court. *See id.*

Courts in this Circuit look to specific factors to determine whether a settlement is "fair" and "adequate." *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991); *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 839 (E.D. Va. 2016). The "fairness" inquiry ensures "that

the settlement was reached as a result of good-faith bargaining at arm's length, without collusion, on the basis of (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *In re Jiffy Lube*, 927 F.2d at 159; *see also Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 571 (E.D. Va. 2016). Adequacy is assessed through "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter of the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *In re Jiffy Lube*, 927 F.2d at 159.[3]

Where, as here, a class settlement is reached before a class is certified, the plaintiff may also seek certification of a settlement-only class. *Brown*, 318 F.R.D. at 566; *see also* Fed. R. Civ. P. 23. The certification of a settlement-only class requires a showing that the Rule 23 factors are satisfied. *See Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 367 (4th Cir. 2004). Thus, the plaintiff must show that the Rule 23(a) factors are met: numerosity, commonality; typicality; and

---

[3] The 2018 amendments to Rule 23 also provide specific guidance to federal courts considering whether to approve a class settlement. *See* Fed. R. Civ. P. 23(e), Committee Notes. The factors that the Rules contemplate a court to consider include whether: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2). The Fourth Circuit has held that the *Jiffy Lube* standards "almost completely overlap with the new Rule 23(e)(2) factors, rendering the analysis the same." *See Herrera v. Charlotte School of Law, LLC*, 818 Fed. App'x 165, 176 n.4, 2020 WL 3118494, at *8 n.4 (4th Cir. 2020) (citing *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 474 n.8 (4th Cir. 2020)).

adequacy of representation. *See* Fed. R. Civ. P. 23(a); *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 423 (4th Cir. 2003). And where, as here, the plaintiff seeks preliminary certification of a settlement class under Rule 23(b)(3), the plaintiff must show that the questions of law or fact common to class members predominate over questions affecting only individual class members, and that a class action is superior to other available methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3); *Brown*, 318 F.R.D. at 566 (citing *In re The Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 104 (E.D. Va. 2009). The Court resolves these issues using the preponderance of the evidence standard. *Brown*, 318 F.R.D. at 566.

### B.      The Settlement satisfies the criteria for Final Approval

As detailed below, each of the *Jiffy Lube* factors weighs in favor of Final Approval. The Settlement was negotiated in the absence of collusion and is the result of good-faith, informed, arms'-length negotiation between experienced and sophisticated counsel, in conjunction with a Magistrate Judge of this Court. Joint Decl. ¶¶ 16-18, 23. Judge Anderson actively supervised and participated in the settlement discussions to help the Parties reach a fair compromise. *Id.* ¶ 17.

Any settlement requires the parties to balance the merits of the claims and defenses asserted and the attendant risks of continued litigation and delay. Plaintiff believes her claims are meritorious and that if the Settlement is not approved, she will prevail on appeal and eventually at trial. *Id.* ¶¶ 42-43. But Navy Federal, which obtained dismissal of Plaintiff's claims once and is opposing the appeal, denies liability and has demonstrated its willingness to litigate vigorously. *Id.* ¶ 44. If the Settlement does not occur, Plaintiff will need to persuade the Fourth Circuit to reverse the Court's order dismissing her claims; conduct discovery; brief and prevail at class certification; likely defeat at least one motion for summary judgment; and win at trial. *Id.* ¶¶ 44-45. Any potential recovery could be significantly delayed by appellate proceedings at multiple

stages of the case. *Id.* ¶ 45. There are many points in the litigation where Plaintiff could see her claims narrowed or dismissed, and she faces significant risk at each stage of the litigation. All that is certain is that if the case continues in litigation, class members will need to wait much longer before receiving any potential recovery. Thus, in Class Counsel's experience and informed judgment, the Settlement represents an excellent recovery for the Settlement Class, and the benefits of settling under the proposed terms outweigh the risks and uncertainties of continued litigation. *Id.* ¶¶ 42-49.

### 1.    The Settlement is fair.

When evaluating the fairness of a settlement, the Court must evaluate the settlement against the following criteria: (1) the posture of the case at the time the settlement was proposed; (2) the extent of discovery conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel. *In re Jiffy Lube*, 927 F.2d at 159.

***Posture of the case.*** The posture of the case at the time of settlement "allows the Court to determine whether the case has progressed far enough to dispel any wariness of possible collusion among the settling parties." *Brown*, 318 F.R.D. at 571 (citing *In re The Mills Corp.*, 265 F.R.D. 246, 254 (E.D. Va. 2009)). The posture of this case at the time of settlement supports Final Approval because both sides had had ample opportunity to develop and evaluate the strength of the claims and defenses. *See In re Jiffy Lube*, 927 F.2d at 159; *accord* Fed. R. Civ. P. 23(e)(2)(C)(i).

