1 | Taras Kick, CA Bar No. 143379
2 | Taras@kicklawfirm.com
3 | Tyler J. Dosaj, CA Bar No. 306938
  | Tyler@kicklawfirm.com
4 | **THE KICK LAW FIRM, APC**
5 | 815 Moraga Drive
  | Los Angeles, California 90049
6 | Tel: (310) 395-2988
7 | Fax: (310) 395-2088

8 | Attorneys for Plaintiffs Blanche Phlaum
9 | and Jason Jones, and the Putative Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

BLANCHE PHLAUM and JASON JONES, individually, and on behalf of all others similarly situated,

        Plaintiffs,

 v.

NAVY FEDERAL CREDIT UNION, and DOES 1-100,

        Defendants.

**CASE NO.:** 5:24-CV-00765-JGB-DTB
————————————

**OPPOSITION TO NAVY FEDERAL CREDIT UNION'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

**[Declaration of Tyler J. Dosaj filed concurrently herewith]**

<u>Hearing</u>
Date: August 26, 2024
Time: 9:00 a.m.
Place: Courtroom 1
**Hon. Jesus G. Bernal**

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL BACKGROUND ..................................................................2

III.  LEGAL STANDARD ...........................................................................3

IV.   ARGUMENT ........................................................................................3

    A.   The *Lambert* Settlement Is Inapplicable to Plaintiffs' Claims. ..3

    B.   This Court Has Subject Matter Jurisdiction Over the Action.....6

    C.   Plaintiffs State a Claim For Breach of Contract. .......................8

        1.   Defendant's Contracts Promise That a Single
            NSF Fee Will Be Charged On Each Returned
            Check or "Debit Item." .......................................................8

        2.   *Lambert* Is Not Binding On This Court and
            Does Not Alter This Analysis. .........................................15

    D.   Defendant's Attempt to "Pick Off" Plaintiff Phlaum's Claims
        Should Be Rejected..................................................................16

    E.   The Notice and Cure Provision Does Not Bar Plaintiff Jones's
        Claims. .....................................................................................19

    F.   Plaintiffs' Have Properly Alleged They Incurred Retry NSF Fees.
        ..................................................................................................20

    G.   The January 2021 Account Agreement Is Not Binding On
        Plaintiffs. .................................................................................20

    H.   There Is No Federal Preemption In a Case Like This ..............21

V.    CONCLUSION ...................................................................................25

# TABLE OF AUTHORITIES

**CASES**

*Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*, No. 2:17-CV-01515-KJM-AC, 2020 WL 3893395 (E.D. Cal. July 10, 2020)............................................................ 24

*Baldanzi v. WFC Holdings Corp.,* No. 07 Civ 9551, 2008 WL 4924987 (S.D.N.Y. Nov. 14, 2008) ........................................................................................................ 21

*Baptiste v. GTE Federal Credit Union*, No. 20-CA-002728, 2020 WL 13600942 (Fla. Cir. Ct. July 8, 2020) ...................................................................................... 10

*Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25 (1996).......................... 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 20

*Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915 (N.D. Cal. 2013) ............................ 8

*Chen v. Allstate Ins. Co.*, 819 F.3d 1136 (9th Cir. 2016) ......................................... 17

*Coleman v. Alaska USA Fed. Credit Union*, No. 3:19-CV-0229-HRH, 2020 WL 1866261 (D. Alaska Apr. 14, 2020). ................................................................ 21, 23

*Coto Settlement v. Eisenberg*, 593 F.3d 1031 (9th Cir. 2010)...................................... 2

*Darty v. Scott Credit Union*, No. 19L0793, St. Clair Cnty. Cir. Ct. Ill (June 24, 2020) ............................................................................................................................ 11

*Dominique v. Desert Financial Credit Union*, No. CV 2020-053959, 2021 WL 1960337 (Ariz. Sup. Ct., Jan. 27, 2021) ................................................................... 9

*E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003)....... 25

*Eichman v. Fotomat Corp.*, 759 F.2d 1434 (9th Cir. 1985). ........................................ 5

*Farmers Ins. Exch. v. Zerin*, 61 Cal. Rptr. 2d 707 (Ct. App. 1997). ......................... 24

*Farr v. United States*, 990 F.2d 451 (9th Cir. 1993) ................................................... 2

*Feller v. Transamerica Life Ins. Co.*, No. 216CV01378CASAJWX, 2016 WL 6602561 (C.D. Cal. Nov. 8, 2016). ..................................................................... 3, 6

*Flanagan v.* 143 F.3d 540, 545 (9th Cir. 1998) ......................................................... 7

*Fludd v. S. State Bank*, 566 F. Supp. 3d 471 (D.S.C. 2021)................................ 22, 23

*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797 (2005) ..................................... 24

*Gonzales v. CarMax Auto Superstores, LLC*, 845 F.3d 916 (9th Cir. 2017) ............. 18

*Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712 (9th Cir. 2012) ........................... 22

*Hawthorne v. Umpqua Bank*, No. 11-CV-06700-JST, 2013 WL 5781608 (N.D. Cal. Oct. 25, 2013). ............................................................................................................. 25

*Howards v. Fifth Third Bank*, No. 1:18-CV-869, 2023 WL 1778522 (S.D. Ohio Feb. 6, 2023) ................................................................................................................... 11

*In re Checking Acct. Overdraft Litig.*, 694 F. Supp. 2d 1302 (S.D. Fla. 2010) .......... 24

*In re Conseco Life Ins. Co. Cost of Ins. Litig.*, No. ML 04-1610 AHM, 2005 WL 5678842 (C.D. Cal. Apr. 26, 2005) ....................................................................... 4

*In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ............................................................................................................... 23

*In re TD Bank, N.A.*, 150 F.Supp.3d 593 (D.S.C. 2015). ....................................... 22

*In re TikTok, Inc., Consumer Priv. Litig.*, No. 20 C 4699, 2024 WL 278987 (N.D. Ill. Jan. 25, 2024) ...................................................................................................... 4

*Johnson v. Flagstar Bank, N.A.*, No. EDCV 23-1626-KK-SPX, 2024 WL 943944 (C.D. Cal. Jan. 22, 2024) ..................................................................................... 9

*King v. Navy Fed. Credit Union*, No. 223CV05915SPGAGRX, 2024 WL 441131 (C.D. Cal. Jan. 26, 2024). .................................................................................. 19

*Knox v. Ameriquest Mortg. Co.*, No. C 05 00240 SC, 2005 WL 1910927 (N.D. Cal. Aug. 10, 2005) .................................................................................................... 25

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) .............................. 8

*Lambert v. Navy Fed. Credit Union*, No. 1:19-CV-103-LO-MSN, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019) ..................................................................................... 15

*Lamoureux v. Trustco Bank*, 592 F. Supp. 3d 14 (N.D.N.Y. 2022) ........................... 20

*Lloyd v. Navy Fed. Credit Union*, No. 17-CV-1280-BAS-RBB, 2018 WL 1757609 (S.D. Cal. Apr. 12, 2018 ....................................................................................... 8

*Mawyer v. Atl. Union Bank*, No. 3:21CV726 (DJN), 2022 WL 1049311 (E.D. Va. Apr. 7, 2022) ...................................................................................................... 15

*Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020) ................................. 2

*Newbold v. SAFE Credit Union*, Case No. 34-2020-00280361 (Cal. Sup. Ct. Sacramento Cnty., May 3, 2021) ................................................................ 22

*NorthBay Healthcare Grp. - Hosp. Div. v. Blue Shield of California Life & Health Ins.*, 342 F. Supp. 3d 980 (N.D. Cal. 2018) ................................................ 24

*Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011) ..................................... 17

*Pitts. Main v. Gateway Genomics, LLC*, No. 15CV2945 AJB (WVG), 2016 WL 7626581 (S.D. Cal. Aug. 1, 2016 ............................................................. 17

*Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020). ........................................ 14

*Roberts v. Capital One, N.A.*, 719 F. App'x 33 (2d Cir. 2017) ................................... 9

*Scheenstra v. California Dairies, Inc.*, 153 Cal. Rptr. 3d 21 (Ct. App. 2013) ............. 8

