# EXHIBIT 9

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
COUNTY OF ST. CLAIR, STATE OF ILLINOIS

| | |
|---|---|
| GINGER DARTY, on behalf of herself and all others similarly situated, ) ) ) | |
| Plaintiff, ) | Case No. 19L0793 |
| ) v. ) ) | |
| SCOTT CREDIT UNION, ) ) | |
| Defendant. ) | |

FILED
ST. CLAIR COUNTY
JUN 24 2020
CIRCUIT CLERK
42

## ORDER

This matter was heard on June 16, 2020, on the motion of Defendant Scott Credit Union ("Scott"), under 735 ILCS 5/2-615, to dismiss the claims in the First Amended Class Action Complaint (the "Complaint") filed by Plaintiff Ginger Darty, individually and on behalf of all others similarly situated ("Plaintiff"). Per agreement, the parties appeared by counsel via zoom technology due to currently remaining COVID-19 concerns. Parties waived any objection to a hearing in open court. The Complaint asserts claims for breach of contract, the covenant of good faith and fair dealing, unjust enrichment, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (the "ICFA"). After reviewing the pleadings and relevant caselaw, and having considered the argument of counsel, the Court finds as follows:

**FACTUAL BACKGROUND**

Plaintiff alleges two of Scott's fee practices breach the 2019 Membership Agreement and Disclosures, attached as Exhibit A to the Complaint (the "2019 Agreement"), the 2018 Membership Agreement and Disclosures, attached as Exhibit B to the Complaint (the "2018 Agreement"), and the Fee Schedule, attached as Exhibit C to the Complaint (collectively, the

**EXHIBIT 11**

"Contract"). These practices are the assessment of overdraft fees ("OD Fees") on "Authorize Positive, Settle Negative" transactions ("APSN Transactions") and the assessment of a fee on an item returned for insufficient funds each time the merchant re-submits the item to Scott ("Multiple NSF Fees").[1] Am. Compl. ¶¶ 7-42; 43-74.

The Court understands that an APSN Transaction is a debit-card transaction Defendant authorizes when the customer has a sufficient available balance to pay the merchant for the transaction. *Id.* at ¶¶ 7-17. When Defendant Scott authorizes the debit card transaction, it immediately reduces the available balance by the amount of the transaction and places a hold on those funds so the funds can be transferred to the merchant at settlement. *Id.* at ¶¶ 8-12; 18-26. Further, once the Defendant authorizes a debit card transaction it must pay the merchant for that transaction when it settles a few days later. *Id.* at ¶ 21. However, Scott does not keep those held funds to transfer to the merchant at settlement. *Id.* at ¶¶ 28-30. Instead, it lets those funds be used to pay for other, subsequent transactions. *Id.* at ¶¶ 28-30; 33. Thus, when the debit card transaction settles, there is no longer enough money in the account to transfer funds to the merchant at settlement. *Id.* at ¶¶ 10, 28-30. Plaintiff alleges that an APSN Transaction does not actually overdraw her checking account because Scott authorizes the transaction on sufficient available funds and promises to hold those funds for the settlement of that transaction. *Id.* at ¶ 18-26; 33; 42. Plaintiff alleges she was charged OD Fees on APSN Transactions on at least eight occasions in 2018 and 2019. *Id.* at ¶ 41.

Multiple NSF Fees occur when a customer is assessed more than one fee on the same item returned for insufficient funds. *Id.* at ¶ 44. This occurs when a customer authorizes a single payment to a merchant from her account. *Id.* at ¶ 70. When the merchant requests payment of

---

[1] Plaintiff does not allege a breach of the 2019 Agreement on its Multiple NSF Fee theory.

2

**EXHIBIT 11**

the item from the customer's checking account, Scott rejects the item due to insufficient funds in the customer's account, returns the item to the merchant, and charges the customer a $27 fee. *Id.* at ¶ 71. Then, the merchant resubmits the same item to Scott a few days later without any request by the customer to do so, and Scott rejects the same item again due to insufficient funds and again charges a $27 fee. *Id.* at ¶ 72. Plaintiff alleges that the merchant's resubmission of the same item for payment is simply an additional attempt to collect payment on the same item and, as such, should not result in an additional fee on the item. *Id.* at ¶ 59. Plaintiff alleges that this occurred with respect to a single attempted payment to Charter Communications on January 4 and January 11, 2019. *Id.* at ¶¶ 69-74. Plaintiff was charged $54 in fees on this single payment attempt. *Id.* at ¶ 73.

