UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 24-0765 JGB (DTBx)** | Date | August 29, 2024 |
|---|---|---|---|
| Title | *Blanche Phlaum, et al. v. Navy Federal Credit Union, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Defendant's Motion to Dismiss (Dkt. No. 17); and (2) VACATING the September 9, 2024 Hearing (IN CHAMBERS)

Before the Court is Defendant Navy Federal Credit Union's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ("Motion," Dkt. No. 17.) The Court determines this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion. The Court **VACATES** the September 9, 2024 hearing.

## I. PROCEDURAL BACKGROUND

### A. The Instant Motion

On April 11, 2024, Plaintiffs Blanche Phlaum and Jason Jones (together, "Plaintiffs") filed a class action complaint against Defendants Navy Federal Credit Union ("Defendant" or "Navy Federal") and Does 1 through 100. ("Complaint," Dkt. No. 1.) The Complaint alleged six causes of action: (1) breach of contract, including the implied covenant of good faith and fair dealing; (2) unjust enrichment; (3) money had and received; (4) violation of the California Unfair Competition Law, California Business & Professions Code § 17200, et seq.; (5) violation of the Consumer Legal Remedies Act, California Civil Code § 1750, et seq.; and (6) conversion. (Id.) On June 4, 2024, Plaintiffs filed a First Amended Complaint alleging the same causes of action against the same Defendants. ("FAC," Dkt. No. 13.)

On June 24, 2024, Defendant filed this Motion seeking to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] (See Motion.) In support of the Motion, Defendant filed the declaration of attorney Lisa Vance ("Vance Decl.," Dkt. No. 17-1) with attached exhibits ("Vance Exs. A–J," Dkt. No. 17-1 at 5–59). Defendant also submitted a request for judicial notice of seven additional exhibits. ("RJN," Dkt. No. 18.) The exhibits are various filings from Lambert v. Navy Federal Credit Union, 1:19-cv-00103 (E.D. Va.) ("Lambert") and a compilation of excerpts from a plaintiff's opposition to a motion to dismiss filed in Petrey v. Visions Federal Credit Union, 3:20-cv-01147, Dkt. No. 38 (N.D.N.Y. Feb. 1, 2021). (Id.)[2]

On July 22, 2024, Plaintiffs opposed the Motion. ("Opposition," Dkt. No. 20.) In support of the Opposition, Plaintiffs filed the declaration of attorney Tyler Dosaj ("Dosaj Decl.," Dkt. No. 21) and attached exhibits ("Dosaj Exs. 1–28," Dkt. Nos. 21-1–21-28).

On August 5, 2024, Defendant replied. ("Reply," Dkt. No. 22.)

**B.     The Lambert Case and Settlement**

Many of the arguments in Defendant's Motion concern the effects of Lambert and its settlement. In 2019, Ruby Lambert sued Navy Federal, arguing that Navy Federal's Important Disclosures ("Disclosures") allowed it to charge only one nonsufficient funds fee ("NSF Fee"), and that its policy of charging multiple NSF Fees for multiple attempts to process a single payment request violated the Disclosures. See Lambert v. Navy Fed. Credit Union, 2019 WL

---

[1] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

[2] In a motion to dismiss under Rule 12(b)(6), a court may consider "matters of judicial notice" without converting the motion into a motion for summary judgment. U.S. v. Ritchie, 342 F.3d 903, 907–08 (9th Cir. 2003). A court may take judicial notice of an adjudicative fact not subject to "reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court," or it is capable of accurate and ready determination by resort to sources whose "accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Judicial notice is appropriate for "matters of public record." Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). Proceedings of courts, including orders and filings, are the proper subject of judicial notice when directly related to the case, though not for the truth of the contents of the underlying documents. See United States ex. Rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 917 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"); Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1113 (C.D. Cal. 2003) ("[C]ourt orders and filings are the type of documents that are properly noticed under [Fed. R. Evid. 201(b).]"); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006). As such, the court filings are subject to judicial notice. Accordingly, the Court **GRANTS** the RJN.

3843064, at *1 (E.D. Va. Aug. 14, 2019). Navy Federal moved to dismiss. (See id.) The Disclosures provided:

> Navy Federal may return debits to the checking account (e.g. an ACH payment) if the amount of the debit exceeds funds available in the checking account. A fee may be assessed in the amount shown on Navy Federal's current Schedule of Fees and Charges ("Fee Schedule") for each returned debit item.

Id. at *4. On August 14, 2019, the court—the Eastern District of Virginia, Judge Liam O'Grady—granted the motion and dismissed the complaint with prejudice. (Id.) The Lambert court held that any challenges to "a perceived failure to disclose, the specific language used in the [D]isclosure, or the fairness of the fee practice itself . . . are clearly preempted" by federal law, and any remaining claims fail "because the contract unambiguously gives Navy Federal the contractual right to impose fees in the way that it did." Id. at *3.

