Taras Kick, CA Bar No. 143379
Taras@kicklawfirm.com
Tyler J. Dosaj, CA Bar No. 306938
Tyler@kicklawfirm.com
**THE KICK LAW FIRM, APC**
815 Moraga Drive
Los Angeles, California 90049
Tel: (310) 395-2988
Fax: (310) 395-2088

Attorneys for Plaintiff Jason Jones,
and the Putative Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON JONES, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NAVY FEDERAL CREDIT UNION, and DOES 1-100,<br><br>Defendants. | **CASE NO.: 5:24-CV-00765-JGB-DTB**<br><br>**CLASS ACTION**<br><br>**SECOND AMENDED COMPLAINT FOR**<br><br>(1)    Breach Of Contract, Including the Implied Covenant Of Good Faith And Fair Dealing;<br>(2)    Unjust Enrichment;<br>(3)    Money Had and Received<br>(4)    Violation of Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*.;<br>(5)    Violation of The Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq*.; and,<br>(6)    Conversion.<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jason Jones ("Plaintiff"), by and through his attorneys, hereby brings this class and representative action against Navy Federal Credit Union and DOES 1 through 100 (collectively "Navy Federal" or "Defendant").

## NATURE OF THE ACTION

1.     All allegations herein are based upon information and belief except those allegations which pertain to Plaintiff or his counsel.  Allegations pertaining to Plaintiff or his counsel are based upon, *inter alia*, Plaintiff's or counsel's personal knowledge, as well as Plaintiff's or counsel's own investigation.  Furthermore, each allegation alleged herein either has evidentiary support or is likely to have evidentiary support, after a reasonable opportunity for additional investigation or discovery.

2.     This is a class and representative action brought by Plaintiff to assert claims in his own right, and in their capacity as the class representative of all other persons similarly situated, and in their capacity as private attorneys general on behalf of the members of the general public. Navy Federal wrongfully charged Plaintiff and the Class Members fees related to their checking accounts.

3.     This class action seeks monetary damages, restitution, and injunctive relief due to Navy Federal's policy and practice to assess Overdraft ("OD") or Non-Sufficient Funds ("NSF") Fees on items that had previously triggered NSF Fees.

## PARTIES

4.     Plaintiff Jason Jones is a resident of Corona, California and had a checking account with Navy Federal at all times relevant to the class action allegations.  Plaintiff Jones patronized Defendant's branches in California, received his Navy Federal account statements in California, and initiated transactions on his Navy Federal account within California.

5.     Based on information and belief, Defendant Navy Federal is a federally chartered credit union with its headquarters and principal place of business located in Vienna, Virginia.  Among other things, Navy Federal is engaged in the business of providing retail credit union services to consumers and businesses, including Plaintiff

and members of the putative classes, throughout the United States, including in California.

6.     Without limitation, defendants DOES 1 through 100, include agents, partners, joint ventures, subsidiaries and/or affiliates of Navy Federal and, upon information and belief, also own and/or operate Navy Federal branch locations.  As used herein, where appropriate, the term "Navy Federal" is also inclusive of Defendants DOES 1 through 100.

7.     Plaintiff is unaware of the true names of defendants DOES 1 through 100. Defendants DOES 1 through 100 are thus sued by fictitious names, and the pleadings will be amended as necessary to obtain relief against defendants DOES 1 through 100 when the true names are ascertained, or as permitted by law or by the Court.

8.     There exists, and at all times herein mentioned existed, a unity of interest and ownership between the named defendants (including DOES) such that any corporate individuality and separateness between the named defendants has ceased, and that the named defendants are *alter egos* in that the named defendants effectively operate as a single enterprise, or are mere instrumentalities of one another.

9.     At all material times herein, each defendant was the agent, servant, co-conspirator and/or employer of each of the remaining defendants, acted within the purpose, scope, and course of said agency, service, conspiracy and/or employment and with the express and/or implied knowledge, permission, and consent of the remaining defendants, and ratified and approved the acts of the other defendants. However, each of these allegations are deemed alternative theories whenever not doing so would result in a contradiction with the other allegations.

10.     Whenever reference is made in this Complaint to any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of Defendant's ordinary business and affairs.

SECOND AMENDED CLASS ACTION COMPLAINT

11.    As to the conduct alleged herein, each act was authorized, ratified or directed by Defendant's officers, directors, or managing agents.

## VENUE AND JURISDICTION

12.    This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and (6) because:  (i) there are 100 or more class members;  (ii) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs;  and (iii) there is minimal diversity because at least Plaintiff and defendant are citizens of different states.    This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13.    Venue is proper in this District, among other reasons, pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

**A. Navy Federal Settled a Class Action Lawsuit Regarding the Retry NSF Fees At Issue Here, But Excluded At Least Several Months From That Settlement And Also Continued Assessing Such Fees In Breach of Its Contracts.**

14.    As set forth below, the conduct at issue in this case is Defendant's assessment of Overdraft or NSF fees on items that had previously triggered NSF fees ("Retry NSF Fees") on the accounts of its members despite contractual promises to assess only one fee per item.

15.    Defendant recognizes that the Retry NSF practice is unfair and deceptive and constitutes a breach of its contracts with its customers. That is why, on October 5, 2020, Defendant entered into a $16 million settlement agreement with the plaintiff in *Lambert v. Navy Federal Credit Union*, No. 1:19-CV-103-LO-MSN (E.D. Va.), which alleged the improper assessment of the same Retry NSF Fees at issue here, while the case was pending on appeal to the Fourth Circuit, after full briefing and shortly before arguments.  Rather than allow those arguments to go forward, Defendant instead paid

$16 million to avoid the Circuit Court's opinion.

16.    As part of the $16 million *Lambert* settlement, class members agreed to release claims "during the Class Period that were or could have been alleged in the Action ("Released Claims") relating to the assessment of Representation NSF Fees." (*Lambert* Settlement Agreement ¶ 84.) The "Class Period" in *Lambert* was defined as January 28, 2014, through the date of Preliminary Approval, namely October 27, 2020. (*Lambert* Settlement Agreement ¶ 16.)

17.    "Representation NSF Fees" were defined in the Settlement agreement as follows:

> "Representation NSF Fees" means the second or third NSF Fee charged to an Account Holder when a Settlement Class member's merchant has re-presented a debit item or check to Navy Federal for payment (after an initial return by Navy Federal for insufficient funds), and where the debit item or check is again returned by Navy Federal due to insufficient funds, resulting in an additional NSF Fee or NSF Fees.

(*Lambert* Settlement Agreement ¶ 26.)

18.    The *Lambert* Settlement Agreement for the class period of January 28, 2014 through October 27, 2020, was finally approved on April 8, 2021. The *Lambert* class members subsequently received partial refunds of the at-issue fees under the terms of that Settlement Agreement.

19.    Defendant Navy Federal Credit Union attempted to materially change its contract terms regarding this practice in its January 2021 Consumer Account Agreement and its September 2022 Business Account Agreement. However, after the certified class period of October 27, 2020 in *Lambert* had ended, and before Defendant's even arguable best-case scenario of its new January 2021 and September 2022, contract terms concerning this practice having become effective, Defendant continued assessing Retry NSF Fees against the class members in the instant case pursuant to the same contractual terms that had been effective during the *Lambert* class period of January 28, 2014 through October 27, 2020. This conduct breached

Defendant's contracts with its customers in the same manner as it breached the contracts with the already settled *Lambert* class members, at least until Navy Federal Credit Union's new terms regarding this practice became effective, if at all. These post-*Lambert* Class Period customers never received compensation for the Retry NSF Fees they incurred, despite having been subject to the same conduct under the same contractual terms as the *Lambert* class members, including but not limited to during the time period between when the *Lambert* class period ended and when the new Navy Federal contract terms on this issue even under Navy Federal's best-case scenario arguably first became effective.

