FRED B. BURNSIDE (State Bar No. 211089)
fredburnside@dwt.com
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, California 94111
Telephone: (415) 276-6500
Fax: (415) 276-6599

SANCHO ACCORSI (State Bar No. 329413)
sanchoaccorsi@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendant
NAVY FEDERAL CREDIT UNION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BLANCHE PHLAUM and JASON JONES, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

NAVY FEDERAL CREDIT UNION, and DOES 1-100,

Defendants.

Case No. **5:24-cv-00765-JGB-DTB**

**DEFENDANT NAVY FEDERAL CREDIT UNION'S FIRST NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER RULE 12(b)(6)**

Assigned to the Hon. Jesus G. Bernal
Courtroom 1

Action Filed: April 11, 2024

Defendant Navy Federal Credit Union submits this notice of relevant authority in support of its Motion to Dismiss Plaintiff's Complaint Under Rule 12(b)(6) (Motion), Dkt. 30: *King v. Navy Federal Credit Union*, No. 24-1838, --- F.4th --- (9th Cir. Aug. 1, 2025), attached as **Exhibit A**. Briefing on the Motion was completed on December 23, 2024.

In the Motion, Navy Federal cited the District Court opinion in *King* for the proposition that the Federal Credit Union Act preempts Plaintiff's state-law claims challenging Navy Federal's past practice of charging retry-NSF fees. Mot. 17. The Ninth Circuit in a published opinion affirmed the District Court's dismissal of the *King* plaintiff's state-law claims on precisely this basis, holding "that all state laws that regulate account fees—general, specific, or otherwise—have no application to federal credit unions." Ex. A at 12.

Navy Federal also explained that federal credit unions are structurally disinclined to charge unfair fees because they are democratically controlled. Mot. 4–5. The Ninth Circuit also emphasized this quality to credit unions. Ex. A at 5–7.

*King* supports granting Navy Federal's Motion.

DATED: August 1, 2025.

DAVIS WRIGHT TREMAINE LLP
FRED B. BURNSIDE
SANCHO ACCORSI

By: */s/ Fred B. Burnside*
Fred B. Burnside

Attorneys for Defendant
NAVY FEDERAL CREDIT UNION



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
Tel: (213) 633-6800
Fax: (213) 633-6899

# EXHIBIT A

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANDREW KING, on behalf of himself and all others similarly situated,<br><br>*Plaintiff - Appellant*,<br><br>v.<br><br>NAVY FEDERAL CREDIT UNION,<br><br>*Defendant - Appellee*. | No. 24-1838<br><br>D.C. No. 2:23-cv-05915-SPG-AGR<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Sherilyn Peace Garnett, District Judge, Presiding

Argued and Submitted May 23, 2025
Pasadena, California

Filed August 1, 2025

Before: Kim McLane Wardlaw and John B. Owens, Circuit Judges, and John Charles Hinderaker, District Judge.*

Opinion by Judge Owens

* The Honorable John Charles Hinderaker, United States District Judge for the District of Arizona, sitting by designation.

## SUMMARY[**]

### Federal Preemption

The panel affirmed the district court's dismissal, on federal preemption grounds, of Andrew King's state law claims under California's Unfair Competition Law ("UCL") against Navy Federal Credit Union ("NFCU").

King, a customer of NFCU, argued that NFCU's assessment of a $15 returned-check fee when King was not at fault was an "unfair" and "unlawful" business practice in violation of the UCL, and the federal Consumer Financial Protection Act.

The panel agreed with the district court that King's UCL claim was expressly preempted by 12 C.F.R. § 701.35, which governs federal credit unions. NFCU is a federal credit union, and Congress vested rulemaking authority over them in the National Federal Credit Union Administration ("NCUA"), an independent agency. For the purposes of this appeal, the panel presumed that the $15 fee was "inconsistent" with federal law. The panel held that the plain language of 12 C.F.R. § 701.35(c), which provides in relevant part that "[s]tate laws regulating [account fees] are not applicable to federal credit unions," expressly preempted King's UCL claim.