Class Counsel undertook significant work on behalf of the Settlement Class prior to settlement. Joint Decl. ¶¶ 21-22. As the Court recognized in the Preliminary Approval Order, "the Settlement was reached after significant work was performed" and Navy Federal had "provided substantial data regarding Representment Fees to allow the parties to evaluate the case." Preliminary Approval Order at 7. Prior to filing the Complaint, Class Counsel performed research on Navy Federal, its NSF Fee assessment practices, and consumer complaints. Joint Decl. ¶¶ 3,4,

33. Additionally, Class Counsel interviewed numerous consumers, and reviewed documents to gather information about Navy Federal's practices. *Id.* ¶ 3. Class Counsel thoroughly investigated Plaintiff's claims; prepared and filed the Complaint; briefed and argued Navy Federal's Motion to Dismiss; and, after the Court granted the motion, fully briefed an appeal of the Court's Order. *Id.* ¶¶ 3-4, 33. Class Counsel has also reviewed data regarding the Representment NSF Fees charged to the Settlement Class and provided informally by Navy Federal. *Id.* ¶ 12. Class Counsel retained and worked closely with a well-qualified data expert who spent hours analyzing the account-level transactional data provided by Navy Federal. *Id.* ¶ 6.

In addition to the factual bases for Plaintiff's claims, Class Counsel expended significant resources researching and developing the legal arguments for the claims at issue. *Id.* ¶ 4. Moreover, Class Counsel is familiar with the claims as they have litigated and resolved cases with similar factual and legal issues. *Id.* ¶ 8. Class Counsel has experience in understanding the remedies and damages at issue, as well as what information is critical in determining class membership. *Id.* ¶ 11. This background gave Class Counsel ample knowledge and experience to fully evaluate the strengths and risks of Plaintiff's claims, and the risks and benefits of further litigation. *Id.* ¶ 7.

Where, as here, the settling parties "vigorously contested" a motion to dismiss and "engaged in formal settlement mediation with the assistance of a professional mediator," there have been sufficient adversarial encounters to "dispel any apprehension of collusion." *Brown*, 318 F.R.D. at 571-72; *see also In re Neustar, Inc. Sec. Litig.*, No. 1:14cv885 (JCC/TRJ), 2015 WL 8484438, at *3 (E.D. Va. Dec. 8, 2015) (granting final approval where settlement was "reached relatively early in the litigation," but "only after the Settling Parties vigorously contested a motion to dismiss" and the lead plaintiff "noticed an appeal"). Thus, the first factor weighs in favor of

final approval.

***Extent of discovery.*** The second factor concerns whether the parties have sufficiently developed the claims in the case through discovery, such that the parties can appropriately value the case and arrive at a fair settlement. The Fourth Circuit has recognized that informal damages discovery can satisfy this element of the fairness inquiry, particularly where, as here, experts play a role in reviewing the data. *See In re Jiffy Lube*, 927 F.2d at 159 (recognizing that informal discovery can provide satisfactory information to support approval of settlement); *see also Brown*, 318 F.R.D. at 572 (granting final approval where class counsel "conducted a rigorous investigation of the claims before filing the Complaint" and the defendants provided "extensive information and data" during the mediation process); *Alloways v. Cruise Web, Inc.*, No. CBD-17-2811, 2019 WL 1902813, at *9 (D. Md. Apr. 29, 2019) (finding that fairness factor was satisfied because "procedurally [the case] is still in the relatively early stages of litigation" and "while no formal discovery has taken place, the parties did exchange information and documents informally"). This is because settling a case in its "early stages . . . will save the parties from years of litigation and expense." *U.S. Airline Pilots Ass'n v. Velez*, No. 3:14-cv-00577-RJC-DCK, 2016 WL 1615408, at *4 (W.D.N.C. Apr. 22, 2016) (finding that posture in the early stages "clearly weighs in favor of settlement").

Here, while the Parties have not engaged in formal discovery (because the Complaint was initially dismissed and the Fourth Circuit has not yet resolved Plaintiff's appeal), prior to settlement, Navy Federal provided substantial data regarding the Representation NSF Fees at the heart of the case. Joint Decl. ¶ 12. Working with Class Counsel, Class Counsel's expert analyzed the data provided by Navy Federal in order to approximate class-wide damages. *Id.* ¶ 13. Using informal discovery allowed Class Counsel to obtain information similar to what they would have

obtained through the discovery process, while allowing the Parties to focus on the discovery that was most relevant to the elements of Plaintiff's claims. *Id.* The additional discovery that Plaintiff would have sought in litigation, while also relevant, would have been less crucial. *Id.* ¶ 22. Since the crux of Plaintiff's claim was a breach of contract claim, the critical question in this case is legal, not factual: whether Navy Federal's Account agreements allow Navy Federal to assess Representment NSF Fees. The underlying contract was materially the same for all Settlement Class members. In short, the information provided by Navy Federal positioned Class Counsel to understand the maximum potential recovery should the case eventually go to trial and appreciate the value of compromise relative to that potential recovery. *See Brown*, 318 F.R.D. at 572 (stating that the "extent of discovery" factor "ensures that all parties appreciate the full landscape of their case when agreeing to enter into the Settlement"). Plaintiff has "conducted sufficient informal discovery and investigation to evaluate fairly the merits of Defendant['s] positions during settlement negotiations," so this factor also weighs in favor of final approval. *Id.* (citing *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 664 (E.D. Va. 2001)).