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011). ................................. 25

*Synopsys, Inc. v. Mentor Graphics Corp.*, No. C 12-5025 MMC, 2013 WL 1365946 (N.D. Cal. Apr. 3, 2013) ............................................................. 8

*T. K. v. Adobe Sys. Inc.,* No. 17-CV-04595-LHK, 2018 WL 1812200 (N.D. Cal. Apr. 17, 2018) ............................................................................ 18

*Tomerlin v. Johns Hopkins Univ., Inc.*, No. CV 15-1255-GW(MANX), Dkt. No. 48 (C.D. Cal. June 15, 2015) .......................................................... 6

*Transcomp Sys., Inc. v. P.C. Scale, Inc.*, No. SACV080840AGRZX, 2009 WL 10672599 (C.D. Cal. Feb. 23, 2009 ......................................................... 19

*Varga v. Am. Airlines Fed. Credit Union*, No. CV 20-4380 DSF (KSX), 2020 WL 8881747 (C.D. Cal. Dec. 1, 2020) ....................................................... 21

*Watters v. Wachovia Bank, N.A.*, 550 U.S. 1 (2007) ................................................ 21

*Wieck v. CIT Grp., Inc.*, 308 F. Supp. 3d 1093 (D. Haw. 2018) ............................... 18

**STATUTES**

12 U.S.C. §§ 5531(a) and (c)(1) .............................................................. 15

12 U.S.C. §§ 5531(a) and (c)(1), ............................................................ 23

5536(a)(1)(B), ........................................................................................ 23

**OPPOSITION TO NAVY FEDERAL CREDIT UNION'S MOTION TO DISMISS**

Cal. Civ. Code § 1780(a)(4) ........................................................ 18

Fed. R. Civ. P. 8(d). ................................................................. 23

Sections 1031 and 1036 of the Consumer Financial Protection Act ......................... 23

**OTHER AUTHORITIES**

National Automated Clearing House Association ("Nacha") Rules ......................... 13

**OPPOSITION TO NAVY FEDERAL CREDIT UNION'S MOTION TO DISMISS**

## I.     __INTRODUCTION__

This class action lawsuit challenges Defendant Navy Federal Credit Union's practice of assessing multiple fees on the same refused check or returned ACH payment. Defendant's own regulator, the Consumer Financial Protection Bureau ("CFPB"), condemns the practice as follows: "[I]nstitutions engaged in unfair acts or practices by charging consumers multiple NSF fees when the same transaction was presented multiple times for payment against an insufficient balance in the consumer's account." Supervisory Highlights Junk Fees Special Edition, CFPB, at 5–6 (March 8, 2023) **(Ex. 27).**[1] Other federal regulators all agree. First Amended Complaint ("FAC") ¶¶ 23–26. And although the CFPB and OCC agree that the assessment of Retry NSF Fees may subject financial institutions to liability whether or not the practice is contractually authorized, this class action is limited to the period in which Defendant's contracts failed to authorize the practice, not its later amended contracts.

Plaintiffs' claims were not released in *Lambert*, and indeed Plaintiffs filed this action in full view of *Lambert*, expressly restricting the action only to post-*Lambert* claims. *See* FAC ¶¶ 15–20; 61–64; 67. Nor does the *Lambert* settlement deprive this Court of subject matter jurisdiction to examine its release language and conclude for itself that Plaintiffs' claims are not barred. Regarding the merits of Plaintiffs' claims, when Defendant's contracts are properly viewed from the perspective of a consumer, they are reasonably understood to promise that a single NSF fee will be assessed for "each refused check" and "each returned debit item," and not, counterintuitively, every time the *same* check or *same* item is returned. At least forty courts nationwide analyzing similar contractual language have denied motions to dismiss in Retry NSF class actions. Declaration of Tyler J. Dosaj ("Dosaj Decl.") ¶ 4 (listing cases). Finally, Defendant's remaining arguments should be rejected for the reasons set forth below.

---

[1] The CFPB also has found that the Retry NSF Fee practice constitutes an unfair or deceptive act or practice in violation of Sections 1031 and 1036 of the Consumer Financial Protection Act, 12 U.S.C. §§ 5531(a) and (c)(1), 5536(a)(1)(B). FAC ¶ 114.

## II. FACTUAL BACKGROUND

Plaintiffs are California residents who held Navy Federal checking accounts during the class period. FAC ¶¶ 4–5. The class period in this case starts only *after* the *Lambert* class period ends, and is restricted only to Defendant's Retry NSF Fees after the *Lambert* class period. *Id.* ¶¶ 17, 67–68. Both Plaintiffs fell victim to Defendant's Retry NSF practice. Plaintiff Phlaum incurred fees as the result of a third party's resubmissions of previously rejected items on at least three occasions during the class period, while Plaintiff Jones incurred at least one such fee. *Id.* ¶¶ 62–64.

The contract that governed Plaintiffs' accounts when Defendant assessed these fees was the October 2020 Account Agreement, which did not even remotely state that NSF or overdraft ("OD") fees could be assessed on third party resubmission attempts, or even suggest that such attempts were conceptually possible. *See generally* Ex. A to FAC.  Defendant later materially amended the Account Agreement to contract for the Retry NSF practice, including as follows: "[Y]ou may be charged multiple NSF fees in connection with a single debit that has been returned for insufficient funds multiple times." Ex. C to FAC at 4. Substantially similar language was added regarding check transactions. *Id.* No such contract terms remotely existed in the contract which is the subject of this lawsuit. Further, Plaintiffs do not believe that they received any notice of the amendment, nor of the *Lambert* settlement. FAC ¶ 50.

## III.   LEGAL STANDARD

At the motion to dismiss stage, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to Plaintiffs." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020). "[E]vidence outside the pleadings . . . cannot normally be considered in deciding a 12(b)(6) motion." *Farr v. United States*, 990 F.2d 451, 454 (9th Cir. 1993). Courts may consider documents that a complaint "necessarily relies upon," but only to the extent "the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

**OPPOSITION TO NAVY FEDERAL CREDIT UNION'S MOTION TO DISMISS**

## IV.  **ARGUMENT**

### A. The *Lambert* Settlement Is Inapplicable to Plaintiffs' Claims.

Whether considering the *Lambert* release's plain language or the "identical factual predicate" doctrine, the *Lambert* settlement does not bar Plaintiffs' claims. Defendant ignores both the release's language and established Ninth Circuit case law holding that, notwithstanding such language, "a class action settlement's release is unenforceable against claims predicated on the defendant's post-settlement conduct." *Feller v. Transamerica Life Ins. Co.*, No. 216CV01378CASAJWX, 2016 WL 6602561, at *6 (C.D. Cal. Nov. 8, 2016).

First, the *Lambert* settlement's Section XIII Release is unambiguous in that it does not release claims based on Navy Federal's future conduct, but rather encompasses claims that "relate to the conduct, omissions, duties or matters **during the Class Period that were or could have been alleged in the Action**" regarding "Representment NSF Fees." Ex. 2 to Defendant's RJN at ¶ 84 (emphasis added). Identical language was included in the *Lambert* final approval order. Ex. 7 to Defendant's RJN at ¶ 17.  The definition of "Settlement Class" is also explicitly limited to "all current and former Navy Federal members in the United States who were charged Representment NSF Fees **during the Class Period**." Ex. 2 to Defendant's RJN at ¶ 44 (emphasis added). This limitation is further confirmed by the "Calculation of Automatic Distributions from Settlement Fund" section, which provides for payment to class members "based on their number of Relevant NSF Fees" incurred "during the Class Period." *Id.* ¶ 75. In other words, despite Defendant's argument that future damages after the class period were somehow included in the *Lambert* settlement, the Settlement Agreement itself shows no part of this payment is allocated to compensation for future Retry NSF Fees, further demonstrating that no party to the *Lambert* settlement contemplated the release of claims based on Defendant's future conduct. *Id.* The injunction provision also confirms this analysis because class members are restricted only from bringing "Released Claims" against Defendant, a

1  term which includes the foregoing time period limitations. *Id.* ¶¶ 37, 85.