Scott does not contest Plaintiff's allegations that Scott engages in the practice of assessing OD Fees on APSN Transactions and Multiple NSF Fees on the same item. *See* Scott's Memorandum in Support of its Motion to Dismiss ("Def. Mem.") at 3. Scott contests whether these fee practices breach the Contract that Scott drafted. *Id.*

## **LEGAL STANDARD**

A court may dismiss a claim under 735 ILCS 5/2-615 only if "it is clearly apparent no set of facts can be proved allowing the plaintiff to recover." *Roberts v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 2019 IL 123594, ¶ 21, 135 N.E.3d 891, 896. "All facts apparent from the face of the complaint, including any attached exhibits, must be considered," *Hadley v. Doe*, 2015 IL 118000, ¶ 29, 34 N.E.3d 549, 557, and must "take[] all well-pleaded facts as true and construe[] the allegations in the complaint in the light most favorable to the plaintiff." *Roberts*, 2019 IL 123594, at ¶ 21. A Section 2-615 motion points out pleading defects-most notably, that the pleading is "substantially insufficient in law." 735 ILCS 5/2-615(a). Oftentimes, this motion is

**EXHIBIT 11**

called the "So what" motion. *Grant v. State,* 2018 IL App (4th) 170920, Par. 12 (inner quotation marks omitted). The burden is on the movant to clearly show that "no set of facts can be proved which would entitle the Plaintiff to recover." *McCleary v. Wells Fargo Sec., L.L.C.*, 2015 IL App (1st) 141287, ¶ 15, 29 N.E.3d 1087, 1092 (finding that plaintiff had satisfactorily alleged a cause of action for breach of contract).

## DISCUSSION

### I. Plaintiff's Breach of Contract Claims

As Defendant Scott only challenges whether a breach of the Contract occurred, the Court will not discuss the other elements of Plaintiff's breach of contract claims. As to whether Plaintiff adequately alleges that Scott breached the Contract, the Defendant bears the burden of showing the Contract expressly and unambiguously permits Scott to assess OD Fees on APSN Transactions and Multiple NSF Fees on the same item. *See, e.g., Vocaty v. Great Lakes Credit Union*, No. 19-L-727 at ¶ 3 (Lake Cty. Cir., Ill. June 3, 2020) (denying motion to dismiss because "there is no language within the contract that unambiguously authorizes" the fee practice). "A contract term is ambiguous if it can reasonably be interpreted in more than one way due to the indefiniteness of the language or due to it having a double or multiple meaning." *William Blair & Co., LLC v. FI Liquidation Corp.*, 358 Ill.App.3d 324, 334 (2005), 830 N.E.2d 760, 769-70. "The interpretation of an ambiguous contract is one of fact which may not be decided on a motion to dismiss under section 2–615." *Monroe Dearborn Ltd. P'ship v. Bd. of Educ. of City of Chicago*, 271 Ill.App.3d 457, 462, 648 N.E.2d 1055, 1058 (1995). "[A]ny ambiguity in the terms of a contract must be resolved against the drafter of the disputed provision." *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill.2d 460, 479, 693 N.E.2d 358, 368 (1998).

Taking Plaintiff's well-pleaded facts as true and construing her allegations in the

**EXHIBIT 11**

Complaint in the light most favorable to her, the Court finds the Defendant has not met its burden of showing that the Contract expressly and unambiguously permits the challenged fee practices. *Vocaty*, No. 19-L-727 at ¶ 3; *Roberts*, 2019 IL 123594, ¶ 21. This Court finds Plaintiff has proffered a reasonable interpretation of the Contract and, at the very least, the Contract is ambiguous as to whether the Contract permits the challenged fee practices. Respectfully, Defendant Scott cannot show at this stage that there is "no set of facts [that] can be proved which would entitle the Plaintiff to recover," the Court denies Scott's motion to dismiss. *McCleary*, 2015 IL App (1st) 141287, at ¶ 15; *Vocaty*, No. 19-L-727 at ¶ 3.