Lambert appealed, and while the appeal was pending, the parties settled. (See "Settlement Agreement," RJN, Ex. 2, at 11.) As is the norm with settlement agreements, Navy Federal continued to dispute its liability, and the Settlement Agreement stated that it was not "an admission of . . . the validity of any claim." (Id. ¶ 105.) The Agreement also required Navy Federal to adopt the following "clarify[ing]" re-presentment NSF fee language into its Disclosures and related documents:

> Navy Federal may return debits (e.g., ACH payments) submitted for payment against the checking account if the amount of the debit exceeds the funds available in the checking account. Each time we return a debit for insufficient funds, we will assess an NSF fee in the amount shown on Navy Federal's current Schedule of Fees and Charges for each returned debit item. The entity that submitted the debit may submit another debit to Navy Federal even if we have already returned the prior debit for insufficient funds in the checking account. If the resubmitted debit again exceeds the funds available in the checking account, Navy Federal again will return the debit, resulting in an additional NSF fee. Thus, you may be charged multiple NSF fees in connection with a single debit that has been returned for insufficient funds multiple times.

(Id. ¶ 52.) Under the Settlement Agreement, class members released any claims "that result from, arise out of, are based upon, or relate to the conduct, omissions, duties or matters during the Class Period that were or could have been alleged in the Action . . . relating to the assessment of Representment NSF Fees." (Id. ¶ 84.) The "Class Period" was defined as "the period from January 28, 2014, through the date of Preliminary Approval." (Id. ¶ 16.) The Settlement Agreement also enjoined any class member from "bringing on behalf of themselves, or through any person purporting to act on their behalf or purporting to assert a claim under or through them, any of the Released Claims against Navy Federal in any forum, action, or proceeding of any kind." (Id. ¶ 85.)

On October 27, 2020, the Lambert court granted preliminary approval of the proposed settlement. (Id., Ex. 4 at 88.) On November 23, 2020, the notice process began via email. (Id., Ex. 5 ¶ 8.) Notice reached 99.58% of all class members. (Id., Ex. 5 ¶ 19.) The notice stated that if class members wanted to preserve their right to sue Navy Federal based on the theory that it failed to adequately disclose its NSF Fee practices, they were required to opt out of the proposed settlement by February 24, 2021. (Id., Ex. 5, Ex. B at 1.)

On April 8, 2021, the Lambert court granted final approval of the settlement agreement, finding that all class members had released any claims and any liability "whether known or unknown, existing or potential," based on "any . . . theor[ies], that result from, arise out of, are based upon, or relate to the conduct, omissions, duties, or matters during the Class Period that were or could have been alleged in the action, relating to the assessment of Representment NSF Fees." (Id., Ex. 7 ¶ 17.) The final approval order enjoined all class members from "asserting any claims against Navy Federal . . . arising out of, relating to, or in connection with, the Released Claims." (Id., Ex. 7 ¶ 24.)

## II. FACTUAL ALLEGATIONS

Plaintiffs allege the following facts in their FAC, which are assumed to be true for the purposes of this Motion. See Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).

Plaintiffs Phlaum and Jones are California residents who held Navy Federal checking accounts at all times relevant to their class action allegations. (FAC ¶¶ 4–5.) Defendant Navy Federal is a federally chartered credit union with its headquarters and principal place of business located in Vienna, Virginia, and provides retail credit union services to consumers and businesses, including Plaintiffs and members of the putative classes, throughout the United States. (Id. ¶ 6.)

At issue in Plaintiffs' lawsuit is Defendant's assessment of new NSF Fees on items that had previously triggered NSF Fees ("Retry NSF Fees") despite contractual promises to assess only one fee per item. (Id. ¶ 15.) The FAC defines four classes:

> All Navy Federal consumer checking accountholders who, between October 28, 2020 and the date on which Defendant's January 2021 Consumer Account Agreement became effective, were charged a Non-Sufficient Funds Fee or an Overdraft Fee on an item that had previously triggered a Non-Sufficient Funds Fee (the "Retry NSF Class").

> All Navy Federal consumer checking accountholders who are citizens of California who, between October 28, 2020 and the date on which Defendant's January 2021 Consumer Account Agreement became effective, were charged a Non-Sufficient Funds Fee or an Overdraft Fee on an item that had previously triggered a Non-Sufficient Funds Fee ([the] "California Sub-Class").

> All Navy Federal business checking accountholders who, between October 28, 2020 and the date on which Defendant's September 2022 Business Account Agreement became effective, were charged a Non-Sufficient Funds Fee or an Overdraft Fee on an item that had previously triggered a Non-Sufficient Funds Fee (the "Business Retry NSF Class").
>
> All Navy Federal business checking accountholders who are citizens of California who, between October 28, 2020 and the date on which Defendant's September 2022 Business Account Agreement became effective, were charged a Non-Sufficient Funds Fee or an Overdraft Fee on an item that had previously triggered a Non-Sufficient Funds Fee ([the] "California Business Sub-Class").