**B. Regulators Have Universally Condemned the Retry NSF Fee Practice and Have Forced Financial Institutions to Pay Hundreds of Millions of Dollars in Consumer Redress and Civil Penalties As a Result of the Practice.**

20.    The condemnation of the practice at issue by federal government regulators is prolific and universal. For example, the Consumer Financial Protection Bureau ("CFPB") is actively seeking to prevent financial institutions like Navy Federal from ever engaging in the Retry NSF Fee practice. As stated in the CFPB's 2023 Supervisory Highlights:

> Some institutions assess NSF fees when a consumer pays for a transaction with a check or an Automated Clearing House (ACH) transfer and the transaction is presented for payment, but there is not a sufficient balance in the consumer's account to cover the transaction. After declining to pay a transaction, the consumer's account-holding institution will return the transaction to the payee's depository institution due to non-sufficient funds and may assess an NSF fee. The payee may then present the same transaction to the consumer's account-holding institution again for payment. If the consumer's account balance is again insufficient to pay for the transaction, then the consumer's account-holding institution may assess another NSF fee for the transaction and again return the transaction to the payee. Absent restrictions on assessment of NSF fees by the consumer's account-holding institution, this cycle can occur multiple times.

Supervision found that institutions engaged in unfair acts or practices by charging consumers multiple NSF fees when the same transaction was presented multiple times for payment against an insufficient balance in the consumer's accounts, potentially as soon as the next day. **The assessment of multiple NSF fees for the same transaction caused substantial monetary harm to consumers, totaling millions of dollars. These injuries were not reasonably avoidable by consumers, regardless of account opening disclosures. And the injuries were not outweighed by countervailing benefits to consumers or competition**.

Examiners found that institutions charged several million dollars to tens of thousands of consumers over the course of several years due to their assessment of multiple NSF fees for the same transaction. The institutions agreed to cease charging NSF fees for unpaid transactions entirely and Supervision directed the institutions to refund consumers appropriately. Other regulators have spoken about this practice as well.

Supervisory Highlights Junk Fees Special Edition, Consumer Financial Protection Bureau, at 5-6 (March 8, 2023) (emphasis added.)

21.    For further example of the federal government's perspective on the practice at issue in this case, the CFPB issued a public Consent Order on July 11, 2023, as follows:

Consumers could not reasonably avoid the Re-Presentment NSF Fees assessed under Respondent's policy. Whether or not consumers expected or understood that Respondent would charge a new $35 fee each time it returned the same transaction, they were not reasonably able to avoid the fee because they did not know when merchants would re-present transactions, which could occur as soon as the next day. Nor could consumers generally stop payments or revoke authorizations on transactions easily or in time, and by attempting to stop payment they would incur substantial additional costs, even if the stop payment was untimely or otherwise unsuccessful. Further, the amount that consumers owed increased with each subsequent NSF Fee, adding to the difficulty for some consumers of avoiding the injury caused by these fees.

*Bank of America, N.A.*, Consent Order, File No. 2023-CFPB-0006 at ¶ 19 (July 11, 2023). The Consent Order required Bank of America to refund *all* of the re-presentment fees at issue that it had not already refunded, "providing not less than $80,400,000 in total consumer redress" and to pay "a civil money penalty of $60,000,000" to the CFPB. *Id.* at ¶¶ 27, 35.

22. The CFPB is not the only federal regulator which has condemned this practice in which Navy Federal engages. Specifically, the Office of the Comptroller of the Currency ("OCC") has condemned the Retry NSF Fee practice and warned financial institutions that the Retry NSF Fee practice creates a heightened risk of violating section 5 of the Federal Trade Commission (FTC) Act (Section 5), which prohibits unfair or deceptive acts or practices, even when it is properly contracted for:

> When a bank receives a check or automated clearing house (ACH) transaction that is presented for payment from a customer's deposit account, and the account has insufficient funds to pay the check or ACH transaction, the bank may decline to pay the transaction and charge the customer an NSF fee. If the same check or ACH transaction is presented to the bank again and the customer's account still has insufficient funds, some banks will either again return the transaction unpaid and assess an additional NSF fee or pay the transaction and assess an overdraft fee. **This practice of charging an additional fee each time a single transaction (e.g., ACH transaction or check) is presented for payment by a third party without further action by the customer contributes to customer costs in circumstances in which those customers cannot reasonably avoid the additional charges**. Through ongoing supervision, the OCC has identified concerns with a bank's assessment of an additional fee on a representment transaction, resulting in findings in some instances that the practice was unfair and deceptive. Disclosures may be deceptive, for purposes of Section 5, if they do not clearly explain that multiple or additional fees (NSF or overdraft) may result from multiple presentments of the same transaction. **Even when customer disclosures explain that a single check or ACH transaction may result in more than one fee, a bank's practice of assessing fees on each representment may also be unfair, for purposes of Section 5, if consumers cannot reasonably avoid the harm and the other factors for establishing unfairness under Section 5 are met. Consumers typically have no control over when a returned ACH transaction or**

**check will be presented again and lack knowledge of whether an intervening deposit will be sufficient to cover the transaction and related fees**.

"Overdraft Protection Programs: Risk Management Practices," OCC Bulletin 2023-12, April 26, 2023 (available at https://www.occ.treas.gov/news-issuances/bulletins/2023/bulletin-2023-12.html, last visited on February 27, 2024) (emphasis added.)

23.     In addition to the CFPB and the OCC condemning this practice in which Navy Federal engages which is the subject of this lawsuit, yet another federal regulator also has condemned this practice. Specifically,  the FDIC, in August 2022, issued a Supervisory Guidance stating that financial institutions engaged in the practice of "charging of multiple NSF fees arising from the same unpaid transaction" are at "heightened risks of violations of Section 5 of the Federal Trade Commission (FTC) Act" because "the failure to disclose material information to customers about re-presentment and fee practices has the potential to mislead reasonable customers." Supervisory Guidance on Multiple Re-Presentment NSF Fees, Federal Deposit Insurance Corporation, at 1 (August 2022). The agency then provided guidance on what it means to "clearly and conspicuously disclos[e] the amount of NSF fees to customers and when and how such fees will be imposed"—which includes disclosing "[i]nformation on whether multiple fees may be assessed in connection with a single transaction when a merchant submits the same transaction multiple times for payment." *Id.*

24.     This followed the FDIC's promulgation in March 2022 regarding this same Retry NSF Fee assessment practice in its Consumer Compliance Supervisory Highlights, in which it stated:

During 2021, the FDIC identified consumer harm when financial institutions charged multiple NSF fees for the re-presentment of unpaid transactions. Some disclosures and account agreements explained that one NSF fee would be charged "per item" or "per transaction." These terms were not clearly defined, and disclosure forms did not explain that the

same transaction might result in multiple NSF fees if re-presented. While case-specific facts would determine whether a practice is in violation of a law or regulation, the failure to disclose material information to customers about re-presentment practices and fees may be deceptive.

Consumer Compliance Supervisory Highlights, Federal Deposit Insurance Corporation, at 8-9 (March 2022).

25.    Similarly, the National Credit Union Administration ("NCUA"), through Chairman Todd M. Harper, has criticized Retry NSF Fees as "antithetical to the purpose of credit unions":

In my view, overdraft fee programs that allow for authorizing positive and settling negative, permit the charging of multiple representment fees, and incorporate **repeated NSF fees are antithetical to the purpose of credit unions, detrimental to members, and inconsistent with the credit union system's statutory mission of meeting the credit and savings needs of consumers**, especially those of modest means.

"NCUA Chairman Todd M. Harper Remarks at the Indiana Credit Union League," May 19, 2023 (available at https://ncua.gov/newsroom/speech/2023/ncua-chairman-todd-m-harper-remarks-indiana-credit-union-league, last visited on February 27, 2024) (emphasis added).