Rejecting King's arguments that the UCL transcends § 701.35(c)'s preemption clause, the panel held that all state

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

laws that regulate account fees—general, specific, or otherwise—have no application to federal credit unions.

---

## COUNSEL

Robert Friedman (argued), Deepak Gupta, and Matthew W.H. Wessler, Gupta Wessler LLP, Washington, D.C.; Jennifer D. Bennett, Gupta Wessler LLP, San Francisco, California; Sophia G. Gold, KalielGold PLLC, Oakland, California; Jeffrey D. Kaliel, KalielGold PLLC, Washington, D.C.; for Plaintiff-Appellant.

David M. Parker (argued) and Elbert Lin, Hunton Andrews Kurth LLP, Richmond, Virginia; Jason J. Kim, Marcus E. Nelson, and Hakop Stepanyan, Hunton Andrews Kurth LLP, Los Angeles, California; for Defendant-Appellee.

---

## OPINION

OWENS, Circuit Judge:

Plaintiff–Appellant Andrew King appeals from the district court's dismissal, on federal preemption grounds, of his state law claims against Navy Federal Credit Union ("NFCU"). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In July 2022, King, a customer of NFCU, attempted to deposit a large check into his account, but it did not go through. Even though the failure was not King's fault,

NFCU assessed him a $15 fee pursuant to its "bounced" check policy.[1] King's attempts to resolve this dispute telephonically failed. Litigation ensued.

King filed suit in state court. Relevant to this appeal, he argued that charging a $15 returned-check fee when the customer was not at fault was an "unfair" and "unlawful" business practice that violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. ("UCL"). He also alleged that the $15 fee violated the federal Consumer Financial Protection Act ("CFPA"), although he did not plead any federal causes of action.

NFCU removed the matter to federal court. The district court held that "state law claims regarding a federal credit union's failure to disclose certain fee practices or any perceived unfairness in the fee practices themselves are preempted." (quoting *Lambert v. Navy Fed. Credit Union*, No. 19-103, 2019 WL 3843064, at *2 (E.D. Va. Aug. 14, 2019)).[2] Because King's UCL claim "concern[ed] [NFCU's] fee charging practices," the court concluded that 12 C.F.R. § 701.35(c)—which governs federal credit unions—expressly preempted it, and dismissed the case. King appealed.

---

[1] As of November 1, 2023, NFCU has stopped charging returned-check fees.

[2] *See also Whittington v. Mobiloil Fed. Credit Union*, No. 16-482, 2017 WL 6988193, at *7 (E.D. Tex. Sept. 14, 2017) ("[A]ny state laws that attempt to regulate a federal credit union's authority to determine 'the types of fees or charges and other matters affecting the opening, maintaining and closing of a share, share draft or share certificate account' are expressly preempted." (quoting 12 C.F.R. § 701.35(c))); *accord Vue v. Pentagon Fed. Credit Union*, No. 21-01063, 2023 WL 6387174, at *12 (E.D. Cal. Sept. 29, 2023).

## II. DISCUSSION

### A. Standard of Review

We review a district court's decision to dismiss a plaintiff's claims on preemption grounds de novo. *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 664 (9th Cir. 2014).

### B. The District Court Correctly Dismissed King's UCL Claim on Preemption Grounds

#### 1. *Background on Credit Unions*

Credit unions operate within a "dual chartering system," which allows them to choose between a federal or state charter. Share, Share Draft, and Share Certificate Accounts, 50 Fed. Reg. 4636–37 (Feb. 1, 1985) (to be codified at 12 C.F.R. pt. 701). NFCU is a federal credit union, and is therefore "chartered, examined, [and] supervised" by the federal government. *Mosco v. United States*, 301 F.2d 180, 186 (9th Cir. 1962). Congress vested rulemaking authority over federal credit unions in the National Credit Union Administration ("NCUA"), an independent agency. *See* 12 U.S.C. §§ 1752a, 1766(a); *Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*, 833 F.3d 1125, 1128–29 (9th Cir. 2016) (describing the NCUA as the "independent federal agency responsible for . . . regulating federal credit unions"). Unlike banks, federal credit unions are owned and democratically controlled by their members, who must share a common bond of occupation, association, or residential community. *See* 12 U.S.C. § 1759(b); Truth in Savings, 58 Fed. Reg. 50,394–95 (Sept. 27, 1993) (to be codified at 12 C.F.R. pts. 701, 707, 740).