*Circumstances surrounding negotiations.* The circumstances surrounding the Parties' negotiations demonstrate that the Settlement was reached through arms'-length negotiations. *See In re Jiffy Lube*, 927 F.2d at 159; *accord* Fed. R. Civ. P. 23(e)(2)(B). "The objective of this factor is to ensure that counsel entered into settlement negotiations on behalf of their clients after becoming fully informed of all pertinent factual and legal issues in the case." *In re The Mills Corp.*, 265 F.R.D. at 255. "Courts will take into account whether a settlement was reached with the assistance of a respected and experienced mediator." *In re LandAmerica 1031 Exchange Servs., Inc. Internal Rev. Serv. § 1031 Tax Deferred Exchange Litig.*, No. MDL-2054, 2012 WL 13124593, at *3 (D.S.C. July 12, 2012).

Here, the Parties engaged in extensive, good-faith, arms'-length negotiations via mediation, including multiple mediation sessions and the mediation efforts that eventually led to the Settlement. Joint Decl. ¶ 23. Judge Anderson, a well-respected Magistrate Judge of this Court, oversaw the July 2020 mediation and subsequent negotiations. *Id.* ¶¶ 16-17. The Parties did not discuss attorneys' fees or a Service Award until after agreeing upon the material terms of the Settlement. *Id.* ¶ 19. These negotiations were "sufficiently informed, thorough, and at arm's length to conclude that the parties fairly arrived at the proposed Settlement." *Brown*, 318 F.R.D. at 572; *see also In re Neustar*, 2015 WL 8484438, at *4 (granting final approval where parties submitted mediation briefs and participated in mediation before experienced neutral); *Bicking v. Mitchell Rubenstein & Assocs., P.C.*, No. 3:11-cv-78-HEH, 2011 WL 5325674, at *5 (E.D. Va. 2011) (finding settlement fair where it was reached "under the supervision and direction" of a Magistrate Judge); *see also In re India Globalization Cap., Inc. Derivative Litig.*, No. DKC-18-3698, 2020 WL 2097641, at *4 (D. Md. May 1, 2020) (noting that "extensive formal mediation aided by a neutral mediator" is a "hallmark[] of a non-collusive, arm's-length settlement process"); *Nicholes v. Combined Ins. Co. of Am.*, No. 5:16-cv-10203, 2019 WL 2575066, at *2 n.1 (S.D. W. Va. Feb. 22, 2019) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). There is no reason to disturb the Court's preliminary conclusion that the Settlement is "not collusive, has no obvious defects, and falls within the range of reasonableness." Preliminary Approval Order at 7.

***Experience of counsel.*** The last factor asks the Court whether class counsel is sufficiently experienced to fairly represent the interests of the class. Here, Class Counsel is highly experienced in consumer class action litigation, and bank fee litigation specifically. *See* Joint Decl. ¶ 53, Exs. A-C. *See also* Fed. R. Civ. P. 23(e)(2)(A). In litigating this case, Class Counsel brought to bear

decades of experience litigating consumer class actions against financial institutions. Class Counsel have litigated and settled dozens of class actions involving overdraft fees, non-sufficient funds fees, and other fees charged by banks and credit unions like Navy Federal. Joint Decl. ¶¶ 53-55. Counsel may be evaluated by their affiliation with well-regarded and experienced law firms, as well, and here, Class Counsel are all affiliated with successful class-action firms. *See Brown*, 318 F.R.D. at 572-73. By any measure, Class Counsel satisfies this prong. *See In re Neustar, Inc.*, 2015 WL 8484438, at *4 (finding class counsel experienced based on review of firm resume detailing successes in similar class actions).

Courts afford substantial consideration to the view of Class Counsel in considering whether a class settlement is fair. *See In re The Mills Corp.*, 265 F.R.D. at 255 (stating that it is "entirely warranted" for the court to "pay heed to" the judgment of experienced class counsel). Based on their substantial experience in similar cases, Class Counsel endorse the Settlement as fair and adequate. Joint Decl. ¶ 24. Class Counsel's decision to settle the case is the product of "thorough exploration and deliberation, and as such, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given sufficient weight." *In re The Mills Corp.*, 265 F.R.D. at 255.