2        It is undisputed the *Lambert* "Class Period" is "the period from January 28, 2014,

3  through the date of Preliminary Approval." *Id.* ¶ 16. It is undisputed Preliminary

4  Approval occurred on October 27, 2020. Ex. 4 to Defendant's RJN at 18. In sum, the

5  only claims released in *Lambert* were those based on Retry NSF Fees assessed between

6  January 28, 2014 to October 27, 2020, as these are the only claims that "were or could

7  have been alleged in the Action." Ex. 2 to Defendant's RJN at ¶ 84. Here, in contrast,

8  Plaintiffs bring claims relating to Retry NSF Fees assessed *after* the *Lambert* class

9  period, which were expressly not released. FAC ¶¶ 62–64. Further, Plaintiffs have

10 expressly avoided the *Lambert* release by alleging a class period that begins on October

11 28, 2020, one day after the close of the *Lambert* class period. *Id.* ¶ 67.

12        <u>Second</u>, even if the *Lambert* release were ambiguous, class action releases

13 *cannot* apply to the defendant's post-settlement conduct as a matter of law. That is

14 because claims based on future conduct could not possibly have been asserted in the

15 prior action and therefore cannot satisfy the identical factual predicate test. *In re*

16 *Conseco Life Ins. Co. Cost of Ins. Litig.*, No. ML 04-1610 AHM, 2005 WL 5678842,

17 at *7 (C.D. Cal. Apr. 26, 2005); *In re TikTok, Inc., Consumer Priv. Litig.*, No. 20 C

18 4699, 2024 WL 278987, at *10 (N.D. Ill. Jan. 25, 2024) ("Most courts applying [the

19 identical factual predicate doctrine] agree, for instance, that a class settlement cannot

20 release claims arising from a defendant's *future* conduct; actions that have not yet

21 occurred cannot form part of the same 'factual predicate.'") (emphasis in original).

22 Moreover, even if a class settlement attempts "to release claims predicated on [the]

23 defendant's willful conduct in the future, such a release would be unenforceable as

24 against public policy." *Feller*, 2016 WL 6602561, at *7. This result follows even where

25 "the facts alleged [are] much the same" in the settlement and subsequent suit, as the

26 Ninth Circuit has held:

27        *Eichman I* was settled on September 7, 1977 and judgment was entered as of that date, the causes of action disposed of in *Eichman I* were for pre-September
28        7, 1977 conduct and the judgment cannot bar suit brought on post-September 7,

---

4

**OPPOSITION TO NAVY FEDERAL CREDIT UNION'S MOTION TO DISMISS**

1977 conduct . . . *Eichman I,* therefore, does not preclude the pendent state claims in *Eichman III* insofar as the latter alleges wrongful conduct occurring after the settlement date of the former.

*Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1436, 1438–39 (9th Cir. 1985).

Applying these standards, the court in *Rael v. Children's Place, Inc.* refused to enforce a settlement agreement to enjoin a separate proceeding, reasoning that the identical factual predicate test was not satisfied because that proceeding was limited to post-class period conduct:

> Nonetheless, the conduct described in the *Gonzalez* Complaint is distinct from the conduct alleged in the *Rael* Complaint in one very important respect: time. The *Rael* class includes those who purchased discounted items from The Children's Place between *February 11, 2012 and January 28, 2020*, ECF No. 144-1 at 3; ECF No. 69, and the proposed class in *Gonzalez* includes those who purchased discounted items from The Children's Place *on or after January 29, 2020*, ECF No. 34 at 19 ¶ 53. Thus, the alleged misconduct in *Rael* occurred entirely before the alleged misconduct in *Gonzalez.*

No. 16-CV-370-GPC-BGS, 2024 WL 1444980, at *5 (S.D. Cal. Apr. 3, 2024) (emphasis in original). The court noted that "a claim arising subsequent to a prior action is not barred by res judicata even if the new claim is premised on facts representing a continuance of the same course of conduct" because "while the earlier judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Id.* at *6 (quotations omitted) (cleaned up). An identical analysis applies here because the *Lambert* class period ended on October 27, 2020, and the instant class period begins on October 28, 2020. FAC ¶¶ 17, 67.

### B. This Court Has Subject Matter Jurisdiction Over the Action.

Navy Federal's 12(b)(1) argument should be rejected for three reasons. <u>First</u>, it asks the Court to dismiss this action without so much as reviewing the *Lambert* release, which unambiguously permits Plaintiffs' claims to proceed, as argued *supra*. Yet courts routinely review settlements approved by other courts, construe their language,

and determine whether they apply to the claims at bar. For instance, in *Feller v. Transamerica Life Ins. Co.*, the court interpreted the settlement agreement's release language and allowed the lawsuit to proceed even though, as here, the prior settlement had been approved by *another* court which had explicitly "retain[ed] jurisdiction as to all matters relating to administration, consummation, enforcement and interpretation of the Settlement Agreement[.]" *Feller v. Transamerica Life Ins. Co.*, No. 216CV01378CASAJWX, Dkt. No. 110-3, at 80 (C.D. Cal. Aug. 1, 2016) **(Ex. 23)**; *Feller*, 2016 WL 6602561, at \*5–6. Even in *Tomerlin v. Johns Hopkins Univ., Inc.*, which Defendant cites, the court noted that "it is not at all unusual for one court to interpret and apply a release term ordered by another court" and extensively analyzed the at-issue settlement release language before it "concluded that the release term cover[ed]" the *pro se* plaintiff's claims. *Tomerlin v. Johns Hopkins Univ., Inc.*, No. CV 15-1255-GW(MANX), Dkt. No. 48 at 2 (C.D. Cal. June 15, 2015) **(Ex. 24)**; *Id.* at Dkt. No. 40 at 4–5 **(Ex. 25)**; 2015 WL 13446285, at \*2 n. 2. Thus the *Tomerlin* court dismissed the case only after construing the settlement release against the plaintiff. This Court is likewise permitted to interpret the *Lambert* release and decide for itself whether it encompasses Plaintiffs' claims.

Second, the *Lambert* parties contracted for the Eastern District of Virginia to retain *exclusive* jurisdiction only in limited circumstances, and only in matters involving the *Lambert* class representative and Defendant: "The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have **exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties**. . . ." Ex. 2 to Defendant's RJN ¶ 116 (emphasis added).

This provision uses the phrase "shall retain jurisdiction" four times, but only once does it state that the court "shall have **exclusive** jurisdiction." *Id.* (emphasis added). The omission of the word "exclusive" before the other instances of "shall retain

---

6

**OPPOSITION TO NAVY FEDERAL CREDIT UNION'S MOTION TO DISMISS**

1    jurisdiction" implies that these other instances are *not* meant to reserve exclusive

2    jurisdiction. The Ninth Circuit in *Flanagan v. Arnaiz* left open "the possibility that in

3    some circumstances, the words, context, or subsequent order of the federal court might

4    show that retention of jurisdiction was not intended to be exclusive." 143 F.3d 540,

5    545 (9th Cir. 1998). That is precisely the case here.