### A. Overdraft Fees on APSN Transactions

Upon a thorough examination of the 2018 and 2019 Agreements, it is apparent they contain the same, basic promise: an overdraft occurs when "the available funds in your share or deposit account are not sufficient to pay the full amount of a check, draft, transaction, or other item." 2018 Agreement §§ 14(a); 2019 Agreement §§ 14(a). Plaintiff alleges that Scott assesses OD Fees on debit card transactions when the available funds in her account are sufficient to pay the full amount of the transaction. Am. Compl. ¶¶ 1; 10; 14; 27; 33; 41-42; 91-97. Plaintiff alleges that this practice breaches the Contract and therefore, Plaintiff has stated a claim for breach of contract. *Id.* at ¶¶ 31; 42; 91-97; *see W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill.App.3d 752, 759-60, 814 N.E.2d 960, 967 (2004) (reversing dismissal of claims where the plaintiff's factual allegations of a breach of the contract, when viewed in the light most favorable to the plaintiff, were sufficient to state a breach of contract claim); *Walkingstick v. Simmons Bank*, No. 6:19-cv-03184-RK (W.D. Mo. Jan. 16, 2020) (ECF No. 59) ("Plaintiffs have pleaded Simmons breached the contract by charging overdraft fees when accounts were not

**EXHIBIT**

actually overdrawn, and that Plaintiffs were damaged as a result. Accepting that allegation as true for purposes of this motion, Plaintiffs have stated a claim for breach of contract.").

The Court further finds Defendant Scott cannot meet its burden of showing that the Contract gives Scott the clear and unambiguous right to assess OD Fees on APSN Transactions. First, in two separate provisions of the Contract, Scott promises to place "holds" for the amount of the debit card authorization:

> Your available balance is the amount of money in your account that is available for you to use. Your available balance is your actual balance less: (1) holds placed on deposits; (2) holds on debit card or other transactions that have been authorized but are not yet posted; and (3) any other holds, such as holds related to pledges of account funds and minimum balance requirements or to comply with court orders. We use your available balance to determine whether there are sufficient funds in your account to pay items, including checks and drafts, as well as ACH, debit card and other electronic transactions. Pending transactions and holds placed on your account may reduce your available balance and may cause your account to become overdrawn regardless of your actual balance.

2018 Agreement at § 14(c); 2019 Agreement at § 14(b); *see also* Am. Compl. at ¶ 25.

> Merchants may seek authorization for these types of transactions. The authorization request places a hold on funds in your account when the authorization is completed. The "authorization hold" will reduce your available balance by the amount authorized but will not affect your actual balance. The transaction is subsequently processed by the merchant and submitted to us for payment. This can happen hours or sometimes days after the transaction, depending on the merchant and its payment processor.

2018 Agreement at § 14(c); 2019 Agreement at § 14(b); *see also* Am. Compl. at ¶ 25.

This language expressly promises that Scott will place holds on the funds at the time of the authorization of the debit card transaction, which is when Plaintiff paid the merchant, and that these holds reduce Plaintiff's available balance. Plaintiff asserts that these held funds must be used to settle the transaction for which they were held, and that these held funds cannot be used for other, subsequent transactions. Am. Compl. at ¶¶ 7-22; 25-33.

**EXHIBIT 11**

The Court finds that this is a reasonable interpretation of the Contract, especially considering that the Federal Reserve Board has stated that the entire point of holds is to ensure that the funds remain available to settle the transaction. *Id.* at ¶ 12 (quoting Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01, 5546 (Jan. 29, 2009)).