(Id. ¶ 67.)

On October 5, 2020, Defendant entered into a $16 million settlement agreement in Lambert v. Navy Federal Credit Union, No. 1:19-CV-103-LO-MSN (E.D. Va.), which challenged the improper assessment of the same Retry NSF Fees at issue here, while the case was pending on appeal to the Fourth Circuit. (Id. ¶ 16.) As part of the Lambert settlement, class members agreed to release claims "during the Class Period that were or could have been alleged in the Action . . . relating to the assessment of Representment NSF Fees," and the "Class Period" was defined as January 28, 2014, through the date of Preliminary Approval, October 27, 2020. (Id. ¶ 17 (citing Settlement Agreement ¶¶ 16, 84).) The settlement was approved on April 8, 2021. (Id. ¶ 19.)

In January 2021, Defendant attempted to materially change its contract language regarding its NSF Fee practices. (Id. ¶ 20.) But in the period immediately after the Lambert Class Period ended and before Defendant instituted new contract language—that is, between October 27, 2020 and January 2021—Defendant continued assessing Retry NSF Fees against class members pursuant to the same contractual language at issue in Lambert. (Id.) Defendant's conduct breached its contracts with its customers in the same manner as it breached the contracts with the already-settled Lambert class members, at least until Navy Federal Credit Union's new language regarding this practice became effective (if it became effective at all—a point which Plaintiffs dispute). (Id.) Customers like Plaintiffs never received compensation for the Retry NSF Fees they incurred during this time. (Id.)

Plaintiffs' checking accounts are governed by the Account Documents in effect during the period relevant to this litigation, which provide the general terms of Plaintiffs' relationship with Navy Federal and contains promises and representations regarding how transactions will be processed, including when NSF Fees and overdraft fees ("OD Fees") may be assessed. (Id. ¶¶ 29–30.) Navy Federal's Account Documents indicated that a single fee can be assessed on checks, ACH transactions, and electronic payments and stated that Navy Federal will charge a single fee for each item or transaction that is returned due to insufficient funds. (Id. ¶¶ 30–31.) Defendant was permitted by the terms of the Account documents to charge a single NSF Fee in the amount of $29.00 for "checks and ACH debit." (Id. ¶ 32.) Based on this language, Plaintiffs

believed that a singular fee would be assessed on each check or ACH transaction regardless of the number of times that specific check or transaction was resubmitted for payment, especially where Plaintiffs took no action to resubmit the check or ACH transaction themselves, as is the case here. (Id. ¶¶ 33, 34.) The October 2020 Consumer Account Agreement also indicates that a single fee may be assessed "for each returned debit item":

> Navy Federal may return debits to the checking account (e.g., an ACH payment) if the amount of the debit exceeds funds available in the checking account. A fee may be assessed in the amount shown on Navy Federal's current Schedule of Fees and Charges for each returned debit item.

(Id. ¶ 36.) The Account Documents never define the term "item" in a manner that suggests the reprocessing or resubmission of a single "item" is itself an "item" or "transaction," and there is no indication anywhere in the Account Documents that the same check or item may incur multiple NSF Fees, or an NSF Fee followed by an OD Fee. (Id. ¶¶ 38–39.) Nevertheless, Defendant assessed multiple NSF Fees, or an NSF Fee followed by an OD Fee, on the same check or transaction on the accounts of its members. (Id. ¶ 45.)

In January and February 2021, Defendant changed its Consumer Account Agreement and Fee Schedule to reflect its NSF Fee practices. (Id. ¶¶ 46–47.) In September 2022, Defendant attempted to materially change its Business Account Agreement ("Account Agreement") in a similar manner. (Id. ¶ 48.) Plaintiffs do not concede that the new language allows the practice, but do not allege that the Class Period extends beyond these changes. (Id. ¶ 49.) Plaintiffs do not believe they received any notice that these documents were being amended nor the amended documents themselves. (Id. ¶ 49.) Plaintiffs do not recall receiving notice of the Lambert settlement. (Id. ¶ 50.)

Plaintiffs offer specific examples of Retry NSF Fees in their FAC but contend that discovery will reveal additional instances of these improper fees. (Id. ¶ 61.) As to Plaintiff Phlaum, on December 21, 2020, Defendant assessed an NSF Fee in the amount of $29.00 on a transaction described as "Returned Item Fee 12228725." (Id. ¶ 62.) On December 24, 2020, Navy Federal reprocessed the check that triggered the initial NSF fee in a transaction described as "Paid To - Loanme 3 Debit Chk 12228725." (Id.) Navy Federal paid the check into overdraft, debited $351.09 from the account, and assessed an OD Fee in the amount of $20. (Id.) Navy Federal charged Plaintiff Phlaum $49 in fees to process a single payment. (Id.)