**C. Defendant Breached Its Contracts With Plaintiff and Class Members By Assessing Retry NSF Fees Against Their Accounts.**

26.    Plaintiff's Navy Federal checking accounts are governed by the Account Documents, including the Consumer Account Agreement attached hereto as Exhibit A, and the Fee Schedule, attached hereto as Exhibit B, in effect during the period relevant to this litigation.

27.    The Account Documents provide the general terms of Plaintiff's relationship with Navy Federal and therein Navy Federal makes explicit promises and representations regarding how transactions will be processed, as well as when NSF Fees and OD Fees may be assessed.

28.    The Account Documents effective during the Class Period stated that fees

will only be assessed once per transaction or single item when in fact Navy Federal regularly charges two or more fees per transaction or single item even though a customer only requested the payment or transfer once.

29.    Navy Federal's Account Documents during the Class Period indicated that a single fee can be assessed on checks, ACH transactions, and electronic payments.

30.    Navy Federal's Account Documents during the Class Period stated that it will charge a single fee for each item or transaction that is returned due to insufficient funds.

31.    According to the Fee Schedule effective during the Class Period, Defendant was permitted to charge a singular NSF "fee" in the amount of $29.00 for "checks and ACH debit" as follows:

> Non-sufficient funds fee for checks and ACH debit  . . . . . . . . . . . . . . . . . . . . . . . $29.00

> Optional Overdraft Protection Service transaction  . . . . . . . . . . . . . . . . . . . . . . . $20.00

October 2020 Fee Schedule, Ex. B to Complaint at 1.

32.    A commonsense interpretation of this contract term is that a singular fee would be assessed on each check or ACH transaction regardless of the number of times that check or transaction was resubmitted for payment.

33.    The same item or transaction cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit it.

34.    Likewise, the Consumer Account Agreement effective during the Class Period, reinforces this commonsense understanding, stating that a single "fee" will be assessed on each "refused check," not per refusal of the same check:

Navy Federal is authorized to refuse checks that exceed funds available

---

11
SECOND AMENDED CLASS ACTION COMPLAINT

in the checking account. A fee will be assessed in the amount shown on Navy Federal's current *Schedule of Fees and Charges* for each refused check.

October 2020 Consumer Account Agreement, Ex. A to Complaint at 4.

35.     Similarly, regarding ACH transactions, the Consumer Account Agreement plainly states that a single "fee" may be assessed "for each returned debit item" and not per return of the same debit item:

> Navy Federal may return debits to the checking account (e.g., an ACH payment) if the amount of the debit exceeds funds available in the checking account. A fee may be assessed in the amount shown on Navy Federal's current *Schedule of Fees and Charges* for each returned debit item.

October 2020 Consumer Account Agreement, Ex. A to Complaint at 4.

36.     Defendant's Business Account Agreement contained terms materially identical to that in the Consumer Account Agreement discussed above during the Class Period. July 2020 Business Account Agreement, Ex. E to Complaint at 3.

37.     The Account Documents effective during the Class Period never define the term "item" in a manner that suggests the reprocessing or resubmission of an "item" is itself an "item" or "transaction." Indeed, the term "item" is overwhelmingly used to refer to checks or similar instruments that effectuate the accountholder's initial order or instruction for payment.

38.     There is zero indication anywhere in the Account Documents that the same check or item is eligible to incur multiple NSF Fees, or an NSF Fee followed by an OD Fee.

39.     Even if Navy Federal reprocesses an instruction for payment, it is still the same item. Navy Federal's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

40.     The Account Documents described never discuss a circumstance where Navy Federal may assess multiple fees for a single check or ACH transaction that was returned for insufficient funds and later reprocessed one or more times and returned

again.

41.    In sum, Navy Federal promised that one fee will be assessed per check or electronic payment, and these terms must mean all iterations of the same instruction for payment. As such, Navy Federal breached the contract when it charged more than one fee per item.

42.    Reasonable customers understand any given authorization for payment to be one, singular item, payment, or transaction.

43.    Customers reasonably understand, based on the terms of the Account Documents and Navy Federal's other documents, that Navy Federal's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger NSF fees or an OD fee if the transactions is later paid. In other words, it is always the same item or transaction.

44.    In spite of these contractual promises, Defendant nevertheless assessed multiple NSF fees, or an OD fee following the assessment of an NSF fee, on the same check or ACH transaction on the accounts of its members during the Class Period.

45.    Defendant is aware that the contractual terms discussed above did not permit it to assess Retry NSF Fees. That is why, after the end of the Class Period, it attempted to materially change its Consumer Account Agreement starting at some point in January 2021 to explicitly contract for the Retry NSF Fee practice for the first time, as follows:

> Navy Federal is authorized to refuse checks that exceed funds available in the checking account. Each time we refuse a check for insufficient funds, we will assess a nonsufficient funds ("NSF") fee in the amount shown on Navy Federal's current *Schedule of Fees and Charges* for each refused check. A financial institution where you deposit a check, or a payee, may resubmit the check to Navy Federal even if we have already refused the check for insufficient funds in the checking account. If the resubmitted check again exceeds the funds available in the checking account, Navy Federal again will refuse the check, resulting in an additional NSF fee. Thus, you may be charged multiple NSF fees in connection with a single check that has been refused for insufficient funds multiple times.

SECOND AMENDED CLASS ACTION COMPLAINT

…

> Navy Federal may return debits (e.g., ACH payments) submitted for payment against the checking account if the amount of the debit exceeds the funds available in the checking account. Each time we return a debit for insufficient funds, we will assess a NSF fee in the amount shown on Navy Federal's current *Schedule of Fees and Charges* for each returned debit item. The entity that submitted the debit may submit another debit to Navy Federal even if we have already returned the prior debit for insufficient funds in the checking account. If the resubmitted debit again exceeds the funds available in the checking account, Navy Federal again will return the debit, resulting in an additional NSF fee. Thus, you may be charged multiple NSF fees in connection with a single debit that has been returned for insufficient funds multiple times.

January 2021 Consumer Account Agreement, Ex. C to Complaint at 4–5.

46.    Similarly, the February 2021 Fee Schedule states the following for the first time regarding NSF fees:

> Non-sufficient funds fee (NSF) charged each time a check or ACH debit is presented and returned because of insufficient funds.

February 2021 Fee Schedule, Ex. D to Complaint at 1.

47.    Like the Consumer Account Agreement, Defendant attempted to materially change its Business Account Agreement following the Class Period to contract for the Retry NSF Fee practice, starting in September 2022. September 2022 Business Account Agreement, Ex. F to Complaint at 4–5.

48.    Discovery will be necessary to determine when the contractual documents containing this materially different contract terms regarding this practice were disseminated to class members, including Plaintiff, and when if ever they became effective as binding contracts. Plaintiff will end the Class Period on the date or dates on which the documents contracting for the Retry NSF Fee practice became effective as binding contracts on Plaintiff and the Class Members. In ending the Class Period on this date or dates, Plaintiff does not concede that the new contract terms regarding this Retry NSF Fee practice allows the practice necessarily, but Plaintiff end their class

period in this lawsuit at that time.

49.    Plaintiff does not believe he received any notice that the Consumer Account Agreement or Fee Schedule were being amended regarding the Retry NSF Fee practice, nor does Plaintiff believe he received a copy of the January 2021 Consumer Account Agreement or February 2021 Fee Schedule from Defendant. Further, Plaintiff does not recall receiving notice of the *Lambert* settlement.