In the early 1980s, the NCUA amended 12 C.F.R. § 701.35 to "remove[] regulatory restrictions" on federal credit union accounts and leave the "determin[ation] [of] the

terms and conditions" governing them to each unions' elected board of directors. Share, Share Draft, and Share Certificate Accounts; Deregulation, 47 Fed. Reg. 17,978 (Apr. 27, 1982) (to be codified at 12 C.F.R. pt. 701). After several states attempted to regulate federal credit unions in its place, the NCUA proposed adding an express preemption provision to § 701.35, which clarified "that, to the extent state law may be applicable to [federal credit unions], it is preempted." Share, Share Draft, and Share Certificate Accounts, 49 Fed. Reg. 46,552 (Nov. 27, 1984) (to be codified at 12 C.F.R. pt. 701).

In its rule notice, the NCUA explained that, under the proposed provision, federal credit unions would be "authorized to determine, *free from state regulation*, the types of . . . fees or charges . . . associated with the establishment, maintenance or closing of a share, share draft, or share certificate account," which are the credit union equivalents of savings, checking, and certificates of deposit accounts, respectively. *Id.* (emphasis added). It further explained that, instead of relying on government regulation, federal credit union members could address any "objectionable" policies by replacing union leadership "through the election process." *Id.*

When the rule became final, the NCUA stated that the preemption provision "ensure[s] the continued efficacy of the NCUA Board's previous deregulation of [federal credit union] share account activity," and "furthers the Board's longstanding support of a viable dual chartering system." 50 Fed. Reg. at 4636. In contrast, allowing state regulation in this area "would infringe on NCUA's jurisdiction . . . and . . . be inconsistent with the dual chartering system." *Id.* at 4637.

In 1993, the NCUA amended § 701.35(c) for the last time to implement the Truth in Savings Act, a new federal statute. *See* 58 Fed. Reg. at 50,394. When doing so, the NCUA reemphasized that the regulation's preemption provision provides federal credit unions "the broadest possible protection in the area of share accounts," *id.* at 50,440, and "clearly leaves" the determination of fees "to the discretion" of their boards of directors, *id.* at 50,413. In its current form, § 701.35(c) provides in relevant part:

> A Federal credit union may, consistent with . . . federal law . . . , determine the types of fees or charges and other matters affecting the . . . maintaining . . . of . . . [its] account[s]. *State laws regulating such activities are not applicable to federal credit unions*.

12 C.F.R. § 701.35(c) (emphasis added).

2. *Section 701.35(c) Preempts King's UCL Claims*

With this background in mind, we turn to preemption, which has three flavors: (1) express; (2) implied; and (3) conflict. *Hillsborough County v. Automated Med. Labs.*, 471 U.S. 707, 713 (1985). At issue here is express preemption, when Congress "expressly commands that state law on the particular subject is displaced." *United States v. 4,432 Mastercases of Cigarettes, More or Less*, 448 F.3d 1168, 1189 (9th Cir. 2006) (citation omitted). "Federal regulations have no less pre-emptive effect than federal statutes." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

When interpreting an express preemption clause, courts "must in the first instance focus on the plain wording of the clause," and then "the surrounding [regulatory] framework" and "stated purposes" of the regulation. *Nat'l R.R. Passenger Corp. v. Su*, 41 F.4th 1147, 1152 (9th Cir. 2022) (citations omitted).

For the purposes of this appeal, we assume that the $15 fee is "inconsistent" with federal law.[3] Accordingly, the sole question before us is whether § 701.35(c) preempts King's UCL claims. We conclude that it does.