### 2. The Settlement is adequate and reasonable.

The adequacy portion of the *Jiffy Lube* analysis weighs the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement. *Brown*, 318 F.R.D. at 573 (citing *In re Am. Capital S'holder Derivative Litig.*, No. 11-2424-PJM, 2013 WL 3322294, at *13 (D. Md. June 28, 2013)). In assessing the adequacy of the Settlement, the Court looks to (1) the relative strength of the merits of the plaintiff's claims; (2) the existence of any difficulties of proof or strong defenses the plaintiff will encounter at trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant and likelihood of recovery; and (5) the

degree of opposition to the Settlement. *In re Jiffy Lube*, 927 F.2d at 159. In evaluating adequacy, it is important to remember that "A compromise is the essence of a settlement and the trial court should not make a proponent of a proposed settlement justify each term of a settlement agreement against a hypothetical or speculative measure of what concessions might have been gained since inherent in compromise is a yielding of absolutes and an abandonment of highest hopes." *Houston v. URS Corp.*, No. No. 1:08-cv-203 AJT/JFA, 2009 WL 2474055, at *5 (E.D. Va. Aug. 7, 2009). *See also Deem v. Ames True Temper, Inc.*, No. 6:10-cv-01339, 2013 WL 2285972, at *3 (S.D. W. Va. May 23, 2013) ("A settlement compromising conflicting positions in class action litigation serves the public interest"). The role of the Court is not to second-guess the settlement but to decide whether its overall terms are reasonable. *See Deem*, 2013 WL 2285972, at *3.

Here, each of the relevant factors is satisfied.

***Relative strength of the claims / Difficulties of proof.*** The first and second factors, which are generally considered together, evaluate "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult one." *In re The Mills*, 265 F.R.D. at 256. Plaintiff is confident in her claims, but Navy Federal has raised numerous defenses—and the Court granted its Motion to Dismiss with prejudice. Even if the Fourth Circuit were to rule in Plaintiff's favor, Navy Federal will continue to dispute the factual and legal bases for the suit. Any additional benefit to the Settlement Class from continued litigation could be offset by substantial costs from protracted litigation. *See Brown*, 318 F.R.D. at 573 (finding first and second factors warranted final approval where defendants "vigorously and consistently argued that Plaintiffs' claims lack merit" and further litigation posed substantial risks). The existence of these numerous disputed factual and legal issues creates uncertainty and risk for all parties, warranting approval. *See id.*

***Duration and expense of continued litigation.*** The third adequacy factor considers the burden to the class should the case continue in litigation. *See Brown*, 318 F.R.D. at 573 (finding factor satisfied where "completion of merits and expert discovery, class certification briefing, dispositive motions, trial, post-trial motions, and possible appeals would entail substantial time and expense" while the proposed settlement "would provide significant retrospective and prospective relief quickly"); *accord* Fed. R. Civ. P. 23(e)(2)(C)(i). Here, the likely duration and expense of continued litigation are substantial, with no guarantee of additional benefit to the Settlement Class. Joint Decl. ¶ 48. While the appeal of the Court's Order has been fully briefed, the Fourth Circuit has not yet heard argument or ruled. If the Court rules in Plaintiff's favor, this case will still be in its early stages when this Court receives the mandate. Litigation will almost certainly entail years of discovery, including written discovery, document review, and depositions. There will be significant motions practice, including a contested class certification motion, and possibly one or more motions for summary judgment. The expense and burden of trial will be significant. And there could be further appeals, including after a ruling on class certification and/or after trial. These costs will be borne by the Parties and the Court, yet there is no guarantee of recovery at the end of this long, hard road. On the other hand, the Settlement provides a certain recovery—both retrospective in the form of cash benefits, and prospective in the form of important disclosure changes—now. This factor weighs in favor of adequacy and final approval.

***Solvency of the Defendant.*** There is no indication that Navy Federal will be unable to satisfy a judgment, but the fourth factor is largely considered beside the point and is certainly no impediment to final approval. *See Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 494 (S.D. W. Va. 2002).

***Degree of Opposition.*** The final factor—here, a complete lack of opposition to the

Settlement—further supports a finding of adequacy. Following the successful Notice Program, the Settlement Class had ample opportunity to object to the Settlement. So far, no Settlement Class Member has objected. "Therefore, all Parties and the unanimity of potential Class members . . . agree that the Settlement is sufficiently adequate." *Brown*, 318 F.R.D. at 574; *see also In re The Mills Corp.*, 265 F.R.D. at 257-58 ("After receiving the notices, not a single putative class member objected . . . . This gives the Court a great deal of confidence in the settlement's adequacy, which is further bolstered by the paucity of opt-outs from the Class."). Here, absence of objection to date weighs strongly in favor of approval, a conclusion that is bolstered by the low number of opt-outs.

### 3. The Settlement is an outstanding recovery for the Settlement Class.

The Settlement provides an excellent result for the Settlement Class and treats the Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(C)-(D). Despite the Court's order granting Navy Federal's Motion to Dismiss with prejudice, Class Counsel successfully negotiated: (1) a $16,000,000.00 common fund that will provide cash payments directly to Settlement Class Members, without any claims process, (2) changes to Navy Federal's account agreement, and (3) the costs of Settlement Administration to be borne separately. The common fund and Settlement Administration Costs represent approximately 10.8% of most likely damages for Settlement Class Members. In light of the fact that this Court had previously dismissed Plaintiff's case—a result which, if upheld on appeal, would mean Settlement Class Members would get nothing—this is an outstanding result.