6       Accordingly, the *Lambert* settlement reserves the Eastern District of Virginia's

7    exclusive jurisdiction only over lawsuits or disputes (1) "arising out of or relating to

8    this Agreement that cannot be resolved by negotiation and agreement" (2) "by counsel

9    for the Parties." Ex. 2 to Defendant's RJN ¶ 116. The instant action, however, does not

10    arise out of or relate to the *Lambert* agreement because, as argued *supra*, it is predicated

11    on entirely future conduct that occurred outside the scope of the *Lambert* release

12    period. Moreover, the disputes envisioned by this provision are limited to those

13    involving "counsel for the Parties," namely the attorneys serving as class counsel and

14    Defendant's counsel in *Lambert*. *Id.* This provision cannot be read to refer to

15    hypothetical future counsel in unrelated disputes, particularly because its drafters

16    cannot have foreseen whether the "Parties" to such disputes would be represented by

17    counsel or proceeding *pro se*. *Id.*

18       <u>Third</u>, the authority cited by Defendant on this point is inapposite because it does

19    not address claims based on post-settlement conduct that *could not* have been released

20    as a matter of law. *Flanagan* involved a suit "for breaching the settlement agreement"

21    itself. 143 F.3d at 543. That agreement was complex and expressly contemplated the

22    need for "future court supervision" to resolve "future disputes" that might arise due to

23    stock exchanges and loan repurchases set to occur between the parties per the

24    settlement's terms. *Id.* at 542–43. Moreover, the concern in *Flanagan* that *concurrent*

25    proceedings could interfere with the federal court's ability to manage the case is not

26    present here. *Id. Lambert* is no longer an active proceeding, and Judge Liam O'Grady,

27    who presided over *Lambert*, has retired from the bench and is unavailable to interpret

28    the *Lambert* settlement. *See* https://www.vaed.uscourts.gov/court-info/court-locations

---

**OPPOSITION TO NAVY FEDERAL CREDIT UNION'S MOTION TO DISMISS**

(listing current Eastern District of Virginia judges) (last accessed June 26, 2024).
*Flanagan* must also be understood in the context of *Kokkonen v. Guardian Life Ins.
Co. of America*, which makes clear that the purpose of a federal "retention of
jurisdiction" provision is merely to ensure that a federal court possesses subject matter
jurisdiction over actions to enforce the agreement, since such actions would otherwise
be relegated to state court. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.
375, 381 (1994); *Synopsys, Inc. v. Mentor Graphics Corp.*, No. C 12-5025 MMC, 2013
WL 1365946, at *3 (N.D. Cal. Apr. 3, 2013) (declining to apply *Flanagan* for this
reason). Such provisions are not, as Defendant argues, a mandate that absent class
members return to the court that entered a class settlement every time it is raised as a
defense in unrelated actions.

*Tomerlin* is similarly not helpful because it involved a *pro se* plaintiff and did
not analyze any Ninth Circuit authority discussed above in which suits based on post-
settlement conduct were allowed to proceed. *Tomerlin*, 2015 WL 13446285, at *1–2.

### C. Plaintiffs State a Claim For Breach of Contract.

#### 1. Defendant's Contracts Promise That a Single NSF Fee Will Be Charged On Each Returned Check or "Debit Item."

A contract is ambiguous if it is "reasonably susceptible to more than one
interpretation." *Scheenstra v. California Dairies, Inc.*, 153 Cal. Rptr. 3d 21, 38 (Ct.
App. 2013).[2] Here, dismissal is inappropriate because Plaintiffs offer a reasonable
interpretation of Defendant's contracts in effect before the January 2021 Account
Agreement and February 2021 Fee Schedule are proven to have become binding.

---

[2] It is premature to determine whether Virginia or California law applies to the breach
of contract claim and other common law claims, as Defendant cannot show that
Virginia law meaningfully differs from California law on these claims. *See, e.g., Bias
v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 928 (N.D. Cal. 2013). Regarding the UCL
and CLRA claims, the Virginia choice of law provision is unenforceable for the reasons
articulated by the court in *Lloyd v. Navy Fed. Credit Union*, No. 17-CV-1280-BAS-
RBB, 2018 WL 1757609, at *5 (S.D. Cal. Apr. 12, 2018).

As a preliminary matter, Defendant improperly interprets its contracts from the perspective of a sophisticated financial institution with knowledge of industry terminology. Courts in other overdraft fee class actions have recognized that a standardized banking contract must be interpreted from the perspective of a reasonable customer. *See, e.g., Johnson v. Flagstar Bank, N.A.*, No. EDCV 23-1626-KK-SPX, 2024 WL 943944, at *3 (C.D. Cal. Jan. 22, 2024) (holding that there were "various ways in which the Contract could have clearly stated that multiple payment attempts for the same 'item' would result in multiple NSF fees, but Defendant apparently chose not to use language that would be **clear and consistent with a reasonable customer's understanding**.") (emphasis added); *Dominique v. Desert Financial Credit Union*, No. CV 2020-053959, 2021 WL 1960337, at *6 (Ariz. Sup. Ct., Jan. 27, 2021) ("[P]laintiff relies on a much larger body of case law from other jurisdictions that **properly examines accountholder agreements from the perspective of a consumer, rather than a sophisticated financial institution**.") (emphasis added); *Roberts v. Capital One, N.A.*, 719 F. App'x 33, 37 (2d Cir. 2017) ("With respect to this provision, Capital One's preferred 'interpretation of the agreement ... makes little sense from [the account-holder's] point of view . . .'").

From the perspective of a customer, Navy Federal's relevant contractual language promises that a single NSF fee or overdraft fee will be assessed for each check or similar instrument authorized by the account holder that is rejected for insufficient funds, not for each representment of the *same* check or item. <u>First</u>, a plain reading of Navy Federal's contracts confirms this understanding. Navy Federal's Account Agreement promises that "**a fee**" (singular) will be assessed for "each refused check" and "each returned debit item" in the following provisions:

> **<u>A fee</u>** will be assessed in the amount shown on Navy Federal's current *Schedule of Fees and Charges* for each refused check.
>
> . . .
>
> **<u>A fee</u>** may be assessed in the amount shown on Navy Federal's current *Schedule of Fees and Charges* for each returned debit item.

October 2020 Account Agreement, Ex. A to FAC at 4. (emphasis added)

　　　　Second, grammatically and logically, the words "refused" and "returned" are used in the above as adjectives that modify "check" and "debit item" respectively, and therefore this language is not equivalent to "each time a check is refused" or "each time a debit item is returned," where "refused" and "returned" are used as verbs:

> Plaintiff notes that the Fee Schedule does not resolve the issue with its reference to "per item." She argues that grammatically and logically, a fee for each "returned item" is not the same thing as "a fee each time a debit item is returned." In the phrase "each returned debit item," the word "returned" is an adjective. In "each time an item is returned," the word "returned" is a verb. At this pleading stage, with Plaintiff providing a plausible basis to construe the contract in her favor, the Court concludes that GTE's position does not support dismissal of the breach of contract claim.

*Baptiste v. GTE Federal Credit Union*, No. 20-CA-002728, 2020 WL 13600942, at *3 (Fla. Cir. Ct. July 8, 2020) (approving this grammatical analysis in denying motion to dismiss Retry NSF claim). Navy Federal could have contracted that a fee would be charged each time an item is returned, and indeed later did so when it revised the Account Agreement following the *Lambert* settlement. *See* January 2021 Consumer Account Agreement, Ex. C to FAC at 4–5 ("Each time we refuse a check for insufficient funds, we will assess a nonsufficient funds ("NSF") fee . . ."). Similarly, in the October 2020 Account Agreement, Navy Federal contracted "each time" to describe the circumstances under which an overdraft fee would be assessed: "We will charge a fee of $20 **each time** we pay an overdraft." October 2020 Account Agreement, Ex. A to FAC at 5. Navy Federal's failure to so contract for its NSF fees in the same contracts suggests that it must have intended a different meaning, namely that a fee would *not* be assessed each time a check or "debit item" was returned for insufficient funds, but rather would be assessed on each refused check or returned debit item.