The Circuit Court of the Nineteenth Judicial Circuit of Lake County, Illinois, made a similar finding in *Vocaty v. Great Lakes Credit Union*. No. 19-L-727 at ¶ 3. There, the court found that at a minimum, express contractual language concerning holds on funds, taken together with Plaintiff's allegations, establish a reasonable inference that Scott must transfer the held funds to the merchant for settlement of that particular transaction. *Id.* ("As to the OD on pre-authorized transactions, at a minimum, the allegations in the Compliant establish a reasonable inference as to how GLGU 'holding' of funds for the settlement of a charge could cause an OD or NSF at a later date"); *see also, e.g., Lloyd v. Navy Fed. Credit Union*, No. 17-CV-1280-BAS-RBB, 2018 WL 1757609, at *8 (S.D. Cal. Apr. 12, 2018) (denying motion to dismiss APSN claims because "if a temporary hold lasts until the transaction posts, then [] previously posted ATM withdrawals could not consume funds sequestered from positive funds"); *Clark v. Hills Bank and Trust,* No. LACV080753 at *3-*4 (Johnson Cty., Ia., Jun. 24, 2019) (denying motion to dismiss APSN claims where the contract promised to place "debit authorization holds" that reduced a customer's available balance); *Lussoro v. Ocean Fin. Fed. Credit Union*, --- F.Supp.3d ---, No. 2:18-cv-07400-PKC-ST, 2020 WL 1941236 at *3 n.7 (E.D.N.Y. Apr. 22, 2020) (finding that the "debit hold" language in the contract provides a basis to support Plaintiff's breach of contract claim); *Ingram v. Teachers Credit Union*, No. 49D01-1908-PL-O35431 at *5-*7 (Marion Sup. Ct. Ind. Feb. 18, 2020) (analyzing contract with "debit hold" language and holding

**EXHIBIT 11**

that based on the court's analysis "the Court notes that there is a possibility that the language is ambiguous").

As the Court understood in Defendant Scott's memorandum (reinforced by its June 16th argument), Scott relies on the language below to argue that it has the unambiguous right to assess OD Fees on debit card transactions:

> Pending transactions and holds placed on your account may reduce your available balance and may cause your account to become overdrawn regardless of your actual balance. In such cases, subsequent posting of the pending transactions may further overdraw your account and be subject to additional fees. You should assume that any item which would overdraw your account based on your available balance may create an overdraft.

2019 Agreement at § 14(b); 2018 Agreement at § 14(b); Def. Mem. at 5-6. The 2018 Agreement does not include the following sentence: "In such cases, subsequent posting of the pending transactions may further overdraw your account and be subject to additional fees." 2019 Agreement at § 14(b).

The Court finds that this provision does not clearly or unambiguously give the Defendant the right to assess OD Fees on APSN Transactions. The Complaint challenges Scott's practice regarding pending debit card transactions and debit card transactions holds for which there was a sufficient available balance at authorization. Thus, the first sentence of this provision ("Pending transactions and holds placed on your account may reduce your available balance and may cause your account to become overdrawn regardless of your actual balance") is inapplicable because, by definition, when an APSN Transaction is authorized, it does not overdraw the account's available balance. Am. Compl. at ¶ 8; 10; 14; 2019 Agreement at § 14(b); 2018 Agreement at § 14(b). The second sentence of this provision ("In such cases, subsequent posting of the pending transactions may further overdraw your account and be subject to additional fees"), which is only found in the 2019 Agreement, also doesn't apply. 2019 Agreement at § 14(b). "In such cases,"

8

**EXHIBIT 11**

links back to the first sentence, which only involves pending transactions and holds that overdraw the available balance. *Id.* Plaintiff's APSN claims do not involve these transactions, which have already overdrawn the account's available balance. The third sentence ("You should assume that any item which would overdraw your account based on your available balance may create an overdraft.") supports Plaintiff's allegation she was assessed an overdraft fee on an item that did not overdraw her account based on her available balance. Am. Compl. at ¶ 11; 22; 25; 27. Examining these three sentences (taken together), do not unambiguously clarify the main issue: whether the Contract unambiguously communicates that the Defendant is allowed to charge overdraft fees at settlement, when the debit card transaction was previously authorized and when Scott promised to hold those authorized funds. *See Lussoro*, 2020 WL 1941236 at *12 (finding that the provisions defendant cites do not "clarify the central issue: whether the Contract language unambiguously communicates that Defendant is allowed to charge overdraft fees at the time of settlement, where the debit transaction was previously authorized").