On January 19, 2021, Defendant rejected payment of another transaction on Plaintiff Phlaum's account and charged Plaintiff Phlaum an NSF Fee in the amount of $29, in a transaction described as "Returned Item Fee 12228725." (Id. ¶ 63.) On January 25, 2021, Defendant rejected this item again and charged Plaintiff Phlaum a $29 NSF Fee in a transaction described as "Returned Item Fee 12228725." (Id.) On June 9, 2021, Defendant rejected payment of another transaction and charged Plaintiff Phlaum an NSF Fee in the amount of $29, in a transaction described as "Returned Item Fee 2100002." (Id.) On June 15, 2021, Defendant

rejected this item again and charged Plaintiff Phlaum a $29 NSF Fee for doing so in a transaction described as "Returned Item Fee 2100002." (Id.)

As to Plaintiff Jones, Defendant assessed "Returned Item Fees" against his account on at least November 30, 2020, December 14, 2020, December 28, 2020, December 29, 2020, January 5, 2021, February 8, 2021, October 22, 2021, and November 5, 2021. (Id. ¶ 64.) On information and belief, one or more of these fees was the result of the same item being resubmitted. (Id.)

Before filing the FAC, Plaintiffs notified Defendant on behalf of themselves and the Class Members of their allegations. (Id. ¶ 79.) On February 22, 2024, Plaintiff Phlaum mailed a notice of claim letter to Defendant which notified Defendant that she was represented by counsel, would act as a class representative in a putative class action against Defendant, and demanded the "immediate refund of all Retry NSF Fees assessed against Navy Federal member accounts between October 28, 2020 and the date the January 2021 Account Agreement became effective, plus prejudgment interest at the correct statutory rate for each state, plus attorneys' fees, plus punitive damages of treble the amount at issue, plus all applicable statutory damages." (Id. ¶ 80.) On March 13, 2024, Defendant's counsel contacted Plaintiffs' counsel asking that Plaintiffs' counsel "hold off on filing anything until we can chat." (Id. ¶ 81.) Defendant's counsel and Plaintiffs' counsel later discussed the theories in the case, the class period left open after the Lambert settlement before any revised contractual language, and the possibility of resolving the matter. (Id.)

Eight days after Defendant through counsel asked for time to investigate, Plaintiff Phlaum received an unsolicited deposit in the amount of $203 in a transaction described as "Refund – Ach Item Fees." (Id. ¶ 82.) Phlaum did not consent to the deposit, nor was it discussed with her or her counsel. (Id. ¶ 83.) On March 22, 2024, Defendant sent Plaintiff a letter stating that since Plaintiffs' counsel indicated they "may have other clients with concerns about Navy's NSF fee practices," Plaintiffs' counsel should "direct any further client inquiries (for Ms. Phlaum or otherwise) to [Defendant's counsel] under the 'Notice of Claim' provision in the contract." (Id. ¶ 84.) On information and belief, Defendant will continue to try to "pick off" any putative class representative who submits a claim notice using the procedure described in the Account Agreement. (Id.)

On April 10, 2024, Plaintiffs mailed a notice of claim letter on behalf of Plaintiff Jones. (Id. ¶ 85.) Plaintiff Jones also complained about the NSF Fees assessed against his account to Defendant before the letter. (Id.) In response, Defendant deposited funds in Jones's account in purported satisfaction of his claims. (Id. ¶ 86.)

### III.   LEGAL STANDARD

A.   Rule 12(b)(1)

"A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." Warren v. Fox Fam. Worldwide, Inc., 328 F.3d

1136, 1139 (9th Cir. 2003). Thus, a jurisdictional challenge can be either facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

In a facial attack, the moving party asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). When evaluating a facial attack, the court must accept the factual allegations in the plaintiff's complaint as true. Whisnant v. United States, 400 F.3d 1177, 1179 (9th Cir. 2005).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at 1039. In resolving a factual challenge, the court "need not presume the truthfulness of the plaintiff's allegations" and "may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." White, 227 F.3d at 1242. "Where jurisdiction is intertwined with the merits, [the court] must 'assume the truth of the allegations in the complaint . . . unless controverted by undisputed facts in the record.'" Warren, 328 F.3d at 1139 (quoting Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987)).

**B.     Rule 12(b)(6)**

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994). Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted). Courts also need not accept as true allegations that contradict facts which may be judicially noticed. See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

### C.     Rule 15

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Cap., L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).

## IV.   DISCUSSION

Defendant moves to dismiss Plaintiffs' FAC for lack of subject matter jurisdiction and failure to state a claim. (See Motion.) With respect to subject matter jurisdiction, Defendant argues that Plaintiffs were class members in an action challenging the same practice alleged in the FAC, Lambert v. Navy Federal Credit Union, 1:19-cv-00103 (E.D. Va.), and the Lambert court retains exclusive jurisdiction over the settlement and these claims. (Id.) Defendant presents many arguments as to why Plaintiffs fail to state a claim under Rule 12(b)(6), including: (1) Plaintiffs released their claims in Lambert; (2) Plaintiffs either failed to comply with the notice of claim provision in their contract with Defendant or Defendant made them whole after they availed themselves of it; (3) federal law preempts their use of state law; and (4) Plaintiffs' contract and common law claims lack merit for several reasons including because Defendant's Disclosures permit the fee practices at issue. (See id.)