50.    Other banks and credit unions that engage or engaged in this abusive predatory practice of charging more than one fee for the same item would attempt to contract for it by stating they would charge for the same item each time it was presented, typically use terminology such as "per presentment" or "per each presentment",  and often also add far more material in explaining this practice to be sure their contracts are not ambiguous. While Plaintiff does not concede that this improved contractual terms would necessarily allow such a predatory practice to go unaddressed, the following are some examples from other banks and credit unions that make clear in their contracts that this type of multiple fee practice would be imposed on their customers or members:

51.    Air Academy Federal Credit Union contracts for its NSF Fee as follows, distinguishing between fees that are assessed "per item" and the NSF Fee, which is charged "per presentment:

Deposit Drafts Returned Unpaid (when payor and payee are the same) $75.00 per item

| | |
|---|---|
| Premium Overdraft Service | $32.00 per presentment* |
| Non-Sufficient Funds (NSF) Fee | $32.00 per presentment** |
| ACH Representment Fee | $32.00 per presentment |

*See* https://www.aafcu.com/fees.html (emphasis added) (last visited on April 11, 2024).

52.    Central Pacific Bank contracts unambiguously:
Items and transactions (such as, for example, checks and electronic

---

transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds.

*See* https://www.cpb.bank/media/wr4pavge/miscellaneous-fee-schedule-update.pdf (last visited April 11, 2024).

53.    Community Bank, N.A. unambiguously contracts: "We cannot dictate whether or not (or how many times) a merchant will resubmit a previously presented item. **You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned."**

*See* https://cbna.com/u/infographics/Overdraft_Unavailable-Funds-Practices-DisclosureT-428-Rev-2.16.21-Effective-5.1.21-UPDATE.pdf (emphasis added) (last visited on April 11, 2024).

54.    Delta Community Credit Union contracts unambiguously as follows:

"$15 **per presentment** . . . You may be charged an NSF fee each time a check or ACH is presented to us, even if it was previously submitted and rejected."

*See* https://www.deltacommunitycu.com/home/fees.aspx (emphasis added) (last visited on April 11, 2024). Further, in its Account Contract, Delta unambiguously states as follows:

The Credit Union reserves the right to charge you an overdraft/insufficient funds fee if you write a check or initiate an electronic transaction that, if posted, would overdraw your Checking Account. **Note that you may be charged an NSF Fee each time a check or ACH is presented to us, even if it was previously submitted and rejected**.

*See* https://www.deltacommunitycu.com/home/forms/member-savings-services-disclosures-and-agreements.aspx at 2 (emphasis added) (last visited on April 11, 2024).

55.    First Financial Bank contracts unambiguously:

An item may be presented multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other

reason (representment). Each presentment is considered an item and may be charged.

*See* https://www.bankatfirst.com/content/dam/bankatfirst/legal/special-handling-charges.pdf at 2 (last visited on April 11, 2024).

56.    First Northern Credit Union unambiguously contracts its NSF Fee as, "NSF (Non-Sufficient Funds) - per each presentment and any subsequent representment(s) (additional non-credit union charges may also occur) . . .    $29.00"

*See* https://www.fncu.org/feeschedule/?scpage=1&scupdated=1&scorder=-click_count (last visited on April 11, 2024).

57.    Further, in its Account Contract, First Northern unambiguously contracts as follows:

> NONSUFFICIENT FUNDS FEES - You agree that we may charge a Nonsufficient Funds (NSF) fee for returning items presented against your account that would exceed your available balance. **You further agree that we may charge a NSF fee each time an item is presented for payment even if the same item is presented for payment multiple times.** For example, if you wrote a check to a merchant who submitted the payment to us and we returned the item (resulting in a NSF fee), the merchant may re-present the check for payment again. If the second and any subsequent presentments are returned unpaid, we may charge a NSF fee for each time we return the item. You understand this means you could be charged multiple NSF fees for one check that you wrote as that check could be presented and returned more than once. **Similarly, if you authorize a merchant (or other individual or entity) to electronically debit your account, such as an ACH debit, you understand there could be multiple submissions of the electronic debit request which could result in multiple NSF fees.** You agree that we do not determine whether and when an item will be presented for payment. Rather, we determine whether or not the available balance is sufficient to pay a presented item.

*See* https://www.fncu.org/Documents/Disclosures/Member-Agreement.pdf at 4 (emphasis added) (last visited on April 11, 2024).

58.    Glendale Federal Credit Union unambiguously contracts its NSF Fee as: "Insufficient Funds (NSF)/ATM (per presentment)............$30"

*See* https://www.glendalefcu.org/_/kcms-doc/2001/58294/Fee-Schedule.pdf at 2 (last visited on April 11, 2024).

59.    By citing the above examples of contractual terms that contracted for the Retry NSF Fee practice, Plaintiff does not concede that these terms exculpate

1   Defendant from liability for any cause of action other than breach of contract. As

2   alleged at length herein, government regulators have found that the Retry NSF Fee

3   practice is unfair or violative of law even when the practice is contracted for.

4   **D. Plaintiff's Experience**

5   60.    Defendant assessed Returned Item Fees against Plaintiff Jones's account

6   on at least November 30, 2020; December 14, 2020; December 28, 2020; December

7   29, 2020; January 5, 2021; February 8, 2021; October 22, 2021; and November 5,

8   2021. On information and belief, one or more of these fees was the result of the same

9   item being re-submitted, but formal discovery will be required to confirm this. Further,

10  on information and belief, discovery will reveal other instances of Retry NSF Fees

11  improperly assessed against Plaintiff Jones's and Class Members' accounts

12  throughout the Class Period. To the extent Defendant disputes any of the allegations

13  in this paragraph, Plaintiff requests discovery of Mr. Jones's complete transaction

14  data, account statements, and NSF letters.

15  **E. The Doctrines of Delayed Discovery, Equitable Tolling, and Equitable**

16  **Estoppel Apply.**

17  61.    Plaintiff and the Classes could not have discovered their causes of action

18  at the time the at-issue fees were assessed against their accounts, *inter alia*, because

19  Navy Federal adopted a policy of failing to contract for the transaction that triggered

20  any given NSF Fee on customer account statements, thereby preventing Plaintiff and

21  the Classes from determining whether NSF or OD Fees were being assessed against

22  transactions that had previously triggered one or more NSF Fees. Even if Navy Federal

23  had presented this information, it would still be unreasonable, and next to impossible,

24  for a layperson to be able to decipher statements and discover the practice at issue, yet

25  alone be able to stop it.  In addition, Navy Federal's Account Documents during the

26  Class Period misrepresented its true fee assessment practices by promising to assess

27  only a single NSF Fee per item, further precluding Plaintiff and the Classes from

28  discovering their causes of action.

62.     In light of the foregoing, the applicable statute of limitations period(s) did not begin to run until January 2024, when Ms. Phlaum identified her causes of action with the assistance of counsel.

## **CLASS ACTION ALLEGATIONS**

63.     Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23. As all requisite elements of Rule 23 of the Federal Rules of Civil Procedure are satisfied, the court should grant class certification pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3), appoint Plaintiff as the Class Representatives and the undersigned counsel as Class Counsel. The Classes are defined as:

> All Navy Federal consumer checking accountholders who, between October 28, 2020 and the date on which Defendant's January 2021 Consumer Account Agreement became effective, were charged a Non-Sufficient Funds Fee or an Overdraft Fee on an item that had previously triggered a Non-Sufficient Funds Fee (the "Retry NSF Class").

> All Navy Federal consumer checking accountholders who are citizens of California who, between October 28, 2020 and the date on which Defendant's January 2021 Consumer Account Agreement became effective, were charged a Non-Sufficient Funds Fee or an Overdraft Fee on an item that had previously triggered a Non-Sufficient Funds Fee ("California Sub-Class").

> All Navy Federal business checking accountholders who, between October 28, 2020 and the date on which Defendant's September 2022 Business Account Agreement became effective, were charged a Non-Sufficient Funds Fee or an Overdraft Fee on an item that had previously triggered a Non-Sufficient Funds Fee (the "Business Retry NSF Class").