We start with the plain language. After detailing that a federal credit union may determine the types of fees affecting the maintenance of its accounts, the regulation provides: "State laws regulating such activities are not applicable to federal credit unions." 12 C.F.R. § 701.35(c). It is difficult to imagine preemption language more explicit than this. As one district court put it, it is "clear from the . . . text" of § 701.35(c) that "any state laws that attempt to regulate a federal credit union's authority to determine 'the types of fees or charges'" related to its accounts "are expressly preempted." *Whittington*, 2017 WL 6988193, at *7 (quoting 12 C.F.R. § 701.35(c)).

This straightforward reading best aligns with the nation's dual chartering system, under which NFCU deliberately

---

[3] Indeed, in November 2022, the Consumer Financial Protection Bureau ("CFPB") issued non-binding guidance that certain returned-check fees like NFCU's are "likely unfair" under the CFPA. *See* Bulletin 2022-06: Unfair Returned Deposited Item Fee Assessment Practices, 87 Fed. Reg. 66,940 (Nov. 7, 2022). The CFPB further noted, however, that "[a]s a matter of prosecutorial discretion," it did not intend to "seek monetary relief" for any such fees "assessed prior to November 1, 2023." *Id.* at 66,940 n.1.

chose to be federally chartered and thus be "examined[] [and] supervised" by the federal government. *Mosco*, 301 F.2d at 186. Moreover, allowing the diverse laws of the fifty states, alongside federal law, to govern a federal credit union's fee practices would directly undermine the deregulatory objectives underlying § 701.35(c). *See* 47 Fed. Reg. at 17,978. It would also overlook the unique role that a federal credit union member plays in the governance of the union—unlike other financial institutions, federal credit union members have a direct say in fee-setting and can force out directors who impose unreasonable fees. *See* 49 Fed. Reg. at 46,552 (explaining how "objectionable" fee policies can be addressed by members "through the election process").

To ascend this Everest-like preemption mountain, King makes two arguments. He fails to reach the summit.

King initially contends that so long as federal law prohibits the fee charging practice, then the preemption clause effectively vanishes, and state law claims of any stripe may proceed. But even assuming the $15 fee violates federal law, his reading ignores the clear language of § 701.35(c), which never makes the preemption language conditional on a federal violation. Instead, § 701.35(c) makes two distinct points. First, federal credit unions can charge fees so long as they are "consistent with" federal law. 12 C.F.R. § 701.35(c). Second, state laws regulating fees "are not applicable to federal credit unions." *Id.* These provisions operate independently: Whether a particular fee complies with federal law has no bearing on whether a state law challenge to that fee may proceed. Yet King's interpretation collapses the two, asking the court to read into the regulation an express link that the NCUA easily could have included (but did not), and one that we cannot now

invent. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 677 (2020) ("[A]bsent [regulatory] provision[s] cannot be supplied by the courts." (citation omitted)); *Lopez v. Garland*, 116 F.4th 1032, 1043 (9th Cir. 2024) ("[W]e have no right to insert words and phrases [into a regulation] . . . ." (citation omitted)).[4]

Indeed, the drafting history of § 701.35 demonstrates that the agency understood that these clauses performed distinct and independent functions. The original version of § 701.35 stated:

> (c) A Federal credit union is empowered to determine the types of disclosures, fees or charges, time for crediting of deposited funds, and all other matters, *not inconsistent with this section*, affecting the opening, maintaining or closing of a share, share draft or share certificate account. *To the extent that*

[4] We thus disagree with the footnote in NCUA's December 2024 opinion letter, in which it stated for the first time that "the Federal Credit Union Act does not preempt State laws that apply to practices of federal credit unions that violate other federal laws." NCUA, Consumer Harm Stemming from Certain Overdraft and Non-Sufficient Funds Fee Practices, 24-CU-03 (2024), https://perma.cc/2X2J-VRCJ. Because this belated, informal interpretation of the regulation is inconsistent with both the plain meaning of the text and the agency's prior statements about the scope of preemption, and it lacks thorough explanation, it is not entitled to deference. *See Kisor v. Wilkie*, 588 U.S. 558, 570, 579 (2019) (noting deference to an agency's "fair and considered judgment" is appropriate, but "works . . . less well when lots of time has passed between the rule's issuance and its interpretation—especially if the interpretation differs from one that has come before" (citation omitted)); *Christen v. Harris County*, 529 U.S. 576, 588 (2000) (holding that deference to an agency's opinion letter is "warranted only when the language of the regulation is ambiguous").