Courts in this Circuit routinely grant final approval to settlements providing between 5-15% of maximum potential damages. *See In re MicroStrategy, Inc. Sec. Litig.,* 148 F. Supp. 2d 654, 660 (E.D. Va. 2001) (order approving settlement amounting to approximately 13.9% of the maximum recovery at the time of judicial approval in securities fraud class action); *In re Genworth Fin. Sec. Litig.,* 210 F. Supp. 3d at 842 n.3 (order approving settlement amounting to

approximately 15% of the possible recovery in securities fraud class action); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 855 F. Supp. 825, 833 (E.D.N.C. 1994) (order approving settlement amounting to 5% of plaintiffs' estimated loss in securities class action). Importantly, settlements are not evaluated on whether they provide the best possible deal or whether the result is equivalent to a victory at trial. "[T]he settlement hearing is not a trial, and a court's role is more a 'balancing of likelihoods rather than an actual determination of the facts and law in passing upon whether the proposed settlement is fair, reasonable and adequate." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310(AJT/JFA), 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009). The trial court, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel. *See In re Microstrategy*, 148 F. Supp. 2d at 665 n.20 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Thus, "the mere fact that the proposed settlement may amount to only a fraction of plaintiffs' loss, even if damages allowed recovery of such a loss, is not a reason to deny approval." *Horton*, 855 F. Supp. at 833; *see also Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) ("[B]ecause the cash settlement may only amount to a fraction of the potential recovery will not per se render the settlement inadequate or unfair."). Where, as here, Plaintiff faced significant litigation risk enlarged by the Court's dismissal with prejudice of the Complaint, the Settlement will provide meaningful tangible benefits to Settlement Class Members.

The allocation of the Settlement is also fair and reasonable, and the manner of administering relief will be effective. Settlement Class Members will receive payments directly either via direct deposit or a check, in a *pro rata* amount that is adjusted to reflect the number of Representment NSF Fees paid. No Settlement Class Member will receive a payment of less than $5.00. The amount that each Settlement Class Member receives is based on objective criteria that apply to each Settlement Class Member equally. No Settlement Class Member will be treated more

favorably than any other. *See, e.g.*, *In re The Mills Corp.*, 265 F.R.D. at 258 (approving objective plan of allocation that addresses the losses of those harmed based on the degree of harm); *see also In re Neustar*, 2015 WL 8484438, at *6 (finding settlement was fair and reasonable where planned allocation "fairly treats class members" by awarding pro rata shares).

Similarly, the injunctive relief will equally apply to all Settlement Class Members (and all current and future Navy Federal members). The injunctive relief is a significant benefit and will allow Navy Federal members and future members to better understand Representation NSF Fees. This change will result in additional savings for Navy Federal members. Even if Plaintiff prevailed at trial, as a private litigant Plaintiff would have been unable to demand that Navy Federal stop charging Representation NSF Fees. By agreeing to provide additional disclosures, Navy Federal has agreed to the only injunctive relief Plaintiff would have been able to obtain had she prevailed at trial.

As another important Settlement benefit, Navy Federal agrees to bear the cost of notice and administration separate and apart from the $16,000,000 common fund. This, too, is valuable, saving the class likely hundreds of thousands of dollars in notice costs.

In sum, the Settlement benefits are excellent, especially considering the procedural posture of this case and the hurdles the class faced.

### 4. Notice to the Class was adequate and satisfied Rule 23 and due process.

In addition to having personal jurisdiction over Plaintiff, the Court also has personal jurisdiction over all members of the Class because they received the requisite notice and due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Due process and Rule 23 require that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B); *Shutts*, 472 U.S. at 812; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-75 (1974). The Court determines the reasonableness of

the effort based on the circumstances, anticipated results, costs, and amount involved. *See Burke v. Shapiro, Brown & Alt, LLP*, No. 3:14cv838 (DJN), 2016 WL 2894914, at *4 (E.D. Va. May 17, 2016). The interests of class members are protected when class members are provided with notice conveying the nature of the actions and claims, the opportunity and manner of opting out, the binding effect of the judgment, and the opportunity to enter an appearance through counsel. *See Manuel v. Wells Fargo Bank, N.A.*, No. 3:14cv238(DJN), 2016 WL 1070819, at *4 (E.D. Va. Mar. 15, 2016) (finding that notice by direct mail and email satisfied due process).

Here, Class Notice was provided through direct mail and email. The Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the Settlement Class Member contact information that Navy Federal possesses. Joint Decl. ¶ 57; Keough Decl. ¶¶ 17-19. *See also Galloway v. Williams*, No. 3:19-cv-470, 2020 WL 7482191, at *6 (E.D. Va. Dec. 18, 2020) (finding notice was "the best notice practicable under the circumstances" and satisfied due process where settlement administrator initially sent notice by email, mailed the notice if the email bounced back or there was no email for a class member, and took reasonable measures to update class members' contact information); *Manuel*, 2016 WL 1070819, at *4. The Notice was reasonably calculated under the circumstances to apprise Settlement Class Members of the material terms of the Settlement; the important deadlines to exclude themselves, object, and submit claims; the Final Approval Hearing date; the address of the Settlement Website; and the toll-free telephone line. *See* Keough Decl. ¶¶ 17-18 & Exs. B-C. As described more fully above, the Notices reached 99.6% of potential Settlement Class members. *Id.* ¶ 19. This reach far exceeds the standard set out by the Federal Judicial Center, which states that a publication notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm." Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action

Litigation: A Pocket Guide or Judges," at 27 (3d ed. 2010). The Notice Program provided sufficient notice to all persons entitled to receive notice and satisfied all applicable requirements of law.