　　　　This analysis alone suggests that dismissal of Plaintiffs' claims regarding checks is inappropriate. FAC ¶ 62. Regarding claims based on re-presented ACH items,

Defendant's interpretation of the term "debit item" as unambiguously referring to a debit request by the merchant, rather than the customer, is tenuous at best. The term "debit item" is not defined and is used only once in the Account Agreement, leaving the customer to guess its meaning. *Howards v. Fifth Third Bank*, No. 1:18-CV-869, 2023 WL 1778522, at *7 (S.D. Ohio Feb. 6, 2023) (denying motion to dismiss Retry NSF claim and reasoning that "item" was not a "defined term within" the contract); *Darty v. Scott Credit Union*, No. 19L0793, St. Clair Cnty. Cir. Ct. Ill, at 14–15 (June 24, 2020) **(Ex. 9)** ("This Court notes that various courts have also denied motions to dismiss when the term 'item' is undefined by the financial institution, as is the case here."). Further, examining the terms "debit" and "item" separately, their usage throughout Navy Federal's contract confirms that a reasonable customer would interpret "debit item" as nearly synonymous with "check," *i.e.*, as a single instrument authorized by the account holder, which cannot become a new instrument when reprocessed. This interpretation is eminently reasonable because Navy Federal uses the term "item" interchangeably to refer to checks, and never to resubmission or reprocessing attempts:

> Adjustment to a CO-OP ATM
> **Check** Deposit
> For deposits made at CO-OP Network® ATMs, the ATM owner will impose a fee per **item** if an adjustment is processed due to one of the following discrepancies in the deposit: the currency appears to be counterfeit; the currency is foreign; the deposit contents do not equal the deposit amount in U.S. dollars as entered into the ATM; **an item is unsigned by the maker; an item is dated more than six months prior to the date of deposit**; the numerical and written amounts do not agree; the deposit is over $1,000.00 and contains an obvious alteration $2.00

October 2020 Fee Schedule, Ex. B. to FAC at 1 (emphasis added); *see also* Ex. A to FAC at 8 ("Longer delays may apply to **checks** deposited in branches and ATMs outside of the continental United States. Additionally, we may place a longer hold on **non-U.S. items** . . .) (emphasis added); *Id.* (At that time, you can withdraw the funds in cash and we will use the funds to pay **checks or other items**. For example, if you

---

11
**OPPOSITION TO NAVY FEDERAL CREDIT UNION'S MOTION TO DISMISS**

deposit a check on Monday, you may not be able to access the funds from that deposit, to include paying other **checks**, until Tuesday or possibly later.) (emphasis added); *Id.* (Available funds may be withdrawn in cash or used to pay **checks or other items**.) (emphasis added); *Id.* ("Federal Reserve Bank **checks**, Federal Home Loan Bank **checks**, and postal money orders, if these **items** are payable to you) (emphasis added).

To adopt Defendant's definition of "item" (a resubmission or reprocessing attempt) would render much of the contractual language above nonsensical. For instance, the phrase "an item is unsigned by the maker" would read "a resubmission attempt is unsigned by the maker." Ex. B. to FAC at 1. The phrase "non-U.S. items" plainly refers to the original check written by the customer, and a resubmission attempt cannot be "dated more than six months prior to the date of deposit[.]" *Id.*; Ex. A to FAC at 8. Only a check could possibly bear these qualities, and a customer could therefore reasonably understand that each "returned debit item" would incur only a single NSF fee, just as each "refused check" results in a single fee. *Id.* at 4. Defendant ignores the above language and seizes on one instance in which "item" refers to "Automated Clearing House (ACH) debits," yet from a customer's perspective, the term "debit" is itself undefined in the contract, and thus "Automated Clearing House (ACH) debits" are reasonably understood to be transactions initiated by the customer, just like the other items in the surrounding list. Ex. A to FAC at 4 ("ATM withdrawals; debit card transactions, also called Point of Sale (POS) . . . and checks written.").

The adjective "debit" in the contractual term "debit item" does not alter this analysis. Rather, a customer would reasonably understand "debit" in this context as distinguishing an item that withdraws money from the account from a "deposited item" that adds money to the account. Ex. B. to FAC at 1. To understand the meaning of "debit" in "debit item," it is reasonable to examine other instances where the contract uses "debit" as an adjective. This occurs 16 times throughout the Account Agreement and Fee Schedule, and not one of these uses connotes a merchant's attempted re-presentment. *See* Ex. A to FAC at 4–6, 10, 15; Ex. B. to FAC at 1–2. Instead, "debit"

---

**OPPOSITION TO NAVY FEDERAL CREDIT UNION'S MOTION TO DISMISS**

is used as an adjective 14 times in the phrase "debit card," which is an instrument by which the customer (not merchants) authorizes payments. *Id.* "Debit" is also used as an adjective in the phrase "debit transactions" once, where such transactions include "1) Branch withdrawals; 2) ATM withdrawals; 3) Debit card or POS transactions that merchants have presented to us for payment; 4) Transfers from one Navy Federal account to another; 5) ACH; and 6) Checks." Ex. A to FAC at 5-6. None of these examples indicates that a "debit transaction" can occur without customer authorization or be presented for payment more than once.

Third, the reasonableness of this interpretation of "item" is confirmed by the National Automated Clearing House Association ("Nacha") Rules. The Nacha Rules provide that an "order or request" for payment via the ACH network is called an "Entry," which "shall be deemed an 'item' within the meaning of Revised Article 4 of the Uniform Commercial Code[.]" Nacha Rules § 8.37, **Ex. 1** to Dosaj Decl. at 2. When a financial institution returns an Entry, the Nacha Rules allow a merchant to "Reinitiate" the returned Entry for payment; that is, they allow a merchant to present the same Entry for payment a second or third time. Nacha Rules § 2.13.4.1; Ex. 1 to Dosaj Decl. at 1. To ensure that the Reinitiated Entry is treated as a resubmission rather than as a new Entry, Nacha requires that it contain data "identical to the contents of the original Entry" and be labeled "RETRY PYMT." *Id.* Further, it is the customer's "new authorization" that transforms a resubmission into a new Entry, and there is no evidence that Plaintiffs provided such authorizations here. *Id.*; FAC ¶¶ 62–64. The Rules thus make clear that a "Reinitiated Entry" is another request for payment of the original Entry, not a separate Entry (*i.e.*, "item") that could trigger an additional fee.

Fourth, Plaintiffs' interpretation of "item" is further supported by industry usage. Banks and credit unions know how to distinguish between presentments of an item and the item itself. For instance, Air Academy Federal Credit Union explicitly states that its "Non-Sufficient Funds (NSF) Fee" is charged "per presentment[.]" FAC ¶ 52. Similarly, Central Pacific Bank unambiguously states that "Items and transactions . . .

**OPPOSITION TO NAVY FEDERAL CREDIT UNION'S MOTION TO DISMISS**

may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds." FAC ¶ 53. This contractual language, along with many other examples provided in the FAC, is significant because it demonstrates that (1) the Retry NSF practice challenged here is commonly expressly contracted for in the banking industry, and (2) the term "item" is broadly used throughout the banking industry in precisely the manner that Plaintiffs understand it.

Fifth, and critically for a customer without a background in finance, Navy Federal's contracts fail to mention even the possibility that a third-party merchant could resubmit returned items for payment without any action by the customer. *See generally* October 2020 Account Agreement, Ex. A to FAC; October 2020 Fee Schedule, Ex. B. to FAC. If customers are unaware that such resubmission attempts may occur, they cannot, *a fortiori*, anticipate fees on such attempts. This omission is all the more relevant in the context of Navy Federal accounts because Navy Federal, unlike most financial institutions, does not identify the transaction that triggered any given NSF fee on customer account statements, thereby preventing customers from determining that their fees were caused by resubmission attempts or re-presentments. FAC ¶ 65. The absence of this information further precludes the customer from understanding the contract in the manner Defendant urges in its Motion, as the customer cannot even see the "refused check" or "returned debit item" to which the contract refers.

Sixth, in contrast to Plaintiffs' interpretation, Defendant's interpretation of its contracts as authorizing Retry NSF Fees is tenuous because it leads to "absurd results." *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 717 (9th Cir. 2020). Specifically, Defendant's interpretation requires reading vague and innocuous phrases such as "each returned debit item" as authorizing fees that have been found to violate the law. The CFPB, Navy Federal's federal regulator, has found that the Retry NSF Fee practice constitutes an unfair or deceptive act or practice in violation of Sections 1031 and 1036

of the Consumer Financial Protection Act, 12 U.S.C. §§ 5531(a) and (c)(1), and 5536(a)(1)(B). FAC ¶ 114. Indeed, in the course of supervisory examinations, the CFPB has directed financial institutions to refund *all* Retry NSF fees assessed against customer accounts, including in an enforcement action requiring Bank of America to refund $80,400,000 to customers a*nd* pay a civil money penalty of $60,000,000, even though the bank had already partially refunded these fees as the result of a class action. FAC ¶¶ 21– 22.[3] A Navy Federal customer would not expect to be charged fees that violate the law, and this expectation reasonably informs the customer's interpretation of the contract.