Defendant Scott also appears to rely on the term "to pay" to argue that the Contract unambiguously authorizes it to assess OD Fees at settlement. Def. Mem. at 4-8. Yet, Defendant links payment to authorization various times throughout the Contract. 2018 Agreement § 14(a); 2019 Agreement § 14(a) ("If we offer standard overdraft services, this service allows us to authorize payment for the following types of transactions regardless of whether your share or deposit account has sufficient funds... Without your consent, the Credit Union may not authorize and pay an ATM or one-time debit card transaction that will result in insufficient funds in your account.") Here, Plaintiff alleges that she had sufficient funds for Scott to "authorize payment" or "authorize and pay" for her purchase when she swiped her debit card to pay the merchant and the transaction was authorized, yet she was assessed an OD Fee on this transaction anyway. Am.

**EXHIBIT 11**

Compl. at ¶¶ 8; 10; 14; 27; 33. Plaintiff further alleges that this interpretation is reasonable because the Consumer Financial Protection Bureau (CFPB) has found that consumers understand a debit card transaction to occur when it is authorized (i.e., when the customer pays the merchant). *Id.* at ¶ 15 (citing CFPB, "Supervisory Highlights" (Winter 2015), available at https://files.consumerfinance.gov/f/201503_cfpb_supervisory-highlights-winter-2015.pdf, page 8-9). Plaintiff also alleges that banks and credit unions choose whether to pay debit card transactions when they are authorized, not when they settle. *Id.* at ¶ 21 (citing "must pay" rule (Electronic Fund Transfers, 74 Fed. Reg. 59033-01, 59046 (Nov. 17, 2009)).

The Court finds that Defendant Scott's use of language linking authorization to payment can be reasonably interpreted to mean that transactions are paid, and therefore overdrafts are determined, at authorization because "a reasonable consumer likely considers something to have been paid for when they swipe their debit card, not when their bank's back-office operations are completed." *Roberts v. Capital One, N.A.*, 719 F. App'x 33, 35-37 (2d Cir. 2017). Again pointing to *Vocaty*, in denying a motion to dismiss APSN claims, the Circuit Court of the Nineteenth Judicial Circuit of Lake County, Illinois, similarly found that "a trier of fact could reasonably infer that the contract is ambiguous in its use of key terms such as…'to pay,' or 'temporary debit hold.' One can reasonably interpret these terms to mean that [the credit union] promised to assess OD fees at the time of authorization, not settlement." No. 19-L-727 at ¶ 3; *see also, e.g., Lloyd v. Navy Fed. Credit Union*, No. 17-CV-1280-BAS-RBB, 2018 WL 1757609, at *2 (S.D. Cal. Apr. 12, 2018) (finding the plaintiff's interpretation that overdrafts are determined at authorization to be reasonable and denying motion to dismiss APSN claims where contract stated "we do not guarantee that we will always authorize and pay any type of transaction."); *Kelly v. Community Bank, N.A.*, No. 8:19-cv-00919-MAD-CFH at *12 (N.D.N.Y. Feb. 18, 2020) (finding the

10

**EXHIBIT 11**

plaintiff's interpretation that overdrafts are determined at authorization to be reasonable and denying motion to dismiss APSN claims where the contract promised to determine OD Fees when the bank "authorized and paid").