### A.     Subject Matter Jurisdiction Under Rule 12(b)(1)

Defendant argues the FAC must be dismissed pursuant to Rule 12(b)(1) because it "is a collateral attack on the court-approved Lambert settlement, and the Lambert court has exclusive jurisdiction to resolve these claims." (Motion at 9.) According to Defendant, because the Lambert court retains jurisdiction over the construction and enforcement of the Lambert settlement, this Court must dismiss any subsequent complaint by a Lambert class member, even if plaintiffs allege, as they do here, that their claims extend beyond the Lambert class period. (Id. at 8.) Plaintiffs respond that the Lambert settlement does not bar their claims, both because the Settlement Agreement does not release claims based on Navy Federal's future conduct and

because class action releases cannot apply to post-settlement conduct as a matter of law. (Opposition at 3–4.) For the reasons below, the Court agrees with Plaintiffs.

### 1. The Settlement Agreement

In their briefs, Plaintiffs and Defendant urge the Court to adopt their respective view of the Settlement Agreement's terms. Plaintiffs contend that the Settlement Agreement applies to only those claims which arose (or could have arisen) during the defined Lambert Class Period, and as such, the Agreement does not apply to Plaintiffs' claims, which post-date the Class Period. (See Opposition at 3–4.) The Court agrees with Plaintiffs' reading.

By its terms, the Settlement Agreement does not release claims based on Navy Federal's future conduct, but instead encompasses claims that "relate to the conduct, omissions, duties or matters *during the Class Period* that were or could have been alleged in the Action" regarding "Representment NSF Fees." (Settlement ¶ 84 (emphasis added).) The "Settlement Class" is similarly limited to "all current and former Navy Federal members in the United States who were charged Representment NSF Fees *during the Class Period*." (Id. ¶ 44 (emphasis added).) Moreover, the "Calculation of Automatic Distributions from Settlement Fund" section provides for payment to class members "based on their number of Relevant NSF Fees" incurred "*during the Class Period*." (Id. ¶ 75 (emphasis added).) The "Class Period" is "the period from January 28, 2014, through the date of Preliminary Approval." (Id. ¶ 16.) Preliminary Approval was granted on October 27, 2020. (RJN, Ex. 4 at 18.) Accordingly, the claims released in the Lambert Settlement Agreement were those based on Retry NSF Fees assessed between January 28, 2014 to October 27, 2020, as these are the only claims that "were or could have been alleged in the Action." (Settlement Agreement ¶ 84.) Plaintiffs' claims in the instant action relate to Retry NSF Fees assessed after the Lambert Class Period. (See FAC ¶¶ 62–64.) The Lambert settlement did not contemplate the release of claims based on Defendant's conduct after the Class Period, including that related to Plaintiffs' claims here.

Defendant contends that the Court should only review the Settlement Agreement to determine whether the Lambert court retains exclusive jurisdiction. (Reply at 1.) The Court disagrees, because it finds the Settlement Agreement's Class Period limitation relevant to the question of whether the Lambert court retains jurisdiction. Defendant is correct that pursuant to the Settlement Agreement, the Eastern District of Virginia retains jurisdiction over all parties and class members as to any dispute over how to "administer, supervise, construe, and enforce th[e] Agreement in accordance with its terms." (Settlement Agreement ¶¶ 69(e), (g).) The Agreement also provides that the Eastern District of Virginia "shall retain jurisdiction over the implementation, enforcement, and performance of th[e] Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to th[e] Agreement," and "with respect to the administration, consummation, and enforcement of the Agreement." (Id. ¶ 116.) The Eastern District of Virginia also "retain[s] jurisdiction over the enforcement of the Court's injunction barring and enjoining all Releasing Parties from asserting any of the Released Claims and from pursuing any Released Claims against Navy Federal." (Id. ¶ 16.) True, this language makes clear that the Lambert court retains exclusive jurisdiction over

the "Released Claims." But as the Court explains above, the claims at issue in this matter were *not* released in the Settlement Agreement because they occurred after the Lambert Class Period ended.

Defendant cites one case in support of its position, Tomerlin v. Johns Hopkins University Inc., 2015 WL 13446285 (C.D. Cal. 2015). (Motion at 8–9.) Tomerlin is factually similar to the instant case and reaches the conclusion Defendant seeks—there, the court dismissed a complaint for lack of subject matter jurisdiction where the plaintiff filed a lawsuit alleging the same harms at the center of a settled case, but with a class period beginning the day after the class period for the settled matter. Tomerlin, 2015 WL 13446285, at *1–2. The Tomerlin court explained that per the terms of the settlement, the state court retained "exclusive and continuing jurisdiction and exclusive venue with respect to the implementation, enforcement, construction, interpretation, performance, and administration of the settlement," and the Tomerlin court thus lacked jurisdiction over the action because it "concern[ed] matters clearly related to the matters resolved in the" state court action. Id. This Court declines to adopt Tomerlin's approach because it fails to substantively address whether the settlement agreement included provisions like those identified above which demonstrate that the agreement applies only to conduct within the relevant class period. See id.