> All Navy Federal business checking accountholders who are citizens of California who, between October 28, 2020 and the date on which Defendant's September 2022 Business Account Agreement became effective, were charged a Non-Sufficient Funds Fee or an Overdraft Fee on an item that had previously triggered a Non-Sufficient Funds Fee ("California Business Sub-Class").

64.    Although Plaintiff does not concede that Navy Federal's new contract terms in its January 2021 Consumer Account Agreement and September 2022 Business Account Agreement necessarily permitted multiple fees to be charged on the same item, for purposes of this class action lawsuit Plaintiff does end the class period when this new contract term in those two agreements became effective.

65.    Excluded from the Classes are Defendant, Defendant's subsidiaries and affiliates, their officers, directors and member of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

66.    Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

67.    The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual class members because Navy Federal has acted on grounds generally applicable to the class. Such common legal or factual questions include, but are not limited to:

      a.    Whether Navy Federal improperly charged Retry NSF Fees;

      b.    Whether the conduct enumerated above violates the covenant of good faith and fair dealing;

      c.    Whether the conduct enumerated above violates the CLRA;

      d.    Whether the conduct enumerated above violates the UCL; and

      e.    The appropriate measure of damages.

68.    The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Navy Federal's records. Navy

1   Federal has the administrative capability through its computer systems and other
2   records to identify all members of the Class, and such specific information is not
3   otherwise available to Plaintiff.

4      69.   It is impracticable to bring members of the Classes' individual claims
5   before the Court. Class treatment permits a large number of similarly situated persons
6   or entities to prosecute their common claims in a single forum simultaneously,
7   efficiently and without the unnecessary duplication of evidence, effort, expense, or the
8   possibility of inconsistent or contradictory judgments that numerous individual actions
9   would engender. The benefits of the class mechanism, including providing injured
10  persons or entities with a method for obtaining redress on claims that might not be
11  practicable to pursue individually, substantially outweigh any difficulties that may
12  arise in the management of this class action.

13     70.   Plaintiff's claims are typical of the claims of the other members of the
14  Class in that they arise out of the same wrongful business practices by Navy Federal,
15  as described herein.

16     71.   Plaintiff is more than adequate representatives of the Class in that
17  Plaintiff is Navy Federal checking accountholders and have suffered damages as a
18  result of Navy Federal's contract violations. In addition:

19     a. Plaintiff is committed to the vigorous prosecution of this action on behalf
20        of themselves and all others similarly situated and have retained
21        competent counsel experienced in the prosecution of class actions and, in
22        particular, class actions on behalf of accountholders against financial
23        institutions;

24     b. There is no conflict of interest between Plaintiff and the unnamed
25        members of the Class;

26     c. Plaintiff anticipates no difficulty in the management of this litigation as
27        a class action; and

28

      d.   Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

72.    Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

73.    Navy Federal has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

74.    All conditions precedent to bringing this action have been satisfied and/or waived.

75.    Before filing the original Complaint in this action, Ms. Blanche Phlaum and Plaintiff Jones notified Defendant on behalf of themselves and the Class Members of the allegations set forth herein and afforded Defendant a reasonable period in which to take corrective action. In having notified Defendant of these allegations, they did not concede that they or any Class Members are contractually bound to provide such notice as a prerequisite to filing suit against Defendant or to participating in a class action against Defendant.

76.    Specifically, on February 22, 2024, Ms. Phlaum mailed a Notice of Claim letter (i.e., Defendant's attempted end-run around Rule 23) to Defendant, a true and correct copy of which is attached to this Complaint as Exhibit H. In that letter, Ms. Phlaum notified Defendant that Ms. Phlaum was represented by counsel; that Ms. Phlaum would act as a class representative in a putative class action against Defendant; and that Ms. Phlaum demanded the "immediate refund of all Retry NSF Fees assessed against Navy Federal member accounts between October 28, 2020 and the date the January 2021 Account Agreement became effective, plus prejudgment interest at the correct statutory rate for each state, plus attorneys' fees, plus punitive damages of treble the amount at issue, plus all applicable statutory damages." Ex. H to Complaint at 1–2.

77.     In response to Ms. Phlaum's Notice of Claim letter, counsel for Defendant wrote to Plaintiff's counsel on March 13, 2024, stating: "As you know, I was counsel for Navy Federal in the Lambert case.  They just sent me the letter you sent on re Ms. Phlaum.  I have not yet had a chance to review anything on that, but will do so shortly and get back to you.  Can you hold off on filing anything until we can chat?" Defense counsel then spoke with Plaintiff's counsel and discussed, *inter alia*, the theories in the case, the minimum class period which had been left open after the *Lambert* settlement before any revised contractual terms were even attempted; **and, the possibility of resolving this matter on a classwide basis without the need to immediately file the class action complaint.**

78.     In order to negotiate in good faith with Defendant to avoid the necessity of litigation, and in reliance on this conversation as well as on Defendant's March 13, 2024 email, Ms. Phlaum did not immediately file the Complaint. Nevertheless, rather than negotiate in good faith for relief to the Class, Defendant instead used the negotiation period to unilaterally deposit money into the represented-by-counsel Ms. Phlaum's account with Defendant in a flagrant effort to try to moot her standing and evade the instant class action lawsuit. Specifically, eight days after Defendant through counsel asked for time to investigate the matter on March 21, 2024, Ms. Phlaum received an unsolicited deposit in the amount of $203.00, in a transaction described as "Refund – Ach Item Fees."

79.     On information and belief, the purpose of Defendant's Notice provision is to avoid Rule 23 and pick off potential class representatives. This intent is clear based on Navy Federal's conduct of depositing this refund into Ms. Phlaum's account when she announced that she was representing a putative class and counsel was negotiating a class-wide resolution of the matter. Ms. Phlaum did not consent to the March 21, 2024 deposit into her account. This deposit was not previously discussed with Ms. Phlaum or Plaintiff's counsel. Plaintiff does not regard this deposit as a refund of the Retry NSF Fees alleged herein. The deposit does not afford Plaintiff the

relief that they seek in this lawsuit including because, *inter alia*, the deposit does not, as demanded in the February 22, 2024 letter, provide a "refund of all Retry NSF Fees assessed against Navy Federal member accounts between October 28, 2020 and the date the January 2021 Account Agreement became effective;" does not, as demanded in the February 22, 2024, letter, include "prejudgment interest at the correct statutory rate"; does not, as demanded in the February 22, 2024, letter, include "attorneys' fees"; does not, as demanded in the February 22, 2024, letter, include "punitive damages of treble the amount at issue"; does not, as demanded in the February 22, 2024, letter, include "all applicable statutory damages"; and, does not specify which of the numerous fees on their account are being refunded. Further, *inter alia*, to the extent the deposit is a refund for "Ach Item Fees," it does not compensate Ms. Phlaum for Retry NSF Fees she incurred on transactions that are not ACH items, such as checks. Because, *inter alia*, the deposit was not negotiated or discussed with Ms. Phlaum, and also because the matter was not communicated to the represented Ms. Phlaum's attorneys, and on information and belief the deposit was made by Defendant on the advice of its attorneys, it cannot constitute a contractual offer that relates in any way to her claims in this lawsuit. In addition, because the deposit does not include an admission by Defendant that the fees assessed against Ms. Phlaum's account were improper, there is the risk that Defendant may simply withdraw the deposited funds from the account at any time, thus rendering its offer, if any, illusory.