> *state law attempts to regulate such activity, it is preempted. Nothing herein is intended, however, to allow a Federal credit union to unilaterally amend or modify its contract with a member unless it has previously reserved the right to do so.*

50 Fed. Reg. at 4637 (emphasis added).

Then in 1988, the agency amended the regulation: (1) moving the last sentence discussing contractual obligations into the first sentence; and (2) adding the phrase "other federal law" into the first sentence. *See* Fees Paid by Federal Credit Unions; Share, Share Draft, and Share Certificate Accounts, 53 Fed. Reg. 19,747 (May 31, 1988) (to be codified at 12 C.F.R. pt. 701). In making this change, the agency explained that:

> The NCUA Board believes a general reference to "other Federal law," which would include these requirements and others that may follow, will be helpful to alert [federal credit union's] to the need to look beyond the [Federal Credit Union] Act and NCUA's Rules and Regulations in assuring compliance with Federal laws.
>
> The Board has also taken this opportunity to simplify some of the wording in § 701.35(c). The last sentence, regarding the need of a[] [federal credit union] to comply with its contractual obligations, has been deleted, and a similar statement added in the

> first sentence. The preemption language has also been shortened.

*Id.* This commentary by the agency strongly supports the interpretation that the preemption clause and "consistent with" federal law clause are independent of each other.

King next argues that because § 701.35(c) preempts only state laws that "regulate" the fees that federal credit unions charge, a "generally applicable" law—like the UCL—falls outside of § 701.35(c)'s preemptive reach. For support, King relies on *Total TV v. Palmer Communications., Inc.*, which read the word "regulate" to indicate "a more limited preemptive intent" than a phrase like "related to," which "signifies a broad preemptive purpose sufficient to preempt state laws of general application." 69 F.3d 298, 302 (9th Cir. 1995). But the court's interpretation in *Total TV* relied on statutory context and was "cement[ed]" by Congress's explicit statement that it did not intend to preempt the kind of generally applicable state law at issue in that case. *Id.* at 302–03. The NCUA's statements regarding § 701.35(c)'s preemptive scope and the regulatory context at issue here clearly indicate the opposite. *See* 49 Fed. Reg. at 46,552 (noting its intent to authorize federal credit unions to determine account fees "free from state regulation").

King's odd reading of § 701.35(c) also would create an "utterly irrational loophole" where states could target federal credit unions simply by relying on statutes that, on their face, have nothing to do with share accounts. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 386 (1992). As the Supreme Court put it, "there is little reason why state impairment of the federal scheme should be deemed acceptable so long as it is effected by the particularized application of a general statute." *Id.* It is thus unsurprising

that lower courts, relying on the regulation's text, history, and purpose, have applied § 701.35(c)'s preemption clause to "generally applicable" state laws just like this one. *See, e.g.*, *Whittington*, 2017 WL 6988193, at *9 (rejecting plaintiff's "attempt[] to use a state consumer law to dictate to a federal credit union what fees it may charge," which "would amount to *de facto* regulation of the activities outlined in § 701.35(c)"); *Lambert*, 2019 WL 3843064, at *2–3 (holding that, "[c]onsistent with the language and purpose of" § 701.35(c), a challenge to the "fairness" of NFCU's fee practices brought under a state consumer protection law was preempted).

Although King offers an Olympic level of verbal gymnastics to argue that the UCL transcends § 701.35(c)'s preemption clause, we agree with the district court—and every other court to confront this issue—that all state laws that regulate account fees—general, specific, or otherwise—have no application to federal credit unions.[5]

**AFFIRMED**.

---

[5] To the extent King argues that § 701.35(c), when interpreted in this manner, was invalidly promulgated under the Federal Credit Union Act, he has waived that argument by failing to raise it before the district court, and we decline to reach it. *See Japanese Vill., LLC v. Fed. Transit Admin.*, 843 F.3d 445, 455 (9th Cir. 2016) ("Absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal . . . ." (citation and internal quotation marks omitted)).