### C. The Court should confirm the certification for settlement purposes of the Settlement Class.

Certification for settlement purposes "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re The Mills*, 265 F.R.D. at 266. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

A settlement class, like a litigation class, must satisfy the requirements of Rule 23. *See Brown*, 318 F.R.D. at 566. Here, as the Court already found in its PA Order, the proposed Settlement Class satisfies all Rule 23(a) and Rule 23(b)(3) requirements, and Navy Federal does not oppose certification for Settlement purposes. Nothing has changed that would alter the Court's finding that the Rule 23 factors are met. Plaintiff thus requests that the Court make final its certification of the Settlement Class for Settlement purposes. *See* PA Order at 3.

### D. The Court Should Confirm its Appointment of Plaintiff's counsel as Class Counsel under Rule 23(g)

Plaintiff also requests that the Court make final its preliminary appointment of Class Counsel pursuant to Fed. R. Civ. P. 23(g). In appointing class counsel, the Court "must" consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A); *see also In re Neustar*,

2015 WL 5674798, at *13. The court "may" also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

As described herein, attorneys and staff of Kopelowitz Ostrow Ferguson Weiselberg Gilbert, Tycko & Zavareei LLP, and Kaliel PLLC have expended a great deal of time, effort, and resources investigating and prosecuting this litigation. Kelly Guzzo, PLC, a firm that regularly prosecutes class actions in this District, also serves as co-counsel in the Action and has provided support and guidance as to local practice to ensure that Class Counsel best represent the Settlement Class's interests. Class Counsel are experienced in consumer-class litigation and have strong knowledge of the applicable law. *See* Joint Decl. ¶ 53 & Exs. A-C. Class Counsel's firms are well-resourced, established, and successful firms and have brought their resources to bear in order to achieve an excellent result for the Settlement Class. Accordingly, Plaintiff requests that the Court make final its preliminary appointment of Jeff Ostrow and Jonathan Streisfeld of Kopelowitz Ostrow Ferguson Weiselberg Gilbert, Hassan Zavareei and Andrea Gold of Tycko & Zavareei LLP, and Jeffrey Kaliel and Sophia Gold of Kaliel PLLC, as Class Counsel.

**V.    CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests that the Court: (1) grant Final Approval of the Settlement; (2) affirm the certification for settlement purposes of the proposed Settlement Class, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3); (3) confirm the appointment of Plaintiff Lambert as Class Representative; (4) confirm the appointment as Class Counsel of the law firms and attorneys previously identified in paragraph 13 of the Preliminary Approval Order; (5) deny timely objections, if any; and (6) enter Final Judgment.  A proposed order is attached for the Court's consideration as ***Exhibit 4***.

Date: February 9, 2021

/s/ _____ Kristi C. Kelly _____

Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
kkelly@kellyguzzo.com
aguzzo@kellyguzzo.com
casey@kellyguzzo.com

Jeff Ostrow (pro hac vice)
Jonathan M. Streisfeld (pro hac vice)
KOPELOWITZ OSTROW
FERGUSION
WEISELBERG GILBERT
One W. Las Olas Blvd.
Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954)525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com

Jeffrey D. Kaliel (pro hac vice)
Sophia G. Gold (pro hac vice)
KALIEL PLLC
1875 Connecticut Ave., NW
10th Floor
Washington, DC 20009
(202) 350-7483
jkaliel@kalielpllc.om
sgold@kalielpllc.om

Hassan A. Zavareei (pro hac vice)
Andrea R. Gold (pro hac vice)
Katherine M. Aizpuru (pro hac vice)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington DC, 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
agold@tzlegal.com
kaizpuru@tzlegal.com

*Attorneys for Plaintiff and the Settlement Class*

# EXHIBIT 7

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

RUBY LAMBERT, individually and on behalf
of all others similarly situated,

        Plaintiff,

     v.

NAVY FEDERAL CREDIT UNION,

        Defendant.

Case No. 1:19-cv-00103-LO-MSN

Hon. Liam O'Grady

## AMENDED FINAL APPROVAL ORDER APPROVING
## CLASS ACTION SETTLEMENT AND GRANTING APPLICATION
## FOR ATTORNEYS' FEES AND COSTS, AND SERVICE AWARD

WHEREAS, the Parties in the above-captioned class action entered into a Settlement Agreement and Release;

WHEREAS, Plaintiff has submitted the Unopposed Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees and Costs and Service Award in this case;