### 2. *Lambert* Is Not Binding On This Court and Does Not Alter This Analysis.

*Lambert* does not compel a finding that Plaintiffs' interpretation of Defendant's contract is unreasonable because in that case, "[b]oth parties agree[d] that an 'item' is a request or invitation for payment." *Lambert v. Navy Fed. Credit Union*, No. 1:19-CV-103-LO-MSN, 2019 WL 3843064, at *3 (E.D. Va. Aug. 14, 2019). Plaintiffs have not made any such concession here. Another judge of the Eastern District of Virginia distinguished *Lambert* on these grounds as follows:

> *Lambert* provides limited guidance. Although the court in *Lambert* concluded that similar contract language unambiguously permitted the multiple-fee practice at issue here, the parties there *agreed* that item meant a request for payment, so it logically followed that each request for payment by a merchant created a distinct item under the contract. 2019 WL 3843064, at *3. Here, by contrast, the parties vigorously dispute whether item means a request for payment by a merchant or an instruction to pay by the accountholder. And as noted above, the contract language does not unambiguously resolve the dispute.

*Mawyer v. Atl. Union Bank*, No. 3:21CV726 (DJN), 2022 WL 1049311, at *5 (E.D. Va. Apr. 7, 2022) (emphasis in original). *Lambert* also ignored the perspective of a

---

[3] By comparison, Plaintiffs estimate that Defendant has assessed $200 million in such fees since the start of the *Lambert* class period. *See* Ex. 3 to Defendant's RJN at 20.

Navy Federal customer, who could reasonably understand the contract in the manner advocated by Plaintiffs. *See Lambert*, 2019 WL 3843064, at *3–4. In addition, *Lambert* either misinterpreted the plaintiff's allegations or misunderstood the concept of re-presentments, as is evident from its statement that "[i]f a check was rejected and a second check was submitted by the same merchant, in the same amount, for the same purpose, and the second check was also rejected, the contract clearly gives Navy Federal Credit Union the right to charge another fee." *Id.* at *4. But a resubmitted check is not a "second" check; it is quite literally the *same* check resubmitted a second time. FAC ¶ 23. Plaintiffs do not dispute that if *they* wrote new checks or provided new authorizations for ACH payments, these new transactions could legitimately trigger NSF fees under Defendant's contract, but that is not what happened here. FAC ¶¶ 62–64. Moreover, *Lambert* is an outlier case, as over forty courts nationwide have denied motions to dismiss Retry NSF claims alleging similar contractual language, including in two decisions by the Central District of California. Dosaj Decl. ¶ 3 (listing cases). *Lambert* also predates the substantial regulatory condemnation and enforcement actions discussed in the FAC, meaning the court could not have considered these materials in evaluating how a reasonable consumer would interpret Defendant's contracts. FAC ¶¶ 21–26 ("[R]epeated NSF fees are antithetical to the purpose of credit unions, detrimental to members, and inconsistent with the credit union system's statutory mission of meeting the credit and savings needs of consumers").

### D. Defendant's Attempt to "Pick Off" Plaintiff Phlaum's Claims Should Be Rejected.

Defendant's purported refund to Plaintiff Phlaum does not moot her claims for at least two reasons.[4] <u>First</u>, the circumstances of the purported refunds to Plaintiffs' accounts make clear that Defendant has adopted a "litigation strategy" designed to try

---

[4] Defendant does not appear to argue that the purported refund to Plaintiff Jones mooted his claims. Mot. at 12–13.

to pick off putative class action plaintiffs. Specifically, the February 22, 2024 pre-suit notice letter made clear that Plaintiff Phlaum intended to pursue a class action lawsuit against Defendant. Ex. H to FAC at 1. Defendant, through counsel, responded on March 13, 2024, requesting that Plaintiffs "hold off on filing anything until we can chat." FAC ¶ 81. Plaintiffs and Defendant then discussed a possible classwide resolution, but did not discuss a refund of Ms. Phlaum's fees specifically. *Id.* ¶¶ 81, 83. Nevertheless, Defendant used the pretext of class settlement negotiations to unilaterally deposit money into Ms. Phlaum's account on March 21, 2024 without going through counsel and without obtaining Ms. Phlaum's consent. *Id.* Similarly, after Plaintiffs mailed a pre-suit notice letter to Defendant on behalf of Plaintiff Jones on April 10, 2024, again stating it was with the intent to file a class action, Defendant deposited a purported refund into Mr. Jones's account, again without going through Plaintiffs' counsel and without warning to Mr. Jones. FAC ¶ 85; Ex. F to Defendant's RJN.

This behavior indicates that Defendant will attempt to "pick off" any plaintiff who, like Ms. Phlaum and Mr. Jones, complies with the Account Agreement's pre-suit notice requirement. Plaintiffs' claims fall within the "capable of repetition yet evading review" exception to mootness. *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1088 (9th Cir. 2011). Ms. Phlaum's claims have been rendered "transitory by virtue of the defendant's litigation strategy" and should not be deemed moot. *Pitts*, 653 F.3d at 1091. The Ninth Circuit has repeatedly disapproved of the defense tactic of "picking off" putative class representatives by attempting to moot their individual claims because such attempts "contravene Rule 23's core concern: the aggregation of similar, small, but otherwise doomed claims." *Id.* at 1091. Mootness will not be found where a claim "would evade review" if the "pick off" attempt were given effect. *Id.*; *see also Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1147–48 (9th Cir. 2016). This is not a situation where "Defendant's refund policy is available to all consumers regardless of whether litigation is anticipated or instituted," as some courts have cited in declining to apply *Pitts*. *Main v. Gateway Genomics, LLC*, No. 15CV2945 AJB (WVG), 2016 WL

1  7626581, at *5 (S.D. Cal. Aug. 1, 2016). Rather, barring a class settlement, class

2  litigation was plainly inevitable at the time of the purported refund. Ex. H to FAC at 1.

3      <u>Second</u>, a lawsuit or claim becomes moot only when a plaintiff receives "**all of**

4  **the relief** he or she could receive on the claim through further litigation." *Chen v.*

5  *Allstate Ins. Co.*, 819 F.3d 1136, 1144 (9th Cir. 2016) (emphasis added). This is true

6  even of pre-suit refunds. *Wieck v. CIT Grp., Inc.*, 308 F. Supp. 3d 1093, 1108 n. 5 (D.

7  Haw. 2018) (rejecting mootness challenge where pre-suit refund failed to provide

8  incidental, consequential, statutory, and treble damages and injunctive relief); *T. K. v.*

9  *Adobe Sys. Inc.,* No. 17-CV-04595-LHK, 2018 WL 1812200, at *10, *12 (N.D. Cal.

10  Apr. 17, 2018) (pre-suit refund did not moot claims where "at the time [plaintiff] T.K.

11  filed this action, [defendant] Adobe had only refunded T.K. half of the payments she

12  made" under the at-issue contract and the defendant's pre-suit and post-suit refunds

13  did not amount to "complete relief"  because they did not include "the requested

14  interest, attorney's fees, or costs").

15      Here, Defendant's purported refund to Plaintiff Phlaum did not provide all of

16  the relief she may receive on her claims, namely a refund of Retry NSF fees incurred

17  during the class period to class members, prejudgment interest, attorneys' fees,

18  punitive damages of treble the amount at issue, and statutory damages. Ex. H to FAC

19  at 1–2. The $203.38 deposit does not, for instance, include attorneys' fees, which are

20  available under the CLRA and which by February 24, 2024 had amounted to

21  $24,845.00. Dosaj Decl. ¶ 3; *see Gonzales v. CarMax Auto Superstores, LLC*, 845 F.3d

22  916, 918 (9th Cir. 2017). Further, Defendant failed to provide punitive damages of

23  treble the amount at issue, which are also available under the CLRA. Cal. Civ. Code §

24  1780(a)(4). Nor did Defendant provide any of the relief requested on behalf of putative

25  class members. *See Chen*, 819 F.3d at 1147 ("[A] judgment satisfying an individual

26  claim does not give a named plaintiff exercising her right to sue on behalf of other

27  employees, all that she has requested in the complaint (i.e., relief for the class).")