In addition, this Court finds the Contract here significantly differs from the contract in *Boone v. MB Financial Bank, N.A.*, 375 F.Supp.3d 987 (N.D. Ill. 2019). There, the Court found that the contract "fail[ed] to make any reference to a debit-card transaction or 'debit holds'" and "[did] not articulate that an OD is assessed at any time other than settlement." *Id*. at 993-94. In contrast, as discussed above, the Contract promises to place an "authorization hold" on funds and it reasonably links the OD Fee determination to authorization. Am. Compl. at ¶¶ 24-26 (citing 2018 and 2019 Agreement). Furthermore, since *Boone* was decided, it is this Court's understanding in six other courts, including an Illinois state court, have not followed *Boone* and have denied motions to dismiss similar APSN claims. *See, e.g., Vocaty*, No. 19-L-727 at ¶ 3 (denying motion to dismiss APSN claims due to the contract's ambiguous reference to "temporary debit holds" and the plaintiff's interpretation that overdrafts are assessed at authorization was reasonable); *Lussoro*, 2020 WL 1941236 at *3 n.7 (E.D.N.Y. Apr. 22, 2020) (finding that the "debit hold" language in the contract provides a basis to support Plaintiff's breach of contract claim the plaintiff's interpretation that overdrafts are assessed at authorization was reasonable); *Ingram*, No. 49D01-1908-PL-O35431 at *5-*7 (finding that plaintiff proffered a reasonable interpretation of contract which included the terms "to pay" and "debit hold" language); *Clark*, No. LACV080753 at *3-*4 (Johnson Cty., Ia., June 24, 2019) (denying motion to dismiss APSN claims where the contract promised to place "debit authorization holds" that reduced a customer's available balance when a transaction was "initiated and authorized."); *Pace v. Landmark Bank*, No. 20BA-CV00244 (Boone Cty. Cir. Ct., Mo. May 31, 2020) (denying

11

**EXHIBIT 11**

motion to dismiss APSN claims); *Kelly*, No. 8:19-cv-00919-MAD-CFH (N.D.N.Y. Feb. 18, 2020) (same). For these reasons, the Court denies the motion to dismiss Plaintiff's claim for breach of contract on the APSN theory.

### A. Multiple NSF Fees

The issue before the Court on Plaintiff's breach of contract claim under the Multiple NSF theory is whether the 2018 Agreement expressly and unambiguously permits Defendant Scott to assess more than one fee on an item returned for insufficient funds. The only contract language that speaks to the assessment of a fee on a returned item is as follows:

> If, on any day, the available funds in your share or deposit account are not sufficient to pay the full amount of a check, draft, transaction, or other item, plus any applicable fee, that is posted to your account, we may return the item or pay it, as described below.
>
> . . .
>
> Your account may be subject to a charge for each item regardless of whether we pay or return the item.
>
> . . .
>
> We cannot control how much a merchant asks us to authorize, or when a merchant submits a transaction for payment.

2018 Agreement at § 14(a)-(b). The Fee Schedule states: "Insufficient Funds (NSF) Per Item . . . $27.00." Fee Schedule at 1. The 2018 Agreement plainly promises to only assess "a charge for each item" and the Fee Schedule plainly promises to only assess a fee "Per Item." Plaintiff states a claim for breach of contract because she asserts that Scott assesses multiple charges "for each item" or "Per Item."

The revisions made to the 2019 Agreement further support that Plaintiff states a claim under the 2018 Agreement:

**EXHIBIT 11**

> We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item or resubmission(s) of the returned item.

2019 Agreement § 14(a). This clear and unambiguous provision informs Plaintiff that, as of the effective date of the amendment, each time an item is submitted or resubmitted for payment, Plaintiff may be assessed more than one fee on the same item returned for insufficient funds. Contrast this with the promise in the 2018 Agreement to only assess "a charge for each item." Am. Compl. at ¶ 46 (citing 2018 Agreement). The 2018 Agreement is wholly silent regarding fees being assessed when the item is resubmitted by the merchant.

There is nothing in the 2018 Agreement that unambiguously authorizes multiple charges on the same item returned for insufficient funds. Per *Vocaty*, in denying a motion to dismiss a multiple NSF Fees claim, the Circuit Court of the Nineteenth Judicial Circuit of Lake County, Illinois, likewise found that "there is no language within the contract that unambiguously authorizes multiple charges." No. 19-L-727 at ¶ 3; *see also Coleman v. Alaska USA Fed. Credit Union:*, No. 3:19-cv-0229-HRH at *9 (D. Alaska Apr. 14, 2020) ("It is plausible that a member could have expected to only be charged one [] fee when she only gave one authorization for an ACH transaction, no matter how many times the merchant presented the transaction for payment"); *Almon v. Independence Bank*, No. 19-CI-00817 at *4 (McCracken Cir. Ct. Ky. Mar. 18, 2020) (the complaint alleged that "Plaintiff understood the payment to be a single item as laid out in Independence Bank's account documents, capable at most of receiving a single RI Fee . . . If the contract is construed in [Plaintiff's] favor, she could prevail on her breach of contract claim"); *Noe v. City National Bank of West Virginia*, No. 3:19-cv-0690 (S.D. W. Va. Feb. 19, 2020) at *10 (ECF No. 17) ("it is unclear whether Defendant had the contractual right to assess more than one NSF fee for a single attempted purchase"); *Tisdale v. Wilson Bank and Trust*, No. 19-400-BC 71:23-72:27 (Tenn. Bus. Ct. Oct. 17, 2019) (finding the plaintiff's interpretation of