The Court also declines to follow Tomerlin because it does not rely on applicable Ninth Circuit precent. Tomerlin cites one in-Circuit case, Flanagan v. Arnaiz, 143 F.3d 540 (9th Cir. 1998), claiming that that Flanagan "supports" its conclusion. Tomerlin, 2015 WL 13446285, at *2. But in Flanagan, the Ninth Circuit held that a settlement agreement vested exclusive jurisdiction in a federal court, and as such, the federal court acted in accordance with law when it enjoined parties to that settlement agreement from suing in state court for an alleged breach of the agreement. See id. There, the parties did not dispute that the subsequent state court lawsuit concerned the settlement agreement; they disputed only whether the federal court's jurisdiction was indeed exclusive, or if instead the federal and state courts had concurrent jurisdiction. Id. Indeed, the parties had no reason to dispute that fact because the Flanagan plaintiffs sued for *breach of the settlement agreement*. See id. By contrast, the plaintiff in Tomerlin, and Plaintiffs here, contend that their claims are not subject to the relevant settlement agreement because the agreement applies only to claims which arose during a specific period. (See Opposition.) In sum, Flanagan sheds no light on the issue presented in Tomerlin.

The Court concludes that Plaintiffs' FAC alleges claims which were not released by the Lambert settlement agreement, and the Lambert court's continuing jurisdiction over that settlement does not bar this Court from deciding this Motion. Accordingly, the Court **DENIES** the Motion as to Defendant's arguments under Rule 12(b)(1). This Court has subject matter jurisdiction to consider Plaintiffs' FAC and Defendant's substantive arguments regarding its sufficiency.

//
//
//

B.     **Failure to State a Claim Under Rule 12(b)(6)**

Defendant supplies myriad arguments for dismissal under Rule 12(b)(6). The Court considers some of them below, but because the Court ultimately concludes that Plaintiff Phlaum does not have standing and Plaintiff Jones did not comply with the notice provision, it declines to reach all of Defendant's arguments.

1. **Choice of Law**

Defendant contends that Virginia law governs this dispute because Plaintiffs conceded in their FAC that their Navy Federal "accounts are maintained and governed in accordance with federal law and the laws of the Commonwealth of Virginia." (Motion at 10 (citing FAC, Ex. A at 7).) Plaintiffs respond that it is "premature to determine whether Virginia or California law applies to the breach of contract claim and other common law claims, as Defendant cannot show that Virginia law meaningfully differs from California law on these claims." (Opposition at 8 n.2.) The Court agrees with Defendant.

"A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." In re Facebook Biometric Info. Privacy Litig., 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016). Pursuant to California's choice-of-law principles, choice-of-law agreements are enforced if the chosen state's law has a substantial relationship to the dispute. Reddy v. Mediscribes, Inc., 2020 WL 2220202, *3 (C.D. Cal. 2020). To determine whether a choice-of-law clause is enforceable, California courts ask: "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." Washington Mut. Bank, FA v. Superior Court, 24 Cal. 4th 906, 916 (2001). "If either prong is met the choice of law will be enforced unless 'contrary to a fundamental policy' of the alternative state . . . and if the [alternative] state 'has a materially greater interest in the determination of the particular issue.'" Williams v. Facebook, Inc., 384 F. Supp. 3d 1043, 1056 (N.D. Cal. 2018) (quoting Washington Mut. Bank, 24 Cal. 4th at 917). Accordingly, if Defendant satisfies its obligation, Plaintiffs must then establish that enforcement of the clause (1) would be "contrary to fundamental policy" of California, or (2) that California has a "materially greater interest" in the determination of the issues. See Pitzer Coll. v. Indian Harbor Ins. Co., 8 Cal. 5th 93, 100–01 (2019).