80. On March 22, 2024, *after* Defendant already had surreptitiously deposited funds in Ms. Phlaum's account without warning, Defendant sent Ms. Phlaum the letter that is attached to this Complaint as Exhibit I. In that letter, Defendant stated that because Plaintiff's counsel indicated they "may have other clients with concerns about Navy's NSF fee practices," Plaintiff's counsel should "direct any further client inquiries (for Ms. Phlaum or otherwise) to [Defendant's counsel] under the 'Notice of Claim' provision in the contract." Ex. I to Complaint at 1. This request indicates that Defendant intends again to try to do an end-run around

SECOND AMENDED CLASS ACTION COMPLAINT

the law and facts, including class action jurisprudence, to send unsolicited, non-negotiated sums of money that are purportedly refunds to any class member who attempts to come forward as a class representative in a flagrant attempt to moot their standing and evade a class action regarding the Retry NSF Fee practice as alleged herein. On information and belief, Defendant will attempt to continue to try to "pick off" or "buy off" any putative class representative who submits a Notice of Claim using the procedure described in the Account Agreement.  In other words, it is now apparent that Defendant's supposed "notice" requirement is actually a thinly veiled scheme to prevent class actions.

81.     It is clear that by inserting this purported pre-lawsuit notice requirement, Navy Federal has de facto caused the notice to be tantamount to the filing of a lawsuit for the purpose of picking off class representatives. To the extent this provision is enforceable, which Plaintiff disputes, it needs to be treated as part and parcel of an actual lawsuit filing. Nevertheless, in spite of Defendant's clear intent to attempt to pick off putative class representatives who submit Notice of Claim letters, Ms. Phlaum and Mr. Jones also mailed a Notice of Claim letter on behalf of Plaintiff Jones to Defendant on April 10, 2024. Exhibit J to Complaint. Further, prior to sending this letter, Plaintiff Jones complained to Defendant over the phone about Retry NSF Fees assessed against his account on at least three occasions and requested refunds. While Defendant refunded some of fees that were the subject of these calls, Defendant did not refund all such fees. Mr. Jones believes and alleges that at least one or more of these calls took place between 2020 and 2021, and that these fees were not refunded. Discovery will be necessary to confirm the precise date or dates. Mr. Jones thus complied with the Notice of Claim provision. To the extent Defendant disputes the allegations in this paragraph, Plaintiff requires discovery of Navy Federal's contentions purporting to dispute that Mr. Jones failed to comply with the Notice of Claim provision, including by means of a deposition of Navy Federal's appropriate Rule 30(b)(6) witness and custodian of records to determine how its recordings of

customer calls are archived, its retention policy, and other topics relevant to Mr. Jones's complaints.

82.   Further, as Mr. Jones was already a putative class member and/or an affected member at the time Ms. Phlaum mailed her Notice letter, to the extent any obligation for a pre-lawsuit notice ever existed, which Plaintiff disputes, this was satisfied by Ms. Phlaum's letter, which Navy Federal concedes having received. Therefore there is no dispute that Navy Federal was aware of the issue in content, and Mr. Jones satisfied the Notice requirement in this manner.

83.   Mr. Jones is also not required to comply with the Notice of Claim provision (i.e., Defendant's attempted end-run around Rule 23) because he was not bound by and did not assent to the January 2021 Account Agreement, which is the first version of the Account Agreement that contains the purported Notice of Claim provision. To the extent that Mr. Jones sent a Notice letter to Defendant, this was not due to having received notice of the January 2021 Account Agreement terms, but rather due to having retained counsel, who were aware of the Notice provision based on their own, independent research.

84.   Further, even if Mr. Jones had received notice that his account agreement was being superseded by the January 2021 Account Agreement, the Notice of Claim provision is not retroactive and therefore does not apply to claims that accrued before thirty days following any notice of the January 2021 Account Agreement. *See* Ex. A to Complaint at 6 ("The terms of this account may change upon 30 days' notice.").

85.   Consistent with its scheme of this purported pre-lawsuit notice requirement in reality being an attempted end-run by Defendant around Rule 23 to avoid class action accountability and pick off class representatives, in response to the Notice of Claim letter on behalf of Plaintiff Jones, as described in a May 2, 2024 letter to Plaintiff's counsel, Defendant deposited funds in Mr. Jones's account in purported satisfaction of his claims. Exhibit K to Complaint at 4. This purported refund did not provide Plaintiff Jones the relief he seeks in the lawsuit for the reasons discussed above

regarding Ms. Phlaum. In addition, this second refund attempt further demonstrates Defendant's intent to pick off any potential class representative who informs Defendant of their claims in this lawsuit.

86.     Accordingly, compliance with the Notice of Claim requirement is also excused because Defendant intends to "pick off" any putative class representative who submits such a claim, thereby effectively precluding the possibility of a class action regarding Retry NSF Fees in contravention of Rule 23. This tactic has been repeatedly disapproved by the Ninth Circuit and the Supreme Court of California:

> Applying these principles to our case, we conclude that Terrible's unaccepted offer *1091 of judgment did not moot Pitts's case because his claim is transitory in nature and may otherwise evade review. Accordingly, if the district court were to certify a class, certification would relate back to the filing of the complaint. We recognize that the canonical relation-back case—such as Gerstein or McLaughlin—involves an "inherently transitory" claim and, correspondingly, "a constantly changing putative class." Wade v. Kirkland, 118 F.3d 667, 670 (9th Cir.1997). But we see no reason to restrict application of the relation-back doctrine only to cases involving inherently transitory claims. **Where, as here, a defendant seeks to "buy off" the small individual claims of the named Plaintiff, the analogous claims of the class—though not inherently transitory—become no less transitory than inherently transitory claims. Thus, although Pitts's claims "are not 'inherently transitory' as a result of being time sensitive, they are 'acutely susceptible to mootness' in light of [the defendant's] tactic of 'picking off' lead Plaintiff** with a Rule 68 offer to avoid a class action." Weiss v. Regal Collections, 385 F.3d 337, 347 (3d Cir.2004) (internal citation omitted). The end result is the same: a claim transitory by its very nature and one transitory by virtue of the defendant's litigation strategy share the reality that both claims would evade review.

*Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090–91 (9th Cir. 2011) (emphasis added).

> Because *Gomez's* holding that *Pitts* is not clearly irreconcilable with *Genesis Healthcare* is not itself clearly irreconcilable with intervening Supreme Court authority, we are bound by *Gomez. See Miller v.*

SECOND AMENDED CLASS ACTION COMPLAINT

> *Gammie,* 335 F.3d 889, 892–93 (9th Cir.2003) (en banc) (holding "a three-judge panel may [not] reexamine normally **\*1144** controlling circuit precedent in the face of an intervening United States Supreme Court decision" unless "the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority"). Accordingly, *Pitts* **remains the law of this circuit. Under** *Pitts,* **even assuming Allstate could fully satisfy Pacleb's individual claims, Pacleb still would be able to seek class certification.**

*Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1143–44 (9th Cir. 2016) (emphasis added).

> In the present case, American has waived its acceleration clause only as to La Salas and Iford. If other borrowers bring a class action, American may again waive as to those representative borrowers, and again move to dismiss the action. Such a procedure could be followed ad infinitum for each successive group of representative Plaintiff. If defendant is permitted to succeed with such revolving door tactics, only members of the class who can afford to initiate or join litigation will obtain redress; relief for even a portion of the class would compel innumerable appearances by individual Plaintiff. Yet the function of the class action is to avoid the imposition of such burdens upon the class and upon the court. (*See Hansberry v. Lee* (1940) 311 U.S. 32, 41, 61 S.Ct. 115, 85 L.Ed. 22.) If we sanction American's tactic defendants can always defeat a class action by the kind of special treatment accorded Plaintiff here and thus deprive other members of the class of the benefits of the litigation and any notice of opportunity to enter into it.

*La Sala v. Am. Sav. & Loan Assn.*, 5 Cal. 3d 864, 873, 489 P.2d 1113, 1118 (1971)

87.    This purported notice requirement by Navy Federal is an obvious attempt at an end-run around Rule 23 and the case law prohibiting pick-off attempts of class representatives. To the extent the Notice of Claim provision is enforceable at all, the customer's compliance with this provision must be treated as the filing of a complaint so as to avoid Defendant's attempt to vitiate the purpose of Rule 23. Any customer who complies with the provision with an intent to file a lawsuit has, by virtue of having given notice, filed a complaint for purposes of Article III standing.