WHEREAS, on October 27, 2020, the Court entered a Preliminary Approval Order which, inter alia: (i) preliminarily approved the Settlement; (ii) determined that, for purposes of the settlement only, the Action should proceed as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure; (iii) appointed Plaintiff Ruby Lambert as Class Representative; (iv) appointed as Class Counsel Jeff Ostrow and Jonathan Streisfeld of the Kopelowitz Ostrow Ferguson Weiselberg Gilbert, Jeffrey Kaliel and Sophia Gold of Kaliel PLLC, and Hassan Zavareei and Andrea Gold of Tycko & Zavareei LLP; (v) approved the form and manner of Notice Program; and (vi) set a hearing date to consider Final Approval of the Settlement;

WHEREAS, Notice was provided to all persons identified in the potential Settlement Class member list in accordance with the Court's Preliminary Approval Order by individual email and/or mailings to all potential persons in the Settlement Class who could be reasonably identified;

WHEREAS, on March 26, 2021, at 10:00 a.m., at the United States District Court for Eastern District of Virginia, Alexandria Division, 4 Albert V. Bryan U.S. Courthouse 401 Courthouse Square Alexandria, VA 22314, the Honorable Liam O'Grady held a Final Approval Hearing to determine whether the Settlement was fair, reasonable, and adequate, and to consider Plaintiff's Motion for Attorneys' Fees, Costs, and Service Award for the Class Representative; and

WHEREAS, based on the foregoing, having considered the papers filed and proceedings held in connection with the Settlement, having considered all of the other files, records, and proceedings in the Action, and being otherwise fully advised,

IT IS HEREBY ORDERED AND ADJUDGED as follows:

1.      This Court has jurisdiction over the subject matter of the Action and over all Parties to the Action, including all Settlement Class Members.

2.      This Order incorporates the definitions in the Agreement, and all capitalized terms used in this Order have the same meanings as those set forth in the Agreement.

3.      The Notice provided to the Settlement Class in accordance with the Preliminary Approval Order was the best notice practicable under the circumstances and constituted due and sufficient notice of the proceedings and matters set forth therein, to all persons entitled to notice. The Notice fully satisfied the requirements of due process, Federal Rule of Civil Procedure 23, and all other applicable law and rules.

4.      The Court finds Navy Federal has complied with the notice provisions of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. The Settlement Administrator properly

and timely notified the appropriate government officials of the Settlement, pursuant to CAFA. The Court has reviewed the substance of the notice and finds that it complied with all applicable requirements of CAFA. Further, more than 90 days have elapsed since the notice was provided.

5.      The Settlement includes, as set forth in greater detail in the Settlement Agreement, a $16,000,000 common fund to cover Settlement Class Member Payments, attorneys' fees and costs, and a Service Award for the named Plaintiff; the costs of notice and administration to be paid separately by Navy Federal; and injunctive relief. Navy Federal shall adopt the following, or substantially similar language in its Account Agreement and related documents:

> Navy Federal may return debits (e.g., ACH payments) submitted for payment against the checking account if the amount of the debit exceeds the funds available in the checking account. Each time we return a debit for insufficient funds, we will assess an NSF fee in the amount shown on Navy Federal's current Schedule of Fees and Charges for each returned debit item. The entity that submitted the debit may submit another debit to Navy Federal even if we have already returned the prior debit for insufficient funds in the checking account. If the resubmitted debit again exceeds the funds available in the checking account, Navy Federal again will return the debit, resulting in an additional NSF fee. Thus, you may be charged multiple NSF fees in connection with a single debit that has been returned for insufficient funds multiple times.

6.      The Settlement (i) is in all respects fair, reasonable, and adequate to the Settlement Class, (ii) was the product of informed, arms-length negotiations among competent, able counsel, and (iii) was made based upon a record that is sufficiently developed and complete to have enabled the Class Representative and Navy Federal to adequately evaluate and consider their positions. In finding the Settlement fair, reasonable, and adequate, the Court has also considered the small number of optouts from the Settlement, indicating an overwhelming positive reaction from the Settlement Class, and the opinion of competent counsel concerning such matters. The Court has considered the one filed objection and for the reasons set forth in Plaintiff's response to the objection (DE #55), the objection is overruled and denied in all respects on its merits.

7.      The distribution plan proposed by the Parties is fair, reasonable, and adequate.

8.      The Class Representative and Class Counsel have fairly and adequately represented and will continue to adequately represent and protect the interests of Settlement Class Members in connection with the Settlement.

9.      A total of 17 Settlement Class members have opted-out of the Settlement. A list of those individuals is attached hereto as *Exhibit A*. Those individuals will not be bound by the Settlement or the Releases contained therein.

10.     Because the Court approves the Settlement as fair, reasonable, and adequate, the Court authorizes and directs implementation of all terms and provisions of the Settlement Agreement.

11.     All Parties to this Action, and all Settlement Class Members, are bound by the Settlement as set forth in the Agreement and this Order.

12.     The appointment of Ruby Lambert as Class Representative is affirmed.

13.     The appointment as Class Counsel of Jeff Ostrow and Jonathan Streisfeld of the Kopelowitz Ostrow Ferguson Weiselberg Gilbert, Jeffrey Kaliel and Sophia Gold of Kaliel PLLC, and Hassan Zavareei and Andrea Gold of Tycko & Zavareei LLP is affirmed.