28  (alterations and quotations omitted) (cleaned up). Even considering Ms. Phlaum's

individual Retry NSF Fees, the refund period should have ended on "the date the January 2021 Account Agreement became effective," not in 2022, as arbitrarily selected by Defendant. Ex. H to FAC at 1. Plaintiffs dispute that the January 2021 Account Agreement ever became binding on them, meaning that Defendant also has admittedly failed to refund Ms. Phlaum's post-2022 Retry NSF Fees. In addition, Defendant fails to identify which fees it has purportedly refunded or what percentage of the $203.38 constitutes "interest," and its contention that it refunded "all NSF and OD fees" through 2022 is false, as Ms. Phlaum incurred $269.00 in NSF and OD fees on her December 2020 account statement alone. Mot. at 6–7 (emphasis removed); Dosaj Decl. ¶ 2. While Defendant may have meant to write "all NSF and OD fees" *that qualify as Retry NSF Fees*, this still does not explain which fees were purportedly refunded, and also admits that Ms. Phlaum did, in fact, incur Retry NSF Fees. Because Defendant failed to provide any of this requested relief, Ms. Phlaum maintains standing to seek it in this action.

### E. The Notice and Cure Provision Does Not Bar Plaintiff Jones's Claims.

Defendant's "Notice and Cure" provision does not bar Plaintiff Jones's claims for three reasons. First, Mr. Jones complied or substantially complied with this provision. Plaintiffs mailed a Notice of Claim letter specifically identifying Mr. Jones to Defendant on April 10, 2024. FAC ¶ 85; Ex. J to FAC. In addition, Plaintiffs mailed a Notice of Claim letter to Defendant on February 22, 2024, which was expressly written on behalf of Ms. Phlaum and class members, which adequately notified Defendant of Mr. Jones's claims even if he was not mentioned by name. FAC ¶ 80; Ex. H to FAC at 1. *Transcomp Sys., Inc. v. P.C. Scale, Inc.*, No. SACV080840AGRZX, 2009 WL 10672599, at *4 (C.D. Cal. Feb. 23, 2009). Finally, Mr. Jones also satisfied the Notice and Cure provision when he "complained about the NSF fees assessed against his account to Defendant," yet Defendant continued its practice of assessing Retry NSF Fees. FAC ¶ 85; *King v. Navy Fed. Credit Union*, No. 223CV05915SPGAGRX, 2024 WL 441131, at *4 (C.D. Cal. Jan. 26, 2024). Second,

the Notice and Cure provision first appears in the January 2021 Account Agreement and contains no language suggesting it should apply retroactively to the claims in this case, which arise out of the October 2020 Account Agreement. Ex. C to FAC at 8. *Atencio v. TuneCore, Inc.*, No. CV161925DMGMRWX, 2016 WL 11518598, at *2 (C.D. Cal. Sept. 29, 2016). Third, Defendant has not proven that the January 2021 Account Agreement, including the Notice and Cure provision, applies to Plaintiffs' accounts, as argued *infra*.

### F. Plaintiffs' Have Properly Alleged They Incurred Retry NSF Fees.

At the motion to dismiss stage, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to Plaintiffs." *Moore*, 966 F.3d at 1016. In alleging that they incurred Retry NSF Fees, Plaintiffs do not merely recite the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Rather, they allege specific fees that were incurred as the result of a merchant's resubmission of a prior transaction, and these allegations must be taken as true at this stage. FAC ¶¶ 62–64. These allegations satisfy the *Iqbal/Twombly* standard.

Defendant's argument that Plaintiffs have "confused *bank routing numbers* for re-presented transactions" should be rejected. Mot. at 6. This argument improperly asks this Court to conduct a fact-intensive inquiry, *i.e.*, whether a specific transaction triggered a Retry NSF Fee, at the motion to dismiss stage. *Lamoureux v. Trustco Bank*, 592 F. Supp. 3d 14, 27–29 (N.D.N.Y. 2022) (declining to engage in "fact-intensive inquiry" whether transactions qualified under plaintiff's liability theory at motion to dismiss stage in overdraft fee class action). It is not yet clear what the numbers associated with NSF fees on Plaintiffs' account statements signify, as even the letters Defendant attaches to its Motion refer to them as "Item Number (ID)", not "routing numbers." Exs. H, I to Vance Decl. at 1. Moreover, Defendant's argument improperly relies on evidence outside of the complaint, namely the Federal Reserve Bank's website and two letters sent to Plaintiff Jones. Mot. at 6; Exs. H, I to Vance Decl.

### G. The January 2021 Account Agreement Is Not Binding On Plaintiffs.

**OPPOSITION TO NAVY FEDERAL CREDIT UNION'S MOTION TO DISMISS**

Defendant's argument that Plaintiffs are bound by the post-*Lambert* contracts authorizing Retry NSF Fees, either as a result of the *Lambert* class notice or the May 2021 account statements, should be rejected. Mot. at 5 n. 1, 18. Plaintiffs have alleged that they did not receive notice of this agreement, and Defendant's contrary evidence may not be considered at this stage. FAC ¶ 50; *Coto*, 593 F.3d at 1038. Even if Plaintiffs had received the *Lambert* class notice, the October 2020 Account Agreement states that it may be changed only "upon 30 days' notice" to customers, and "notice" cannot reasonably mean notice of a *proposed* settlement that had yet to receive final approval, which conveys at best a hypothetical future contractual amendment. Ex. A to FAC at 6. Plaintiffs' May 2021 account statements fare no better in establishing a binding contract, as they refer only to an update on "page 7" of the "Important Disclosures," yet there is no language discussing NSF fees on page 7 of either the October 2020 or January 2021 Account Agreements. *See* Ex. A to FAC at 7; Ex. C to FAC at 7; Ex. A to Defendant's RJN. Further, Defendant has offered no evidence of what Plaintiffs would have seen had they visited its website at this time.

### H. There Is No Federal Preemption In a Case Like This.

Courts throughout the country have overwhelmingly rejected the argument that claims such as the ones in this lawsuit against a financial institution are preempted. *See, e.g.*, *Baldanzi v. WFC Holdings Corp.*, No. 07 Civ 9551, 2008 WL 4924987, at *2 (S.D.N.Y. Nov. 14, 2008) ("[C]auses of action sounding in contract, consumer protection statutes and tort have repeatedly been found by federal courts not to be preempted.") Federal credit unions "are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes" of federal law. *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007). For this reason, breach of contract and derivative claims are not preempted in overdraft fee class actions. *See, e.g., Varga v. Am. Airlines Fed. Credit Union*, No. CV 20-4380 DSF (KSX), 2020 WL 8881747, at *5 (C.D. Cal. Dec. 1, 2020) ("Varga's contract claim is not preempted as it is a state law contract claim and does not interfere with banking-

related functions."); *Coleman v. Alaska USA Fed. Credit Union*, No. 3:19-CV-0229-HRH, 2020 WL 1866261, at *1 (D. Alaska Apr. 14, 2020). Defendant's effort to recast Plaintiffs' claims "as a back-door effort to force the [credit union] to change its fee disclosures . . . is simply not a fair reading of the claim as alleged." *Fludd v. S. State Bank*, 566 F. Supp. 3d 471, 485–86 (D.S.C. 2021). Plaintiffs are not challenging the types of fees that Defendant charges or arguing that particular disclosures are required; rather, Plaintiffs' position is simply that, having agreed to contractual terms, Defendant should abide by them.