**EXHIBIT 11**

the contract as allowing only one fee on the same item returned for insufficient funds to be reasonable); *Duncan v. BancFirst*, No. CJ-2020-348 at ¶ 10 (Oklahoma Cty., Ok., Dist. Ct., Jun. 3, 2020) (denying motion to dismiss Multiple NSF claims); *Perks v. TD Bank, N.A.*, No. 18-CV-11176 (VEC), 2020 WL 1272246 (S.D.N.Y. Mar. 17, 2020) (same); *Romohr v. The Tenn. Credit Union*, No. 19-1542-BC at *5 (Tenn. Bus. Ct. May 19, 2020) (same); *Tannehill v. Simmons Bank*, No. 3:19-cv-140-DPM at *2 (E.D. Ark. Oct. 21, 2019) (ECF No. 23) (same); *Morris v. Bank of America, N.A.*, No. 18-cv-157-RJC-DSC, 2019 WL 1274928 at *2 (W.D.N.C. Jan. 8, 2019), *report and recommendation adopted in part*, 2019 WL 1421166 (W.D.N.C. Mar. 29, 2019) (same); *Garcia v. UMB Bank NA*, No. 1916-CV01874 (Jackson Cty. Mo., Cir. Ct., Oct. 18, 2019) (same); *Ingram*, No. 49D01-1908-PL-O35431 at *5-*7 (same).

Numerous courts have found the term "per item," which Defendant Scott uses on its Fee Schedule, to be ambiguous and denied motions to dismiss by financial institutions. *See* Am. Comp. at ¶ 54 (citing Fee Schedule at 1); *Vocaty*, No. 19-L-727 at ¶ 3; *Almon*, No. 19-CI-00817 at *2-*3; *Perks*, 2020 WL 1272246 at *1-3; (S.D.N.Y. Mar. 17, 2020); *Coleman*, No. 3:19-cv-0229-HRH at *12. For example, in *Vocaty*, the Circuit Court for the Nineteenth Judicial Circuit of Lake County, Illinois, found that "[t]he term 'per item' is not defined and taking plaintiff's allegations to be true, a trier of fact could reasonably infer that 'item' is defined by the initial charge made by GLCU's customer, not each time a merchant submits it to GLCU"). No. 19-L-727 at ¶ 3. Similarly, the *Almon* court found that the use of "per item" in the singular could be reasonably read to mean that only a single fee could be charged on the same item, no matter how many times it was resubmitted. No. 19-CI-00817 at *3.

This Court notes that various courts have also denied motions to dismiss when the term "item" is undefined by the financial institution, as is the case here. *See, e.g., Romohr*, No. 19-

**EXHIBIT 11**

1542-BC at *5 ("there is no definition of 'item' in the Account Agreement or Fee Schedule, and that does lend some ambiguity to the analysis of whether or not an authorized ACH is one item, or is an item each time it is submitted"); *Perks*, 2020 WL 1272246 at *3 (item was ambiguous because the plaintiffs' interpretation that "the original transaction and all subsequent resubmissions of the same transaction would be one item, authorizing TD Bank to charge a single NSF Fee" was "plausible"); *Coleman*, No. 3:19-cv-0229-HRH at *9 ("[i]t is plausible that a member could have expected to only be charged one [] fee when she only gave one authorization for an ACH transaction, no matter how many times the merchant presented the transaction for payment").