Defendant has met its burden. Navy Federal establishes that Virginia has a substantial relationship to the parties and their transaction because its principal place of business is in Virginia, Plaintiffs' accounts are located in Virginia, Plaintiffs mailed their claim notices to Virginia; and Navy Federal's investigation occurred in Virginia. (Motion at 10); see Reddy, 2020 WL 2220202, *3 (C.D. Cal. 2020). Plaintiffs do not substantively respond, and instead argue that it is premature for the Court to decide the choice-of-law issues. (Opposition at 8 n.2.) The Court disagrees, as Defendant has adequately briefed the grounds for enforcing the choice-of-law provision, there appear to be no disputed facts relevant to the inquiry which would be decided in discovery, and Plaintiffs fail to argue that any specific harm would befall them if Virginia law is

applied (and, indeed, fail to present any substantive argument on this topic). Cf. Sanchez v. Navy Fed. Credit Union, 2023 WL 6370235, *11 (C.D. Cal. 2023) (declining to decide choice-of-law question because the briefing was "inadequate and the record … [was] insufficiently developed," and plaintiff argued that applying Virginia law rather than California law would result in "substantial injustice"). Nor is the Court persuaded by Plaintiffs' passing reference to a single case concerning the differences between Virginia and California law, as that case considered Virginia law on facts distinguishable from the instant matter. See Lloyd v. Navy Fed. Credit Union, 2018 WL 1757609, *6 (S.D. Cal. 2018).

Plaintiffs do not carry their burden, and as such, the Court cannot deviate from the presumption that the choice-of-law provision should be enforced. Per the term of the contract, Virginia law applies.

### 2. Settlement Agreement and Release of Claims

Defendant argues that the FAC must be dismissed under Rule 12(b)(6) because Plaintiffs released their claims under the Lambert Settlement Agreement. (Motion at 11.) As explained above, the Court disagrees. Defendant contends that the Settlement Agreement "released any claims or theories broadly 'relating to the assessment of Representment NSF Fees,' based on any theory that arose before the settlement," (id.), but the Court finds no support for such a broad interpretation of its terms. The provision Defendant quotes includes a clear Class Period limitation:

> As of the Effective Date, Plaintiff and each Settlement Class Member . . . shall automatically be deemed to have fully and irrevocably released and forever discharged Navy Federal . . . of and from any and all liabilities, rights, claims, actions, causes of action, demands . . . whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal statutory, or equitable, based on contract, tort, or any other theory, that resolute from, arise out of, are based upon, or relate to the conduct, omissions, duties or matters *during the Class Period that were or could have been alleged in the Action* ("Released Claims") relating to the assessment of Representment NSF Fees.

(Settlement Agreement ¶ 84.) Contrary to Defendant's overbroad construction, the Settlement Agreement is limited in time.[3] Plaintiffs' claims could not have been alleged in the Action because they had not yet accrued, and as such, they are not "Released Claims" subject to the Settlement Agreement. Defendant's res judicata argument similarly fails because Lambert did not resolve Plaintiffs' claims.

---

[3] Defendants' cases are unpersuasive because they do not involve allegations of harm which stem from the same theory of injury but post-date an agreed-upon class period. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 748–49 (9th Cir. 2006); Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010).

### 3. Notice of Claim Provision and Standing

Defendant argues that it made Plaintiff Phlaum whole after she properly gave notice of her dispute in accordance with the parties' agreement, she therefore has no injury, and the Court must dismiss her claim. (Motion at 12.) Under the operative Account Agreement, Plaintiff Phlaum was required to notify Navy Federal of its alleged breach before filing a lawsuit, and Navy Federal then had a "reasonable period" of time to take "corrective action" in response.[4] ("Account Agreement," Dkt. No. 13-3 at 8.) Here, Plaintiff Phlaum alleges three $29 Retry NSF Fees, (see FAC ¶¶ 79–80), and Navy Federal refunded her $203.38 (Motion at 6).

In Luman v. Theismann, 647 F. App'x 804, 806 (9th Cir. 2016), the Ninth Circuit affirmed dismissal of a plaintiff's claim for monetary relief, holding that the plaintiff, who filed his complaint two months after he received a monetary refund from defendant, "no longer met the injury-in-fact requirement for standing at the time he filed his complaint." This Court agrees that, as a general matter, "Plaintiff's receipt of a pre-litigation refund of the sums in dispute deprives her of standing to assert her claims."[5] Amirhamzeh v. Chase Bank USA, N.A., 2013 WL 7219270, at *3 (C.D. Cal. Oct. 7, 2013); see also Brandon v. Nat'l R.R. Passenger Corp. Amtrak, 2013 WL 800265, at *3 (C.D. Cal. Mar. 1, 2013) ("Plaintiff's claim is moot because Defendant has already tendered $5,000 to Plaintiff and there is no meaningful relief that the Court can afford Plaintiff."). According to Plaintiff Phlaum, she has standing because Defendant's payment "did not provide all of the relief she may receive on her claims, namely a refund of Retry NSF fees incurred during the class period to class members, prejudgment

---

[4] Plaintiffs appear to argue that they are not bound by the notice provision because, as plead in the FAC, they did not have actual knowledge of the January 2021 Disclosures, including the notice provision. (See Opposition at 20–21 (citing FAC ¶ 50) ("Defendant has not proven that the January 2021 Account Agreement, including the Notice and Cure provision, applies to Plaintiffs' accounts[.]".) But Plaintiffs ignore that each of them attempted to comply with those procedures, which demonstrates actual knowledge of the Disclosures and notice provision.