88.    Even if compliance with the Notice of Claim provision were not excused, Defendant's tactic of issuing refunds to Plaintiff who comply with it is without legal effect because this lawsuit seeks relief under the Consumer Legal Remedies Act, which permits class actions to proceed even if the defendant provides an individual claimant with relief before the lawsuit is filed:

> As these letters, taken together, put Gibraltar on notice that its alleged violations of section 1770 affected a class of consumers, Gibraltar was under an affirmative obligation to meet the conditions set forth in section 1782, subdivision (c) in order to avert a class action. There is no evidence to indicate that Gibraltar made an effort to meet any of these conditions. Gibraltar did not seek to identify consumers similarly situated to plaintiff, or notify such consumers that it would provide them relief upon their request. Nor did Gibraltar demonstrate that it had provided requested relief to any similarly situated consumers or that it would cease from engaging in the challenged conduct within a reasonable time. Gibraltar made no mention of stopping any of its allegedly false advertising other than withdrawing its promotional brochures. Nor did Gibraltar indicate that it would require its employees to stop making the allegedly misleading oral representations. Additionally, assuming plaintiff's husband is a member of the purported class of IRA depositors fraudulently induced to open IRAs with Gibraltar, Gibraltar's reimbursement to him of the $15 which it acknowledged deducting from his 1979 and 1980 ***43 accounts did not include any compensation for the requested interest thereon.
>
> **1065 As Gibraltar did not meet the conditions of section 1782, subdivision (c) in response to notification of its alleged class violations of section 1770, a class action for damages pursuant to section 1781, subdivision (a) may lie. Moreover, as discussed below, plaintiff may properly bring the action on behalf of herself and as a representative of the class.

*Kagan v. Gibraltar Sav. & Loan Assn.*, 35 Cal. 3d 582, 592, 676 P.2d 1060, 1064–65 (1984). On or around the date of the filing of this Complaint, Plaintiff will have mailed a letter to Defendant notifying it of its violations of the CLRA.

# FIRST CLAIM FOR RELIEF

## Breach Of Contract, Including the Implied Covenant Of Good Faith And Fair Dealing

### (On Behalf of Plaintiff and the Classes)

89.    Plaintiff repeats and incorporate all of the preceding allegations as if fully set forth herein.

90.    Plaintiff, and all members of the proposed Class, contracted with Navy Federal for checking account services, including debit card services.

91.    Defendant breached its contract and promises made to Plaintiff and all members of the proposed class when as described herein, Defendant charged multiple NSF Fees or NSF Fees followed by an OD Fee on a single item.

92.    Further, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

93.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, interference with or failure to cooperate in the other party's performance, and abuse of unilateral contractual discretion.

94.    The implied covenant of good faith and fair dealing applies to the performance and enforcement of contracts, limits the parties' conduct when their

1 | contract defers decision on a particular term, omits terms, or provides ambiguous
2 | terms.

3 |     95.    Navy Federal has breached the covenant of good faith and fair dealing
4 | and abused its discretion in its contract as described herein. Specifically, Navy Federal
5 | abused its contractual discretion to define the contractual terms "each refused check"
6 | and "each returned debit item" in a manner contrary to any reasonable, common sense
7 | understanding of those terms. Under Navy Federal's definitions, "each refused check"
8 | is equivalent to "each refusal of the check" and "each returned debit item" is
9 | equivalent to "each return of the debit item."

10 |     96.    Plaintiff and all members of the proposed Class have performed all, or
11 | substantially all, of the obligations imposed on them under the contract.

12 |     97.    Plaintiff and all members of the proposed Class have sustained damages
13 | as a result of Navy Federal's breach of contract and breach of the implied covenant of
14 | good faith and fair dealing and are entitled to monetary relief and injunctive relief to
15 | avoid further damage which they and the members of the Class are threatened or at
16 | risk of.

### SECOND CLAIM FOR RELIEF

**Unjust Enrichment**

**(On Behalf of Plaintiff and the Classes)**

20 |     98.    The preceding allegations are incorporated by reference and re-alleged as
21 | if fully set forth herein.

22 |     99.    To the extent required, this cause of action is pled in the alternative.

23 |     100.    As a result of the misconduct alleged above, Navy Federal unjustly
24 | received and retained money in the form of Retry NSF Fees assessed against Plaintiff
25 | and the Classes. In so doing, Navy Federal acted with conscious disregard for the
26 | rights of Plaintiff and members of the Classes.

27
28

101.   As a result of Navy Federal's wrongful conduct as alleged herein, Navy Federal has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Classes.

102.   Navy Federal's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

103.   Under the common law doctrine of unjust enrichment, it is inequitable for Navy Federal to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of Retry NSF Fees on Plaintiff and members of the Classes in an unfair, unconscionable, and oppressive manner. Navy Federal's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

104.   The financial benefits derived by Navy Federal rightfully belong to Plaintiff and members of the Classes. Navy Federal should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Classes all wrongful or inequitable proceeds received by it. A constructive trust should be imposed upon all wrongful or inequitable sums received by Navy Federal traceable to Plaintiff and the members of the Classes.

105.   Plaintiff and the Classes lack an adequate remedy at law to recover the amounts sought in restitution by this claim to the extent their legal claims are deemed barred by any affirmative defense that would not apply to this unjust enrichment claim.

106.   Plaintiff, on behalf of themselves and the Classes, seek restitution from Defendant of the Retry NSF Fees alleged herein.

### THIRD CLAIM FOR RELIEF

**Money Had and Received**

**(On Behalf of Plaintiff and the Classes)**

107.   The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

108.   Defendant has obtained money from Plaintiff and the Class Members by

the exercise of undue influence, menace or threat, compulsion or duress, and/or mistake of law and/or fact.

109.    As a result, Defendant has in its possession money which, in equity, belongs to Plaintiff and the Class Members, and thus, this money should be refunded to Plaintiff and the Class Members. Therefore, Plaintiff and the Class Members seek relief as set forth in the Prayer below.

## FOURTH CLAIM FOR RELIEF

**Violation of Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.***

**(On Behalf of Plaintiff, the California Sub-Class, and the California Business Sub-Class)**

110.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

111.    Navy Federal's conduct described herein violates California's Unfair Competition Law (the "UCL"), codified as Business and Professions Code section 17200, *et seq*.  The UCL prohibits and provides civil remedies for unlawful and unfair competition.  Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.  In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.  By defining unfair competition to include "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable, and sweeps within its scope acts and practices not specifically proscribed by any other law.

112.    As further alleged herein, Navy Federal's conduct violates the UCL's "unfair" prong insofar as Navy Federal charges Retry NSF Fees in breach of its contracts with its customers and abuses its contractual discretion to define key contractual provisions as permitting the assessment of Retry NSF Fees.