14.     The Court affirms the finding that the Settlement Class meets the relevant requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) for purposes of the Settlement in that: (1) the number of Settlement Class members is so numerous that joinder is impracticable; (2) there are questions of law and fact common to the Settlement Class members; (3) the claims of the Class Representative are typical of the claims of the Settlement Class members; (4) the Class Representative is an adequate representative for the Settlement Class, and has retained experienced counsel to represent her and the Settlement Class; (5) the questions of law and fact common to the

4

Settlement Class members predominate over any questions affecting any individual Settlement Class member; and (6) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy.

15.    The Court orders the Parties to the Settlement Agreement to perform their obligations thereunder pursuant to the terms of the Agreement. Navy Federal is ordered to pay the Settlement Fund and Settlement Administration Costs consistent with the terms of the Agreement. Provided it is economically feasible, should any funds remain after the initial distribution, the Parties shall do a second distribution *pro rata* to those who received Settlement Class Member Payments. If residual funds remain following a second distribution, or in the event a second distribution is not economically feasible, the Parties, subject to the Court's approval, shall distribute the remaining funds, if any, to a *cy pres* recipient that works to promote financial literacy, including for military members or veterans.

16.    Judgment shall be, and hereby is, entered dismissing the Action with prejudice, on the merits, and without taxation of costs in favor of or against any Party.

17.    The Releasing Parties hereby fully and irrevocably release and forever discharge Navy Federal and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors and assigns, and the present and former directors, officers, employees, agents, insurers, members, attorneys, advisors, consultants, representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, successors and assigns of each of them, of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, that result from, arise out of, are

based upon, or relate to the conduct, omissions, duties or matters during the Class Period that were or could have been alleged in the Action, relating to relating to the assessment of Representment NSF Fees.

18.     The Court hereby decrees that neither the Settlement, nor this Order, nor the fact of the Settlement, is an admission or concession by Navy Federal or the Released Parties of any fault, wrongdoing or liability whatsoever, or as an admission of the appropriateness of class certification for trial or dispositive motion practice. This Order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Action. Nothing relating to the Settlement shall be offered or received in evidence as an admission, concession, presumption or inference against Navy Federal or the Released Parties in any proceeding, other than such proceedings as may be necessary to consummate or enforce the Settlement Agreement or to support a defense based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense.

19.     Class Counsel is awarded attorneys' fees in the amount of $5,332,800.00, which is 33.33% of the Settlement Fund, and costs in the amount of $26,571.82, such amounts to be paid from the Settlement Fund in accordance with the terms of the Agreement. Class Counsel's expertise, perseverance, and skill allowed them to obtain an excellent result for the Settlement Class. Class Counsel's extensive experience litigating complex class actions, and their tenacity in the face of significant risk and complexity, allowed them to achieve an outstanding recovery that provides substantial benefits to Settlement Class Members. The Court concludes that the factors provided in *Fangman v. Genuine Title, LLC*, No. CV RDB-14-0081, 2017 WL 86010, at *3-4 (D. Md. Jan. 10, 2017), weigh in favor of the attorneys' fees awarded to Class Counsel.

20.     The Class Representative is awarded a Service Award of $5,000.00, such amount to be paid from the Settlement Fund in accordance with the terms of the Agreement.

21.     The Court hereby retains and reserves jurisdiction over: (a) implementation of this Settlement and any distributions from the Settlement Fund; (b) the Action, until the Effective Date, and until each and every act agreed to be performed by the Parties shall have been performed pursuant to the terms and conditions of the Settlement Agreement, including the exhibits appended thereto; and (c) all Parties, for the purpose of enforcing and administering the Settlement.

22.     In the event that the Effective Date of the Agreement, does not occur, the Settlement shall be rendered null and void to the extent provided by and in accordance with the Agreement, and this Order shall be vacated. In such event, all orders entered, and releases delivered in connection with the Settlement shall be null and void and the Action shall return to its status immediately prior to execution of the Agreement.

23.     With the exception of those listed on Exhibit A, the Court adjudges that the Class Representative and all Settlement Class Members shall be bound by this Final Approval Order.

24.     Upon the entry of this Order, the Class Representative and all Settlement Class Members shall be enjoined and barred from asserting any claims against Navy Federal and the Released Parties arising out of, relating to, or in connection with the Released Claims.

25.     There being no just reason for delay, the Clerk of Court is hereby directed to enter final judgment forthwith pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED this** _____8th_____ **day of** ____April____, **2021.**

_____
The Honorable Liam O'Grady
United States District Judge

7

# Exhibit A

1. Andrea M. Batiste
2. Belarmino R. Costa
3. Chance T. Aguon
4. Christopher D. Thomas
5. Dallas C. Foster
6. Donald J. Charette
7. John M. Cheever
8. John P. Granda
9. Johnnie Averett
10. Larry V. McPeak
11. Maria A. Balazani
12. Robert L. Clark
13. William A King
14. Bruce N. George
15. Kaylajean McKenzie
16. Linda F. Maddox
17. Robert D. Barr, Jr.