This analysis applies equally to Plaintiffs' claims other than breach of contract because Defendant has not shown how these claims would "significantly interfere" with its exercise of federally conferred powers. *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996). Plaintiff is not alleging that the "type" of fees, e.g., NSF fees are improperly charged in the abstract, but only that the terms of Defendant's contract limit the fees that may be charged. Indeed, "breach of contract claims not premised on unfairness or bad faith theories but on genuine disputes about the terms of the contract and the parties' compliance therewith" are not preempted as "their impact on the bank's exercise of its powers is only incidental." *In re TD Bank, N.A.*, 150 F.Supp.3d 593, 610 (D.S.C. 2015). The remedies that Plaintiffs seek will not require Defendant to stop charging Retry NSF Fees, modify its contractual language, or otherwise modify its fee practices. FAC at 35. Defendant has already revised its contract to authorize the Retry NSF practice. *Id.* ¶ 46. Plaintiffs are permitted to seek injunctive relief to prevent Defendant "from making fraudulent or misleading representations about its [Retry NSF Fee practice] in the future." *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 728 (9th Cir. 2012). Because the quasi-contract, conversion, UCL, and CLRA claims do not seek relief that differs in kind from the breach of contract claim, the former should not be held preempted if the latter is not preempted. *See Newbold v. SAFE Credit Union*, Case No. 34-2020-00280361, at 3-4 (Cal. Sup. Ct. Sacramento Cnty., May 3, 2021) **(Ex. 26)** (finding Retry NSF claims not

**OPPOSITION TO NAVY FEDERAL CREDIT UNION'S MOTION TO DISMISS**

preempted because they were "premised on Defendant allegedly not complying with the very terms of its own agreement" and would not "impose any requirements upon Defendant as a federal credit union inconsistent with federal law.").

Finally, Defendant cannot demonstrate an actual conflict between federal law and Plaintiffs' UCL claims because they derive from Sections 1031 and 1036 of the Consumer Financial Protection Act, 12 U.S.C. §§ 5531(a) and (c)(1), and 5536(a)(1)(B), and the CFPB already has found that the assessment of Retry NSF Fees violates these statutory provisions. FAC ¶ 114–116. The regulations implementing the FCUA provide that a credit union may "determine the types of fees or charges" it assesses, but only "consistent with . . . **other federal law**, and its contractual obligations". 12 C.F.R. § 701.35(c) (emphasis added). Accordingly, claims such as Plaintiffs' that Defendant has violated federal law are not preempted.

## I. Plaintiffs' Remaining Claims Should Not Be Dismissed.

In addition to the discussion below, none of Plaintiffs' remaining claims should be dismissed because Plaintiffs are "entitled to plead alternative claims" which it would be premature to dismiss at this stage. *In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014); Fed. R. Civ. P. 8(d).

**Breach of the Implied Covenant of Good Faith and Fair Dealing:** This claim should not be dismissed for the reasons discussed *supra* regarding the breach of contract claim, *i.e.*, Defendant exercised its discretion to interpret its contract in bad faith by adopting an unreasonable definition of "each refused check" and "each returned debit item" to charge multiple fees on the same item. FAC ¶ 93; *Coleman v. Alaska USA Fed. Credit Union*, No. 3:19-CV-0229-HRH, 2020 WL 1866261, at *6 (D. Alaska Apr. 14, 2020).

**Unjust Enrichment and Money Had and Received:** Plaintiffs plead their quasi-contract claims in the alternative to the breach of contract claim, which they are permitted to do at this stage. *Fludd v. S. State Bank*, 566 F. Supp. 3d 471, 489–90 (D.S.C. 2021) (allowing unjust enrichment/restitution claims to proceed as alternative

theories in overdraft fee class action). Defendant's statute of limitations defense should be rejected because Defendant concedes that at least some of the alleged Retry NSF Fees fall within the statutory period. Mot. at 20.

**Conversion:** This claim is properly pled because "[m]oney can be the subject of an action for conversion if a specific sum capable of identification is involved." *Farmers Ins. Exch. v. Zerin*, 61 Cal. Rptr. 2d 707, 709 (Ct. App. 1997). This standard has been deemed satisfied in overdraft fee class actions. *Lloyd*, 2018 WL 1757609, at *11. Plaintiffs had an immediate right to possession of their Retry NSF Fees. *In re Checking Acct. Overdraft Litig.*, 694 F. Supp. 2d 1302, 1323 (S.D. Fla. 2010) (collecting cases upholding conversion claims based on funds in bank accounts).

**UCL:** Plaintiffs state a claim under the "unlawful prong" of the UCL. Four independent predicates apply here: 12 U.S.C. § 5536(a)(1)(B) (CFPA), CLRA, breach of contract, and breach of the implied covenant. FAC ¶¶ 114–119; *Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*, No. 2:17-CV-01515-KJM-AC, 2020 WL 3893395, at *8 (E.D. Cal. July 10, 2020). Indeed, the CFPB has found that Retry NSF Fees violate the CFPA. 12. U.S.C. 5536(a)(1)(B); FAC ¶ 21. Plaintiffs also state a UCL "unfair prong" claim under either the "traditional balancing test or the tethering test." *NorthBay Healthcare Grp. - Hosp. Div. v. Blue Shield of California Life & Health Ins.*, 342 F. Supp. 3d 980, 988 (N.D. Cal. 2018); *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 253–54 (2011); FAC ¶¶ 21, 111–119, 120–124. The "unfair prong" claim is not duplicative of the breach of contract claim because the former relies on a distinct set of facts, *e.g.*, customers' lack of control over resubmission attempts. FAC ¶ 111.

**CLRA:** Defendant's arguments for dismissal of the CLRA claim should be rejected as follows: (1) Plaintiffs have pled at least some Retry NSF Fees within the statutory period, FAC ¶¶ 62–64, and the delayed discovery rule applies to the other fees. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005); FAC ¶¶ 65–66. (2) The plain text of the CLRA defines "Services" broadly to mean "work, labor, and services for other than a commercial or business use[.]" Cal. Civ. Code § 1761(b).

**OPPOSITION TO NAVY FEDERAL CREDIT UNION'S MOTION TO DISMISS**

Defendant misrepresented its banking services, as embodied in the Account Agreement, when it assessed Retry NSF Fees without contractual authorization. FAC ¶ 122; *see Knox v. Ameriquest Mortg. Co.*, No. C 05 00240 SC, 2005 WL 1910927, at *4 (N.D. Cal. Aug. 10, 2005) ("California courts generally find financial transactions to be subject to the CLRA."); *Hawthorne v. Umpqua Bank*, No. 11-CV-06700-JST, 2013 WL 5781608, at *10 (N.D. Cal. Oct. 25, 2013). Defendant's authority improperly considers legislative history to rewrite the CLRA's broad definition of "services." *E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 753 (9th Cir. 2003). (3) While Plaintiffs must demonstrate reliance, such reliance is presumed where "a misrepresentation or omission is material." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011). Plaintiffs adequately allege that "[r]easonable customers understand any given authorization for payment to be one, singular item, payment, or transaction" and thus do not expect Retry NSF Fees. FAC ¶¶ 43–44. (4) Plaintiffs may still seek injunctive relief to, *inter alia*, prohibit Defendant from charging Retry NSF Fees without contractual authorization in the future. (5) Plaintiffs satisfied the pre-claim notice requirement because the February 22, 2024 letter described Defendant's unlawful acts with particularity and demanded corrective action, and Defendant actually received the letter and refused to take such action. Ex. H to FAC; FAC ¶ 81.

## V. <u>CONCLUSION</u>

Plaintiffs respectfully request that Defendant's Motion be denied in its entirety. To the extent the Court is inclined to grant a part of the Motion, Plaintiffs respectfully request leave to amend the complaint. If the Court is inclined to convert the Motion into one for summary judgment, Plaintiffs respectfully request discovery concerning the issues discussed herein.

Dated: July 22, 2024                Respectfully submitted,

                                    /s/ *Tyler J. Dosaj*
                                    Taras Kick, CA Bar No. 143379
                                    Tyler J. Dosaj, CA Bar No. 306938

**THE KICK LAW FIRM, APC**
815 Moraga Drive
Los Angeles, California 90049
Telephone: (310) 395-2988
Facsimile: (310) 395-2088
Taras@kicklawfirm.com
Tyler@kicklawfirm.com

**OPPOSITION TO NAVY FEDERAL CREDIT UNION'S MOTION TO DISMISS**