Because the 2018 Agreement only provides for the assessment of "a charge for each item," is silent regarding the assessment of fees when a merchant resubmits an item, and fails to define "per item," Scott's motion to dismiss the Multiple NSF Fee claim is denied.

### B. Breach of Implied Covenant of Good Faith and Fair Dealing

Defendant argues that Plaintiff's claim for breach of the duty of the implied covenant of good faith and fair dealing must be dismissed on the sole basis that Plaintiff has not stated a claim for breach of contract. *See* Def. Mem. at 10. Because the Court finds that Plaintiff has stated claims for breach of contract and because Scott has not proffered any other basis on which to dismiss this claim, it has not carried its burden and the motion is denied. Setting this aside, "on a motion to dismiss, '[a] plaintiff sustains a cause of action for breach of contract for abuse of discretion based on a violation of the implied covenant of good faith and fair dealing by alleging that defendant exercised its discretion in a manner contrary to the reasonable expectations of the parties.'" *See Spadoni v. United Airlines, Inc.*, 2015 IL App (1st) 150458, ¶ 44. The Contract grants Defendant Scott complete discretion to pay or return items that

overdraw the account. Am. Compl. at ¶ 78; *see also* 2019 Agreement at § 14(a); 2018 Agreement at § 14(a) (describing Scott's "right to use our discretion to pay such items"…"Your account may be subject to a fee for each item . . . ."). Plaintiff has alleged that Scott has exercised this discretion abusively by assessing fees in a manner that breaches the Contract and is inconsistent with the reasonable expectations of its consumers. Am. Compl. ¶¶ 33-40; 57; 59 (as to consumers' reasonable expectations); *id.* at ¶¶ 75-78 (as to abuse of discretion). The motion to dismiss the claim for breach of the implied covenant of good faith and fair dealing is denied.

### C. *Unjust Enrichment*

To state a claim for unjust enrichment, a Plaintiff must allege the defendant has unjustly retained a benefit to the plaintiff's detriment, and the defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience. *Gagnon v. Schickel,* 368 Ill. Dec. 240, 248 (1st Dist. 2012). Where there is an express contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application. *Horwitz v. Sonnenschein Nath & Rosenthal LLP,* 399 Ill. App. 3d 965, 979 (1st 2010). This Court finds that the Plaintiff fails to state a claim for unjust enrichment because the relationship between Defendant Scott and Plaintiff is governed by the terms of the express written contract. As previously noted in this order, the contractual documents were attached to the complaints. Pursuant to 735 ILCS 5/2-606, a written contract attached to a pleading "constitutes a part of the pleading for all purposes." Importantly, Plaintiff explicitly incorporates her factual and legal allegations regarding the written contract into her unjust enrichment claim: "Plaintiff incorporates the preceding paragraphs of this Complaint as it fully set forth herein." Complaint, Par. 112.

The relationship between Plaintiff and Defendant Scott was governed by a written agreement. Respectfully, Defendant Scott's motion to dismiss the unjust enrichment claim is

**EXHIBIT 11**

granted.

### D. *The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")*

ICFA declares unlawful any "unfair or deceptive acts or practices" in the "conduct of any trade or commerce." 815 ILCS 505/2. Conduct is unfair if it violates public policy, is so oppressive as to leave the consumer with little alternative except to submit to it, or injures the consumer. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417-18, 775 N.E.2d 951, 961 (2002). The Court finds that a trier of fact could reasonably deem "unfair" Plaintiff's allegations that Scott did not disclose its true fee practices and misled its customers to maximize fees. *See Vocaty*, No. 19L727, at ¶ 5 (finding that plaintiff's ICFA allegations that "GLCU is scheming to create OD and/or NSF fees to an unwitting customer and not just assessing OD and/or NSF fees...which this Court must, at this point, accept as true, could be reasonably deemed 'unfair' by a trier of fact"). Respectfully, as Plaintiff has pleaded sufficient facts to support her ICFA claim, Scott's motion to dismiss the ICFA claim is denied.

Dated: June 23, 2020  _____
                      Judge Heinz Rudolf



17

**EXHIBIT 11**