[5] Contrary to Plaintiffs' argument, Plaintiffs' claims do not fall within the "capable of repetition yet evading review" exception to mootness. (See Opposition at 17 (citing Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1088 (9th Cir. 2011).) That doctrine applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that *the same complaining party* will be subject to the same action again." Spencer v. Kemna, 523 U.S. 1, 17 (1998) (emphasis added). Here, Defendant is apparently willing to rectify alleged injuries pursuant to the Account Agreement and before the inception of litigation. But "it is not against public policy to resolve disputes before an action is brought." Beyer v. Countrywide Home Loan Serv., L.P., 359 Fed. Appx. 701, 703 (9th Cir. 2009). This is simply not a case where the challenged conduct cannot be fully litigated prior to some natural cessation or where Plaintiffs have a reasonable expectation that they will be subject to the same conduct (especially given Plaintiffs' concession that they do not challenge any conduct post-dating the January 2021 Disclosures).

interest, attorneys' fees, punitive damages of treble the amount at issue, and statutory damages." (Opposition at 18.) But the Court is unpersuaded that Plaintiff Phlaum was entitled to that relief simply because she had retained counsel before complying with the pre-dispute resolution procedures required under the parties' agreement and said counsel made broad allegations about potential class claims. Although she may have received a greater amount of money as the named plaintiff in a class action lawsuit, her *injury* was redressed by Defendant's payment, which occurred before the inception of this lawsuit and pursuant to the terms of the contract between the parties. Plaintiff Phlaum argues that she did not consent to the payment, but in her notice letter, she asked Navy Federal to "cure and correct this issue." (FAC, Ex. H at 3.) In sum, Plaintiff Phlaum received a pre-litigation refund of the sums at the center of her dispute and has no remaining injury. See Luman, 647 F. App'x at 806. Accordingly, Plaintiff Phlaum's claims are **DISMISSED WITHOUT LEAVE TO AMEND**.

Plaintiff Jones's claims fail because, unlike Phlaum, he did not provide Defendant with a "reasonable period" of time to take "corrective action" in response to his complaint, as required by the Agreement between the parties. (See Account Agreement at 8.) On April 10, 2024, Jones sent Navy Federal a letter raising his concern that he had incurred impermissible Retry NSF Fees. (FAC, Ex. J.) Jones mailed the letter one day before he filed the initial Complaint in this matter, (FAC ¶ 85), and Defendant did not receive it until a week after the Complaint was filed, (Vance Decl., Ex. J). After Navy Federal received the letter and Complaint, it then credited Plaintiff Jones's account $58, accounting for the two fees Jones identified in the Complaint as Retry NSF Fees, (Complaint ¶ 64), plus interest. (See FAC ¶ 86; Vance Decl., Ex. F.) In the FAC, Jones identifies eight dates on which he purportedly incurred Retry NSF Fees. (FAC ¶ 64.) Navy Federal has since refunded his all of those fees, with interest. (See, e.g., Vance Decl. ¶¶ 7–8; id., Exs. F–G.)

Although the law concerning a plaintiff's standing may differ with respect to *post*-litigation refunds of disputed sums, the Court need not reach that issue because Plaintiff Jones failed to comply with the clear terms of the Account Agreement. See King v. Navy Fed. Credit Union, 2023 WL 8250482, *2–3 (C.D. Cal. 2023) (dismissing for failure to comply with notice of claim provision). Jones was required to permit Defendant a "reasonable period" of time to take "corrective action" in response to his notice letter. (Account Agreement at 8.) Jones mailed his letter the day before he filed his Complaint, and Defendant did not receive it until a week later. Defendant did not have a reasonable period of time to respond to Jones's notice letter, which Plaintiff appears to concede. (See Opposition at 19–20.) Contrary to Plaintiff Jones's argument, Plaintiff Phlaum's notice letter did not fulfill Plaintiff Jones's obligations under the Agreement because it does not mention Jones, and thus did not afford Defendant the ability to cure his alleged injuries. (See Opposition at 19–20.) Nor is the Court persuaded that the FAC's passing reference to Jones having "complained about the NSF fees assessed against his account to" Defendant, because "conclusory allegations do[] not suffice to allege the fact of providing notice." King v. Navy Fed. Credit Union, 2023 WL 8250482, *4. Plaintiff Jones may have additional facts supporting his having previously notified Defendant of his claims, and if he does, he must so plead them. Accordingly, Plaintiff Jones's claims are **DISMISSED WITH LEAVE TO AMEND**.

## V. CONCLUSION

For the above reasons, the Motion is **GRANTED**.  Plaintiff Phlaum's claims are **DISMISSED WITHOUT LEAVE TO AMEND**.  Plaintiff Jones's claims are **DISMISSED WITH LEAVE TO AMEND**.  An amended complaint, if any, must be filed no later than **September 20, 2024**.  The September 9, 2024 hearing is **VACATED**.


**IT IS SO ORDERED.**