113.    Navy Federal's conduct violates the "unfair" prong for, *inter alia*, the

following reasons: Plaintiff and the Class Members could not reasonably avoid the
Retry NSF Fees assessed against their accounts because they were unaware of when
or whether merchants would resubmit their transactions for payment or how many
times merchants would resubmit their transactions for payment. As stated by the
Consumer Financial Protection Bureau, "The assessment of multiple NSF fees for the
same transaction caused substantial monetary harm to consumers, totaling millions of
dollars. **These injuries were not reasonably avoidable by consumers, regardless
of account opening disclosures. And the injuries were not outweighed by
countervailing benefits to consumers or competition**." And as stated by the Office
of the Comptroller of Currency, "Even when customer disclosures explain that a single
check or ACH transaction may result in more than one fee, a bank's practice of
assessing fees on each representment may also be unfair, for purposes of Section 5, if
consumers cannot reasonably avoid the harm and the other factors for establishing
unfairness under Section 5 are met. Consumers typically have no control over when a
returned ACH transaction or check will be presented again and lack knowledge of
whether an intervening deposit will be sufficient to cover the transaction and related
fees." Plaintiff and Class Members could not request that Defendant stop these
payments without incurring Defendant's "stop payment" fees, nor did Plaintiff and
the Class Members have any guarantee that a stop payment request would become
effective in time to prevent subsequent resubmissions of the same transaction and the
resultant Retry NSF Fees. Defendant's assessment of Retry NSF Fees exacerbated the
difficulty of repaying any properly assessed fees or negative balances on Plaintiff's
and Class Members' accounts, thereby increasing the likelihood that they would incur
additional OD or NSF Fees, including additional Retry NSF Fees. Further, Plaintiff
and the Class Members could not reasonably avoid Retry NSF Fees because they
lacked knowledge whether an intervening deposit would become available in time to
cover subsequent attempts by merchants to resubmit a prior transaction, given that
such resubmission attempts might post to the account before the deposit became

1  available.

2  114.  Navy Federal's conduct was not motivated by any legitimate business or
3  economic need or rationale. The harm and adverse impact of Navy Federal's conduct
4  on members of the general public was neither outweighed nor justified by any
5  legitimate reasons, justifications, or motives. The harm to Plaintiff and Class Members
6  arising from Navy Federal's unfair practices relating to the imposition of the improper
7  fees outweighs the utility, if any, of those practices. On information and belief,
8  Defendant incurs only a *de minimis* cost when it processes and rejects resubmitted
9  transactions. Further, Retry NSF Fees cannot be justified as punitive measures to
10  encourage members of Defendant to maintain positive account balances because such
11  members are unaware of when or whether merchants' resubmissions of prior
12  transactions will occur, and Retry NSF Fees exacerbate the difficulty of bringing the
13  account balance positive without altering account holder behavior.

14  115.  Navy Federal's unfair business practices as alleged herein are immoral,
15  unethical, oppressive, unscrupulous, unconscionable and/or substantially injurious to
16  Plaintiff and Class Members, and the general public.  Navy Federal's conduct was
17  substantially injurious to consumers in that they have been forced to pay improper,
18  abusive, and/or unconscionable Retry NSF Fees. Navy Federal's conduct in assessing
19  Retry NSF Fees in breach of its contracts with its customers and abusing its contractual
20  discretion to define key contractual provisions as permitting the assessment of Retry
21  NSF Fees violated the public policy against such fees as articulated by the CFPB,
22  OCC, and FDIC in enforcement actions and supervisory guidance publications, and
23  by the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010.

24  116.  Further, Defendant's conduct violates the UCL's "unlawful" prong.
25  Government regulators have determined that the Retry NSF Fee practice is violative
26  of substantive law. For instance, the CFPB has found that the assessment of Retry
27  NSF Fees constitutes an unfair or deceptive act or practice in violation of Sections
28  1031 and 1036 of the Consumer Financial Protection Act, 12 U.S.C. §§ 5531(a) and

(c)(1), and 5536(a)(1)(B).

117.    Defendant's assessment of Retry NSF Fees against Plaintiff and the Class Members is "deceptive" for purposes of 12 U.S.C. §§ 5531(a) and (c)(1); 15 U.S.C. § 45(a)(1); and 12 U.S.C. § 5536(a)(1)(B) because Defendant's Account Documents indicate that only a single NSF Fee may be assessed per check or item, when in reality Defendant's practice was to assess Retry NSF Fees.

118.    Defendant's assessment of Retry NSF Fees against Plaintiff and the Class Members is "unfair" for purposes of 12 U.S.C. §§ 5531(a) and (c)(1); 15 U.S.C. § 45(a)(1); and 12 U.S.C. § 5536(a)(1)(B) *inter alia* for the reasons alleged at length herein.

119.    Defendant's assessment of Retry NSF Fees against Plaintiff and the Class Members also violates the "unlawful" prong of the UCL because such conduct violates the Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq.*, as further alleged herein.

120.    Defendant's assessment of Retry NSF Fees against Plaintiff and the Class Members also violates the "unlawful" prong of the UCL because such conduct breached Defendant's contracts with Plaintiff and Class Members as further alleged herein.

121.    Defendant's assessment of Retry NSF Fees against Plaintiff and the Class Members also violates the "unlawful" prong of the UCL because, *inter alia*, it violated the implied covenant of good faith and fair dealing by abusing contractual discretion to define key contractual provisions as permitting the assessment of Retry NSF Fees.

## FIFTH CLAIM FOR RELIEF

### Violation of The Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq.*

### (On behalf of Plaintiff and the California Sub-Class)

122.    This cause of action is brought pursuant to the Consumer Legal Remedies

Act ("CLRA").

123.   Plaintiff and each member of the California Sub-Class is a "consumer" within the meaning of California Civil Code § 1761(d).

124.   Navy Federal violated the CLRA when it represented that a single NSF Fee would be assessed per check or item, when in fact its practice was to assess Retry NSF Fees. This conduct violated California Civil Code §§ 1770(a)(5), (9), and (14).

125.   Plaintiff request this Court enjoin Navy Federal from continuing to violate the CLRA as alleged herein in the future. Otherwise, Plaintiff, the Class and members of the general public may be irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

126.   As a result of Navy Federal's violations of the CLRA, Plaintiff and the California Sub-Class are further entitled to actual damages, restitution, punitive damages, and attorneys' fees and costs.

## SIXTH CLAIM FOR RELIEF

### Conversion

### (On Behalf of Plaintiff and the Classes)

127.   The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

128.   Navy Federal had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

129.   Navy Federal has wrongfully collected Retry NSF Fees from Plaintiff and the members of the Classes, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

130.   Navy Federal has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff and the members of the Classes, without legal justification.

131.   Navy Federal continues to retain these funds unlawfully without the

consent of Plaintiff or members of the Classes.

132. Navy Federal intends to permanently deprive Plaintiff and the members of the Classes of these funds.

133. These funds are properly owned by Plaintiff and the members of the Classes, not Navy Federal, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiff and the members of the Classes.

134. Plaintiff and the members of the Classes are entitled to the immediate possession of these funds.

135. Navy Federal has wrongfully converted these specific and readily identifiable funds.

136. Navy Federal's wrongful conduct is continuing.

137. As a direct and proximate result of this wrongful conversion, Plaintiff and the members of the Classes have suffered and continue to suffer damages.

138. By reason of the foregoing, Plaintiff and the members of the Classes are entitled to recover from Navy Federal all damages and costs permitted by law, including all amounts that Navy Federal has wrongfully converted.

## **PRAYER**

WHEREFORE, Plaintiff and the Classes pray for judgment as follows:

1. For an order certifying this action as a class action;

2. For compensatory damages on all applicable claims and in an amount to be proven at trial;

3. For an order requiring Defendant to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

4. For statutory damages;

5. For punitive damages;

6. For an order enjoining the wrongful conduct alleged herein;

7. For costs;

8.    For pre-judgment and post-judgment interest as provided by law;

9.    For attorneys' fees under the common fund doctrine, and all other applicable law and sources; and,

10.    For such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and the Class Members demand a trial by jury on all issues so triable.

Dated: September 20, 2024                    Respectfully submitted,

/s/ *Taras Kick*
Taras Kick, CA Bar No. 143379
Tyler J. Dosaj, CA Bar No. 306938
**THE KICK LAW FIRM, APC**
815 Moraga Drive
Los Angeles, California 90049
Telephone: (310) 395-2988
Facsimile: (310) 395-2088
Taras@kicklawfirm.com
Tyler@kicklawfirm.com

SECOND AMENDED CLASS ACTION COMPLAINT